John W. Dillon (SBN 296788)
jdillon@gandb.com
**GATZKE DILLON & BALLANCE LLP**
2762 Gateway Road
Carlsbad, California 92009
Phone: (760) 431-9501
Fax: (760) 431-9512

George M. Lee (SBN 172982)
gml@seilerepstein.com
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, California 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILLER, an individual; PATRICK RUSS, an individual; RYAN PETERSON, an individual; and SAN DIEGO COUNTY GUN OWNERS POLITICAL ACTION COMMITTEE, a membership organization,<br><br>         Plaintiffs,<br><br>   vs.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of California; and MARTIN HORAN, in his official capacity as Chief of the Department of Justice Bureau of Firearms,<br><br>         Defendants. | Case No. **'19CV1537 JAH AGS**<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiffs, JAMES MILLER, PATRICK RUSS, RYAN PETERSON, and SAN DIEGO COUNTY GUN OWNERS POLITICAL ACTION COMMITTEE (PAC) ("Plaintiffs"), by and through their undersigned counsel, hereby allege as follows:

## INTRODUCTION

1.     This is a facial and as applied constitutional challenge to California Penal Code §§ 30515(a)(2) and 30515(a)(5), California Code of Regulations § 5471, subdivs. (b), (n), and (p), and Defendants policies, practices, customs, and enforcement of said law, which define and prohibit certain firearms as "assault weapons" solely because they feature "large-capacity" magazines (capable of holding more than ten rounds of ammunition) as defined by Pen. Code § 16740 and regulated under the now-enjoined Penal Code § 32310. *Duncan v. Becerra*, Case No. 3:17-cv-1017-BEN-JLB (ECF No. 87).  Subdivisions (a)(2) and (a)(5) of Penal Code § 30515 violate the Second Amendment to the United States Constitution by prohibiting law-abiding citizens, including these individual plaintiffs, from obtaining, acquiring, possessing, manufacturing or transferring firearms in common use for lawful purposes such as self-defense inside and outside the home, competition, sport, and hunting.  To the extent that other provisions of the Penal Code limit, prevent, or otherwise punish activity premised upon the legal definition of "assault weapon" under Penal Code §§ 30515(a)(2) and 30515(a)(5), injunctive

relief should also be granted to prevent enforcement of them, through Penal Code §§ 30600 (prohibiting manufacture, transportation), 30605 (prohibiting possession), 30800 (permitting seizure as a "nuisance"), 30910 (prohibiting sale), 30915 (prohibiting transfer by bequest/inheritance), 30945 (limiting use), and 31000 (requiring permits for use).

2.     This District Court already has ruled the state's prohibition on the possession of large-capacity magazines is unconstitutional, and has enjoined and prohibited enforcement of those provisions of the Penal Code that would have prohibited their possession.   Both implicit and explicit in this District Court's ruling was the ability to *use* such lawfully possessed magazines in otherwise lawfully possessed firearms.   Thus, the prohibitions that attach to the possession and use of a certain legislatively-invented class of otherwise commonly used, constitutionally protected non-"assault weapon" firearms, but for and emanating solely from their use in conjunction with a constitutionally protected magazine, are likewise invalid and should be stricken.

## THE PARTIES

3.     Plaintiff James Miller is an individual, and a law-abiding California resident of the County of San Diego, California.   Mr. Miller holds an active license to carry a concealed weapon ("CCW") issued by his County sheriff, after proving "good cause" and "good moral character" to his licensing authority; successfully

