1  John W. Dillon (SBN 296788)
2  jdillon@gdandb.com
   **GATZKE DILLON & BALLANCE LLP**
3  2762 Gateway Road
4  Carlsbad, California 92009
   Phone: (760) 431-9501
5  Fax: (760) 431-9512

6
7  George M. Lee (SBN 172982)
   gml@seilerepstein.com
8  **SEILER EPSTEIN LLP**
   275 Battery Street, Suite 1600
9  San Francisco, California 94111
10 Phone: (415) 979-0500
   Fax: (415) 979-0511
11

12 Attorneys for Plaintiffs

13             UNITED STATES DISTRICT COURT
14       FOR THE SOUTHERN DISTRICT OF CALIFORNIA

15 JAMES MILLER; PATRICK RUSS,          Case No. 3:19-cv-01537-BEN-JLB
16 WENDY HAUFFEN; NEIL
   RUTHERFORD; ADRIAN SEVILLA;          **FIRST AMENDED COMPLAINT**
17 RYAN PETERSON; GUNFIGHTER            **FOR DECLARATORY AND**
18 TACTICAL, LLC; JOHN PHILLIPS;        **INJUNCTIVE RELIEF**
   PWGG, L.P.; SAN DIEGO COUNTY
19 GUN OWNERS PAC; CALIFORNIA
20 GUN RIGHTS FOUNDATION;
   SECOND AMENDMENT
21 FOUNDATION; and FIREARMS
   POLICY COALITION, INC.,
22
                        Plaintiffs,
23
24        vs.

25 CALIFORNIA ATTORNEY GENERAL
   XAVIER BECERRA; and DOJ
26 BUREAU OF FIREARMS DIRECTOR
   BRENT ORICK,
27
                        Defendants.
28

## **COMPLAINT**

COME NOW the Plaintiffs, James Miller, Patrick Russ, Wendy Hauffen, Neil Rutherford, Adrian Sevilla, Ryan Peterson, Gunfighter Tactical, LLC ("Gunfighter Tactical"), John Phillips, PWGG, L.P. ("PWG"), San Diego County Gun Owners Political Action Committee ("SDCGO"), California Gun Rights Foundation ("CGF"), Second Amendment Foundation ("SAF"), and Firearms Policy Coalition, Inc. ("FPC") ("Plaintiffs"), by and through their undersigned counsel, and complain of Defendants as follows:

### **THE PARTIES**

1.     Plaintiff James Miller is a natural person, a resident of the County of San Diego, California, and is not legally prohibited from possessing firearms. Mr. Miller holds an active license to carry a concealed weapon ("CCW") issued by his county sheriff under California Penal Code[1] § 26150, et seq., after proving "good cause" and "good moral character" to that licensing authority, successfully completing a course of training on the law and firearms proficiency, passing an extensive Live Scan-based Department of Justice background check, and placement into the "Rap Back" system for monitoring law enforcement contact, arrests, and criminal convictions. Plaintiff Miller is a member and Board Member

_____

[1] All further references to statutes are to the California Penal Code unless otherwise specified.

of Plaintiff San Diego County Gun Owners PAC. Plaintiff Miller is also a member of Plaintiffs California Gun Rights Foundation, Second Amendment Foundation, and Firearms Policy Coalition, Inc.

2.      Plaintiff Patrick Russ is a natural person, a resident of the County of San Diego, California, and is not legally prohibited from possessing firearms. Mr. Russ holds an active license to carry a concealed weapon ("CCW") issued by his county sheriff under Penal Code § 26150, et seq., after proving "good cause" and "good moral character" to that licensing authority, successfully completing a course of training on the law and firearms proficiency, passing an extensive Live Scan-based Department of Justice background check, and placement into the "Rap Back" system for monitoring law enforcement contact, arrests, and criminal convictions. Plaintiff Russ is a member of Plaintiff San Diego County Gun Owners PAC. Plaintiff Russ is also a member of Plaintiffs California Gun Rights Foundation, Second Amendment Foundation, and Firearms Policy Coalition, Inc.

3.      Plaintiff Wendy Hauffen is a natural person, a resident of the County of San Diego, California, and is not legally prohibited from possessing firearms. Plaintiff Hauffen is a wife, mother, and certified firearms instructor, specializing in instructing women and novice shooters in the safe and proficient use of firearms for self-defense and other lawful purposes. Plaintiff Hauffen holds an active license to carry a concealed weapon ("CCW") issued by her county sheriff under Penal

Code § 26150, et seq., after proving "good cause" and "good moral character" to that licensing authority, successfully completing a course of training on the law and firearms proficiency, passing an extensive Live Scan-based Department of Justice background check, and placement into the "Rap Back" system for monitoring law enforcement contact, arrests, and criminal convictions. Plaintiff Hauffen is a member of Plaintiff San Diego County Gun Owners PAC. Plaintiff Hauffen is also a member of Plaintiffs California Gun Rights Foundation, Second Amendment Foundation, and Firearms Policy Coalition, Inc.

4.     Plaintiff Neil Rutherford is a natural person, a resident of the County of San Diego, California, and is not legally prohibited from possessing firearms. Plaintiff Rutherford is a member of Plaintiff San Diego County Gun Owners PAC. Plaintiff Rutherford is also a member of Plaintiffs California Gun Rights Foundation, Second Amendment Foundation, and Firearms Policy Coalition, Inc.

5.     Plaintiff Adrian Sevilla is a natural person, a resident of the County of San Diego, California, and is not legally prohibited from possessing firearms. Plaintiff Sevilla is a member of Plaintiff San Diego County Gun Owners PAC. Plaintiff Sevilla is also a member of Plaintiffs California Gun Rights Foundation, Second Amendment Foundation, and Firearms Policy Coalition, Inc.

6.     Plaintiff Ryan Peterson is a natural person, a resident of the County of San Diego, California, and is not legally prohibited from possessing firearms.

Plaintiff Peterson is the owner-manager of Plaintiff Gunfighter Tactical, LLC ("Gunfighter Tactical"), the proprietor of the business, and the individual licensee associated with the dealership, including by and through the Defendants and their Bureau of Firearms. Plaintiff Peterson holds an active license to carry a concealed weapon ("CCW") issued by his county sheriff under Penal Code § 26150, et seq., after proving "good cause" and "good moral character" to that licensing authority, successfully completing a course of training on the law and firearms proficiency, passing an extensive Live Scan-based Department of Justice background check, and placement into the "Rap Back" system for monitoring law enforcement contact, arrests, and criminal convictions. Plaintiff Peterson is a member and Board Member of Plaintiff San Diego County Gun Owners PAC. Plaintiff Peterson is also a member of Plaintiffs California Gun Rights Foundation, Second Amendment Foundation, and Firearms Policy Coalition, Inc.

