John W. Dillon (SBN 296788)
    jdillon@gandb.com
**GATZKE DILLON & BALLANCE LLP**
2762 Gateway Road
Carlsbad, California 92009
Phone: (760) 431-9501
Fax: (760) 431-9512

George M. Lee (SBN 172982)
    gml@seilerepstein.com
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, California 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILLER, an individual, et al., | Case No. 3:19-cv-01537-BEN-JLB |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS IN FIRST AMENDED COMPLAINT** |
| vs. | |
| XAVIER BECERRA, in his official capacity as Attorney General of California, et al., | **[FRCP 12(B)(1), 12(B)(6)]** |
| Defendants. | Date:    December 18, 2019<br>Time:    10:30 a.m.<br>Courtroom 5A<br>Judge:    Hon. Roger T. Benitez |

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................. 1

II. STATEMENT OF FACTS ...................................................................... 1

   A. The Scope of Plaintiffs' Challenge in the First Amended Complaint ...... 1

   B. Procedural History ....................................................................... 4

III. ARGUMENT ..................................................................................... 4

   A. Standard ..................................................................................... 4

   B. Plaintiffs Have Stated a Claim to Challenge Pen. Code § 30800. ............ 6

   C. Plaintiffs Have Stated a Claim to Challenge Pen. Code § 30915. ............ 9

   D. Plaintiffs Will Dismiss Without Prejudice (By Order or Amendment)
      Their Claim Regarding Pen. Code § 30925. .......................................... 12

   E. Plaintiffs Have Stated a Claim to Challenge Pen. Code § 30945. .......... 12

   F. Plaintiffs Have Stated a Claim to Challenge Pen. Code § 30950. .......... 17

   G. Plaintiffs Have Stated a Claim to Challenge Pen. Code
      § 31000(c) and (d). ...................................................................... 19

   H. Plaintiffs Have Stated A Claim to Challenge Pen. Code § 31005. ......... 21

   I. The Organizations Have Standing to Assert These Claims. ................... 23

IV. CONCLUSION .................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Bauer v. Becerra*, 858 F.3d 1216 (9th Cir. 2017) ................................................... 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 5

*Canatella v. State of California*, 304 F.3d 843 (9th Cir. 2002) ............................... 7

*Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347 (3d Cir. 2014) .......... 5

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) ........................... 5

*District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783 (2008) ...... 13, 14, 17

*Duncan v. Becerra*, 265 F.Supp.3d 1106 (S.D. Cal. 2017),
 *aff'd*, 742 F. App'x 218 (9th Cir. 2018) .................................................................. 7

*Duncan v. Becerra*, 366 F.Supp.3d 1131 (S.D. Cal. 2019) .................................. 3, 9

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ................. 5

*Ethridge v. Harbor House Rest.*, 861 F.2d 1389 (9th Cir. 1988) ........................... 12

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ................................... 18, 20

*Ezell v. City of Chicago*, 70 F.Supp.3d 871 (N.D. Ill. 2014) ................................. 19

*Ezell v. City of Chicago*, 846 F.3d 888 (7th Cir. 2017) ......................................... 19

*Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227 (1962) ............................................... 5

*Freedman v. State of Md.*, 380 U.S. 51, 85 S. Ct. 734 (1965) ............................... 23

*Fyock v. City of Sunnyvale*, 779 F.3d 991 (9th Cir. 2015) ..................................... 16

*Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91 (1979) ................................. 5

*Heller v. D.C.*, 670 F.3d 1244 (D.C. Cir. 2011) .............................................. 14, 24

*Intri-Plex Techs. v. Crest Group, Inc.*, 499 F.3d 1048 (9th Cir. 2007) ................... 6

*Jackson v. City & County of San Francisco*, 746 F.3d 953 (9th Cir. 2014)..... 16, 18

*Leonard v. Texas*, 137 S. Ct. 847 (2017)................................................................ 8

*Long Beach Area Peace Network v. City of Long Beach*,
    574 F.3d 1011 (9th Cir. 2009).................................................................... 11

*Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094 (2019)..................................... 12

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130 (1992) .................... 7

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764 (2007) ........... 7

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ............................. 5

*Santa Monica Food Not Bombs v. City of Santa Monica*,
    450 F.3d 1022 (9th Cir. 2006).................................................................... 11

*Sharp v. Becerra*, 393 F.Supp.3d 991 (E.D. Cal. 2019)....................................... 5, 6

*Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002) ................................................. 3

*Silvester v. Harris*, 843 F.3d 816 (9th Cir. 2016).................................................. 16

*Staples v. United States*, 511 U.S. 600, 114 S. Ct. 1793 (1994)............................. 9

*Steffel v. Thompson*, 415 U.S. 452, 94 S. Ct. 1209 (1974)...................................... 7

*Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017),
    *cert. denied sub nom. Teixeira v. Alameda Cty., Cal.*,
    138 S. Ct. 1988 (2018) .......................................................................... 16, 17

*Thornhill v. Alabama*, 310 U.S. 88, 60 S. Ct. 736 (1940) ............................... 23, 24

*U.S. v. International Minerals & Chem. Corp.*,
    402 U.S. 558, 91 S. Ct. 1697 (1971) ......................................................... 9

*United States v. Chovan*, 735 F.3d 1127 (9th Cir. 2013) ........................................ 17

*Village of Arlington Heights v. Metropolitan Housing Develop. Corp.*,
     429 U.S. 252, 97 S. Ct. 555 (1977) ...................................................... 12

*Warth v. Seldin*, 422 U.S. 490 (1975).......................................................... 5

*Wilson v. Lynch*, 835 F.3d 1083 (9th Cir. 2016) ...................................................... 10

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
     655 F.3d 1039 (9th Cir. 2011).............................................................. 12

*Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017) ....................... 14, 24

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009)................. 5

**Statutes**

18 U.S.C. § 922 ................................................................................. 10

Cal. Pen. Code § 11106 ...................................................................... 14

Cal. Pen. Code § 16740 ........................................................................ 2

Cal. Pen. Code § 18005 ........................................................................ 6

Cal. Pen. Code § 27545 ...................................................................... 14

Cal. Pen. Code § 28050 ...................................................................... 14

Cal. Pen. Code § 28100 ...................................................................... 14

Cal. Pen. Code § 28160 ...................................................................... 14

Cal. Pen. Code § 29180 ...................................................................... 15

Cal. Pen. Code § 30515 ............................................................... *passim*

Cal. Pen. Code § 30600 ................................................................. 6, 22

Cal. Pen. Code § 30605 ........................................................... 6, 9

Cal. Pen. Code § 30800 ........................................................... *passim*

Cal. Pen. Code § 30910 ................................................................. 22

Cal. Pen. Code § 30915 ....................................................... 9, 10, 11

Cal. Pen. Code § 30925 ............................................................. 1, 12

Cal. Pen. Code § 30945 ............................................... 12, 13, 15, 16

Cal. Pen. Code § 30950 ............................................... 17, 18, 19

Cal. Pen. Code § 31000 ........................................................... *passim*