completing a course of training on the law and firearms proficiency; and passing an extensive Live Scan-based background check and placement into the State's system for monitoring law enforcement contact, arrests, and criminal convictions ("Rap Back"). Plaintiff Miller is the owner of a semi-automatic centerfire rifle, expressly not defined as an assault weapon under California law by virtue of it having a "fixed magazine" as defined by Cal. Pen. Code § 30515(b). Plaintiff Miller further has legally acquired and currently possesses so-called "large-capacity magazines," as that term is defined by Pen. Code § 16740 and regulated under the now-enjoined Penal Code § 32310. Plaintiff Miller seeks to use his lawfully acquired large-capacity magazine(s) in his California-compliant, "fixed magazine rifle." However, Plaintiff Miller is prevented from lawfully doing so without risk of persecution resulting in injury to his life and liberty; and the unlawful confiscation and loss of his personal property because said use would reclassify his rifle as a prohibited "assault weapon" as defined by Pen. Code § 30515(a)(2). Plaintiff Miller herein would like to exercise his rights guaranteed by the Second Amendment to keep and bear arms, by possessing a semiautomatic, centerfire rifle, in common use for lawful purposes, but which the State considers an "assault weapon" solely by virtue of its magazine capacity. Plaintiff Miller is a member and Board Member of Plaintiff San Diego County Gun Owners PAC.

4.       Plaintiff Patrick Russ is an individual, and a law-abiding California

resident of the County of San Diego, California.  Mr. Russ holds an active license to carry a concealed weapon ("CCW") issued by his County sheriff, after proving "good cause" and "good moral character" to his licensing authority; successfully completing a course of training on the law and firearms proficiency; and passing an extensive Live Scan-based background check and placement into the State's system for monitoring law enforcement contact, arrests, and criminal convictions ("Rap Back").  Plaintiff Russ is the owner of a centerfire rifle, expressly not defined as an assault weapon under California law by virtue of it having a "fixed magazine" as defined by Cal. Pen. Code § 30515(b).  Plaintiff Russ further has legally acquired and currently possesses so-called "large-capacity magazines," as that term is defined by Pen. Code § 16740 and regulated under the now-enjoined Penal Code § 32310.  Plaintiff Russ seeks to use his lawfully acquired "large-capacity" magazine(s) in his California-compliant, fixed magazine rifle.  However, Plaintiff Russ is prevented from lawfully doing so without risk of persecution resulting in injury to his life and liberty; and the unlawful confiscation and loss of his personal property because said use would reclassify his rifle as a prohibited "assault weapon" as defined by Pen. Code § 30515(a)(2).  Plaintiff Russ herein would like to exercise his rights guaranteed by the Second Amendment to keep and bear arms, by possessing a semiautomatic, centerfire rifle, in common use for lawful purposes, but which the State considers an "assault weapon" solely by

virtue of its magazine capacity.  Plaintiff Russ is a member of Plaintiff San Diego County Gun Owners PAC.

5.     Plaintiff Ryan Peterson is an individual, and a law-abiding California resident of the County of San Diego, California.  Mr. Peterson holds an active license to carry a concealed weapon ("CCW") issued by his County sheriff, after proving "good cause" and "good moral character" to his licensing authority; successfully completing a course of training on the law and firearms proficiency; and passing an extensive Live Scan-based background check and placement into the State's system for monitoring law enforcement contact, arrests, and criminal convictions ("Rap Back").  Plaintiff Peterson is the owner of a pistol, expressly *not* defined as an assault weapon under California law by virtue of it having a "fixed magazine" as defined by Cal. Pen. Code § 30515(b).  Plaintiff Peterson further has legally acquired and currently possesses so-called "large-capacity magazines," as that term is defined by Pen. Code § 16740 and regulated under the now-enjoined Penal Code § 32310.   Plaintiff Peterson seeks to use his lawfully acquired large-capacity magazine(s) in his California-compliant, fixed magazine pistol. However, Plaintiff Peterson is prevented from lawfully doing so without risk of persecution resulting in injury to his life and liberty; and the unlawful confiscation and loss of his personal property because said use would reclassify his pistol as an "assault weapon" as defined by Pen. Code § 30515(a)(5).  Plaintiff Peterson herein

would like to exercise his rights guaranteed by the Second Amendment to keep and bear arms, by possessing a firearm, in common use for lawful purposes, but which the State considers an "assault weapon" solely by virtue of its magazine capacity. Plaintiff Peterson is a member and Board Member of Plaintiff San Diego County Gun Owners PAC.