7.     Plaintiff Gunfighter Tactical, LLC ("Gunfighter Tactical") is a California limited liability corporation doing business as "Gunfighter Tactical." Gunfighter Tactical is a federally and state-licensed firearms retailer in San Diego, California. Plaintiff Gunfighter Tactical is a Federal Firearms Licensee ("FFL") and firearms dealer in the Department's Centralized List of Firearms Dealers. Plaintiff Gunfighter Tactical is a member of Plaintiff San Diego County Gun Owners PAC. Plaintiff Gunfighter Tactical is also a member of Plaintiffs California

Gun Rights Foundation, Second Amendment Foundation, and Firearms Policy Coalition, Inc.

8.     Plaintiff John Phillips is a natural person, a resident of the County of San Diego, California, and is not legally prohibited from possessing firearms. Plaintiff Phillips is the President of Plaintiff PWGG, L.P. ("PWG"), a proprietor of the business, and the individual licensee associated with the dealership and range facility, including by and through the Defendants and their Bureau of Firearms. Plaintiff Phillips holds an active license to carry a concealed weapon ("CCW") issued by his county sheriff, after proving "good cause" and "good moral character" to his licensing authority, successfully completing a course of training on the law and firearms proficiency, and passing an extensive Live Scan-based background check and placement into the State's system for monitoring law enforcement contact, arrests, and criminal convictions ("Rap Back"). Mr. Phillips is a member of Plaintiff San Diego County Gun Owners PAC. Plaintiff Phillips is also a member of Plaintiffs California Gun Rights Foundation, Second Amendment Foundation, and Firearms Policy Coalition, Inc.

9.     Plaintiff PWGG, L.P. ("PWG") is a California limited partnership doing business as "Poway Weapons & Gear" and "PWG Range." Plaintiff PWG is a licensed firearms retailer and range in Poway, California. Plaintiff PWG is a Federal Firearms Licensee ("FFL") and firearms dealer in the Department's

Centralized List of Firearms Dealers. Plaintiff PWG is a member of Plaintiff San Diego County Gun Owners PAC. Plaintiff PWG is also a member of Plaintiffs California Gun Rights Foundation, Second Amendment Foundation, and Firearms Policy Coalition, Inc.

10.    Plaintiff San Diego County Gun Owners PAC ("SDCGO") is a political organization whose purpose is to protect and advance the Second Amendment rights of residents of San Diego County, California, through their efforts to support and elect local and state representatives who support the Second Amendment right to keep and bear arms. SDCGO's membership and donors consist of Second Amendment supporters, people who own guns for self-defense and sport, firearms dealers, shooting ranges, and elected officials who want to restore and protect the right to keep and bear arms in California. The interests that SDCGO seeks to protect in this lawsuit are germane to the organization's purposes, and, therefore, SDCGO sues on its own behalf, and on behalf of its members, including individual Plaintiffs herein.

11.    Plaintiff California Gun Rights Foundation ("CGF") is a non-profit foundation incorporated under the laws of California with its principal place of business in Sacramento, California. CGF serves its members, supporters, and the public through educational, cultural, and judicial efforts to defend and advance Second Amendment and related rights. CGF has tens of thousands of members and

supporters in California, including individual Plaintiffs herein. The interpretation and enforcement of the Second Amendment directly impacts CGF's organizational interests, as well as the rights of CGF's members and supporters. CGF brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public. The laws, policies, practices, and customs challenged in this case, and Defendants' actions and failures alleged herein, have caused CGF to dedicate resources that would otherwise be available for other purposes to protect the rights and property of its members, supporters, and the general public, including by and through this action. CGF's members and supporters have been adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein. CGF has expended and diverted resources because of the State of California's laws and Defendants' policies, practices, and customs on "large-capacity" magazines and "assault weapons," including by funding or otherwise supporting civil and criminal matters involving those issues on behalf of its members and members of the public.

12.    Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a non-profit organization incorporated under the laws of Delaware with its principal place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights—especially the fundamental, individual Second

Amendment right to keep and bear arms—advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC strongly opposed the legislation (including Senate Bill 1446; Senate Bill 880; and Assembly Bill 1135 (2015 – 2016 Reg. Sess.)) and ballot initiative (Proposition 63, enacted Nov. 9, 2016) that enacted or led to enactment of the current statutory and regulatory scheme challenged herein. FPC's members reside both within and outside the State of California, including San Diego County, California. FPC represents its members and supporters—who include gun owners, prospective gun owners, licensed California firearm retailers, and others—and brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public. FPC's members and supporters have been adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein. FPC has expended and diverted resources because of the State of California's laws and Defendants' policies, practices, and customs on "large-capacity" magazines and "assault weapons," including by funding or otherwise supporting civil and criminal matters involving those issues on behalf of its members and members of the public.

13.    Plaintiff Second Amendment Foundation ("SAF") is a non-profit

educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through educational and legal action programs. SAF has over 650,000 members and supporters nationwide, including thousands of members in California. The Court's interpretation of the Second Amendment directly impacts SAF's organizational interests, as well as the rights of SAF's members and supporters in California, including individual Plaintiffs herein. SAF brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public. The laws, policies, practices, and customs challenged in this case, and Defendants' actions and failures alleged herein, have caused SAF to dedicate resources—including for this action—that would otherwise be available for other purposes to protect the rights and property of its members, supporters, and the general public.

14.     As to all claims made in a representative capacity herein, there are common questions of law and fact that substantially affect the rights, duties, and liabilities of many similarly situated California residents and visitors who knowingly or unknowingly are subject to the California statutes, regulations, policies, practices, and customs in question. The relief sought in this action is declaratory and injunctive in nature, and the action involves matters of substantial public interest. Considerations of necessity, convenience, and justice justify relief

to individual and institutional Plaintiffs in a representative capacity. Further, to the extent it becomes necessary or appropriate, the institutional Plaintiffs are uniquely able to communicate with and provide notice to their thousands of California members and constituents who are or would be party to any identifiable class of individuals for whose benefit this Court may grant such relief.