Cal. Pen. Code § 31005 ....................................... 9, 21, 22, 24

Cal. Pen. Code § 32650 ................................................................. 20

**Rules**

Fed. R. Civ. Pro. 12 ............................................................... 4, 5

Fed. R. Civ. Pro. 15 ................................................................... 12

**Regulations**

11 Cal. Code Regs. § 4127 ................................................. 21, 22

11 Cal. Code Regs. § 4128 ......................................... 10, 21, 22

**Other Authorities**

David B. Kopel and Joseph G. S. Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. ILL. U. L.J. 495 (2019) ........................................................... 18

# I.   INTRODUCTION

As will be clearly shown in Plaintiffs' forthcoming motion for preliminary injunction, Plaintiffs have certainly asserted valid claims.  In fact, not only will Plaintiffs show their complaint sets out valid claims, but also a strong likelihood of prevailing on the merits.  Defendants do not deny that Plaintiffs' First Amended Complaint (FAC) states very real claims; in their motion to dismiss (Motion), they simply nibble around the edges of the complaint, taking issue with whether Plaintiffs have established standing to challenge seven statutory provisions (of the many at issue in the case) within their broader challenge.  Plaintiffs consent to dismissal of their claim challenging California Penal Code § 30925 (by order or amendment) without prejudice and will revisit that prohibition at a later date.  As to all other challenges, Plaintiffs have stated a claim or will be able to make their claim upon routine amendments to their complaint that can cure any deficiency in the pleadings the Court might find, if necessary.

# II.   STATEMENT OF FACTS

## A.   THE SCOPE OF PLAINTIFFS' CHALLENGE IN THE FIRST AMENDED COMPLAINT

This case presents a broad facial and as-applied challenge to California's Roberti-Roos Assault Weapons Control Act (AWCA) ban on common firearms and common characteristics the State pejoratively calls "assault weapons," and Defendants' policies, practices, and customs enforcing the same.

Under Pen. Code § 30515, a rifle is an "assault weapon" if it is:

- a semiautomatic, centerfire rifle that does not have a fixed magazine, but has one or more of the following characteristics: a pistol grip that protrudes conspicuously beneath the action of the rifle, a thumbhole stock, a folding or telescoping stock, a grenade or flare launcher, a flash

suppressor, or a forward pistol grip, § 30515(a)(1);

- a semiautomatic, centerfire rifle that has a fixed magazine capable of accepting more than 10 rounds (i.e., a "large-capacity" magazine, defined at § 16740), § 30515(a)(2); or,

- a semiautomatic, centerfire rifle that has an overall length of less than 30 inches, § 30515(a)(3).

Similarly, under § 30515, a pistol is an "assault weapon" if it is:

- a semiautomatic pistol that does not have a fixed magazine, but has a threaded barrel, capable of accepting a flash suppressor, a forward handgrip, or a silencer, § 30515(a)(4)(A);

- a semiautomatic pistol that does not have a fixed magazine, but has a second handgrip, § 30515(a)(4)(B);

- a semiautomatic pistol that does not have a fixed magazine, but has a "shroud that is attached to, or partially or completely encircles, the barrel that allows the bearer to fire the weapon without burning the bearer's hand, except a slide that encloses the barrel," § 30515(a)(4)(C);

- a semiautomatic pistol that does not have a fixed magazine, but has the "capacity to accept a detachable magazine at some location outside of the pistol grip," § 30515(a)(4)(D); or,

- a semiautomatic pistol with a fixed magazine that has the capacity to accept more than ten rounds, § 30515(a)(5).

And a shotgun is an assault weapon under § 30515 if it:

- is a semiautomatic shotgun that has both a "folding or telescoping stock" and "pistol grip that protrudes conspicuously beneath the action of the weapon, thumbhole stock, or vertical handgrip," § 30515(a)(6);

- is a semiautomatic shotgun that has the ability to accept a detachable

magazine, § 30515(a)(7); or,

- Has a revolving cylinder, § 30515(a)(8).

In 2016, the Legislature expanded the definition of "assault weapon" to include any common semiautomatic, centerfire rifle or semiautomatic pistol that does not have a "fixed magazine" if it also has common characteristics.  It also defined "fixed magazine" to mean "an ammunition feeding device contained in, or permanently attached to, a firearm in such a manner that the device cannot be removed without disassembly of the firearm action." Pen. Code § 30515(b); 11 Cal. Code Regs. § 5471(p).  And thus, as the law stands, a California-compliant "fixed magazine" firearm may have one or more of the listed § 30515(a) characteristics.  However, if a lawfully owned "large-capacity" magazine – those this Court found to be common and constitutionally protected in *Duncan v. Becerra*, 366 F.Supp.3d 1131 (S.D. Cal. 2019) – is inserted into a "fixed magazine" firearm, it would convert the firearm into an illegal "assault weapon." Pen. Code § 30515(a)(2) and (a)(5).  And by doing so, through operation of section 30515's definitions and Defendants' policies, practices, and customs, a person would have then been subject to severe criminal penalties for e.g., unlawfully "manufacturing" and possessing an unregistered "assault weapon."  Moreover, without having a fixed magazine, a firearm may not be configured with any of the section 30515(a) characteristics without it being classified as an "assault weapon."

The AWCA bans the possession of such so-called "assault weapons" by private individuals. *Silveira v. Lockyer*, 312 F.3d 1052, 1059 (9th Cir. 2002).  It generally makes it a felony to manufacture or cause to be manufactured, distribute, transport, import into the state for sale, keep for sale, offer or expose for sale, give, or lend any "assault weapon." Pen. Code § 30600(a). It also makes it a crime *to possess* any firearm considered an "assault weapon," § 30605(a), even by a law-abiding person for lawful purposes like self-defense in the home.  Because of the AWCA ban and Defendants' policies, practices, and customs, the ordinary law-

abiding California adult resident cannot, *inter alia*, acquire, possess, or use an "assault weapon" for lawful purposes including but not limited to self-defense, proficiency training, sport, or hunting.

## B.   PROCEDURAL HISTORY

Plaintiffs filed this case on August 15, 2019, challenging the State's ban on "assault weapons"—common firearms based on the common characteristic of a "large-capacity" magazine in a "fixed magazine" firearm—as a violation of the Second Amendment to the United States Constitution.

Defendants filed their answer to the complaint on September 6, 2019 [ECF Doc. #7].

On September 27, 2019, Plaintiffs filed their First Amended Complaint [ECF Doc. #9]. The current and operative complaint added additional affected individual plaintiffs and organizational plaintiffs, as well as related allegations, that challenge the AWCA's ban on common firearms and common firearm characteristics.

At issue now is Defendants' motion to dismiss made pursuant to FRCP 12(b)(1) and 12(b)(6) [ECF Doc. #16]. Defendants' motion does not deny that Plaintiffs have stated broad claims against the AWCA, but suggests that Plaintiffs lack standing to challenge seven of the specific statutory provisions as to which declaratory and injunctive relief have been requested.