6.     Plaintiff San Diego County Gun Owners PAC (SDCGO) is a non-profit membership organization whose purpose is to protect and advance the Second Amendment rights of residents of San Diego County, California. SDCGO's membership consists of Second Amendment supporters, people who own guns for self-defense or sport, firearms dealers, shooting ranges, and elected officials who want to restore and protect the right to keep and bear arms in California.  The interests that SDCGO seeks to protect in this lawsuit are germane to the organization's purposes, and, therefore, SDCGO sues on its own behalf, and on behalf of its members, including individual Plaintiffs named herein.

7.     Defendant Xavier Becerra is the Attorney General of the State of California, and is sued herein in his official capacity. Under Article 5, § 13 of the California Constitution, Attorney General Becerra is the "chief law officer of the State," with a duty "to see that the laws of the state are uniformly and adequately enforced."  Defendant Becerra is the head of the California Department of Justice ("DOJ").   The DOJ and its Bureau of Firearms regulate and enforce state law

related to the sales, transfer, possession, and ownership of firearms.  The Attorney

General and DOJ maintain an office in San Diego, California.

8.    Defendant Martin Horan is the Chief of the DOJ's Bureau of

Firearms.  On information and belief, Defendant Horan reports to Attorney General

Becerra, and he is responsible for the various operations of the Bureau of Firearms,

including the implementation and enforcement of the statutes, regulations and

policies regarding assault weapons.   Defendant Horan is sued in his official

capacity.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction over all claims for relief pursuant to

28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§ 1983 and 1988, as this

action seeks to redress the deprivation under color of the laws, statutes, ordinances,

regulations, customs, and usages of the State of California, of the rights, privileges

or immunities secured by the United States Constitution.

10.    Venue is proper under 28 U.S.C. § 1391(b), as the events giving rise

to Plaintiffs' causes of action arose or exist in this district in which the action is

brought.  Venue is also proper under 28 U.S.C. § 1391, as the venue rules of this

State specifically would permit this action to be filed in San Diego, since the

Attorney General and California Department of Justice maintain an office within

this Division; Cal. Code of Civ. Pro. § 401(1).

1
2
3

## CONSTITUTIONAL AND STATUTORY BACKGROUND

### *The Second Amendment*

4
5
6
7
8
9
10
11
12

11.     The Second Amendment to the United States Constitution states that "the right of the people to keep and bear arms, shall not be infringed."  U.S. Const., Amend. II.  Moreover, the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).  The Second Amendment protects "arms….of the kind in common use…. for lawful purposes like self-defense." *Id.*, 554 U.S. at 624.

13
14
15
16
17
18
19

12.     As the Court subsequently held in *McDonald v. City of Chicago*, 561 U.S. 742, 130 S.Ct. 3020 (2010): "it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those *fundamental* rights necessary to our system of ordered liberty." 130 S.Ct. at 3043 (emphasis added).

20
21
22
23
24
25
26
27
28

13.     As the Supreme Court announced in *Heller*, "[s]ome have made the argument, bordering on the frivolous, that only those arms in existence in the 18th century are protected by the Second Amendment.  We do not interpret constitutional rights that way.  Just as the First Amendment protects modern forms of communications, e.g., *Reno v. American Civil Liberties Union*, 521 U.S. 844, 849, 117 S. Ct. 2329 , 138 L.Ed.2d 874 (1997), and the Fourth Amendment applies

to modern forms of search, e.g., *Kyllo v. United States*, 533 U.S. 27, 35-36, 121 S. Ct. 2038, 150 L.Ed.2d 94 (2001), the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 128 S. Ct. 2783, at 2791-2792.