15.    Defendant Xavier Becerra is the Attorney General of the State of California, and is sued herein in his official capacity. Under Article 5, § 13 of the California Constitution, Attorney General Becerra is the "chief law officer of the State," with a duty "to see that the laws of the state are uniformly and adequately enforced." Defendant Becerra is the head of the California Department of Justice ("DOJ"). The DOJ and its Bureau of Firearms ("Bureau") regulate and enforce state law related to the sales, transfer, possession, and ownership of firearms. As head of the DOJ, Defendant Becerra is responsible for the creation, implementation, execution, and administration of the laws, regulations, customs, practices, and policies of the DOJ. He is presently enforcing the laws, regulations, customs, practices, and policies complained of in this action. The Attorney General and DOJ maintain an office in San Diego, California.

16.    Defendant Brent E. Orick is the Interim Director of the DOJ's Bureau of Firearms. On information and belief, Defendant Orick reports to Attorney General Becerra, and is responsible for the various operations of the Bureau of

Firearms, including the implementation and enforcement of the statutes, regulations, and policies regarding weapons, including firearms and magazines. As head of the Bureau, Defendant Orick is responsible for the creation, implementation, execution, and administration of the laws, regulations, customs, practices, and policies of the DOJ. He is presently enforcing the laws, regulations, customs, practices, and policies complained of in this action. Defendant Orick is sued in his official capacity.

## JURISDICTION AND VENUE

17.    This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§ 1983, 1988, as this action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California, of the rights, privileges or immunities secured by the United States Constitution.

18.    Venue is proper under 28 U.S.C. § 1391(b), as the events giving rise to Plaintiffs' causes of action arose or exist in this district in which the action is brought. Venue is also proper under 28 U.S.C. § 1391, as the venue rules of this State specifically would permit this action to be filed in San Diego, since the Attorney General and California Department of Justice maintain an office within this Division; Cal. Code of Civ. Pro. § 401(1).

## STATEMENT OF FACTS

19.    The State of California's numerous and notorious firearms statutes and regulations, and Defendants' policies, practices, and customs, prevent (on pain of severe criminal penalty), *inter alia*, the sale, acquisition, keeping, transfer, possession, bearing, transport, inheritance, and other constitutionally protected conduct of constitutionally protected firearms that are in "common use for lawful purposes" and are not both "dangerous and unusual" by individuals who are not otherwise prohibited from acquiring or possessing firearms.

20.    This is a straight-forward constitutional challenge to one aspect of the State's many laws and Defendants' various practices that infringe on the fundamental, individual right to keep and bear arms enshrined in the Constitution's Second Amendment, and corollary rights.

21.    In fact, some of these statutes and regulations define and prohibit certain firearms as "assault weapons" solely because they feature "large-capacity" magazines (those capable of holding more than ten rounds of ammunition) as defined by Pen. Code § 16740 and regulated under the now-enjoined Penal Code § 32310. *Duncan v. Becerra*, Case No. 3:17-cv-1017-BEN-JLB (ECF No. 87).

22.    This Court already held the State's prohibition on "large-capacity" magazines unconstitutional, and enjoined the enforcement of the provisions of the Penal Code that would have prohibited their possession. Both implicit and explicit

in this Court's ruling was the ability to *use* such lawfully possessed magazines in otherwise lawfully possessed firearms. Thus, the ban on certain firearms based on their compatibility with such magazines must also be invalid.

23.    Plaintiffs, who are all legally eligible to acquire and possess firearms, seek declaratory and injunctive relief on behalf of themselves and similarly situated persons[2] so that they may engage in normal, peaceable, commonplace, and constitutionally protected conduct with normal, commonplace, constitutionally protected arms in the State of California.

24.    The Second Amendment to the United States Constitution states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

25.    The Second Amendment protects the people's fundamental, individual right to keep and bear—and thus to acquire, possess, transport, and use—arms for lawful purposes, including but not limited to self-defense.

26.    The Second Amendment "guarantee[s] the individual right to possess and carry" arms, including those at issue in this case, and "elevates above all other interests the right of law-abiding responsible citizens to use arms in defense of

---

[2] For the purposes of this Complaint, the term "person" means a natural person, organization, corporation, limited liability company, partnership, unincorporated association, and any other similar entity. *See, e.g.*, Cal. Penal Code Prelim. Prov. 7 ("[T]he word 'person' includes a corporation as well as a natural person…").

hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

*California's Regulatory Scheme*

27.　For the purposes of California law and this complaint, "[u]se of the term 'assault weapon' is governed by Sections 30510 and 30515." Penal Code § 16200.

28.　Through their regulations, Defendants maintain and enforce additional definitions at Title 11, California Code of Regulations § 5471. Title 11, California Code of Regulations § 5460 applies the additional definitions (at § 5471) to Penal Code § 30515.

29.　The term "assault weapon" is a politically concocted, pejorative term designed to place more and more constitutionally protected arms inside the Legislature's mercurial definitions of banned arms—and outside the reach of normal, law-abiding Americans. The very term, and the State's enforcement of it, violates the fundamental, individual Second Amendment right to keep and bear arms.

30.　To be sure, so-called "assault weapons" are merely typical semi-automatic[3] firearms that are not *both* dangerous and unusual, but conversely, *are in*

---

[3] A "semiautomatic" firearm is "a firearm functionally able to fire a single cartridge, eject the empty case, and reload the chamber each time the trigger is pulled and released." 11 C.C.R. § 5471(hh). In other words, the self-loading, magazine-fed firearms at issue in this case are not "automatic" (*i.e.*, machineguns),

*common use for lawful purposes.*

31.     Penal Code §§ 30515(a), (b) (definitions), 30600 (prohibiting manufacture, transportation), 30605 (prohibiting possession), 30800 (permitting seizure as a "nuisance"), 30910 (prohibiting sale), 30915 (prohibiting transfer by bequest/inheritance), 30925 (new resident importation), 30945 (limiting use), 30950 (prohibiting possession for non-prohibited people under 18), 31000 (requiring permits for use), and 31005 (restricting permits to make or sell); Title 11, California Code of Regulations § 5471 (additional definitions) and § 5460 (applying definitions at § 5471 to Penal Code § 30515); and Defendants' policies, practices, customs, and enforcement of these laws individually and collectively prevent normal, non-prohibited adults from acquiring, possessing, transporting, and using the proscribed arms, and violate the Second Amendment to the United States Constitution.