## III.   ARGUMENT

## A.   STANDARD

This Court is well familiar with the standard on a motion to dismiss claims, and it needn't be repeated here at length. On a motion to dismiss, a district court must accept as true all material allegations of the complaint, and construe the complaint in favor of the complaining party. *Gladstone Realtors v. Vill. of*

1  *Bellwood*, 441 U.S. 91, 109 (1979) (citing *Warth v. Seldin*, 422 U.S. 490, 501

2  (1975)); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). The

3  court "will hold a dismissal inappropriate unless the plaintiffs' complaint fails to

4  'state a claim to relief that is plausible on its face.'" *Zucco Partners, LLC v.*

5  *Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009) (quoting *Bell Atl. Corp. v.*

6  *Twombly*, 550 U.S. 544, 570 (2007)).

7       In a motion to dismiss under Rule 12(b)(1), federal courts may adjudicate

8  whether the district court has subject matter jurisdiction over an actual case or

9  controversy under Article III, § 2 of the Constitution.  In Defendants' motion here,

10 their Rule 12(b)(1) challenge to the FAC appears to be facial, as it is based solely

11 on the allegations of the FAC, without resort to extrinsic facts.  Accordingly, this

12 Court must consider the allegations of the complaint as true.  *See*, *Safe Air for*

13 *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *Constitution Party of*

14 *Pennsylvania v. Aichele*, 757 F.3d 347, 358-359 (3d Cir. 2014).

15      "A court granting a motion to dismiss a complaint must then decide whether

16 to grant leave to amend. Leave to amend should be 'freely given' where there is no

17 'undue delay, bad faith or dilatory motive on the part of the movant, [...] undue

18 prejudice to the opposing party by virtue of allowance of the amendment, [or]

19 futility of the amendment[.]'" *Sharp v. Becerra*, 393 F.Supp.3d 991, 997 (E.D.

20 Cal. 2019) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962);

21 *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)

22 (listing the *Foman* factors as those to be considered when deciding whether to

23 grant leave to amend).  Dismissal without leave to amend is proper only if it is

24 clear that "the complaint could not be saved by any amendment." *Sharp*, 393

25 F.Supp.3d at 997 (citing *Intri-Plex Techs. v. Crest Group, Inc.*, 499 F.3d 1048,

26 1056 (9th Cir. 2007).

27 //

28 //

**B.** **PLAINTIFFS HAVE STATED A CLAIM TO CHALLENGE PEN. CODE § 30800.**

Plaintiffs have raised a broad challenge to the AWCA's ban on common arms with common characteristics. The prohibitory provisions of the Code that operate based upon the definitional ones include, but are not limited to, Pen. Code § 30600 (which prohibits e.g. importation, manufacture, and transportation) and § 30605 (which prohibits possession of assault weapons generally).

But a challenge to the laws that prohibit the possession and use of assault weapons, even if successful, would be meaningless if the government simply had other ways – such as civil enforcement schemes, forfeiture statutes, and nuisance laws – that allowed it to curb and prohibit possession by other means.

It should be axiomatic that a State which is enjoined from and prevented from prohibiting its citizens from exercising their constitutional rights to own firearms through criminal punishment could otherwise prevent the exercise of those same rights by quasi-criminal (even if technically civil) means. Penal Code § 30800, is one of those means, which provides: "Except as provided in Article 2 (commencing with Section 30600), possession of any assault weapon […] in violation of this chapter is a public nuisance, solely for purposes of this section and subdivision (c) of Section 18005."  And section 30800(a)(2) permits the Attorney General, or any prosecuting agency or city attorney, *in lieu of criminal prosecution*, to bring a civil action to enjoin possession of an assault weapon […] that is a public nuisance. Pen. Code § 30800(a)(2) (emphasis added).  Furthermore, "[u]pon motion" by the Attorney General, or a prosecuting or city attorney, the statute authorizes imposition of "a civil fine" not to exceed $300 for the first assault weapon deemed a public nuisance, and up to one hundred dollars ($100) for each additional assault weapon deemed a public nuisance pursuant to subdivision (a).  Pen. Code § 30800(b).

Viewed most charitably, section 30800 is simply another arrow in the prosecutor's quiver.  Viewed less charitably, the statute is an end-run around the

1  inconvenience, expense, and burdens of proof associated with criminal trials.  In

2  either case, it is fair and subject to being challenged in the context of a greater

3  challenge to the State's AWCA laws, which includes the prohibition on possession

4  generally, as presented by this lawsuit.

5      "In the particular context of injunctive and declaratory relief, a plaintiff must

6  show that he has suffered or is threatened with a 'concrete and particularized' legal

7  harm, […], coupled with "a sufficient likelihood that he will again be wronged in a

8  similar way."  *Canatella v. State of California*, 304 F.3d 843, 852 (9th Cir. 2002)

9  (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992)).

10  But as this Court has acknowledged: "Article III standing analysis recognizes that,

11  where threatened action by government is concerned, courts do not require a

12  plaintiff to expose himself to criminal liability before bringing suit. *Duncan v.*

13  *Becerra*, 265 F.Supp.3d 1106, 1113 (S.D. Cal. 2017) (citing *MedImmune, Inc. v.*

14  *Genentech, Inc.*, 549 U.S. 118, 128–129, 127 S. Ct. 764 (2007); *Steffel v.*

15  *Thompson*, 415 U.S. 452, 94 S. Ct. 1209 (1974)), *aff'd*, 742 F. App'x 218 (9th Cir.

16  2018).  In *Duncan*, this Court further found that ripeness exists where there is a

17  credible threat of prosecution, which is found where the Attorney General has

18  given no indication that he will not enforce prohibitory firearm restrictions, and

19  where it has vigorously enforced the statute in the past.  265 F.Supp.3d at 1113-14.

20  Anyone who possesses an "assault weapon" in the State of California – or even

21  anything resembling one – is at risk for arrest and prosecution, and subject to §

22  30800.

23      At its core, section 30800 is a confiscatory, quasi-criminal forfeiture statute,

24  with all of the problems inherent to an alternative enforcement scheme with

25  relaxed burdens of proof, and no clear right to a jury trial.  "Modern civil forfeiture

26  statutes are plainly designed, at least in part, to punish the owner of property used

27  for criminal purposes." *Leonard v. Texas*, 137 S. Ct. 847 (2017) (statement of

28  Thomas, J., respecting denial of certiorari). But as Justice Thomas observed, and

1   which cannot reasonably be denied at this point, the civil forfeiture system "has led

2   to egregious and well-chronicled abuses."  137 S. Ct. at 848.  Justice Thomas

3   further observed: "Whether forfeiture is characterized as civil or criminal carries

4   important implications for a variety of procedural protections, including the right

5   to a jury trial and the proper standard of proof."  137 S. Ct. at 849.