14.   The firearms that the law in question prohibits are, in virtually every state of the Union, exactly the sorts of lawful weapons in common use that law-abiding people possess at home for lawful purposes; and exactly what they would bring to service in militia duty should such cause be necessary.  *See*, *e.g.*, *Colorado Outfitters Ass'n v. Hickenlooper*, 24 F. Supp. 3d 1050, 1068 (D. Colo. 2014) (concluding that statute "affects the use of firearms that are both widespread and commonly used for self-defense," because "lawfully owned semi-automatic firearms using a magazine with the capacity of greater than 15 rounds number in the tens of millions"); *Shew v. Malloy*, 994 F. Supp. 2d 234, 246 (D. Conn. 2014) (concluding that semi-automatic rifles such as the AR-15 as well as magazines with a capacity greater than 10 rounds "are 'in common use' within the meaning of *Heller* and, presumably, used for lawful purposes"); *Friedman v. City of Highland Park*, 577 U.S. ___, 136 S. Ct. 447, 449 (2015) (Thomas, J., dissenting from denial of certiorari) ("Roughly five million Americans own AR-style semiautomatic rifles").

15.   Indeed, the California Department of Justice itself estimated that there

were as many as 250,000 gun owners with "Bullet Button Assault Weapons," possessing as many as 1.5 million such firearms[1] – the vast majority of which are AR-15 style rifles – in California alone.

16.    The firearms that the Plaintiffs wish to acquire, keep and lawfully possess, but are prevented from doing so, are exactly the type of instruments that are afforded protection under the Second Amendment for the preservation of self and the state by law-abiding people in times of extreme danger.

17.    The Second Amendment is not a second-class guarantee buried in the fine print at the bottom of our Constitution. As the Court held, "it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those *fundamental* rights necessary to our system of ordered liberty." *Id.* at 3043 (emphasis added).

18.    Despite California's apparent legislative policy preferences and animus towards Second Amendment rights (and, by extension, those who would lawfully seek to assert and exercise them), "the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *Heller*, 554 U.S., at

---

[1]    This estimate is merely a subset of the common variations of the firearms in question, as it does not include the estimated numbers of fixed magazine firearms that are expressly not defined as "Bullet-Button Assault Weapons" lawfully possessed in California.

636, 128 S. Ct., at 2822. Indeed, the Court "expressly rejected the argument that the scope of the Second Amendment right should be determined by judicial interest balancing," *McDonald,* 561 U.S. at 785, 130 S. Ct. at 3047 (quoting *Heller,* 554 U.S., at 634-636, 128 S. Ct., at 2820-2821).

*California's Assault Weapons Control Act*
*SB 23 "Features" Weapons*
*(Pen. Code § 30515)*

19.    California has had a lengthy struggle with its ongoing attempt to brand and restrict normal firearms, that are in common use for lawful purposes and not both "dangerous and unusual," as so-called "assault weapons," a politically-concocted pejorative term designed to suggest that there is an inherently unlawful or illegitimate basis for owning otherwise common firearms protected by the Second Amendment.

20.    Penal Code section 16200 currently states that the term "assault weapon" is governed by sections 30510 and 30515. But as stated, California's attempt to define specifically what constitutes an "assault weapon" has been problematic. The first two categories of assault weapons were specifically named firearms contained within a statutory list of firearms, by make and model, first enacted pursuant to the Roberti-Roos Assault Weapons Control Act of 1989. These firearms are currently found at Penal Code § 30510(a)-(c) (formerly found at Penal Code § 12276). The second "category" of assault weapons were the "AR and

AK series" weapons promulgated by the DOJ following *Kasler v. Lockyer*, 23 Cal.4th 472 (2000), presently found at 11 Cal. Code of Regs. § 5499.  These first two categories of assault weapons were required to be registered within a certain period of time, and if they were not registered, they could no longer be owned legally within the State of California.

21.   The third category of assault weapons followed the Legislature's attempt to define "assault weapon" not by specific firearm make/model, but by a list of features, now generally found in Pen. Code § 30515.   This characteristics-based attempt to define "assault weapon" followed passage of Senate Bill 23 (SB 23) in 1999, and featured, most prominently, a ban on the possession, sale, and manufacture of semiautomatic, centerfire rifles that had "the ability to accept a detachable magazine," and some cosmetic features, such as a flash hider, a pistol grip, or a collapsible stock.