32.     Pen. Code § 30515(a) states:

> (a) Notwithstanding Section 30510, "assault weapon" also means any of the following:
>> (1) A semiautomatic, centerfire rifle that does not have a fixed magazine but has any one of the following:
>>> (A)    A    pistol    grip    that    protrudes

---

but those where "each pull of the trigger results in a complete firing cycle from firing through loading. It is necessary that the trigger be released and pulled for each firing cycle." *Glossary*, SPORTING ARMS AND AMMUNITION MANUFACTURERS' INSTITUTE, https://saami.org/saami-glossary/.

conspicuously beneath the action of the weapon.

(B) A thumbhole stock.

(C) A folding or telescoping stock.

(D) A grenade launcher or flare launcher.

(E) A flash suppressor.

(F) A forward pistol grip.

(2) A semiautomatic, centerfire rifle that has a fixed magazine with the capacity to accept more than 10 rounds.

(3) A semiautomatic, centerfire rifle that has an overall length of less than 30 inches.

(4) A semiautomatic pistol that does not have a fixed magazine but has any one of the following:

(A) A threaded barrel, capable of accepting a flash suppressor, forward handgrip, or silencer.

(B) A second handgrip.

(C) A shroud that is attached to, or partially or completely encircles, the barrel that allows the bearer to fire the weapon without burning the bearer's hand, except a slide that encloses the barrel.

(D) The capacity to accept a detachable magazine at some location outside of the pistol grip.

(5) A semiautomatic pistol with a fixed magazine that has the capacity to accept more than 10 rounds.

(6) A semiautomatic shotgun that has both of the following:

(A) A folding or telescoping stock.

(B) A pistol grip that protrudes

conspicuously beneath the action of the weapon, thumbhole stock, or vertical handgrip.

(7) A semiautomatic shotgun that has the ability to accept a detachable magazine.

(8) Any shotgun with a revolving cylinder.

33.     Pen. Code § 30515(b) states:

For purposes of this section, "fixed magazine" means an ammunition feeding device contained in, or permanently attached to, a firearm in such a manner that the device cannot be removed without disassembly of the firearm action.

34.     In California, virtually "[a]ny person who . . . manufactures or causes to be manufactured, distributes, transports, or imports into the state, keeps for sale, or offers or exposes for sale, or who gives or lends any assault weapon" is "guilty of a felony, and upon conviction shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for four, six, or eight years." Penal Code § 30600.

35.     And, generally, "[a]ny person who, within this state, possesses any assault weapon, except as provided in this chapter, shall be punished by imprisonment in a county jail for a period not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170." Penal Code § 30605.

36.     Moreover, in spite of other statutes, "any person who commits another crime while violating this article may receive an additional, consecutive punishment of one year for violating this article, in addition and consecutive to the

punishment, including enhancements, which is prescribed for the other crime." Penal Code § 30615. In other words, someone who possesses a proscribed weapon while committing even a minor, non-violent crime could be additionally and consecutively punished.

37.     While the Penal Code provides limited exceptions[4] to the State's otherwise total and confiscatory ban on protected conduct and arms—*e.g.*, acquisition, possession, and transportation—none of them apply to Plaintiffs, Plaintiffs' current weapons, and the arms Plaintiffs wish to have, acquire, possess, and lawfully use.[5]

38.     But the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

39.     And the Second Amendment protects "arms . . . of the kind in common use . . . for lawful purposes like"—but not limited to—"self-defense." *Id.* at 624. Indeed, it protects the very category of arms that Plaintiffs herein seek to

---

[4] *See generally* Penal Code §§ 30605(b), 30625, 30630, 30635, 30640, 30645, 30650, 30655, 30660, 30665, 30670, 30675, 30680, or 30680. [Due to the passage of both SB 880 (2016) and AB 1135 (2016), discussed *infra*, there are two "live" versions of § 30680 enacted, enrolled, and published.]

[5] While *some* exceptions may apply to *some* FFL dealer Plaintiffs in *some* circumstances – such as sale to law enforcement by a dealer with all of the required permits and licenses – *none* of those exceptions are relevant to the parties, including the individual Plaintiffs named herein and those similarly situated adults,

acquire, possess, and use for lawful purposes, including but not limited to self-defense in the home.

40.     As the Supreme Court announced in *Heller*, "[s]ome have made the argument, bordering on the frivolous, that only those arms in existence in the 18th century are protected by the Second Amendment." But "we do not interpret constitutional rights that way. Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, *prima facie*, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id.* at 582 (internal citations omitted) (emphasis in original).

41.     And "it is clear that the Framers and ratifiers of the Fourteenth Amendment counted the right to keep and bear arms among those *fundamental* rights necessary to our system of ordered liberty." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010) (emphasis added).

42.     The firearms at issue in this case are the sorts of bearable arms in common use for lawful purposes that law-abiding people possess at home by the millions. And they are, moreover, exactly what they would bring to service in *e.g.* militia duty, repelling violent mobs (*i.e.*, the Korean shopkeepers defending lives during the Los Angeles Riots in 1992), etc., should such be necessary.

and the relief this case seeks.

43.     The magazines at issue in this case are the sorts of bearable arms in common use for lawful purposes that law-abiding people possess at home by the millions. *Duncan v. Becerra*, *supra*, (ECF No. 87). And they are, moreover, exactly what they would bring to service in *e.g.* militia duty, repelling violent mobs (*i.e.*, the Korean shopkeepers defending lives during the Los Angeles Riots in 1992, etc., should such be necessary. To be sure, they too are in common use in virtually every state of the Union.

44.     Indeed, the California Department of Justice itself estimated that there were as many as 250,000 gun owners with "Bullet Button Assault Weapons," possessing as many as 1.5 million such firearms[6]—the vast majority of which are AR-15 style rifles—in California alone.

45.     The true amount of semi-automatic firearms—the category of firearms at issue in this case—is into the millions in California alone. Nationwide, they number into the tens of millions, at least.

46.     "In *Heller*, the Supreme Court held that handguns — the vast majority of which today are semi-automatic — are constitutionally protected because they

---

[6] This estimate is merely a subset of the common variations of the firearms in question, as it does not include the estimated numbers of centerfire, semiautomatic fixed magazine rifles, "featureless" rifles, or centerfire semiautomatic pistols with fixed magazines; all of which are expressly not defined as "Bullet-Button Assault Weapons" lawfully possessed in California. However, all variations stated above,

have not traditionally been banned and are in common use by law-abiding citizens. There is no meaningful or persuasive constitutional distinction between semi-automatic handguns and semi-automatic rifles. Semi-automatic rifles, like semi-automatic handguns, have not traditionally been banned and are in common use by law-abiding citizens for self-defense in the home, hunting, and other lawful uses. Moreover, semi-automatic handguns are used in connection with violent crimes far more than semi-automatic rifles are. It follows from *Heller*'s protection of semi-automatic handguns that semi-automatic rifles are also constitutionally protected and that D.C.'s ban on them is unconstitutional." *Heller v. D.C.*, 670 F.3d 1244, 1269–70 (D.C. Cir. 2011) ("*Heller II*") (Kavanaugh, J., dissenting).