6       Here, it would be a tidy and convenient outcome for the State indeed, if this

7   Court were to enjoin it from enforcing the AWCA ban on common arms and

8   common characteristics in section 30515(a), but Defendants could simply

9   accomplish their prohibitory and confiscatory schemes through other, so-called

10  "civil" motions with an unclear burden of proof. This is by design. After all, the

11  Legislature's expressly-stated purpose of enacting section 30515(a) in the first

12  place was expressly to prohibit *all* firearms it deemed to be "assault weapons,"

13  period. "It was the original intent of the Legislature in enacting Chapter 19 of the

14  Statutes of 1989 to ban all assault weapons, regardless of their name, model

15  number, or manufacture. It is the purpose of this act [Sen. Bill 23] to effectively

16  achieve the Legislature's intent to prohibit all assault weapons." Stats. 1999, ch.

17  129 § 12. We take the Legislature at its word that they intended to prohibit, and

18  Defendants would confiscate if necessary, every last "assault weapon" within the

19  State, through whatever means were at their disposal.

20      Defendants' motion suggests that any "assault weapon" subject to

21  confiscation under section 30800 must necessarily be "illegally possessed" in the

22  first place.  (Def. Motion at 9:18, 22.)  But this is a circular argument.  If

23  subdivision (a)(2) of section 30800 permits a prosecutor to bring a "civil action" *in*

24  *lieu of* criminal prosecution, we are again compelled to ask: By what standard of

25  proof shall the "illegality" be proven in the first place, and shall, in this "civil

26  action," a deprivation of a substantial liberty and property interest be adjudged by a

27  law and motion judge hearing a simple "motion," as opposed to a jury trial?

28  Simply on their own, firearms, or even statutorily-defined "assault weapons,"

1   cannot be considered to be a "public nuisance" without being tied to greater

2   criminal conduct than its mere existence in the first place. "Guns in general are not

3   'deleterious devices or products or obnoxious waste materials,' […] that put their

4   owners on notice that they stand 'in responsible relation to a public danger[.]'"

5   *Staples v. United States*, 511 U.S. 600, 610–11, 114 S. Ct. 1793 (1994) (citing *U.S.*

6   *v. International Minerals & Chem. Corp.*, 402 U.S. 558, 565, 91 S. Ct. 1697, 1701

7   (1971)).

8        In sum, if Plaintiffs have standing to challenge the AWCA's criminal

9   possession laws (e.g., section 30605), which Defendants do not dispute in their

10   motion, then Plaintiffs have standing to challenge section 30800, which is simply a

11   confiscatory prohibition on constitutionally-protected property and conduct by

12   other means.

13

14   **C.   PLAINTIFFS HAVE STATED A CLAIM TO CHALLENGE PEN. CODE § 30915.**

15        Defendants' motion asserts that Plaintiffs lack standing to challenge Pen.

16   Code § 30915, which provides that anyone taking title to an assault weapon by

17   bequest or intestate succession must do one of four specified things, most of which

18   results in forced dispossession of the arm – not unlike the State's unconstitutional

19   scheme regarding so-called "large-capacity" magazines enjoined in *Duncan*, 366

20   F.Supp.3d 1131, and none of which actually permits the transfer of title and

21   possession to another law-abiding person within the State, by bequest or

22   otherwise.[1]

23   _____

24   [1] Section 30915, subdiv. (c) purports to allow for a person taking title to an assault

25   weapon to "[o]btain a permit from the Department of Justice[.]" However, as
    discussed below in the sections regarding permits under §§ 31000 and 31005,

26   California's permitting scheme and the Department's policies, practices, and
    customs (including a requirement that an applicant show of good cause under the

27   regulations), 11 Cal. Code of Regs. § 4128, make an assault weapon permit rare
    and unavailable to ordinary citizens. "No license or permit shall be issued to any

28   applicant who fails to establish good cause for such license or permit []." *Id.* at
    section (c). However, the Individual Plaintiffs, the Institutional Plaintiffs'

1         Defendants' motion rests upon the premise that a challenge to section 30915

2   could *only* be made by someone who is or presumably would be taking title to a

3   common and constitutionally protected arm the State calls an "assault weapon."

4   But that would be an unduly restrictive view of the burdens imposed by that this

5   section (among the many other sections of the Penal Code which rely upon section

6   30515's definitions of "assault weapons") as to gun owners themselves, not just

7   those who *would be* gun owners. It is enough to assert, as Plaintiffs have, that the

8   assault weapon laws improperly and irrationally prohibit transfer of such property,

9   by bequest or otherwise, if the right to own these firearms is otherwise

10  constitutionally protected. *See*, *Wilson v. Lynch*, 835 F.3d 1083, 1091 (9th Cir.

11  2016) (notwithstanding that the plaintiff herself was not a marijuana user, the fact

12  that she was prevented from purchasing a firearm based upon the statute was

13  sufficient for her to allege injury and standing to challenge 18 U.S.C. § 922(d)(3)).

14  Here, it is also enough for Plaintiffs to assert that the laws prevent them not only

15  from freely transferring this property to their heirs, but even including this type of

16  property in an otherwise valid testamentary trust or will.  It is clearly implied that

17  they have been prevented from establishing those testamentary instruments.  In the

18  First Amendment context, by analogy, plaintiffs mounting a facial challenge to a

19  law or ordinance may establish standing by alleging that they have "modified

20  [their] behavior" as a result of the law.  *Long Beach Area Peace Network v. City of

21  Long Beach*, 574 F.3d 1011, 1019 (9th Cir. 2009) (citing *Santa Monica Food Not

22  Bombs v. City of Santa Monica*, 450 F.3d 1022, 1034 (9th Cir. 2006)).

23        To this end, the FAC already and expressly alleges that the State's assault

24  weapons laws prohibit them from transferring or passing these firearms down to

25  their heirs.  See FAC, ¶ 87 ([…] "Defendants' policies, practices, and customs,

26  

27  members, and those similarly situated to them do not qualify for the Defendants'
    permit and, moreover, they seek to exercise their rights without the additional

28  costs, burdens, and restrictions of the DOJ's permit.

1   infringe on Plaintiffs' Second Amendment rights by prohibiting Plaintiffs and

2   other law-abiding individuals from, *inter alia*, keeping, bearing, buying, selling,

3   transferring, possessing, transporting, *or passing down to heirs* so-called 'assault

4   weapons' under California law[]") (emphasis added).  Thus, it is clearly alleged,

5   and further implied, that section 30915, among other provisions, prohibits/prevents

6   the Plaintiffs themselves from not only acquiring and using "assault weapons," but

7   transferring those "assault weapons" to anyone—*including their heirs* or anyone

8   else they wish to transfer this property by bequest.  But to the extent that this Court

9   finds the FAC should be clarified, Plaintiffs here represent that they can and would

10  amend the complaint sufficient to overcome the State's objections in their motion

11  (i.e., by adding language to this end, and/or to include owners of registered "assault

12  weapons" who are prevented from transferring their property to their heirs).  But if

13  any plaintiff has alleged facts to establish standing, the standing requirement is

14  satisfied for all co-plaintiffs who are proper parties on the same complaint seeking

15  the same relief.  *Village of Arlington Heights v. Metropolitan Housing Develop.*

16  *Corp.*, 429 U.S. 252, 264, 97 S. Ct. 555, 563, fn. 9 (1977).