22.   In 2016, in order to remedy what it perceived to be a "loophole" in its flawed definition, the Legislature again tinkered with the Penal Code § 30515 definition of "assault weapon" by eliminating (most) references to "ability to accept a detachable magazine," and requiring all semiautomatic centerfire rifles to have "fixed magazines" instead. See Pen. Code § 30515(b). This was enacted pursuant to Senate Bill 880 and Assembly Bill 1135. And likewise, if certain legally possessed firearms which did not have "fixed magazines" (as defined by

section 30515(b)) were not registered by June 30, 2018, they could no longer be possessed, transported, manufactured, or sold.

23.     Additionally, SB 23 (1999), which contained the first characteristics-based attempt to define the term "assault weapon," also enacted the first restrictions on "large-capacity magazines," including the now-enjoined Penal Code § 32310, as a major part of the Act. Indeed, Legislative Counsel's digest accompanying passage of SB 23 stated: "[t]his bill would further define the term 'assault weapon' by providing descriptive definitions concerning *the capacity* and function of the weapon" (emphasis added).  Thus, SB 23 attempted to define "assault weapon" not merely by the cosmetic or functional features of the firearm, but in some instances, solely by the magazine capacity of the firearm.

24.     When the Legislature enacted SB 880 and AB 1135 in 2016, therefore, it continued to presume that certain firearms – even if they were not otherwise assault weapons by definition – could fall within the definition of assault weapon by their capacity alone under Penal Code § 30515(a)(2) and (a)(5). Specifically, Penal Code 30515(a)(2) defines "assault weapon" as: "[a] semiautomatic, centerfire rifle that has a fixed magazine with the capacity to accept more than 10 rounds. And, similarly, section 30515(a)(5) also defines an "assault weapon" as: "[a] semiautomatic pistol with a fixed magazine that has the capacity to accept more than 10 rounds."

25.    Plaintiffs in the present case cannot acquire, possess, manufacture, transfer, inherit, or most importantly, use otherwise lawfully held semi-automatic firearms in common use for lawful purposes because they are proscribed under various provisions of the Penal Code that prohibit the acquisition, possession, manufacture, transfer, and registration of so-define "assault-weapons" under California law.

## CLAIMS FOR RELIEF
### COUNT I
**Challenge to Pen. Code §§ 30515(a)(2), 30515(a)(5)
Against All Defendants**

26.    Plaintiffs incorporate herein by reference paragraphs 1 through 25 as if fully set forth herein.

27.    Plaintiffs Miller, Russ and Peterson possess firearms that the state expressly considers *not* to be assault weapons, by virtue of having fixed magazines as defined by Penal Code § 30515(b), i.e., said firearms have ammunition feeding devices that are contained in those firearms that cannot be removed without disassembly of the firearm action.   California Department of Justice-issued regulations further define "action" as "the working mechanism of a semiautomatic firearm, which is the combination of the receiver or frame and breech bolt together with the other parts of the mechanism by which a firearm is loaded, fired, and unloaded," and states that "'[d]isassembly of the firearm action' means the fire

control assembly is detached from the action in such a way that the action has been interrupted and will not function.  For example, disassembling the action on a two-part receiver, like that on an AR-15 style firearm, would require the rear take down pin to be removed, the upper receiver lifted upwards and away from the lower receiver using the front pivot pin as the fulcrum, before the magazine may be removed." 11 CCR § 5471, subdivs. (b), (n), and (p).

28.    Plaintiffs Miller, Russ and Peterson own firearms that are "AR-15 style firearms" that have fixed magazines as defined by Penal Code § 30515(b) and 11 CCR § 5471(n), (p). Said firearms are loaded and unloaded by using a device requiring the user to physically release and separate the upper and the lower receivers, in the manner described by 11 CCR § 5471(n), (p), before the magazines may be removed. Accordingly, these are *not* assault weapons as defined by statute.