47.    Further, as the Supreme Court's *per curiam* opinion in *Caetano v. Massachusetts*, 136 S. Ct. 1027, "recognizes," *Heller*'s "dangerous and unusual" analysis is "a conjunctive test: A weapon may not be banned unless it is *both* dangerous *and* unusual." *Caetano v. Massachusetts*, 136 S. Ct. 1027, 1031 (2016) (Alito, J., concurring) (emphasis in original). Indeed, if the arms are not "unusual," then there is no "need to consider" whether the arms are also "dangerous." *Id.*

48.    Because the banned arms are so common, they are not unusual, and therefore cannot be "dangerous and unusual." Indeed, the "relative dangerousness

have some, if not all of the regulated features in question and are virtually identical in mechanical function and in their typically offered chamberings.

of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes." *Id.*

49.     While a "dangerousness" test "may be appropriate for applying statutes criminalizing assault with a dangerous weapon," "it cannot be used to identify arms that fall outside the Second Amendment." Because if an arm's relative "dangerousness" swallowed these classes of arms and set them outside of *Heller*'s protection, then "virtually every covered arm would qualify as 'dangerous.'" *Id.*

50.     Of course, the "pertinent Second Amendment inquiry is whether [the] guns are commonly possessed by law-abiding citizens for lawful purposes today." *Id.* The arms at issue here easily satisfy that inquiry. And, to the extent it matters, the arms are rarely used for unlawful purposes.

51.     While these arms may or may not be "less popular than handguns," they are without a doubt "widely owned and accepted as a legitimate means of" exercising Second Amendment rights across the country.

52.     The firearms at issue in this case are not "M-16 rifles and the like"— i.e., fully automatic firearms (i.e., machine guns).

53.     The State's statutory scheme, and Defendants' policies, practices, and customs, prohibiting "assault weapons" based on characteristic(s) cannot survive appropriate, and appropriately applied, constitutional scrutiny since it prevents

individual Plaintiffs and others like them from acquiring, selling, transferring, transporting, and using protected arms.

54.     The arms described under Penal Code §§ 30515(a) and 30515(b), and Title 11, California Code of Regulations §§ 5460 (application of definitions to § 30515) and 5471, are protected by the Second Amendment because they are in common use for lawful purposes and thus not dangerous *and* unusual.

55.     Penal Code § 30600, 30605, 30800, 30910, 30915, 30925, 30945, 30950, 31000, and 31005, Title 11, California Code of Regulations §§ 5460 and 5471, and Defendants' policies, practices, and customs, prohibit and criminalize normal, law-abiding people from acquiring, keeping, bearing, transporting, and using for lawful purposes protected arms, and violate the Second Amendment.

*Plaintiff James Miller*

56.     Plaintiff Miller is the lawful owner of a semi-automatic, centerfire rifle that has one or more of the characteristics listed in Penal Code § 30515(a)(1), but it is not a so-called "assault weapon" under California law because it has a "fixed magazine."[7]

57.     Plaintiff Miller further has legally acquired and currently possesses

_____

[7] For purposes of this Complaint and the laws at issue herein, "fixed magazine" means "an ammunition feeding device contained in, or permanently attached to, a firearm in such a manner that the device cannot be removed without disassembly of

so-called "large-capacity" magazines, as that term is defined by Cal. Pen. Code § 16740 and regulated under the now-enjoined Cal. Penal Code § 32310.

58.    Some of Plaintiff Miller's so-called "large-capacity" magazines are compatible with his "fixed magazine" firearm. Accordingly, Plaintiff Miller wishes to exercise his rights guaranteed by the Second Amendment to keep and bear arms by using his "large-capacity" magazine(s) in and with his "fixed magazine" rifle, and would, but for the State's laws and fear of arrest, prosecution, and loss of property and liberty under Defendants' policies, practices, and customs.

59.    Plaintiff Miller would also acquire a new semi-automatic, centerfire rifle from Plaintiffs John Phillips and PWG that does not have a fixed magazine but has one or more of the features listed in Penal Code § 30515(a)(1), having an overall length of less than 30" but more than 26", but for the State's laws, Defendants' FFL dealer enforcement practices, and fear of arrest, prosecution, and loss of property and liberty under Defendants' policies, practices, and customs.

*Plaintiff Patrick Russ*

60.    Plaintiff Russ is the lawful owner of a semi-automatic, centerfire rifle that has one or more of the characteristics listed in Penal Code § 30515(a)(1). But it is not an "assault weapon" under California law because it has a "fixed magazine."

---

the firearm action." Penal Code § 30515(b). (Compare with 11 C.C.R. § 5471(m) (definition of "detachable magazine").)

---

61.    Plaintiff Russ has legally acquired and currently possesses so-called "large-capacity" magazines, as that term is defined by Cal. Pen. Code § 16740 and regulated under the now-enjoined Cal. Penal Code § 32310.

62.    Some of Plaintiff Russ's so-called "large-capacity" magazines are compatible with his "fixed magazine" firearm. Accordingly, Plaintiff Russ wishes to exercise his rights guaranteed by the Second Amendment to keep and bear arms by using his "large-capacity" magazine(s) in and with his "fixed magazine" rifle, and would, but for the State's statutes and fear of arrest, prosecution, and loss of property and liberty under Defendants' policies, practices, and customs.

63.    Plaintiff Russ would also acquire a new semi-automatic, centerfire rifle from Plaintiffs Ryan Peterson and Gunfighter Tactical that does not have a fixed magazine but has one or more of the features listed in Penal Code § 30515(a)(1), having an overall length of less than 30" but more than 26", but for the State's laws, Defendants' FFL dealer enforcement practices, and fear of arrest, prosecution, and loss of property and liberty under Defendants' policies, practices, and customs.