17          Finally, we would like to be clear about what section 30915 really is: A

18  vicious, long-term, generational confiscatory scheme through attrition.  But if the

19  Constitution prevents the State from prohibiting, e.g., the acquisition, possession,

20  use, and lawful transfer of ownership of an entire class of common firearms, the

21  State cannot prohibit transferring those same firearms by bequest or inheritance.

22  This ban will and should rise or fall with the rest of the State's AWCA ban on

23  common arms.

24          Plaintiffs have properly alleged and have standing to challenge to Pen. Code

25  § 30915. But to the extent the Court deems it necessary, the complaint can be

26  amended to include additional language as to these allegations and/or include

27  additional plaintiffs who have DOJ-registered "assault weapons" but are prevented

28  from transferring them by bequest or otherwise due to section 30915.

**D.     PLAINTIFFS WILL DISMISS WITHOUT PREJUDICE (BY ORDER OR AMENDMENT) THEIR CLAIM REGARDING PEN. CODE § 30925.**

Without engaging in extended discussion on or conceding the merits of Defendants' motion as it pertains to Plaintiffs' standing to challenge the 'new resident' permit requirements of Pen. Code § 30925, Plaintiffs will consent to dismissal without prejudice of this singular claim, either by consenting to an order dismissing this claim without prejudice, or by amending their complaint. *See*, *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1058 (9th Cir. 2011) (district courts have broad discretion in deciding whether to grant leave to amend and whether to dismiss actions with or without prejudice), abrogated by *Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094 (2019); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1392 (9th Cir. 1988) (permitting amendment under FRCP 15(a) is the appropriate mechanism for a plaintiff to eliminate a claim without dismissing any of the defendants).

**E.     PLAINTIFFS HAVE STATED A CLAIM TO CHALLENGE PEN. CODE § 30945.**

Defendants' motion asserts that Plaintiffs have not demonstrated standing to challenge Pen. Code § 30945, restricting use of "assault weapons," because "[n]one of the Individual Plaintiffs allegedly owns an assault weapon that has been registered with the Department of Justice[.]" (Motion at 10:24-25).  Defendants appear to miss the point of this lawsuit, or are pretending that the challenge to section 30945 is merely a single, isolated, stand-alone claim.  The fact is, *all* of the individual Plaintiffs have alleged an intent to exercise their rights and acquire common semiautomatic firearms with common characteristics – readily available in the vast majority of the United States – and *would*, but for the State's AWCA ban and the Defendants' policies, practices, and customs that violate the Second Amendment and fear of prosecution (FAC, ¶¶ 59, 63, 65-66, 67, 68, 75, 80). If Plaintiffs are successful in enjoining the State's complete and nefarious ban on an

1  entire category of common, constitutionally protected arms and conduct, thereby

2  making such accessible to regular law-abiding citizens as with any other common

3  firearm, neither could the State achieve its ban through other means, such as severe

4  limitations that destroy the right in the first place. Concomitant with the right to

5  acquire and own firearms in common use is the right to *use* them for lawful

6  purposes, such as self-defense. *District of Columbia v. Heller*, 554 U.S. 570, 628–

7  29, 128 S. Ct. 2783 (2008).

8         This lawsuit represents a challenge, not merely to Pen. Code § 30945 in

9  isolation, but to *all* of California's "assault weapon" laws that operate based on the

10 definitions of "assault weapons" under section 30515 and Defendants' policies,

11 practices, and customs that individually and collectively operate as a ban on

12 constitutionally protected arms and conduct. As the Supreme Court held in *Heller*,

13 554 U.S. at 628-629, 128 S. Ct. at 2817-18, a ban that "amounts to a prohibition of

14 an entire class of 'arms' that is overwhelmingly chosen by American society for

15 that lawful purpose" cannot withstand constitutional scrutiny under any standard.

16 And thus, no interest-balancing tests or means-end inquiries are to be invoked or

17 applied at all when a textual and historical analysis[2] shows that the challenged

18 scheme amounts to a ban on a category of protected arms. In other words, *Heller*

19 limits governments to completely restricting only such classes of arms banned in

20 our "historical tradition," such as guns that are both "dangerous and unusual," and

21 thus are not the sort of lawful weapons that citizens have commonly possessed and

22 used for lawful purposes.  *Heller*, 554 U.S. at 627-628. If a law amounts to an

23 impermissible ban on a protected category of arms, it must be declared

24 unconstitutional and enjoined without resort to or need for any level of scrutiny.

25 _____

26 [2]As will be amply shown in Plaintiffs' motion for preliminary injunction,
   California's AWCA has no historical justification, and the specific firearm
27 characteristics which form the definitions in section 30515(a), and which
   Defendants' regulations prohibit, were in existence and in common use for decades
28 before enactment of the AWCA.

1    *See also*, *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017) ("[U]nder

2    [*Heller*], 'complete prohibition[s]' of Second Amendment rights are always

3    invalid. […] It's appropriate to strike down such 'total ban[s]' without bothering to

4    apply tiers of scrutiny because no such analysis could ever sanction obliterations of

5    an enumerated constitutional right); *Heller v. D.C.*, 670 F.3d 1244, 1271 (D.C. Cir.

6    2011) ("*Heller II*") ("In my view, *Heller* and *McDonald* leave little doubt that

7    courts are to assess gun bans and regulations based on text, history, and tradition,

8    not by a balancing test such as strict or intermediate scrutiny.") (Kavanaugh, J.,

9    dissenting).

10        Defendants do not appear to dispute that Plaintiffs have properly stated a

11   challenge to the State's AWCA ban on common arms with common

12   characteristics.  If Plaintiffs' succeed in their challenge and this Court enjoins

13   enforcement of the State's ban scheme, and Plaintiffs are therefore able to acquire,

14   keep, and bear arms which the State may stubbornly continue to insist on *calling*

15   "assault weapons," could the State then continue to infringe upon the Second

16   Amendment rights of Plaintiffs and all other non-prohibited citizens by imposing

17   severe restrictions on the *use* of "assault weapons"?  We think not, and that

18   Plaintiffs may therefore continue to challenge *all* of the various "assault weapon"

19   proscriptions that could affect them.

20        To be sure, all firearms transferred or sold in California are now required to

21   be *registered* by and with Defendants through the Department of Justice's Dealers

22   Record of Sale (DROS) system (see, e.g., Pen. Code §§ 27545, 28050(a), 28100,

23   and 28160, et seq.) and placed into the State's Automated Firearms System (AFS)

24   registry.  Indeed, among *many* other types of records of firearms and individuals,

25   "the Attorney General shall keep and properly file a complete record of all[] . . .