29.    Plaintiffs Miller, Russ and Peterson also have legally acquired and currently possess so-called "large-capacity magazines" (as that term is defined by Penal Code § 16740), that would, if used, operate in these firearms.  They desire to use these "large-capacity magazines" within their respective firearms, for purposes of defense in the home, and for all other lawful purposes such as target shooting and training.

30.    The Penal Code expressly considers these firearms *not* to be assault weapons by virtue of having fixed magazines.  The only feature of the firearm that

would "make" it an "assault weapon" under California law would be the insertion of a large-capacity magazine, which would be prohibited in Plaintiffs Miller and Russ's cases by Penal Code § 30515(a)(2), and in Plaintiff Peterson's case by Penal Code § 30515(a)(5).

31.    However, this Court has already adjudicated and determined that possession of so-called large-capacity magazines is protected by the Second Amendment, and has struck down enforcement of California's prohibition on the possession of said magazines.   See, *Duncan v. Becerra*, 366 F.Supp.3d 1131 (S.D. Cal. 2019), S.D. Case No. 3:17-cv-1017-BEN-JLB (ECF No. 87) (granting summary judgment in favor of plaintiffs, and granting injunctive relief from enforcement of Pen. Code § 32310).   Express and implied within this District Court's ruling was the right to *use* such magazines within otherwise legally owned firearms.

32.    Plaintiffs therefore seek declaratory and injunctive relief from enforcement of Pen. Code §§ 30600 (prohibiting manufacture, transportation), 30605 (prohibiting possession), 30800 (permitting seizure as a "nuisance"), 30910 (prohibiting sale), 30915 (prohibiting transfer by bequest/inheritance), 30945 (limiting use), and 31000 (requiring permits for use), to the extent that such prohibitions as to "assault weapons" emanate solely from the legal definition of assault weapon under sections 30515(a)(2) and 30515(a)(5).

33.     These statutes prohibiting "assault weapons" solely by virtue of their fixed magazine capacity violate Plaintiffs' right to keep and bear such firearms, as protected by the Second Amendment.  Such firearms are otherwise in ordinary and common use for lawful purposes, by citizens in California and throughout the nation; and, therefore, cannot be banned or restricted in the manner(s) described herein.

34.     To the extent that Penal Code §§ 30515(a)(2) and 30515(a)(5) seek to define "assault weapons" solely by virtue of their magazine capacity, they are void on their face.  To the extent that other enforcement provisions of the Code (sections 30600, 30605, 30800, 30910, 30915, 30945, and 31000) prevent Plaintiffs, and others similarly situated, from exercising their right to keep and bear such firearms in common use, they are subject to challenge as they are or would be applied to them.

WHEREFORE, Plaintiffs seek declaratory and injunctive relief as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.     For declaratory relief adudging that the definition of "assault weapon" pursuant to Pen. Code § 30515(a)(2) and (a)(5) is unconstitutional on its face, and

1  violates the Second Amendment;

2      2.      For an order permanently enjoining Defendants, their officers, agents,
3
4  servants, employees, and all persons in active concert or participation with them
5
6  who receive actual notice of the injunction, from enforcement or application of
7  Pen. Code §§ 30600, 30605, 30800, 30910, 30915, 30945, and 31000, against
8
9  Plaintiffs on an as-applied basis, and against all others, to the extent that such
10 prohibitions as to "assault weapons" emanate solely from the legal definition of
11 assault weapon under sections 30515(a)(2) and 30515(a)(5);

12     3.      For costs of suit, including attorneys' fees and costs under
13
14 42 U.S.C. § 1988 and any other applicable law; and

15     4.      For any and all further relief to which Plaintiffs may be justly entitled.

16

17

18 August 15, 2019                **GATZKE DILLON & BALANCE LLP**

19

20                               /s John W. Dillon
                                 John W. Dillon
21
22 August 15, 2019                **SEILER EPSTEIN LLP**

23

24                               /s George M. Lee
                                 George M. Lee
25
26                               Attorneys for Plaintiffs

27

28