*Plaintiff Wendy Hauffen*

64.    Plaintiff Hauffen is the lawful owner of a registered semi-automatic, centerfire rifle that currently has none of the characteristics listed in Penal Code § 30515(a)(1), has no fixed magazine, and has an overall length of at least 30

inches (i.e., a so-called "featureless"[8] rifle, thus *not* an assault weapon under California law). Plaintiff Hauffen desires to add to that firearm one or more of the features described by Penal Code § 30515(a)(1), such as a flash hider, pistol grip, or collapsible stock, and reconfigure it to an overall length of at least 26" but less than 30", to reform such firearm into a standard configuration that is in common use for lawful purposes throughout the United States but not dangerous *and* unusual, and would but for the State's laws and fear of arrest, prosecution, and loss of property and liberty under Defendants' policies, practices, and customs.

65.    Plaintiff Hauffen would acquire from Plaintiffs John Phillips and PWG, possess, transport, and use for lawful purposes a semi-automatic, centerfire rifle that does not have a fixed magazine but has one or more of the features listed in Penal Code § 30515(a)(1), having an overall length of less than 30" but at least than 26", but for the State's laws and fear of arrest, prosecution, and loss of property and liberty under Defendants' policies, practices, and customs.

66.    Plaintiff Hauffen would acquire from Plaintiffs John Phillips and PWG, possess, transport, and use for lawful purposes a semi-automatic pistol that does not have a fixed magazine but has one or more of the features listed in Penal Code § 30515(a)(4) but for the State's laws and fear of arrest, prosecution, and loss

---

8 See also 11 C.C.R. § 5471(o) (defining a "featureless" firearm as "a semiautomatic firearm (rifle, pistol, or shotgun) lacking the characteristics

of property and liberty under Defendants' policies, practices, and customs.

*Plaintiff Neil Rutherford*

67.     Plaintiff Rutherford desires to acquire from Plaintiffs John Phillips and PWG, possess, transport, and use for lawful purposes: (1) A semi-automatic, centerfire rife with one or more characteristics listed in Penal Code § 30515(a)(1), with an overall length of less than 30 inches but at least 26 inches; (2) A semi-automatic pistol that does not have a fixed magazine but has one or more characteristics listed in Penal Code § 30515(a)(4); (3) A semi-automatic shotgun that has the characteristics listed in Penal Code § 30515(a)(6); and, (4) A semi-automatic shotgun that has the ability to accept a detachable magazine; and would but for the State's laws and fear of arrest, prosecution, and loss of property and liberty under Defendants' policies, practices, and customs.

*Plaintiff Adrian Sevilla*

68.     Plaintiff Sevilla does not currently own a firearm, but desires to acquire from Plaintiffs John Phillips and PWG, possess, transport, and use for lawful purposes: (1) A semi-automatic, centerfire rife with one or more characteristics listed in Penal Code § 30515(a)(1), with an overall length of at least 26 inches; (2) A semi-automatic pistol that does not have a fixed magazine but has one or more characteristics listed in Penal Code § 30515(a)(4); (3) A

_____

associated with that weapon, as listed in Penal Code section 30515.").

semi-automatic shotgun that has the characteristics listed in Penal Code § 30515(a)(6); and (4) A semi-automatic shotgun that has the ability to accept a detachable magazine; and would but for the State's laws and fear of arrest, prosecution, and loss of property and liberty under Defendants' policies, practices, and customs.

*Plaintiff Ryan Peterson*

69.     Plaintiff Peterson, the owner-manager of Plaintiff Gunfighter Tactical, is a Federal Firearms Licensee ("FFL") and firearms dealer in the Department's Centralized List of Firearms Dealers. Plaintiff Peterson would like to purchase, sell, and transfer firearms in common use for lawful purposes—commonly sold for lawful purposes in other parts of the country, which contain some or all of the features described by Penal Code § 30515(a)—to normal, non-prohibited adults through his FFL dealership, Plaintiff Gunfighter Tactical, and would but for the State's laws, and Defendants' policies, practices, customs, and enforcement of same.

70.     Plaintiff Peterson cannot acquire a permit under Penal Code § 31005 and use it to sell to normal, law-abiding people due to the State's laws and Defendants' policies, practices, and customs, because he desires to acquire and sell firearms to normal, law-abiding people who are not exempt, such as law enforcement officers, government agencies, military agencies, or governments,

under the laws of the State.

71.   Plaintiff Peterson would, through his licensed dealership Plaintiff Gunfighter Tactical, acquire and sell firearms described under Penal Code § 30515(a) but for the State's laws and fear of loss of his licenses, arrest, prosecution, and loss of property and liberty under Defendants' policies, practices, and customs.

72.   Plaintiff Peterson is the also lawful owner of a semi-automatic pistol that is *not* currently an "assault weapon" under California law because it has a "fixed magazine". Plaintiff Peterson is also the lawful owner of a registered semi-automatic, centerfire rifle which is *not* an assault weapon under California law, but is a "featureless" rifle lacking the characteristics described in Penal Code section 30515(a)(1).

73.   Plaintiff Peterson further has legally acquired and currently possesses so-called "large-capacity magazines," as that term is defined by Penal Code § 16740 and regulated under the now-enjoined Penal Code § 32310.

74.   Some of Plaintiff Peterson's so-called "large-capacity" magazines are compatible with his "fixed magazine" firearms. Accordingly, Plaintiff Peterson wishes to exercise his rights guaranteed by the Second Amendment to keep and bear arms by using his "large-capacity" magazine(s) in and with his "fixed magazine" ("featureless") firearms, and would, but for the State's laws and fear of

arrest, prosecution, and loss of property and liberty under Defendants' policies, practices, and customs.

75.   Plaintiff Peterson would also acquire a new semi-automatic, centerfire rifle from his dealership, Plaintiff Gunfighter Tactical, that does not have a fixed magazine but has one or more of the features listed in Penal Code § 30515(a)(1), having an overall length of at least 26", but for the State's laws, Defendants' FFL dealer enforcement practices, and fear of arrest, prosecution, and loss of property and liberty under Defendants' policies, practices, and customs.

*Plaintiff Gunfighter Tactical*

76.   Plaintiff Gunfighter Tactical is a firearms retailer licensed under federal, state, and local laws.

77.   Plaintiff Gunfighter Tactical would like to sell and purchase standard, off-the-shelf firearms, commonly sold for lawful purposes in other parts of the country, which contain some or all of the features described by Penal Code § 30515(a), to normal, non-prohibited adults, but is prevented by California's "assault weapon" laws and Defendants policies, practices, and customs from doing so.

78.   Plaintiff Gun Fighter Tactical would acquire and sell the firearms described under Penal Code § 30515(a) but for the State's laws and fear of loss of licenses, arrest, prosecution, and loss of property and liberty under Defendants'

policies, practices, and customs.