26   Dealers' Records of Sales of firearms." Pen. Code § 11106(a)(1),(D).  (*See also*

27   *Bauer v. Becerra*, 858 F.3d 1216, 1219 (9th Cir. 2017) ("The DROS system today

28   requires that 'any sale, loan, or transfer of a firearm' be made through a licensed

1  dealer, Cal. Penal Code §§ 27545, 28050(a), and it requires dealers to keep

2  standardized records of all such transactions, *id.* at §§ 28100, 28160 *et seq.*").  And

3  the State requires that even self-built or assembled firearms be registered with the

4  Department.  *See*, *e.g.*, Pen. Code § 29180, *et seq.* (requiring registration of home-

5  built firearms on a retroactive and ongoing basis).  As such, individual Plaintiffs'

6  *current* firearms at issue in this case, were they configured as "assault weapons"

7  under section 30515 – *and any firearms defined as "assault weapons" under §*

8  *30515 they may purchase in California in the future* – would indeed be *registered*

9  with and by Defendants.  Thus, section 30945 could be construed and enforced

10  against them were they to possess an "assault weapon" the Defendants have record

11  of being registered to them.

12      Following *Heller*, a categorical analysis is appropriate and indeed, required,

13  for bans on common arms.  But even where tiered scrutiny analysis is applied, the

14  Ninth Circuit – in its interest-balancing "two-step inquiry" – the court first asks

15  "whether the challenged law burdens conduct protected by the Second

16  Amendment," and, if so, then determines the "appropriate level of scrutiny."

17  *Teixeira v. County of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017) (citing *United*

18  *States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013), *cert. denied sub nom.*

19  *Teixeira v. Alameda Cty., Cal.*, 138 S. Ct. 1988 (2018). In the Ninth Circuit, laws

20  that have been found or assumed to burden Second Amendment activity have

21  included laws limiting magazine capacity limitations, *Fyock v. City of Sunnyvale*,

22  779 F.3d 991, 998 (9th Cir. 2015), firearm storage laws, and restrictions on the sale

23  of certain types of ammunition, *Jackson v. City & County of San Francisco*, 746

24  F.3d 953, 963, 968 (9th Cir. 2014), and ten-day waiting period laws, *Silvester v.*

25  *Harris*, 843 F.3d 816, 826–27 (9th Cir. 2016). Does section 30945 burden Second

26  Amendment rights?  Of course it does.

27      Section 30945 places severe burdens on constitutionally protected

28  possession and use of an "assault weapon," restricting "assault weapon" possessors

1    to just seven State-allowed activities. For example, an "assault weapon" may only

2    be possessed either at a person's residence, or at the property of another with the

3    owner's express permission. Pen. Code § 30945(a).  Thus, a person who finishes a

4    trip to the range may not stop off at his mother's house to have dinner unless he

5    gets her express permission to bring an "assault weapon" to the home.  And a

6    person can only transport a registered "assault weapon" from one authorized place

7    to another specified in the statute. Pen. Code § 30945(g).  And, a person who

8    travels frequently in rural, remote areas of the State cannot have a "trunk gun"[3] if

9    the State happens to call it a registered "assault weapon," even if it is legally

10   locked and secured in the trunk of his car, because he is not going directly to or

11   from the places specifically mentioned in section 30945.

12         Having established that the law burdens Second Amendment activity, in the

13   second step, the Court must then determine the "appropriate level of scrutiny."

14   *Teixeira*, 873 F.3d at 682 (citing *United States v. Chovan*, 735 F.3d 1127, 1136

15   (9th Cir. 2013)). The "level of scrutiny to apply depends on how close the law

16   comes to the core of the Second Amendment right and the severity of the law's

17   burden on the right." *Pena v. Lindley*, 898 F.3d 969, 977 (9th Cir. 2018) (quoting

18   *Chovan* at 1138) (internal quotations omitted).  The Court will "strictly scrutinize a

19   'law that implicates the core of the Second Amendment right and severely burdens

20   that right.' " *Pena v. Lindley*, 898 F.3d 969, 977 (9th Cir. 2018) (quoting *Silvester*

21   *v. Becerra*, 843 F.3d at 821).[4]

22   _____

23   [3]"A Trunk Gun is a sturdy, reliable, and not-too-expensive firearm that can be kept
     tucked away in a car or boat for plinking, hunting and, in a pinch, self-defense."
24   https://www.americanrifleman.org/articles/2015/9/15/9-field-tested-trunk-guns/

25   [4] Under the law of this Circuit, the level of scrutiny to be applied under a two-step
     analysis might well depend upon the 'severity' of the burden.  But the Supreme
26   Court made it clear that rational-basis review was off the table.  *Heller*, 554 U.S. at
     628, n.27.  Following this command, the lower courts have generally avoided
27   applying rational basis review – at least, in name – and have usually instead
     purported to apply some form of heightened scrutiny, typically either tiered "strict"
28   or "intermediate" interest-balancing scrutiny, though most commonly some
     variation of the latter.

1   Plaintiffs decline to get into an extended discussion about the level of

2   scrutiny here, for Defendants' motion is as to standing only, and Defendants

3   themselves do not argue this point. It suffices to say that heightened scrutiny

4   necessarily applies, and that Defendants' laws, policies, and practices would fail to

5   meet any real application of such standard. Second Amendment rights do not end

6   at the threshold of one's home, nor is constitutionally-protected conduct limited to

7   the few State-approved activities.  The Korean shopkeepers who defended their

8   lives, livelihoods, and others during the 1992 L.A. Riots did not stop to check

9   whether their activities were on some "Roster of State-Certified Acceptable

10  Assault Weapon Uses" — and needn't have, thanks to the Constitution.

11  Plaintiffs have standing and have stated a claim to challenge section 30945.

12  Should the Plaintiffs be successful in their challenge to the State's AWCA ban, this

13  section, too, should (and logically, must) fall.  However, should this Court grant

14  Defendants' motion as to this claim, Plaintiffs can and would remedy any defect

15  the Court might find in the FAC with simple amendments.

16

17  **F.    PLAINTIFFS HAVE STATED A CLAIM TO CHALLENGE PEN. CODE § 30950.**

18  Defendants' motion asserts that Plaintiffs lack standing to challenge the age-

19  based restrictions of Pen. Code § 30950, since none of the them are alleged to be

20  under the age of 18.  But again, this case presents an as-applied *and facial*

21  challenge to *all* AWCA prohibitions against constitutionally protected artifacts and

22  conduct that operate based on the § 30515 "assault weapon" classifications

23  generally.  "In a facial challenge like this one, the claimed constitutional violation

24  inheres in the terms of the statute, not its application."  *Ezell v. City of Chicago*,

25  651 F.3d 684, 698 (7th Cir. 2011) ("*Ezell I*").  Or, as the court stated in *Jackson v.*

26  *City & County of San Francisco*, in such a facial challenge, "[e]ither it is a

27  permissible burden on the Second Amendment right to 'keep and bear arms' or it is

28  not." *Jackson*, 746 F.3d at 962.