*Plaintiff John Phillips*

79.     Plaintiff John Phillips is a Federal Firearms Licensee ("FFL") and firearms dealer in the Department's Centralized List of Firearms Dealers.

80.     Plaintiff Phillips would like to purchase, sell, and transfer firearms in common use for lawful purposes—commonly sold for lawful purposes in other parts of the country, which contain some or all of the features described by Penal Code § 30515(a)—to normal, non-prohibited adults through his FFL dealership, Plaintiff PWG, and would but for the State's laws, and Defendants' policies, practices, customs, and enforcement of same.

81.     Plaintiff Phillips and his dealership, Plaintiff PWG, currently hold a "special weapons permit" issued and maintained by the Defendants through the Department's Bureau of Firearms. This permit allows Plaintiffs Phillips and his dealership, Plaintiff PWG, to acquire and sell otherwise prohibited so-called "assault weapons" to select exempted recipients. But the permit does not allow Plaintiffs Phillips and his dealership, Plaintiff PWG to acquire, sell, transfer, or rent so-called "assault weapons" to non-exempt agencies or individuals, such as the other Individual Plaintiffs herein, the Institutional Plaintiffs and their members, and the majority of their law-abiding customers (and, indeed, the majority of people), or even to out-of-state FFLs for the purpose of their lawful sale or transfer to

law-abiding persons.

82.    Plaintiff Phillips would, through his licensed dealership Plaintiff PWG, acquire and sell the firearms described under Penal Code § 30515(a) but for the State's laws and fear of loss of his licenses, arrest, prosecution, and loss of property and liberty under Defendants' policies, practices, and customs. In addition to violating his and his customers' Second Amendment rights, the State's laws and Defendants thus further infringe on his economic liberties, causing him financial damages because he cannot acquire and transfer to lawful persons arms that are protected by the Second Amendment.

*Plaintiff PWG*

83.    Plaintiff PWG is a firearms retailer and shooting range licensed under federal, state, and local laws.

84.    Plaintiff PWG's range facility is rated to accept fire for arms up to .50BMG.

85.    Plaintiff PWG currently holds a "special weapons permit" issued and maintained by the Defendants through the Department's Bureau of Firearms. This allows Plaintiffs Phillips and his dealership, Plaintiff PWG, to sell otherwise prohibited so-called "assault weapons" to select exempted recipients. But the permit does not allow Plaintiffs Phillips and his dealership, Plaintiff PWG to sell, transfer, or rent so-called "assault weapons" to non-exempt agencies or individuals,

such as the other individual Plaintiffs herein, the Institutional Plaintiffs and their members, and the majority of their law-abiding customers (and, indeed, the majority of people).

86.     Plaintiff PWG would acquire, sell, and rent for training and proficiency practice the firearms described under Penal Code §§ 30515(a) but for the State's laws and fear of loss of licenses, arrest, prosecution, and loss of property and liberty under Defendants' policies, practices, and customs. In addition to violating Plaintiff PWG's and its customers' Second Amendment rights, the State's laws and Defendants thus further infringe on its economic liberties, causing it financial damages because it cannot acquire and transfer to lawful persons arms that are protected by the Second Amendment.

**DECLARATORY JUDGMENT ALLEGATIONS**

87.     There is an actual and present controversy between the parties. Plaintiffs contend that Penal Code §§ 30515(a), 30515(b), 30600, 30605, 30800, 30910, 30915, 30925, 30945, 30950, 31000, and 31005, as well as Title 11, California Code of Regulations §§ 5460 and 5471, and Defendants' policies, practices, and customs, infringe on Plaintiffs' Second Amendment rights by prohibiting Plaintiffs and other law-abiding individuals from, *inter alia*, keeping, bearing, buying, selling, transferring, possessing, transporting, or passing down to heirs so-called "assault weapons" under California law. Plaintiffs desire a judicial

declaration that Penal Code sections §§ 30515(a), 30515(b), 30600, 30605, 30800, 30910, 30915, 30925, 30945, 30950, 31000, and 31005, as well as Title 11, California Code of Regulations §§ 5460 and 5471, and Defendants' policies, practices, and customs, violate Plaintiffs' constitutional rights.

**INJUNCTIVE RELIEF ALLEGATIONS**

88.    Plaintiffs are presently and continuously injured by Defendants' enforcement of Penal Code §§ 30515(a), 30515(b), 30600, 30605, 30800, 30910, 30915, 30925, 30945, 30950, 31000, and 31005, as well as Title 11, California Code of Regulations §§ 5460 and 5471, insofar as those provisions violate Plaintiffs' rights under the Second Amendment and Fourteenth Amendment by prohibiting the lawful acquisition, sale, transfer, transport, use, and ownership of constitutionally protected arms, so-called "assault weapons" under California law.

89.    If not enjoined by this Court, Defendants will continue to enforce Penal Code sections §§ 30515(a), 30515(b), 30600, 30605, 30800, 30910, 30915, 30925, 30945, 30950, 31000, and 31005, as well as Title 11, California Code of Regulations §§ 5460 and 5471, in derogation of the constitutional rights of Plaintiffs and similarly situated law-abiding people. Plaintiffs have no plain, speedy, and adequate remedy at law. Except for the economic damages to Plaintiffs Phillips and his dealership Plaintiff PWG, and Plaintiff Peterson and his dealership Plaintiff Gunfighter Tactical, damages are indeterminate or unascertainable and, in

any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to California's ongoing enforcement of Penal Code §§ 30515(a), 30515(b), 30600, 30605, 30800, 30910, 30915, 30925, 30945, 30950, 31000, and 31005, and Title 11, California Code of Regulations §§ 5460 and 5471.

## FIRST CLAIM FOR RELIEF
## U.S. CONST., AMEND II, 42 U.S.C. § 1983

90.    Plaintiffs incorporate herein by reference paragraphs 1 through 89 as if fully set forth herein.

91.    Plaintiffs Miller and Russ wish to possess, transport, and use their "large-capacity" magazines in their "fixed magazine" semi-automatic, centerfire rifles for lawful purposes including but not limited to self-defense in the home, all of which is protected by the Second Amendment.

92.    Plaintiffs Miller and Russ wish to acquire new semi-automatic firearms protected by the Second Amendment that have one or more of the characteristics in Penal Code § 30515(a) and an overall length of at least 26", — which the State calls "assault weapons" — and possess, transport, and use them for lawful purposes including but not limited to self-defense in the home, all of which is protected by the Second Amendment.