1    Age-based restrictions generally are inherently suspect, are not historically

2  justified, and thus categorically unconstitutional.  *See*, e.g., David B. Kopel and

3  Joseph G. S. Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. ILL.

4  U. L.J. 495 (2019).  But such broad and un-tailored restrictions fail to meet any

5  level of heightened scrutiny.  As the Seventh Circuit held in *Ezell v. City of*

6  *Chicago*, 846 F.3d 888 (7th Cir. 2017) ("*Ezell II*"), the City of Chicago failed to

7  justify its age-based restrictions that prohibited anyone under the age of 18 from

8  even receiving adult-supervised firearm instruction in the setting of a shooting

9  range – such as the range at Plaintiff PWG's premises, owned and operated by

10  Plaintiff Phillips – found that the restrictions failed heightened scrutiny, and

11  reversed the district court.[5] 846 F.3d at 896-898.

12    Here, section 30950 is as succinct as it is severe. "No person who is under

13  the age of 18 years […] may register or possess an assault weapon[.]"  Period.

14  There are no exceptions, such as those that might be expected for hunting, target

15  shooting, training, or competition, all of which might be required under adult

16  supervision, but are not under the State's broad ban.  Most gun owners –

17  particularly those who legally own assault weapons – would be surprised to learn

18  that they subject their children, and themselves, to criminal liability for even letting

19  their child *handle* an assault weapon in their home, let alone at a shooting range or

20  otherwise.  And thus, given the severity of the AWCA's categorical ban with no

21  exceptions, *all* of the Plaintiffs, including the organizations, have filed this

22  challenge, and are additionally suing in a representative capacity on behalf of all

23  California residents and visitors who knowingly or unknowingly are subject to the

24

25

26  [5] Standing was apparently not an issue in *Ezell II*, even though none of the plaintiffs in that case was under the age of 18.  That is because, as noted, theirs was a facial challenge to the City of Chicago's age-based ordinance, which focused on the ordinance on its face, and not individual application of the facts, and accordingly, the plaintiffs' personal situation was "irrelevant."  *Ezell v. City of Chicago*, 70 F.Supp.3d 871, 882 (N.D. Ill. 2014).

27

28

1  assault weapons laws.  (FAC, ¶ 14).  Considerations of necessity, convenience and

2  justice further justify relief in a representative capacity. (*Id*.)

3      Moreover, some Individual Plaintiffs have children under the age of 18, and

4  would like to be able to train them on the safe and effective use of firearms,

5  including those the State deems to be "assault weapons."  Some of the Plaintiffs

6  are also professional firearm trainers, and wish to be able to instruct and train both

7  legal adults and young people, such as their adult attendees' children, on the use of

8  all firearms, including so-called "assault weapons."  However, they are prevented

9  by section 30950 from doing so.  But "[t]he right to possess firearms for protection

10  implies a corresponding right to acquire and maintain proficiency in their use; the

11  core right wouldn't mean much without the training and practice that make it

12  effective."  *Ezell I*, 651 F.3d at 704.  The Plaintiffs' Second Amendment rights,

13  and those of similarly situated individuals, are thus being violated.  While

14  Plaintiffs maintain that such should not be necessary for all of the foregoing

15  reasons, to the extent that the Court may deem it so required, Plaintiffs are willing

16  and able to make any amendments that might be required by the Court to prosecute

17  this important claim.

18

19  **G.**     **PLAINTIFFS HAVE STATED A CLAIM TO CHALLENGE PEN. CODE § 31000(C)**

20  **AND (D).**

21      Defendants' motion asserts that Plaintiffs lack standing to challenge Pen.

22  Code § 31000, part of their AWCA ban scheme.  Since this case represents a broad

23  facial and as applied challenge to the AWCA's ban on constitutionally protected

24  common arms with common characteristics, as well as related protected

25  transactions and conduct, going forward (through their prayer for declaratory and

26  injunctive relief), Plaintiffs have no objection to limiting their claim against §

27  31000, by order or amendment, to its subdivisions (c) and (d).

28      Subdivisions (c) and (d) of section 31000 are part of the Defendants' overall

1   scheme to deprive ordinary citizens of their right to own and use arms in common

2   use the State classifies, and thus bans, as "assault weapons."  Subdivision (c)

3   states: "Any person who wishes to acquire an assault weapon after January 1,

4   1990, […], shall first obtain a permit from the Department of Justice in the same

5   manner as specified in Article 3 (commencing with Section 32650) of Chapter 6."

6   These statutes, on their face, go to the heart of Plaintiffs' claims, as the required-

7   but-un-obtainable "assault weapon" permit effectively represents another form of

8   the ban and burden on, e.g., sales, transfers, and possession of common and

9   constitutionally protected arms.  By referencing section 32650, the statutes put

10  these "assault weapon" permits (subsumed into the greater category of a

11  "dangerous weapons" permit) into the same category as machine gun permits, and

12  out of reach for the average, law-abiding California resident, or even State-licensed

13  arms dealers, like Plaintiffs Gunfighter Tactical and Peterson.  *See*, 11 Cal. Code

14  Regs. § 4127(h), (*l*) and § 4128(c) (establishing what is required for "good cause"

15  to obtain a dangerous weapons permit, including an assault weapon permit).

16  Moreover, even to the extent that a business (through one if its individual owners

17  or employees) acquires such a permit, as in the case of Plaintiffs PWG and

18  Phillips, it cannot be used to acquire and possess, sell, or otherwise transfer,

19  common semiautomatic firearms with common characteristics to law-abiding adult

20  California buyers who comply with the State's other laws on acquisition and pass a

21  background check, or even to other government-licensed firearms dealers out of

22  state to sell to law-abiding adults who meet all federal, state, and local

23  requirements in that jurisdiction. *See also* § 32665 ("A permit issued in accordance

24  with this chapter may be revoked by the issuing authority at any time, when it

25  appears that the need for the firearms has ceased or that the holder of the permit

26  has used the firearms for purposes other than those allowed by the permit or that

27  the holder of the permit has not exercised great care in retaining custody of any

28  weapons possessed under the permit.")

1      Plaintiffs have standing to, and have stated a claim as to subdivisions (c) and

2  (d) of § 31000 (and, based on their understanding of Defendants' policies,

3  practices, and customs, need not challenge subdivisions (a) and (b) to achieve the

4  relief they seek).  And while Plaintiffs maintain the FAC is sufficient to survive

5  Defendants' motion, to the extent the Court finds it required or helpful, Plaintiffs

6  can efficiently submit simple and clarifying amendments such as may be required

7  to press their claim.

8

9  **H.**    **PLAINTIFFS HAVE STATED A CLAIM TO CHALLENGE PEN. CODE § 31005.**

10      Defendants' motion likewise questions Plaintiffs' ability to challenge Pen.

11  Code § 31005, which, like the AWCA ban scheme element in § 31000, establishes

12  that Defendants *may* (but are not required) to issue permits— but only for

13  businesses, upon a showing of "good cause," and for specific, limited purposes not

14  relevant to Plaintiffs and the relief they seek in the case.  And again, the showing

15  of "good cause," according to Defendants, is a high and unattainable one for the

16  purposes of the relief Plaintiffs seek.  *See*, *e.g.*, § 31005(a); 11 CCR §§ 4127-28

17  and 4132, et seq.