93.    Plaintiff Hauffen wishes to reconfigure her semi-automatic, centerfire

rifle to include one or more of the features described by Penal Code § 30515(a)(1), such as a flash hider, pistol grip or collapsible stock, and reconfigure it to an overall length of at least 26" — an "assault weapon" — and possess, transport, and use it for lawful purposes including but not limited to self-defense in the home, all of which is protected by the Second Amendment.

94.     Plaintiff Hauffen wishes to acquire new semi-automatic firearms protected by the Second Amendment that have one or more of the characteristics in Penal Code § 30515(a), —  "assault weapons" — for lawful purposes including but not limited to self-defense in the home, all of which is protected by the Second Amendment.

95.     Plaintiff Rutherford wishes to acquire, possess, transport, and use for lawful purposes a new: (1) semi-automatic, centerfire rife with one or more characteristics listed in Penal Code § 30515(a)(1), with an overall length of less than 30 inches but at least 26 inches; (2) semi-automatic pistol that does not have a fixed magazine but has one or more characteristics listed in Penal Code § 30515(a)(4); (3) semi-automatic shotgun that has the characteristics listed in Penal Code § 30515(a)(6); and, (4) semi-automatic shotgun that has the ability to accept a detachable magazine.

96.     Plaintiff Sevilla wishes to acquire, possess, transport, and use for lawful purposes, especially self-defense in the home, a new: (1) semi-automatic,

centerfire rife with one or more characteristics listed in Penal Code § 30515(a)(1), with an overall length of less than 30 inches but at least 26 inches; (2) semi-automatic pistol that does not have a fixed magazine but has one or more characteristics listed in Penal Code § 30515(a)(4); (3) semi-automatic shotgun that has the characteristics listed in Penal Code § 30515(a)(6); and, (4) semi-automatic shotgun that has the ability to accept a detachable magazine.

97.    Plaintiff Peterson wishes to possess and use his "large-capacity" magazines in his semi-automatic firearms for lawful purposes, including but not limited to self-defense in the home, all of which is protected by the Second Amendment.

98.    Plaintiffs Peterson and Gunfighter Tactical wish to acquire and sell to normal, law-abiding adults semi-automatic firearms the State of California classifies as "assault weapons" and compatible "large capacity" firearm magazines, all of which are protected by the Second Amendment.

99.    Plaintiffs Phillips and PWG wish to acquire and sell to normal, law-abiding adults semi-automatic firearms the State of California classifies as "assault weapons" and compatible "large capacity" firearm magazines, all of which are protected by the Second Amendment.

100.   Plaintiffs San Diego County Gun Owners PAC, California Gun Rights Foundation, Second Amendment Foundation, and Firearms Policy Coalition, Inc.

have tens of thousands of members and supporters in California, including individual Plaintiffs herein. The State's violation of the Second Amendment through its interpretation and enforcement state law directly impacts Plaintiffs' organizational interests, as well as the rights of their members and supporters. The organizational Plaintiffs bring this action on behalf of themselves, their members, supporters who possess all the indicia of membership, and similarly situated members of the public. The laws, policies, practices, and customs challenged in this case, and Defendants' actions and failures alleged herein, have caused Plaintiffs San Diego County Gun Owners PAC, California Gun Rights Foundation, Second Amendment Foundation, and Firearms Policy Coalition, Inc. to dedicate resources that would otherwise be available for other purposes to protect the rights and property of their members, supporters, and the general public, including by and through this action. San Diego County Gun Owners PAC, California Gun Rights Foundation, Second Amendment Foundation, and Firearms Policy Coalition, Inc. members and supporters have been adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

101. The so-called "assault weapon" firearms and "large-capacity" magazines at issue in this case are categorically protected by the Second Amendment to the United States Constitution.

102.  By maintaining and enforcing a set of laws proscribing arms whose possession and use are protected by the Second Amendment to the United States Constitution, and related protected conduct, Defendants are propagating customs, policies, and practices that violate the Constitution, facially and as applied against the Plaintiffs in the action, and injuring Plaintiffs in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and temporary and permanent injunctive relief against the Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them.

103.  The State of California's laws and Defendants' policies, practices, customs, and enforcement of same, individually and collectively prohibit Plaintiffs and similarly situated persons from keeping, bearing, selling, purchasing, transferring, transporting, and engaging in lawful activities (including but not limited to training, proficiency, self-defense, and competition) with arms in common use for lawful purposes that are not dangerous *and* unusual.

104.  The State of California's laws and Defendants' policies, practices, customs, and enforcement of said laws and restrictions violate Plaintiffs' and Plaintiffs' members' right to keep and bear arms protected by the Second Amendment and incorporated against the Defendants through the Fourteenth Amendment.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1.    For declaratory relief adjudging that the definitions of "assault weapon" pursuant to Penal Code §§ 30515(a) and (b), and Title 11, California Code of Regulations §§ 5460 and 5471, are unconstitutional on their face and as applied, and violate the Second Amendment, to the extent that the State's laws and regulations operate to prohibit or prevent Plaintiffs and similarly situated persons from exercising their rights, including acquiring, keeping, bearing, transporting, transferring, and using "assault weapons" for lawful purposes;

2.    For declaratory relief adjudging that California Penal Code §§ 30600, 30605, 30800, 30910, 30915, 30925, 30945, 30950, 31000, and 31005 are unconstitutional on their face and as applied, and in violation of the Second Amendment, to the extent that the State's laws and regulations operate to prohibit or prevent Plaintiffs and similarly situated persons from exercising their rights, including acquiring, keeping, bearing, transporting, transferring, and using "assault weapons" for lawful purposes;

3.    For declaratory relief supporting an injunction, and an order temporarily and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them, who

receive actual notice of the injunction, from enforcement or application of Penal Code §§ 30515(a) and (b), 30600, 30605, 30800, 30910, 30915, 30925, 30945, 30950, 31000, and 31005, as well as Title 11, California Code of Regulations §§ 5460 and 5471, against Plaintiffs on an as-applied basis, and against all similarly situated persons;

4.     For costs of suit, including attorneys' fees and costs under 42 U.S.C. § 1988 and any other applicable law; and,

5.     For any and all further relief to which Plaintiffs may be justly entitled.

September 27, 2019                          **GATZKE DILLON & BALLANCE LLP**

                                           */s John W. Dillon*
                                           John W. Dillon

September 27, 2019                          **SEILER EPSTEIN LLP**

                                           */s George M. Lee*
                                           George M. Lee

                                           Attorneys for Plaintiffs