18      In their argument supporting their motion, Defendants make a curious

19  assertion. They first claim that Plaintiff Peterson is not prevented from selling

20  assault weapons by virtue of section 31005, but rather by sections 30600 and

21  30910.  (Def. Motion at 12:2-5.)  Likewise, Defendants assert that the alleged

22  injuries to Plaintiffs Phillips and PWG – which *do* hold a permit – are traceable to

23  sections 30600 and 30910.  (*Id*. at 12:11-14.)  These are odd assertions to make in

24  light of 11 CCR § 4128(a), the enabling regulation, which expressly states that "no

25  person shall possess, transport, or sell any dangerous weapon in this state unless

26  he/she has been granted a license and/or permit pursuant to these regulations."

27      Defendants here miss the forest of the AWCA's categorical ban scheme that

28  Plaintiffs are challenging for the individual statutory trees.  The AWCA is not just

some routine administrative permit requirement, but a panoply of "assault weapon" statutes and enabling policies, practices, and regulations that individually and collectively deny average, law-abiding people access to common arms with common characteristics, and thus violate the Second Amendment.  If Plaintiffs' theory is to be credited, the evil is not just found in the individual statutes which violate Plaintiffs' constitutional rights generally, but also in its various licensing schemes that operate to achieve the deprivations in concert with the rest of the AWCA and Defendants' enforcement of it.

In the First Amendment context, it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license. *Freedman v. State of Md.*, 380 U.S. 51, 56, 85 S. Ct. 734 (1965).  This proposition was stated eloquently in *Thornhill v. Alabama*, 310 U.S. 88, 60 S. Ct. 736 (1940), where the Court questioned the evils of licensing constitutionally-protected activity.  Writing for the majority, Justice Murphy wrote in relation to a facial attack purporting to license the dissemination of ideas:

> The cases when interpreted in the light of their facts indicate that the rule is not based upon any assumption that application for the license would be refused or would result in the imposition of other unlawful regulations. Rather it derives from an appreciation of the character of the evil inherent in a licensing system. The power of the licensor against which John Milton directed his assault by his 'Appeal for the Liberty of Unlicensed Printing' is pernicious not merely by reason of the censure of particular comments but by reason of the threat to censure comments on matters of public concern. It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion. […] One who might have had a license for the asking may therefore call into question the whole scheme of licensing when he is prosecuted for failure to procure it.

*Thornhill*, 310 U.S. at 97, 60 S. Ct. at 741–42 (citations omitted).  More directly as

to licensing of conduct protected by the Second Amendment, in *Wrenn v. District of Columbia*, the D.C. Circuit recognized that "good reason" licensing schemes – which took the Second Amendment right out of the hands of most law-abiding citizens – was an evisceration of the right:

> This point brings into focus the legally decisive fact: the good-reason law is necessarily a total ban on most D.C. residents' right to carry a gun in the face of ordinary self-defense needs, where these residents are no more dangerous with a gun than the next law-abiding citizen. We say "necessarily" because the law destroys the ordinarily situated citizen's right to bear arms not as a side effect of applying other, reasonable regulations (like those upheld in *Heller II* and *Heller III*), but by design: it looks precisely for needs "distinguishable" from those of the community. […] Bans on the ability of most citizens to exercise an enumerated right would have to flunk any judicial test that was appropriately written and applied, so we strike down the District's law here apart from any particular balancing test.

*Wrenn*, 864 F.3d at 666.

A permitting scheme that takes the right to acquire, possess, and use common, constitutionally-protected arms out of the hands of ordinary, law abiding adults (e.g., Pen. Code § 31000) or deprives sellers the right to acquire and sell them to ordinary law-abiding adults, including Plaintiffs and those similarly situated to them (e.g., Pen. Code § 31005), is not a legitimate or constitutional permit scheme at all. For all of these reasons and those shown regarding the section 31000 claim, Plaintiffs have standing to challenge and have stated a claim as to section 31005. And while Plaintiffs maintain the FAC is sufficient to survive Defendants' motion, to the extent the Court finds it required or helpful, Plaintiffs can efficiently submit simple and clarifying amendments such as may be required to prosecute their claim.

## I.   THE ORGANIZATIONS HAVE STANDING TO ASSERT THESE CLAIMS.

The Institutional Plaintiffs have standing to assert these claims as well. "It is

1   common ground that the respondent organizations can assert the standing of their

2   members." *Summers v. Earth Island Inst.*, 555 U.S. 488, 494, 129 S.Ct. 1142,

3   1149 (2009).  It is also well recognized that advocacy organizations have been

4   permitted to assert the constitutional rights of their members.  *Washington v.*

5   *Trump*, 847 F.3d 1151, 1160 (9th Cir. 2017) (citing *NAACP v. Alabama*, 357 U.S.

6   449, 78 S.Ct.1163 (1958)).  At a very preliminary stage of the litigation, the

7   Plaintiffs may rely upon the allegations of the complaint to support standing.

8   *Trump*, 847 F.3d at 1159.

9        To establish associational standing, an organization must show: (a) its

10   members would otherwise have standing to sue in their own right; (b) the interests

11   it seeks to protect are germane to the organization's purpose; and (c) neither the

12   claim asserted nor the relief requested requires the participation of individual

13   members in the lawsuit.  *Hunt v. Washington State Apple Advertising Comm'n*, 432

14   US 333, 343, 97 S.Ct. 2434, 2441 (1977); *Associated Gen. Contractors of Am., San*

15   *Diego Chapter, Inc. v. California Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir.

16   2013).  However, where at least one identified member of an organization is able

17   to demonstrate that he or she has suffered harm, or would suffer harm, it is

18   common to permit that organization's claims to go forward.  *See*, *Associated Gen.*

19   *Contractors of Am.*, 713 F.3d at 1194 (citing *Summers*, 555 U.S. at 498); *W.*

20   *Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 483 (9th Cir. 2011);

21   *Kaahumanu v. Hawaii*, 682 F.3d 789, 797 (9th Cir. 2012).

22        Defendants here too walk right past the nature of Plaintiffs' broad as-applied

23   and facial challenge to the AWCA.  Contrary to the assertions of the Defendants'

24   motion, because Individual Plaintiffs – each members of the organizations – have

25   demonstrated standing to challenge the six statutes now at issue, the organizational

26   plaintiffs SDGCO, CGF, SAF, and FPC have shown standing both through their

27   individual members deprived their rights by the AWCA, and in their own right.

28   The Institutional Plaintiffs – constitutional rights advocacy organizations –

maintain that they have direct and representative standing to assert these claims. But to the extent the Court finds it required or helpful, Institutional Plaintiffs can efficiently submit simple and clarifying amendments such as may be required to clarify their standing and prosecute the claims in the case.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied or Plaintiffs should be granted leave to amend their complaint.

Dated: December 4, 2019            **SEILER EPSTEIN LLP**


                                   /s *George M. Lee*
                                   George M. Lee

                                   Attorneys for Plaintiffs