George M. Lee (SBN 172982)
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, California 94111
Phone: (415) 979-0500
Fax: (415) 979-0511
Email: gml@seilerepstein.com

John W. Dillon (SBN 296788)
**GATZKE DILLON & BALLANCE LLP**
2762 Gateway Road
Carlsbad, California 92009
Phone: (760) 431-9501
Fax: (760) 541-9512
Email: jdillon@gdandb.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILLER, et al., | Case No. 3:19-cv-01537-BEN-JLB |
| Plaintiffs, | Hon. Roger T. Benitez<br>Magistrate Hon. Jill L. Burkhardt |
| vs. | |
| XAVIER BECERRA, in his official capacity as Attorney General of California, et al., | **DECLARATION OF GEORGE A. MOCSARY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (Part 2 of 2)** |
| Defendants. | Complaint filed: August 15, 2019<br>Amended Complaint filed: September 27, 2019 |
| | Hearing Date: January 16, 2020<br>Time: 10:00 a.m. |
| | Courtroom: 5A, 5th Floor |

1
2
3

# EXHIBITS
## TABLE OF CONTENTS

| Exhibit | Description | Page(s) |
|---------|-------------|---------|
| 1 | George A. Mocsary, Curriculum Vitae | 0001-0008 |
| 2 | Conn. Gen. Stat. § 53-202(a); and Conn. Gen. Stat. § 53-202(c) | 0009-0015 |
| 3 | Md. Criminal Law Code Ann. § 4-301; Md. Criminal Law Code Ann. § 4-303; and Md. Pub. Safety §5-101(r)(2). | 0016-0023 |
| 4 | Mass. Gen. Laws Ann. Ch. 140, § 131M | 0024-0026 |
| 5 | N.J. Stat. Ann. § 2C:39-1w | 0027-0037 |
| 6 | N.Y. Penal Law §265.00, 22 | 0038-0052 |
| 7 | Haw. Rev. Stat. Ann §§ 134-1, 134-4, 134-8 | 0053-0058 |
| 8 | Minn. Stat. Ann. §§ 624.172, subd. 7; 624.7131; and 624.7132, subd.1 and subd. 12 | 0059-0068 |
| 9 | Va. Code Ann. §§ 18.2-308.2:01, 18.2-308.2:2(G) | 0069-0075 |

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "5"

Exhibit 5
0027

## *N.J. Stat. § 2C:39-1*

This section is current through New Jersey 218th Second Annual Session, L. 2019, c. 267, and J.R. 22

*LexisNexis® New Jersey Annotated Statutes  >  Title 2C. The New Jersey Code of Criminal Justice (Subts. 1 — 3)  >  Subtitle 2. Specific Offenses (Pts. 1 — 6)  >  Part 5. Offenses Against the Public; Public Order, Health and Decency (Chs. 33 — 40A)  >  Chapter 39. Weapons (§§ 2C:39-1 — 2C:39-20)*

## Notice

 This section has more than one version with varying effective dates.

## § 2C:39-1. Definitions [Effective until February 1, 2020]

The following definitions apply to this chapter and to chapter 58:

**a.** "Antique firearm" means any rifle or shotgun and "antique cannon" means a destructive device defined in paragraph (3) of subsection c. of this section, if the rifle, shotgun or destructive device, as the case may be, is incapable of being fired or discharged, or which does not fire fixed ammunition, regardless of date of manufacture, or was manufactured before 1898 for which cartridge ammunition is not commercially available, and is possessed as a curiosity or ornament or for its historical significance or value.

**b.** "Deface" means to remove, deface, cover, alter or destroy the name of the maker, model designation, manufacturer's serial number or any other distinguishing identification mark or number on any firearm.

**c.** "Destructive device" means any device, instrument or object designed to explode or produce uncontrolled combustion, including (1) any explosive or incendiary bomb, mine or grenade; (2) any rocket having a propellant charge of more than four ounces or any missile having an explosive or incendiary charge of more than one-quarter of an ounce; (3) any weapon capable of firing a projectile of a caliber greater than 60 caliber, except a shotgun or shotgun ammunition generally recognized as suitable for sporting purposes; (4) any Molotov cocktail or other device consisting of a breakable container containing flammable liquid and having a wick or similar device capable of being ignited. The term does not include any device manufactured for the purpose of illumination, distress signaling, line-throwing, safety or similar purposes.

**d.** "Dispose of" means to give, give away, lease, loan, keep for sale, offer, offer for sale, sell, transfer, or otherwise transfer possession.

**e.** "Explosive" means any chemical compound or mixture that is commonly used or is possessed for the purpose of producing an explosion and which contains any oxidizing and combustible materials or other ingredients in such proportions, quantities or packing that an ignition by fire, by friction, by concussion or by detonation of any part of the compound or mixture may cause such a sudden generation of highly heated gases that the resultant gaseous pressures are capable of producing destructive effects on contiguous objects. The term shall not include small arms ammunition, or explosives in the form prescribed by the official United States Pharmacopoeia.

**f.** "Firearm" means any handgun, rifle, shotgun, machine gun, automatic or semi-automatic rifle, or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectable ball, slug, pellet, missile or bullet, or any gas, vapor or other noxious thing, by means of a cartridge or shell or by the

action of an explosive or the igniting of flammable or explosive substances. It shall also include, without limitation, any firearm which is in the nature of an air gun, spring gun or pistol or other weapon of a similar nature in which the propelling force is a spring, elastic band, carbon dioxide, compressed or other gas or vapor, air or compressed air, or is ignited by compressed air, and ejecting a bullet or missile smaller than three-eighths of an inch in diameter, with sufficient force to injure a person.

**g.** "Firearm silencer" means any instrument, attachment, weapon or appliance for causing the firing of any gun, revolver, pistol or other firearm to be silent, or intended to lessen or muffle the noise of the firing of any gun, revolver, pistol or other firearm.

**h.** "Gravity knife" means any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force.

**i.** "Machine gun" means any firearm, mechanism or instrument not requiring that the trigger be pressed for each shot and having a reservoir, belt or other means of storing and carrying ammunition which can be loaded into the firearm, mechanism or instrument and fired therefrom. A machine gun also shall include, without limitation, any firearm with a trigger crank attached.

**j.** "Manufacturer" means any person who receives or obtains raw materials or parts and processes them into firearms or finished parts of firearms, except a person who exclusively processes grips, stocks and other nonmetal parts of firearms. The term does not include a person who repairs existing firearms or receives new and used raw materials or parts solely for the repair of existing firearms.

**k.** "Handgun" means any pistol, revolver or other firearm originally designed or manufactured to be fired by the use of a single hand.

**l.** "Retail dealer" means any person including a gunsmith, except a manufacturer or a wholesale dealer, who sells, transfers or assigns for a fee or profit any firearm or parts of firearms or ammunition which he has purchased or obtained with the intention, or for the purpose, of reselling or reassigning to persons who are reasonably understood to be the ultimate consumers, and includes any person who is engaged in the business of repairing firearms or who sells any firearm to satisfy a debt secured by the pledge of a firearm.

**m.** "Rifle" means any firearm designed to be fired from the shoulder and using the energy of the explosive in a fixed metallic cartridge to fire a single projectile through a rifled bore for each single pull of the trigger.

**n.** "Shotgun" means any firearm designed to be fired from the shoulder and using the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shots or a single projectile for each pull of the trigger, or any firearm designed to be fired from the shoulder which does not fire fixed ammunition.

**o.** "Sawed-off shotgun" means any shotgun having a barrel or barrels of less than 18 inches in length measured from the breech to the muzzle, or a rifle having a barrel or barrels of less than 16 inches in length measured from the breech to the muzzle, or any firearm made from a rifle or a shotgun, whether by alteration, or otherwise, if such firearm as modified has an overall length of less than 26 inches.

**p.** "Switchblade knife" means any knife or similar device which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife.

**q.** "Superintendent" means the Superintendent of the State Police.

**r.** "Weapon" means anything readily capable of lethal use or of inflicting serious bodily injury. The term includes, but is not limited to, all (1) firearms, even though not loaded or lacking a clip or other component to render them immediately operable; (2) components which can be readily assembled into a weapon; (3) gravity knives, switchblade knives, daggers, dirks, stilettos, or other dangerous knives, billies, blackjacks, bludgeons, metal knuckles, sandclubs, slingshots, cesti or similar leather bands studded with metal filings or razor blades imbedded in wood; and (4) stun guns; and any weapon or other device which projects, releases, or emits tear gas or any other substance intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispensed in the air.

**s.** "Wholesale dealer" means any person, except a manufacturer, who sells, transfers, or assigns firearms, or parts of firearms, to persons who are reasonably understood not to be the ultimate consumers, and includes

N.J. Stat. § 2C:39-1

persons who receive finished parts of firearms and assemble them into completed or partially completed firearms, in furtherance of such purpose, except that it shall not include those persons dealing exclusively in grips, stocks and other nonmetal parts of firearms.

**t.**"Stun gun" means any weapon or other device which emits an electrical charge or current intended to temporarily or permanently disable a person.

**u.**"Ballistic knife" means any weapon or other device capable of lethal use and which can propel a knife blade.

**v.**"Imitation firearm" means an object or device reasonably capable of being mistaken for a firearm.

**w.**"Assault firearm" means:

    **(1)**The following firearms:

        Algimec AGM1 type

        Any shotgun with a revolving cylinder such as the "Street Sweeper" or "Striker 12"

        Armalite AR-180 type

        Australian Automatic Arms SAR

        Avtomat Kalashnikov type semi-automatic firearms

        Beretta AR-70 and BM59 semi-automatic firearms

        Bushmaster Assault Rifle

        Calico M-900 Assault carbine and M-900

        CETME G3

        Chartered Industries of Singapore SR-88 type

        Colt AR-15 and CAR-15 series

        Daewoo K-1, K-2, Max 1 and Max 2, AR 100 types

        Demro TAC-1 carbine type

        Encom MP-9 and MP-45 carbine types

        FAMAS MAS223 types

        FN-FAL, FN-LAR, or FN-FNC type semi-automatic firearms

        Franchi SPAS 12 and LAW 12 shotguns

        G3SA type

        Galil type Heckler and Koch HK91, HK93, HK94, MP5, PSG-1

        Intratec TEC 9 and 22 semi-automatic firearms

        M1 carbine type

        M14S type

        MAC 10, MAC 11, MAC 11-9mm carbine type firearms

        PJK M-68 carbine type

        Plainfield Machine Company Carbine

        Ruger K-Mini-14/5F and Mini-14/5RF

        SIG AMT, SIG 550SP, SIG 551SP, SIG PE-57 types

        SKS with detachable magazine type

Spectre Auto carbine type

Springfield Armory BM59 and SAR-48 type

Sterling MK-6, MK-7 and SAR types

Steyr A.U.G. semi-automatic firearms

USAS 12 semi-automatic type shotgun

Uzi type semi-automatic firearms

Valmet M62, M71S, M76, or M78 type semi-automatic firearms

Weaver Arm Nighthawk.

**(2)**Any firearm manufactured under any designation which is substantially identical to any of the firearms listed above.

**(3)**A semi-automatic shotgun with either a magazine capacity exceeding six rounds, a pistol grip, or a folding stock.

**(4)**A semi-automatic rifle with a fixed magazine capacity exceeding 10 rounds. "Assault firearm" shall not include a semi-automatic rifle which has an attached tubular device and which is capable of operating only with .22 caliber rimfire ammunition.

**(5)**A part or combination of parts designed or intended to convert a firearm into an assault firearm, or any combination of parts from which an assault firearm may be readily assembled if those parts are in the possession or under the control of the same person.

**(6)**A firearm with a bump stock attached.

**x.**"Semi-automatic" means a firearm which fires a single projectile for each single pull of the trigger and is self-reloading or automatically chambers a round, cartridge, or bullet.

**y.**"Large capacity ammunition magazine" means a box, drum, tube or other container which is capable of holding more than 10 rounds of ammunition to be fed continuously and directly therefrom into a semi-automatic firearm. The term shall not include an attached tubular device which is capable of holding only .22 caliber rimfire ammunition.

**z.**"Pistol grip" means a well-defined handle, similar to that found on a handgun, that protrudes conspicuously beneath the action of the weapon, and which permits the shotgun to be held and fired with one hand.

**aa.**"Antique handgun" means a handgun manufactured before 1898, or a replica thereof, which is recognized as being historical in nature or of historical significance and either (1) utilizes a match, friction, flint, or percussion ignition, or which utilizes a pin-fire cartridge in which the pin is part of the cartridge or (2) does not fire fixed ammunition or for which cartridge ammunition is not commercially available.

**bb.**"Trigger lock" means a commercially available device approved by the Superintendent of State Police which is operated with a key or combination lock that prevents a firearm from being discharged while the device is attached to the firearm. It may include, but need not be limited to, devices that obstruct the barrel or cylinder of the firearm, as well as devices that immobilize the trigger.

**cc.**"Trigger locking device" means a device that, if installed on a firearm and secured by means of a key or mechanically, electronically or electromechanically operated combination lock, prevents the firearm from being discharged without first deactivating or removing the device by means of a key or mechanically, electronically or electromechanically operated combination lock.

**dd.**"Personalized handgun" means a handgun which incorporates within its design, and as part of its original manufacture, technology which automatically limits its operational use and which cannot be readily deactivated, so that it may only be fired by an authorized or recognized user. The technology limiting the handgun's operational use may include, but not be limited to: radio frequency tagging, touch memory, remote control, fingerprint, magnetic encoding and other automatic user identification systems utilizing biometric, mechanical or

electronic systems. No make or model of a handgun shall be deemed to be a "personalized handgun" unless the Attorney General has determined, through testing or other reasonable means, that the handgun meets any reliability standards that the manufacturer may require for its commercially available handguns that are not personalized or, if the manufacturer has no such reliability standards, the handgun meets the reliability standards generally used in the industry for commercially available handguns.

**ee.** "Bump stock" means any device or instrument for a firearm that increases the rate of fire achievable with the firearm by using energy from the recoil of the firearm to generate a reciprocating action that facilitates repeated activation of the trigger.

**ff.** "Trigger crank" means any device or instrument to be attached to a firearm that repeatedly activates the trigger of the firearm through the use of a lever or other part that is turned in a circular motion; provided, however, the term shall not include any weapon initially designed and manufactured to fire through the use of a crank or lever.

**gg.** "Armor piercing ammunition" means: (1) a projectile or projectile core which may be used in a handgun and is constructed entirely, excluding the presence of traces of other substances, from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted uranium; or (2) a full jacketed projectile larger than .22 caliber designed and intended for use in a handgun and whose jacket has a weight of more than 25 percent of the total weight of the projectile. "Armor piercing ammunition" shall not include shotgun shot required by federal or State environmental or game regulations for hunting purposes, a frangible projectile designed for target shooting, a projectile which the United States Attorney General finds is primarily intended to be used for sporting purposes, or any other projectile or projectile core which the United States Attorney General finds is intended to be used for industrial purposes, including a charge used in an oil gas well perforating device.

**hh.** "Covert firearm" means any firearm that is constructed in a shape or configuration such that it does not resemble a handgun, rifle, shotgun, or machine gun including, but not limited to, a firearm that resembles a key-chain, pen, cigarette lighter, cigarette package, cellphone, smart phone, wallet, or cane.

**ii.** "Undetectable firearm" means a firearm that: (1) after removal of all parts other than major components, is not as detectable as the Security Exemplar, by walk-through metal detectors calibrated and operated to detect the Security Exemplar; or (2) includes a major component which, if the firearm were subjected to inspection by the types of detection devices commonly used at airports for security screening, would not generate an image that accurately depicts the shape of the component. "Undetectable firearm" shall not be construed to include a firearm subject to the provisions of paragraphs (3) through (6) of subsection (p) of *18 U.S.C. § 922*.

**jj.** "Major component" means the slide or cylinder or the frame or receiver of a firearm and, in the case of a rifle or shotgun, also includes the barrel.

**kk.** "Security Exemplar" means the Security Exemplar fabricated in accordance with subparagraph (C) of paragraph (2) of subsection (p) of *18 U.S.C. § 922*.

## History

L. 1978, c. 95; amended 1981, c. 363, § 1; 1983, c. 479, § 1; 1985, c. 360, § 1; 1987, c. 228, § 1; *1989, c. 120*, § 1; *1990, c. 32*, § 1; *1999, c. 233*, § 1, eff. Jan. 1, 2000; *1999, c. 255*, § 1, eff. Oct. 15, 1999; *2002, c. 130*, § 5, eff. Dec. 23, 2002; *2017, c. 323*, § 1, eff. Jan. 16, 2018; *2018, c. 38*, § 1, eff. June 13, 2018; *2018, c. 39*, § 1, eff. June 13, 2018; *2018, c. 138*, § 1, eff. Nov. 8, 2018.

Annotations

## LexisNexis® Notes

## *N.J. Stat. § 2C:39-1*

This section is current through New Jersey 218th Second Annual Session, L. 2019, c. 267, and J.R. 22

*LexisNexis® New Jersey Annotated Statutes  >  Title 2C. The New Jersey Code of Criminal Justice (Subts. 1 — 3)  >  Subtitle 2. Specific Offenses (Pts. 1 — 6)  >  Part 5. Offenses Against the Public; Public Order, Health and Decency (Chs. 33 — 40A)  >  Chapter 39. Weapons (§§ 2C:39-1 — 2C:39-20)*

## Notice

🚩 This section has more than one version with varying effective dates.

## § 2C:39-1. Definitions [Effective February 1, 2020]

The following definitions apply to this chapter and to chapter 58:

**a.**"Antique firearm" means any rifle or shotgun and "antique cannon" means a destructive device defined in paragraph (3) of subsection c. of this section, if the rifle, shotgun or destructive device, as the case may be, is incapable of being fired or discharged, or which does not fire fixed ammunition, regardless of date of manufacture, or was manufactured before 1898 for which cartridge ammunition is not commercially available, and is possessed as a curiosity or ornament or for its historical significance or value.

**b.**"Deface" means to remove, deface, cover, alter or destroy the name of the maker, model designation, manufacturer's serial number or any other distinguishing identification mark or number on any firearm.

**c.**"Destructive device" means any device, instrument or object designed to explode or produce uncontrolled combustion, including (1) any explosive or incendiary bomb, mine or grenade; (2) any rocket having a propellant charge of more than four ounces or any missile having an explosive or incendiary charge of more than one-quarter of an ounce; (3) any weapon capable of firing a projectile of a caliber greater than 60 caliber, except a shotgun or shotgun ammunition generally recognized as suitable for sporting purposes; (4) any Molotov cocktail or other device consisting of a breakable container containing flammable liquid and having a wick or similar device capable of being ignited. The term does not include any device manufactured for the purpose of illumination, distress signaling, line-throwing, safety or similar purposes.

**d.**"Dispose of" means to give, give away, lease, loan, keep for sale, offer, offer for sale, sell, transfer, or otherwise transfer possession.

**e.**"Explosive" means any chemical compound or mixture that is commonly used or is possessed for the purpose of producing an explosion and which contains any oxidizing and combustible materials or other ingredients in such proportions, quantities or packing that an ignition by fire, by friction, by concussion or by detonation of any part of the compound or mixture may cause such a sudden generation of highly heated gases that the resultant gaseous pressures are capable of producing destructive effects on contiguous objects. The term shall not include small arms ammunition, or explosives in the form prescribed by the official United States Pharmacopoeia.

N.J. Stat. § 2C:39-1

**f.**"Firearm" means any handgun, rifle, shotgun, machine gun, automatic or semi-automatic rifle, or any gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectable ball, slug, pellet, missile or bullet, or any gas, vapor or other noxious thing, by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances. It shall also include, without limitation, any firearm which is in the nature of an air gun, spring gun or pistol or other weapon of a similar nature in which the propelling force is a spring, elastic band, carbon dioxide, compressed or other gas or vapor, air or compressed air, or is ignited by compressed air, and ejecting a bullet or missile smaller than three-eighths of an inch in diameter, with sufficient force to injure a person.

**g.**"Firearm silencer" means any instrument, attachment, weapon or appliance for causing the firing of any gun, revolver, pistol or other firearm to be silent, or intended to lessen or muffle the noise of the firing of any gun, revolver, pistol or other firearm.

**h.**"Gravity knife" means any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force.

**i.**"Machine gun" means any firearm, mechanism or instrument not requiring that the trigger be pressed for each shot and having a reservoir, belt or other means of storing and carrying ammunition which can be loaded into the firearm, mechanism or instrument and fired therefrom. A machine gun also shall include, without limitation, any firearm with a trigger crank attached.

**j.**"Manufacturer" means any person who receives or obtains raw materials or parts and processes them into firearms or finished parts of firearms, except a person who exclusively processes grips, stocks and other nonmetal parts of firearms. The term does not include a person who repairs existing firearms or receives new and used raw materials or parts solely for the repair of existing firearms.

**k.**"Handgun" means any pistol, revolver or other firearm originally designed or manufactured to be fired by the use of a single hand.

**l.**"Retail dealer" means any person including a gunsmith, except a manufacturer or a wholesale dealer, who sells, transfers or assigns for a fee or profit any firearm or parts of firearms or ammunition which he has purchased or obtained with the intention, or for the purpose, of reselling or reassigning to persons who are reasonably understood to be the ultimate consumers, and includes any person who is engaged in the business of repairing firearms or who sells any firearm to satisfy a debt secured by the pledge of a firearm.

**m.**"Rifle" means any firearm designed to be fired from the shoulder and using the energy of the explosive in a fixed metallic cartridge to fire a single projectile through a rifled bore for each single pull of the trigger.

**n.**"Shotgun" means any firearm designed to be fired from the shoulder and using the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shots or a single projectile for each pull of the trigger, or any firearm designed to be fired from the shoulder which does not fire fixed ammunition.

**o.**"Sawed-off shotgun" means any shotgun having a barrel or barrels of less than 18 inches in length measured from the breech to the muzzle, or a rifle having a barrel or barrels of less than 16 inches in length measured from the breech to the muzzle, or any firearm made from a rifle or a shotgun, whether by alteration, or otherwise, if such firearm as modified has an overall length of less than 26 inches.

**p.**"Switchblade knife" means any knife or similar device which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife.

**q.**"Superintendent" means the Superintendent of the State Police.

**r.**"Weapon" means anything readily capable of lethal use or of inflicting serious bodily injury. The term includes, but is not limited to, all (1) firearms, even though not loaded or lacking a clip or other component to render them immediately operable; (2) components which can be readily assembled into

a weapon; (3) gravity knives, switchblade knives, daggers, dirks, stilettos, or other dangerous knives, billies, blackjacks, bludgeons, metal knuckles, sandclubs, slingshots, cesti or similar leather bands studded with metal filings or razor blades imbedded in wood; and (4) stun guns; and any weapon or other device which projects, releases, or emits tear gas or any other substance intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispensed in the air.

**s.** "Wholesale dealer" means any person, except a manufacturer, who sells, transfers, or assigns firearms, or parts of firearms, to persons who are reasonably understood not to be the ultimate consumers, and includes persons who receive finished parts of firearms and assemble them into completed or partially completed firearms, in furtherance of such purpose, except that it shall not include those persons dealing exclusively in grips, stocks and other nonmetal parts of firearms.

**t.** "Stun gun" means any weapon or other device which emits an electrical charge or current intended to temporarily or permanently disable a person.

**u.** "Ballistic knife" means any weapon or other device capable of lethal use and which can propel a knife blade.

**v.** "Imitation firearm" means an object or device reasonably capable of being mistaken for a firearm.

**w.** "Assault firearm" means:

> **(1)** The following firearms:
>
> > Algimec AGM1 type
> >
> > Any shotgun with a revolving cylinder such as the "Street Sweeper" or "Striker 12"
> >
> > Armalite AR-180 type
> >
> > Australian Automatic Arms SAR
> >
> > Avtomat Kalashnikov type semi-automatic firearms
> >
> > Beretta AR-70 and BM59 semi-automatic firearms
> >
> > Bushmaster Assault Rifle
> >
> > Calico M-900 Assault carbine and M-900
> >
> > CETME G3
> >
> > Chartered Industries of Singapore SR-88 type
> >
> > Colt AR-15 and CAR-15 series
> >
> > Daewoo K-1, K-2, Max 1 and Max 2, AR 100 types
> >
> > Demro TAC-1 carbine type
> >
> > Encom MP-9 and MP-45 carbine types
> >
> > FAMAS MAS223 types
> >
> > FN-FAL, FN-LAR, or FN-FNC type semi-automatic firearms
> >
> > Franchi SPAS 12 and LAW 12 shotguns
> >
> > G3SA type
> >
> > Galil type Heckler and Koch HK91, HK93, HK94, MP5, PSG-1
> >
> > Intratec TEC 9 and 22 semi-automatic firearms
> >
> > M1 carbine type
> >
> > M14S type

N.J. Stat. § 2C:39-1

MAC 10, MAC 11, MAC 11-9mm carbine type firearms

PJK M-68 carbine type

Plainfield Machine Company Carbine

Ruger K-Mini-14/5F and Mini-14/5RF

SIG AMT, SIG 550SP, SIG 551SP, SIG PE-57 types

SKS with detachable magazine type

Spectre Auto carbine type

Springfield Armory BM59 and SAR-48 type

Sterling MK-6, MK-7 and SAR types

Steyr A.U.G. semi-automatic firearms

USAS 12 semi-automatic type shotgun

Uzi type semi-automatic firearms

Valmet M62, M71S, M76, or M78 type semi-automatic firearms

Weaver Arm Nighthawk.

**(2)**Any firearm manufactured under any designation which is substantially identical to any of the firearms listed above.

**(3)**A semi-automatic shotgun with either a magazine capacity exceeding six rounds, a pistol grip, or a folding stock.

**(4)**A semi-automatic rifle with a fixed magazine capacity exceeding 10 rounds. "Assault firearm" shall not include a semi-automatic rifle which has an attached tubular device and which is capable of operating only with .22 caliber rimfire ammunition.

**(5)**A part or combination of parts designed or intended to convert a firearm into an assault firearm, or any combination of parts from which an assault firearm may be readily assembled if those parts are in the possession or under the control of the same person.

**(6)**A firearm with a bump stock attached.

**x.**"Semi-automatic" means a firearm which fires a single projectile for each single pull of the trigger and is self-reloading or automatically chambers a round, cartridge, or bullet.

**y.**"Large capacity ammunition magazine" means a box, drum, tube or other container which is capable of holding more than 10 rounds of ammunition to be fed continuously and directly therefrom into a semi-automatic firearm. The term shall not include an attached tubular device which is capable of holding only .22 caliber rimfire ammunition.

**z.**"Pistol grip" means a well-defined handle, similar to that found on a handgun, that protrudes conspicuously beneath the action of the weapon, and which permits the shotgun to be held and fired with one hand.

**aa.**"Antique handgun" means a handgun manufactured before 1898, or a replica thereof, which is recognized as being historical in nature or of historical significance and either (1) utilizes a match, friction, flint, or percussion ignition, or which utilizes a pin-fire cartridge in which the pin is part of the cartridge or (2) does not fire fixed ammunition or for which cartridge ammunition is not commercially available.

**bb.**"Trigger lock" means a commercially available device approved by the Superintendent of State Police which is operated with a key or combination lock that prevents a firearm from being discharged

while the device is attached to the firearm. It may include, but need not be limited to, devices that obstruct the barrel or cylinder of the firearm, as well as devices that immobilize the trigger.

**cc.** "Trigger locking device" means a device that, if installed on a firearm and secured by means of a key or mechanically, electronically or electromechanically operated combination lock, prevents the firearm from being discharged without first deactivating or removing the device by means of a key or mechanically, electronically or electromechanically operated combination lock.

**dd.** "Personalized handgun" means a handgun which incorporates within its design a permanent programmable feature as part of its manufacture that cannot be deactivated and renders the personalized handgun reasonably resistant to being fired except when activated by the lawful owner or other authorized user. No make or model of a handgun shall be deemed to be a "personalized handgun" unless the Personalized Handgun Authorization Commission established pursuant to section 1 of *P.L.2019, c.164* (*C.2C:58-2.7*) has determined in accordance with section 2 of *P.L.2019, c.164* (*C.2C:58-2.8*), that the personalized handgun meets the performance standards and qualifying criteria established pursuant to section 2 of *P.L.2019, c.164* (*C.2C:58-2.8*).

**ee.** "Bump stock" means any device or instrument for a firearm that increases the rate of fire achievable with the firearm by using energy from the recoil of the firearm to generate a reciprocating action that facilitates repeated activation of the trigger.

**ff.** "Trigger crank" means any device or instrument to be attached to a firearm that repeatedly activates the trigger of the firearm through the use of a lever or other part that is turned in a circular motion; provided, however, the term shall not include any weapon initially designed and manufactured to fire through the use of a crank or lever.

**gg.** "Armor piercing ammunition" means: (1) a projectile or projectile core which may be used in a handgun and is constructed entirely, excluding the presence of traces of other substances, from one or a combination of tungsten alloys, steel, iron, brass, bronze, beryllium copper, or depleted uranium; or (2) a full jacketed projectile larger than .22 caliber designed and intended for use in a handgun and whose jacket has a weight of more than 25 percent of the total weight of the projectile. "Armor piercing ammunition" shall not include shotgun shot required by federal or State environmental or game regulations for hunting purposes, a frangible projectile designed for target shooting, a projectile which the United States Attorney General finds is primarily intended to be used for sporting purposes, or any other projectile or projectile core which the United States Attorney General finds is intended to be used for industrial purposes, including a charge used in an oil gas well perforating device.

**hh.** "Covert firearm" means any firearm that is constructed in a shape or configuration such that it does not resemble a handgun, rifle, shotgun, or machine gun including, but not limited to, a firearm that resembles a key-chain, pen, cigarette lighter, cigarette package, cellphone, smart phone, wallet, or cane.

**ii.** "Undetectable firearm" means a firearm that: (1) after removal of all parts other than major components, is not as detectable as the Security Exemplar, by walk-through metal detectors calibrated and operated to detect the Security Exemplar; or (2) includes a major component which, if the firearm were subjected to inspection by the types of detection devices commonly used at airports for security screening, would not generate an image that accurately depicts the shape of the component. "Undetectable firearm" shall not be construed to include a firearm subject to the provisions of paragraphs (3) through (6) of subsection (p) of *18 U.S.C. § 922*.

**jj.** "Major component" means the slide or cylinder or the frame or receiver of a firearm and, in the case of a rifle or shotgun, also includes the barrel.

**kk.** "Security Exemplar" means the Security Exemplar fabricated in accordance with subparagraph (C) of paragraph (2) of subsection (p) of *18 U.S.C. § 922*.

**ll.** "Authorized user" means the lawful owner of a personalized handgun or a person to whom the owner has given consent to use the personalized handgun.

# EXHIBIT "6"

Exhibit 6
0038

## NY CLS Penal § 265.00

Current through 2019 released Chapters 1-491

*New York Consolidated Laws Service  >  Penal Law (Pts. ONE — FOUR)  >  Part THREE Specific Offenses (Titles G — P)  >  Title P Offenses Against Public Safety (Arts. 265 — 275)  >  Article 265 Firearms and Other Dangerous Weapons (§§ 265.00 — 265.55)*

## Notice

⚑ This section has more than one version with varying effective dates.

## § 265.00. Definitions.

As used in this article and in article four hundred, the following terms shall mean and include:

**1.** "Machine-gun" means a weapon of any description, irrespective of size, by whatever name known, loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged from a magazine with one continuous pull of the trigger and includes a sub-machine gun.

**2.** "Firearm silencer" means any instrument, attachment, weapon or appliance for causing the firing of any gun, revolver, pistol or other firearms to be silent, or intended to lessen or muffle the noise of the firing of any gun, revolver, pistol or other firearms.

**3.** "Firearm" means (a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches; or (e) an assault weapon. For the purpose of this subdivision the length of the barrel on a shotgun or rifle shall be determined by measuring the distance between the muzzle and the face of the bolt, breech, or breechlock when closed and when the shotgun or rifle is cocked; the overall length of a weapon made from a shotgun or rifle is the distance between the extreme ends of the weapon measured along a line parallel to the center line of the bore. Firearm does not include an antique firearm.

**4.** "Switchblade knife" means any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife.

**5.** "Gravity knife" means any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device.

**5-a.** "Pilum ballistic knife" means any knife which has a blade which can be projected from the handle by hand pressure applied to a button, lever, spring or other device in the handle of the knife.

**5-b.** "Metal knuckle knife" means a weapon that, when closed, cannot function as a set of plastic knuckles or metal knuckles, nor as a knife and when open, can function as both a set of plastic knuckles or metal knuckles as well as a knife.

**5-c.** "Automatic knife" includes a stiletto, a switchblade knife, a cane sword, a pilum ballistic knife, and a metal knuckle knife.

**5-d.** "Undetectable knife" means any knife or other instrument, which does not utilize materials that are detectable by a metal detector or magnetometer when set at a standard calibration, that is capable of ready use as a stabbing or cutting weapon and was commercially manufactured to be used as a weapon.

**6.** "Dispose of" means to dispose of, give, give away, lease-loan, keep for sale, offer, offer for sale, sell, transfer and otherwise dispose of.

**7.** "Deface" means to remove, deface, cover, alter or destroy the manufacturer's serial number or any other distinguishing number or identification mark.

**8.** "Gunsmith" means any person, firm, partnership, corporation or company who engages in the business of repairing, altering, assembling, manufacturing, cleaning, polishing, engraving or trueing, or who performs any mechanical operation on, any firearm, large capacity ammunition feeding device or machine-gun.

**9.** "Dealer in firearms" means any person, firm, partnership, corporation or company who engages in the business of purchasing, selling, keeping for sale, loaning, leasing, or in any manner disposing of, any assault weapon, large capacity ammunition feeding device, pistol or revolver.

**10.** "Licensing officer" means in the city of New York the police commissioner of that city; in the county of Nassau the commissioner of police of that county; in the county of Suffolk the sheriff of that county except in the towns of Babylon, Brookhaven, Huntington, Islip and Smithtown, the commissioner of police of that county; for the purposes of section 400.01 of this chapter the superintendent of state police; and elsewhere in the state a judge or justice of a court of record having his office in the county of issuance.

**11.** "Rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

**12.** "Shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger.

**13.** "Cane Sword" means a cane or swagger stick having concealed within it a blade that may be used as a sword or stilletto.

**14.** [There are two subs 14] "Chuka stick" means any device designed primarily as a weapon, consisting of two or more lengths of a rigid material joined together by a thong, rope or chain in such a manner as to allow free movement of a portion of the device while held in the hand and capable of being rotated in such a manner as to inflict serious injury upon a person by striking or choking. These devices are also known as nunchakus and centrifugal force sticks.

**14.** [There are two subs 14] "Antique firearm" means:

Any unloaded muzzle loading pistol or revolver with a matchlock, flintlock, percussion cap, or similar type of ignition system, or a pistol or revolver which uses fixed cartridges which are no longer available in the ordinary channels of commercial trade.

**15.** "Loaded firearm" means any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm.

**15-a.** "Electronic dart gun" means any device designed primarily as a weapon, the purpose of which is to momentarily stun, knock out or paralyze a person by passing an electrical shock to such person by means of a dart or projectile.

**15-b.** "Kung Fu star" means a disc-like object with sharpened points on the circumference thereof and is designed for use primarily as a weapon to be thrown.

**15-c.** "Electronic stun gun" means any device designed primarily as a weapon, the purpose of which is to stun, cause mental disorientation, knock out or paralyze a person by passing a high voltage electrical shock to such person.

**16.** "Certified not suitable to possess a self-defense spray device, a rifle or shotgun" means that the director or physician in charge of any hospital or institution for mental illness, public or private, has certified to the superintendent of state police or to any organized police department of a county, city, town or village of this state, that a person who has been judicially adjudicated incompetent, or who has been confined to such institution for mental illness pursuant to judicial authority, is not suitable to possess a self-defense spray device, as defined in section 265.20 of this article, or a rifle or shotgun.

**17.** "Serious offense" means

**(a)** any of the following offenses defined in the former penal law as in force and effect immediately prior to September first, nineteen hundred sixty-seven: illegally using, carrying or possessing a pistol or other dangerous weapon; making or possessing burglar's instruments; buying or receiving stolen property; unlawful entry of a building; aiding escape from prison; that kind of disorderly conduct defined in subdivisions six and eight of section seven hundred twenty-two of such former penal law; violations of sections four hundred eighty-three, four hundred eighty-three-b, four hundred eighty-four-h and article one hundred six of such former penal law; that kind of criminal sexual act or rape which was designated as a misdemeanor; violation of section seventeen hundred forty-seven-d and seventeen hundred forty-seven-e of such former penal law; any violation of any provision of article thirty-three of the public health law relating to narcotic drugs which was defined as a misdemeanor by section seventeen hundred fifty-one-a of such former penal law, and any violation of any provision of article thirty-three-A of the public health law relating to depressant and stimulant drugs which was defined as a misdemeanor by section seventeen hundred forty-seven-b of such former penal law.

**(b)** [As amended, _L 2010, ch 232, § 2_] any of the following offenses defined in the penal law: illegally using, carrying or possessing a pistol or other dangerous weapon; possession of burglar's tools; criminal possession of stolen property in the third degree; escape in the third degree; jostling; fraudulent accosting; endangering the welfare of a child; the offenses defined in article two hundred thirty-five; issuing abortional articles; permitting prostitution; promoting prostitution in the third degree; stalking in the fourth degree; stalking in the third degree; the offenses defined in article one hundred thirty; the offenses defined in article two hundred twenty.

**(b)** [As amended, _L 2010, ch 232, § 3_] any of the following offenses defined in the penal law: illegally using, carrying or possessing a pistol or other dangerous weapon; possession of burglar's tools; criminal possession of stolen property in the third degree; escape in the third degree; jostling; fraudulent accosting; endangering the welfare of a child; the offenses defined in article two hundred thirty-five; issuing abortional articles; permitting prostitution; promoting prostitution in the third degree; stalking in the third degree; stalking in the fourth degree; the offenses defined in article one hundred thirty; the offenses defined in article two hundred twenty.

**(c)** any of the following offenses, where the defendant and the person against whom the offense was committed were members of the same family or household as defined in subdivision one of _section 530.11 of the criminal procedure law_ and as established pursuant to _section 370.15 of the criminal procedure law_: assault in the third degree; menacing in the third degree; menacing in the second degree; criminal obstruction of breathing or blood circulation; unlawful imprisonment in the second degree; coercion in the third degree; criminal tampering in the third degree; criminal contempt in the second degree; harassment in the first degree; aggravated harassment in the second degree; criminal trespass in the third degree; criminal trespass in the second degree; arson in the fifth degree; or attempt to commit any of the above-listed offenses.

NY CLS Penal § 265.00

**18.** "Armor piercing ammunition" means any ammunition capable of being used in pistols or revolvers containing a projectile or projectile core, or a projectile or projectile core for use in such ammunition, that is constructed entirely (excluding the presence of traces of other substances) from one or a combination of any of the following: tungsten alloys, steel, iron, brass, bronze, beryllium copper, or uranium.

**19.** "Duly authorized instructor" means (a) a duly commissioned officer of the United States army, navy, marine corps or coast guard, or of the national guard of the state of New York; or (b) a duly qualified adult citizen of the United States who has been granted a certificate as an instructor in small arms practice issued by the United States army, navy or marine corps, or by the adjutant general of this state, or by the national rifle association of America, a not-for-profit corporation duly organized under the laws of this state; or (c) by a person duly qualified and designated by the department of environmental conservation under paragraph d of subdivision six of *section 11-0713 of the environmental conservation law* as its agent in the giving of instruction and the making of certifications of qualification in responsible hunting practices.

**20.** "Disguised gun" means any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive and is designed and intended to appear to be something other than a gun.

**21.** "Semiautomatic" means any repeating rifle, shotgun or pistol, regardless of barrel or overall length, which utilizes a portion of the energy of a firing cartridge or shell to extract the fired cartridge case or spent shell and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge or shell.

**22.** "Assault weapon" means

**(a)** a semiautomatic rifle that has an ability to accept a detachable magazine and has at least one of the following characteristics:

**(i)** a folding or telescoping stock;

**(ii)** a pistol grip that protrudes conspicuously beneath the action of the weapon;

**(iii)** a thumbhole stock;

**(iv)** a second handgrip or a protruding grip that can be held by the non-trigger hand;

**(v)** a bayonet mount;

**(vi)** a flash suppressor, muzzle break, muzzle compensator, or threaded barrel designed to accommodate a flash suppressor, muzzle break, or muzzle compensator;

**(vii)** a grenade launcher; or

**(b)** a semiautomatic shotgun that has at least one of the following characteristics:

**(i)** a folding or telescoping stock;

**(ii)** a thumbhole stock;

**(iii)** a second handgrip or a protruding grip that can be held by the non-trigger hand;

**(iv)** a fixed magazine capacity in excess of seven rounds;

**(v)** an ability to accept a detachable magazine; or

**(c)** a semiautomatic pistol that has an ability to accept a detachable magazine and has at least one of the following characteristics:

**(i)** a folding or telescoping stock;

**(ii)** a thumbhole stock;

**(iii)** a second handgrip or a protruding grip that can be held by the non-trigger hand;

**(iv)** capacity to accept an ammunition magazine that attaches to the pistol outside of the pistol grip;

**(v)** a threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip, or silencer;

**(vi)** a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the non-trigger hand without being burned;

**(vii)** a manufactured weight of fifty ounces or more when the pistol is unloaded; or

**(viii)** a semiautomatic version of an automatic rifle, shotgun or firearm;

**(d)** a revolving cylinder shotgun;

**(e)** a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic pistol or weapon defined in subparagraph (v) of paragraph (e) of subdivision twenty-two of section 265.00 of this chapter as added by chapter one hundred eighty-nine of the laws of two thousand and otherwise lawfully possessed pursuant to such chapter of the laws of two thousand prior to September fourteenth, nineteen hundred ninety-four;

**(f)** a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic pistol or weapon defined in paragraph (a), (b) or (c) of this subdivision, possessed prior to the date of enactment of the chapter of the laws of two thousand thirteen which added this paragraph;

**(g)** provided, however, that such term does not include:

**(i)** any rifle, shotgun or pistol that (A) is manually operated by bolt, pump, lever or slide action; (B) has been rendered permanently inoperable; or (C) is an antique firearm as defined in *18 U.S.C. 921(a)(16)*;

**(ii)** a semiautomatic rifle that cannot accept a detachable magazine that holds more than five rounds of ammunition;

**(iii)** a semiautomatic shotgun that cannot hold more than five rounds of ammunition in a fixed or detachable magazine; or

**(iv)** a rifle, shotgun or pistol, or a replica or a duplicate thereof, specified in Appendix A to *18 U.S.C. 922* as such weapon was manufactured on October first, nineteen hundred ninety-three. The mere fact that a weapon is not listed in Appendix A shall not be construed to mean that such weapon is an assault weapon;

**(v)** any weapon validly registered pursuant to subdivision sixteen-a of section 400.00 of this chapter. Such weapons shall be subject to the provisions of paragraph (h) of this subdivision;

**(vi)** any firearm, rifle, or shotgun that was manufactured at least fifty years prior to the current date, but not including replicas thereof that is validly registered pursuant to subdivision sixteen-a of section 400.00 of this chapter;

**(h)** Any weapon defined in paragraph (e) or (f) of this subdivision and any large capacity ammunition feeding device that was legally possessed by an individual prior to the enactment of the chapter of the laws of two thousand thirteen which added this paragraph, may only be sold to, exchanged with or disposed of to a purchaser authorized to possess such weapons or to an individual or entity outside of the state provided that any such transfer to an individual or entity outside of the state must be reported to the entity wherein the weapon is registered within seventy-two hours of such transfer. An individual who transfers any such weapon or large capacity ammunition device to an individual inside New York state or without complying with the provisions of this paragraph shall be guilty of a class A misdemeanor unless such large capacity ammunition feeding device, the possession of which is made illegal by the chapter of the laws of two thousand thirteen which added this paragraph, is transferred within one year of the effective date of the chapter of the laws of two thousand thirteen which added this paragraph.

**23.** "Large capacity ammunition feeding device" means a magazine, belt, drum, feed strip, or similar device, that (a) has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition, or [pars (b) and (c) are suspended and not effective as stated in *Laws 2013, ch 1, § 58*, sub b note below] (b) contains more than seven rounds of ammunition, or (c) is obtained after the effective date of the chapter of the laws of two thousand thirteen which amended this subdivision and has a capacity of, or that can be readily restored or converted to accept, more than seven rounds of ammunition; provided, however, that such term does not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition or a feeding device that is a curio or relic. A feeding device that is a curio or relic is defined as a device that (i) was manufactured at least fifty years prior to the current date, (ii) is only capable of being used exclusively in a firearm, rifle, or shotgun that was manufactured at least fifty years prior to the current date, but not including replicas thereof, (iii) is possessed by an individual who is not prohibited by state or federal law from possessing a firearm and (iv) is registered with the division of state police pursuant to subdivision sixteen-a of section 400.00 of this chapter, except such feeding devices transferred into the state may be registered at any time, provided they are registered within thirty days of their transfer into the state. Notwithstanding paragraph (h) of subdivision twenty-two of this section, such feeding devices may be transferred provided that such transfer shall be subject to the provisions of section 400.03 of this chapter including the check required to be conducted pursuant to such section.

**24.** "Seller of ammunition" means any person, firm, partnership, corporation or company who engages in the business of purchasing, selling or keeping ammunition.

**25.** "Qualified retired New York or federal law enforcement officer" means an individual who is a retired police officer as police officer is defined in subdivision thirty-four of *section 1.20 of the criminal procedure law*, a retired peace officer as peace officer is defined in *section 2.10 of the criminal procedure law* or a retired federal law enforcement officer as federal law enforcement officer is defined in *section 2.15 of the criminal procedure law*, who: (a) separated from service in good standing from a public agency located in New York state in which such person served as either a police officer, peace officer or federal law enforcement officer; and (b) before such separation, was authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and had statutory powers of arrest, pursuant to their official duties, under the criminal procedure law; and (c) (i) before such separation, served as either a police officer, peace officer or federal law enforcement officer for five years or more and at the time of separation, is such an officer; or (ii) separated from service with such agency, after completing any applicable probationary period of such service, due to a service-connected disability, as determined by such agency at or before the time of separation; and (d)(i) has not been found by a qualified medical professional employed by such agency to be unqualified for reasons relating to mental health; or (ii) has not entered into an agreement with such agency from which the individual is separating from service in which that individual acknowledges he or she is not qualified for reasons relating to mental health; and (e) is not otherwise prohibited by New York or federal law from possessing any firearm.

**26.** "Rapid-fire modification device" means any bump stock, trigger crank, binary trigger system, burst trigger system, or any other device that is designed to accelerate the rate of fire of a semi-automatic firearm, rifle or shotgun.

**27.** "Bump stock" means any device or instrument that increases the rate of fire achievable with a semi-automatic firearm, rifle or shotgun by using energy from the recoil of the weapon to generate a reciprocating action that facilitates repeated activation of the trigger.

**28.** "Trigger crank" means any device or instrument that repeatedly activates the trigger of a semi-automatic firearm, rifle or shotgun through the use of a lever or other part that is turned in a circular motion and thereby accelerates the rate of fire of such firearm, rifle or shotgun, provided, however, that "trigger crank" shall not include any weapon initially designed and manufactured to fire through the use of a crank or lever.

**29.** "Binary trigger system" means any device that, when installed in or attached to a semi-automatic firearm rifle, or shotgun causes that weapon to fire once when the trigger is pulled and again when the trigger is released.

**30.** "Burst trigger system" means any device that, when installed in or attached to a semi-automatic firearm, rifle, or shot gun, allows that weapon to discharge two or more shots with a single pull or the trigger by altering the trigger reset.

## History

Add, L 1965, ch 1030, § 1, eff Sept 1, 1967, with substance derived from § 1896; amd, L 1967, ch 791, § 46; L 1969, ch 123, § 1, eff Sept 1, 1969; L 1972, ch 588, § 1; L 1972, ch 605, § 1; L 1974, ch 179, § 1, eff Sept 1, 1974; L 1974, ch 986, §§ 1, 2; L 1974, ch 1041, § 1, eff Sept 1, 1974; L 1976, ch 217, § 1, eff Sept 1, 1976; L 1982, ch 492, § 1; L 1985, ch 61, § 1, eff Nov 1, 1985; L 1986, ch 328, § 2, eff Nov 1, 1986; L 1986, ch 646, § 1, eff Nov 1, 1986; L 1988, ch 264, § 1; *L 1990, ch 264, § 1*, eff Nov 1, 1990; *L 1995, ch 219, § 2*, eff Nov 1, 1995; *L 1996, ch 354, § 2*, eff Nov 1, 1996; *L 1997, ch 446, § 2*, eff Aug 25, 1997; *L 1998, ch 378, § 1*, eff Nov 1, 1998; *L 1999, ch 210, § 1*, eff Nov 1, 1999; *L 1999, ch 635, §§ 11*, 15, eff Dec 1, 1999; *L 2000, ch 189, §§ 8*–10, eff Nov 1, 2000; *L 2008, ch 257, § 3*, eff Nov 1, 2008; *L 2010, ch 232, §§ 2*, 3, eff July 30, 2010; *L 2013, ch 1, § 37*, eff Jan 15, 2013; *L 2013, ch 1, § 38*, eff April 15, 2013; *L 2013, ch 1, § 39*, eff March 16, 2013; *L 2013, ch 98, § 1*, eff July 5, 2013; *L 2018, ch 60, § 1*, eff June 11, 2018; *L 2019, ch 34, § 3*, eff May 30, 2019; *L 2019, ch 130, § 1*, eff July 29, 2019; *L 2019, ch 146, § 1*, eff Nov 1, 2019.

Annotations

## Notes

**Editor's Notes**

*Laws 2018, ch 60, § 8*, eff June 11, 2018, provides:

§ 8. This act shall take effect on the sixtieth day after it shall have become a law.

*Laws 1997, ch 446, §§ 1*, **7,** eff Aug 25, 1997, provide as follows:

Section 1. This act shall be known and may be cited as the "Westchester county handgun record-keeping and accountability act". (Amd, *L 1997, ch 447, § 1*, eff Aug 25, 1997.).

§ 7. This act shall take effect immediately and in Westchester county shall apply to licenses issued on or after such date. (Amd, *L 1997, ch 447, § 4*, eff Aug 25, 1997.).

*Laws 1997, ch 447, § 5*, eff Aug 25, 1997, provides as follows:

§ 5. This act shall take effect on the same date as a chapter of the laws of 1997, amending the penal law enacting the Westchester county handgun record-keeping and accountability act, as proposed in legislative bills numbers S. 5498-A and A. 8311-A, takes effect, and nothing contained in such chapter shall be construed as abridging the five year period applicable within Suffolk county with respect to the expiration of licenses to carry or possess a revolver.

*Laws 1999, ch 635, §§ 1*, **2 and 17,** eff Dec 1, 1999, provide as follows:

Section 1. Short title. This act shall be known and may be cited as the "clinic access and anti-stalking act of 1999."

## NY CLS Penal § 265.00

Current through 2019 released Chapters 1-491

*New York Consolidated Laws Service  >  Penal Law (Pts. ONE — FOUR)  >  Part THREE Specific Offenses (Titles G — P)  >  Title P Offenses Against Public Safety (Arts. 265 — 275)  >  Article 265 Firearms and Other Dangerous Weapons (§§ 265.00 — 265.55)*

## Notice

⚑ This section has more than one version with varying effective dates.

## § 265.00. Definitions. [Effective January 26, 2020]

As used in this article and in article four hundred, the following terms shall mean and include:

**1.** "Machine-gun" means a weapon of any description, irrespective of size, by whatever name known, loaded or unloaded, from which a number of shots or bullets may be rapidly or automatically discharged from a magazine with one continuous pull of the trigger and includes a sub-machine gun.

**2.** "Firearm silencer" means any instrument, attachment, weapon or appliance for causing the firing of any gun, revolver, pistol or other firearms to be silent, or intended to lessen or muffle the noise of the firing of any gun, revolver, pistol or other firearms.

**3.** "Firearm" means (a) any pistol or revolver; or (b) a shotgun having one or more barrels less than eighteen inches in length; or (c) a rifle having one or more barrels less than sixteen inches in length; or (d) any weapon made from a shotgun or rifle whether by alteration, modification, or otherwise if such weapon as altered, modified, or otherwise has an overall length of less than twenty-six inches; or (e) an assault weapon. For the purpose of this subdivision the length of the barrel on a shotgun or rifle shall be determined by measuring the distance between the muzzle and the face of the bolt, breech, or breechlock when closed and when the shotgun or rifle is cocked; the overall length of a weapon made from a shotgun or rifle is the distance between the extreme ends of the weapon measured along a line parallel to the center line of the bore. Firearm does not include an antique firearm.

**3-a.** "Major component of a firearm, rifle or shotgun" means the barrel, the slide or cylinder, the frame, or receiver of the firearm, rifle, or shotgun.

**4.** "Switchblade knife" means any knife which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife.

**5.** "Gravity knife" means any knife which has a blade which is released from the handle or sheath thereof by the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device.

**5-a.** "Pilum ballistic knife" means any knife which has a blade which can be projected from the handle by hand pressure applied to a button, lever, spring or other device in the handle of the knife.

**5-b.** "Metal knuckle knife" means a weapon that, when closed, cannot function as a set of plastic knuckles or metal knuckles, nor as a knife and when open, can function as both a set of plastic knuckles or metal knuckles as well as a knife.

**5-c.** "Automatic knife" includes a stiletto, a switchblade knife, a cane sword, a pilum ballistic knife, and a metal knuckle knife.

**5-d.** "Undetectable knife" means any knife or other instrument, which does not utilize materials that are detectable by a metal detector or magnetometer when set at a standard calibration, that is capable of ready use as a stabbing or cutting weapon and was commercially manufactured to be used as a weapon.

**6.** "Dispose of" means to dispose of, give, give away, lease-loan, keep for sale, offer, offer for sale, sell, transfer and otherwise dispose of.

**7.** "Deface" means to remove, deface, cover, alter or destroy the manufacturer's serial number or any other distinguishing number or identification mark.

**8.** "Gunsmith" means any person, firm, partnership, corporation or company who engages in the business of repairing, altering, assembling, manufacturing, cleaning, polishing, engraving or trueing, or who performs any mechanical operation on, any firearm, large capacity ammunition feeding device or machine-gun.

**9.** "Dealer in firearms" means any person, firm, partnership, corporation or company who engages in the business of purchasing, selling, keeping for sale, loaning, leasing, or in any manner disposing of, any assault weapon, large capacity ammunition feeding device, pistol or revolver.

**10.** "Licensing officer" means in the city of New York the police commissioner of that city; in the county of Nassau the commissioner of police of that county; in the county of Suffolk the sheriff of that county except in the towns of Babylon, Brookhaven, Huntington, Islip and Smithtown, the commissioner of police of that county; for the purposes of section 400.01 of this chapter the superintendent of state police; and elsewhere in the state a judge or justice of a court of record having his office in the county of issuance.

**11.** "Rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

**12.** "Shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger.

**13.** "Cane Sword" means a cane or swagger stick having concealed within it a blade that may be used as a sword or stilletto.

**14.** [There are two subs 14] "Chuka stick" means any device designed primarily as a weapon, consisting of two or more lengths of a rigid material joined together by a thong, rope or chain in such a manner as to allow free movement of a portion of the device while held in the hand and capable of being rotated in such a manner as to inflict serious injury upon a person by striking or choking. These devices are also known as nunchakus and centrifugal force sticks.

**14.** [There are two subs 14] "Antique firearm" means:

Any unloaded muzzle loading pistol or revolver with a matchlock, flintlock, percussion cap, or similar type of ignition system, or a pistol or revolver which uses fixed cartridges which are no longer available in the ordinary channels of commercial trade.

**15.** "Loaded firearm" means any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm.

**15-a.** "Electronic dart gun" means any device designed primarily as a weapon, the purpose of which is to momentarily stun, knock out or paralyze a person by passing an electrical shock to such person by means of a dart or projectile.

**15-b.** "Kung Fu star" means a disc-like object with sharpened points on the circumference thereof and is designed for use primarily as a weapon to be thrown.

**15-c.** "Electronic stun gun" means any device designed primarily as a weapon, the purpose of which is to stun, cause mental disorientation, knock out or paralyze a person by passing a high voltage electrical shock to such person.

**16.** "Certified not suitable to possess a self-defense spray device, a rifle or shotgun" means that the director or physician in charge of any hospital or institution for mental illness, public or private, has certified to the superintendent of state police or to any organized police department of a county, city, town or village of this state, that a person who has been judicially adjudicated incompetent, or who has been confined to such institution for mental illness pursuant to judicial authority, is not suitable to possess a self-defense spray device, as defined in section 265.20 of this article, or a rifle or shotgun.

**17.** "Serious offense" means

**(a)** any of the following offenses defined in the former penal law as in force and effect immediately prior to September first, nineteen hundred sixty-seven: illegally using, carrying or possessing a pistol or other dangerous weapon; making or possessing burglar's instruments; buying or receiving stolen property; unlawful entry of a building; aiding escape from prison; that kind of disorderly conduct defined in subdivisions six and eight of section seven hundred twenty-two of such former penal law; violations of sections four hundred eighty-three, four hundred eighty-three-b, four hundred eighty-four-h and article one hundred six of such former penal law; that kind of criminal sexual act or rape which was designated as a misdemeanor; violation of section seventeen hundred forty-seven-d and seventeen hundred forty-seven-e of such former penal law; any violation of any provision of article thirty-three of the public health law relating to narcotic drugs which was defined as a misdemeanor by section seventeen hundred fifty-one-a of such former penal law, and any violation of any provision of article thirty-three-A of the public health law relating to depressant and stimulant drugs which was defined as a misdemeanor by section seventeen hundred forty-seven-b of such former penal law.

**(b)** [As amended, *L 2010, ch 232, § 2*] any of the following offenses defined in the penal law: illegally using, carrying or possessing a pistol or other dangerous weapon; possession of burglar's tools; criminal possession of stolen property in the third degree; escape in the third degree; jostling; fraudulent accosting; endangering the welfare of a child; the offenses defined in article two hundred thirty-five; issuing abortional articles; permitting prostitution; promoting prostitution in the third degree; stalking in the fourth degree; stalking in the third degree; the offenses defined in article one hundred thirty; the offenses defined in article two hundred twenty.

**(b)** [As amended, *L 2010, ch 232, § 3*] any of the following offenses defined in the penal law: illegally using, carrying or possessing a pistol or other dangerous weapon; possession of burglar's tools; criminal possession of stolen property in the third degree; escape in the third degree; jostling; fraudulent accosting; endangering the welfare of a child; the offenses defined in article two hundred thirty-five; issuing abortional articles; permitting prostitution; promoting prostitution in the third degree; stalking in the third degree; stalking in the fourth degree; the offenses defined in article one hundred thirty; the offenses defined in article two hundred twenty.

**(c)** any of the following offenses, where the defendant and the person against whom the offense was committed were members of the same family or household as defined in subdivision one of *section 530.11 of the criminal procedure law* and as established pursuant to *section 370.15 of the criminal procedure law*: assault in the third degree; menacing in the third degree; menacing in the second degree; criminal obstruction of breathing or blood circulation; unlawful imprisonment in the second degree; coercion in the third degree; criminal tampering in the third degree; criminal

contempt in the second degree; harassment in the first degree; aggravated harassment in the second degree; criminal trespass in the third degree; criminal trespass in the second degree; arson in the fifth degree; or attempt to commit any of the above-listed offenses.

**18.** "Armor piercing ammunition" means any ammunition capable of being used in pistols or revolvers containing a projectile or projectile core, or a projectile or projectile core for use in such ammunition, that is constructed entirely (excluding the presence of traces of other substances) from one or a combination of any of the following: tungsten alloys, steel, iron, brass, bronze, beryllium copper, or uranium.

**19.** "Duly authorized instructor" means (a) a duly commissioned officer of the United States army, navy, marine corps or coast guard, or of the national guard of the state of New York; or (b) a duly qualified adult citizen of the United States who has been granted a certificate as an instructor in small arms practice issued by the United States army, navy or marine corps, or by the adjutant general of this state, or by the national rifle association of America, a not-for-profit corporation duly organized under the laws of this state; or (c) by a person duly qualified and designated by the department of environmental conservation under paragraph d of subdivision six of *section 11-0713 of the environmental conservation law* as its agent in the giving of instruction and the making of certifications of qualification in responsible hunting practices.

**20.** "Disguised gun" means any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive and is designed and intended to appear to be something other than a gun.

**21.** "Semiautomatic" means any repeating rifle, shotgun or pistol, regardless of barrel or overall length, which utilizes a portion of the energy of a firing cartridge or shell to extract the fired cartridge case or spent shell and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge or shell.

**22.** "Assault weapon" means

**(a)** a semiautomatic rifle that has an ability to accept a detachable magazine and has at least one of the following characteristics:

**(i)** a folding or telescoping stock;

**(ii)** a pistol grip that protrudes conspicuously beneath the action of the weapon;

**(iii)** a thumbhole stock;

**(iv)** a second handgrip or a protruding grip that can be held by the non-trigger hand;

**(v)** a bayonet mount;

**(vi)** a flash suppressor, muzzle break, muzzle compensator, or threaded barrel designed to accommodate a flash suppressor, muzzle break, or muzzle compensator;

**(vii)** a grenade launcher; or

**(b)** a semiautomatic shotgun that has at least one of the following characteristics:

**(i)** a folding or telescoping stock;

**(ii)** a thumbhole stock;

**(iii)** a second handgrip or a protruding grip that can be held by the non-trigger hand;

**(iv)** a fixed magazine capacity in excess of seven rounds;

**(v)** an ability to accept a detachable magazine; or

**(c)** a semiautomatic pistol that has an ability to accept a detachable magazine and has at least one of the following characteristics:

**(i)**a folding or telescoping stock;

**(ii)**a thumbhole stock;

**(iii)**a second handgrip or a protruding grip that can be held by the non-trigger hand;

**(iv)**capacity to accept an ammunition magazine that attaches to the pistol outside of the pistol grip;

**(v)**a threaded barrel capable of accepting a barrel extender, flash suppressor, forward handgrip, or silencer;

**(vi)**a shroud that is attached to, or partially or completely encircles, the barrel and that permits the shooter to hold the firearm with the non-trigger hand without being burned;

**(vii)**a manufactured weight of fifty ounces or more when the pistol is unloaded; or

**(viii)**a semiautomatic version of an automatic rifle, shotgun or firearm;

**(d)**a revolving cylinder shotgun;

**(e)**a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic pistol or weapon defined in subparagraph (v) of paragraph (e) of subdivision twenty-two of section 265.00 of this chapter as added by chapter one hundred eighty-nine of the laws of two thousand and otherwise lawfully possessed pursuant to such chapter of the laws of two thousand prior to September fourteenth, nineteen hundred ninety-four;

**(f)**a semiautomatic rifle, a semiautomatic shotgun or a semiautomatic pistol or weapon defined in paragraph (a), (b) or (c) of this subdivision, possessed prior to the date of enactment of the chapter of the laws of two thousand thirteen which added this paragraph;

**(g)**provided, however, that such term does not include:

**(i)**any rifle, shotgun or pistol that (A) is manually operated by bolt, pump, lever or slide action; (B) has been rendered permanently inoperable; or (C) is an antique firearm as defined in *18 U.S.C. 921(a)(16)*;

**(ii)**a semiautomatic rifle that cannot accept a detachable magazine that holds more than five rounds of ammunition;

**(iii)**a semiautomatic shotgun that cannot hold more than five rounds of ammunition in a fixed or detachable magazine; or

**(iv)**a rifle, shotgun or pistol, or a replica or a duplicate thereof, specified in Appendix A to *18 U.S.C. 922* as such weapon was manufactured on October first, nineteen hundred ninety-three. The mere fact that a weapon is not listed in Appendix A shall not be construed to mean that such weapon is an assault weapon.

**(v)**any weapon validly registered pursuant to subdivision sixteen-a of section 400.00 of this chapter. Such weapons shall be subject to the provisions of paragraph (h) of this subdivision;

**(vi)**any firearm, rifle, or shotgun that was manufactured at least fifty years prior to the current date, but not including replicas thereof that is validly registered pursuant to subdivision sixteen-a of section 400.00 of this chapter;

**(h)**Any weapon defined in paragraph (e) or (f) of this subdivision and any large capacity ammunition feeding device that was legally possessed by an individual prior to the enactment of the chapter of the laws of two thousand thirteen which added this paragraph, may only be sold to, exchanged with or disposed of to a purchaser authorized to possess such weapons or to an individual or entity outside of the state provided that any such transfer to an individual or entity outside of the state must be reported to the entity wherein the weapon is registered within seventy-two hours of such transfer. An individual who transfers any such weapon or large capacity

ammunition device to an individual inside New York state or without complying with the provisions of this paragraph shall be guilty of a class A misdemeanor unless such large capacity ammunition feeding device, the possession of which is made illegal by the chapter of the laws of two thousand thirteen which added this paragraph, is transferred within one year of the effective date of the chapter of the laws of two thousand thirteen which added this paragraph.

**23.** "Large capacity ammunition feeding device" means a magazine, belt, drum, feed strip, or similar device, that (a) has a capacity of, or that can be readily restored or converted to accept, more than ten rounds of ammunition, or [pars (b) and (c) are suspended and not effective as stated in _Laws 2013, ch 1, § 58_, sub b note below] (b) contains more than seven rounds of ammunition, or (c) is obtained after the effective date of the chapter of the laws of two thousand thirteen which amended this subdivision and has a capacity of, or that can be readily restored or converted to accept, more than seven rounds of ammunition; provided, however, that such term does not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition or a feeding device that is a curio or relic. A feeding device that is a curio or relic is defined as a device that (i) was manufactured at least fifty years prior to the current date, (ii) is only capable of being used exclusively in a firearm, rifle, or shotgun that was manufactured at least fifty years prior to the current date, but not including replicas thereof, (iii) is possessed by an individual who is not prohibited by state or federal law from possessing a firearm and (iv) is registered with the division of state police pursuant to subdivision sixteen-a of section 400.00 of this chapter, except such feeding devices transferred into the state may be registered at any time, provided they are registered within thirty days of their transfer into the state. Notwithstanding paragraph (h) of subdivision twenty-two of this section, such feeding devices may be transferred provided that such transfer shall be subject to the provisions of section 400.03 of this chapter including the check required to be conducted pursuant to such section.

**24.** "Seller of ammunition" means any person, firm, partnership, corporation or company who engages in the business of purchasing, selling or keeping ammunition.

**25.** "Qualified retired New York or federal law enforcement officer" means an individual who is a retired police officer as police officer is defined in subdivision thirty-four of _section 1.20 of the criminal procedure law_, a retired peace officer as peace officer is defined in _section 2.10 of the criminal procedure law_ or a retired federal law enforcement officer as federal law enforcement officer is defined in _section 2.15 of the criminal procedure law_, who: (a) separated from service in good standing from a public agency located in New York state in which such person served as either a police officer, peace officer or federal law enforcement officer; and (b) before such separation, was authorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and had statutory powers of arrest, pursuant to their official duties, under the criminal procedure law; and (c) (i) before such separation, served as either a police officer, peace officer or federal law enforcement officer for five years or more and at the time of separation, is such an officer; or (ii) separated from service with such agency, after completing any applicable probationary period of such service, due to a service-connected disability, as determined by such agency at or before the time of separation; and (d)(i) has not been found by a qualified medical professional employed by such agency to be unqualified for reasons relating to mental health; or (ii) has not entered into an agreement with such agency from which the individual is separating from service in which that individual acknowledges he or she is not qualified for reasons relating to mental health; and (e) is not otherwise prohibited by New York or federal law from possessing any firearm.

**26.** "Rapid-fire modification device" means any bump stock, trigger crank, binary trigger system, burst trigger system, or any other device that is designed to accelerate the rate of fire of a semi-automatic firearm, rifle or shotgun.

**27.** "Bump stock" means any device or instrument that increases the rate of fire achievable with a semi-automatic firearm, rifle or shotgun by using energy from the recoil of the weapon to generate a reciprocating action that facilitates repeated activation of the trigger.

NY CLS Penal § 265.00

**28.** "Trigger crank" means any device or instrument that repeatedly activates the trigger of a semi-automatic firearm, rifle or shotgun through the use of a lever or other part that is turned in a circular motion and thereby accelerates the rate of fire of such firearm, rifle or shotgun, provided, however, that "trigger crank" shall not include any weapon initially designed and manufactured to fire through the use of a crank or lever.

**29.** "Binary trigger system" means any device that, when installed in or attached to a semi-automatic firearm rifle, or shotgun causes that weapon to fire once when the trigger is pulled and again when the trigger is released.

**30.** "Burst trigger system" means any device that, when installed in or attached to a semi-automatic firearm, rifle, or shot gun, allows that weapon to discharge two or more shots with a single pull or the trigger by altering the trigger reset.

## History

Add, L 1965, ch 1030, § 1, eff Sept 1, 1967, with substance derived from § 1896; amd, L 1967, ch 791, § 46; L 1969, ch 123, § 1, eff Sept 1, 1969; L 1972, ch 588, § 1; L 1972, ch 605, § 1; L 1974, ch 179, § 1, eff Sept 1, 1974; L 1974, ch 986, §§ 1, 2; L 1974, ch 1041, § 1, eff Sept 1, 1974; L 1976, ch 217, § 1, eff Sept 1, 1976; L 1982, ch 492, § 1; L 1985, ch 61, § 1, eff Nov 1, 1985; L 1986, ch 328, § 2, eff Nov 1, 1986; L 1986, ch 646, § 1, eff Nov 1, 1986; L 1988, ch 264, § 1; *L 1990, ch 264, § 1*, eff Nov 1, 1990; *L 1995, ch 219, § 2*, eff Nov 1, 1995; *L 1996, ch 354, § 2*, eff Nov 1, 1996; *L 1997, ch 446, § 2*, eff Aug 25, 1997; *L 1998, ch 378, § 1*, eff Nov 1, 1998; *L 1999, ch 210, § 1*, eff Nov 1, 1999; *L 1999, ch 635, §§ 11*, 15, eff Dec 1, 1999; *L 2000, ch 189, §§ 8*–10, eff Nov 1, 2000; *L 2008, ch 257, § 3*, eff Nov 1, 2008; *L 2010, ch 232, §§ 2*, 3, eff July 30, 2010; *L 2013, ch 1, § 37*, eff Jan 15, 2013; *L 2013, ch 1, § 38*, eff April 15, 2013; *L 2013, ch 1, § 39*, eff March 16, 2013; *L 2013, ch 98, § 1*, eff July 5, 2013; *L 2018, ch 60, § 1*, eff June 11, 2018; *L 2019, ch 34, § 3*, eff May 30, 2019; *L 2019, ch 130, § 1*, eff July 29, 2019; *L 2019, ch 146, § 1*, eff Nov 1, 2019; *L 2019, ch 134, § 1*, eff Jan 26, 2020.

Annotations

## Notes

**Editor's Notes**

**Laws 2018, ch 60, § 8**, eff June 11, 2018, provides:

§ 8. This act shall take effect on the sixtieth day after it shall have become a law.

**Laws 1997, ch 446, §§ 1,** 7, eff Aug 25, 1997, provide as follows:

Section 1. This act shall be known and may be cited as the "Westchester county handgun record-keeping and accountability act". (Amd, *L 1997, ch 447, § 1*, eff Aug 25, 1997.).

§ 7. This act shall take effect immediately and in Westchester county shall apply to licenses issued on or after such date. (Amd, *L 1997, ch 447, § 4*, eff Aug 25, 1997.).

**Laws 1997, ch 447, § 5,** eff Aug 25, 1997, provides as follows:

§ 5. This act shall take effect on the same date as a chapter of the laws of 1997, amending the penal law enacting the Westchester county handgun record-keeping and accountability act, as proposed in legislative bills numbers S. 5498-A and A. 8311-A, takes effect, and nothing contained in such chapter shall be construed as abridging the five year period applicable within Suffolk county with respect to the expiration of licenses to carry or possess a revolver.

# EXHIBIT "7"

Exhibit 7
0053

## HRS § 134-1

This document is current through the 2019 Legislative Session. Subject to changes by Revisor pursuant to HRS 23G-15.

*Michie's™ Hawaii Revised Statutes Annotated > Division 1. Government (Titles 1 — 21) > Title 10 Public Safety and Internal Security (Chs. 121 — 138) > Chapter 134 Firearms, Ammunition and Dangerous Weapons (Pts. I — IV) > Part I. General Regulations (§§ 134-1 — 134-29)*

## § 134-1. Definitions.

As used in this chapter, unless the context indicates otherwise:

"Acquire" means gain ownership of.

"Antique pistol or revolver" means any pistol or revolver manufactured before 1899 and any replica thereof if it either is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition or is designed or redesigned to use rimfire or conventional centerfire fixed ammunition that is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade.

"Assault pistol" means a semiautomatic pistol that accepts a detachable magazine and has two or more of the following characteristics:

(1) An ammunition magazine that attaches to the pistol outside of the pistol grip;

(2) A threaded barrel capable of accepting a barrel extender, flash suppressor, forward hand grip, or silencer;

(3) A shroud that is attached to or partially or completely encircles the barrel and permits the shooter to hold the firearm with the second hand without being burned;

(4) A manufactured weight of fifty ounces or more when the pistol is unloaded;

(5) A centerfire pistol with an overall length of twelve inches or more; or

(6) It is a semiautomatic version of an automatic firearm;

but does not include a firearm with a barrel sixteen or more inches in length, an antique pistol as defined in this section, or a curio or relic as those terms are used in *18 United States Code section 921(a)(13)* or *27 Code of Federal Regulations section 478.11*.

"Automatic firearm" means any firearm that shoots, is designed to shoot, or can be readily modified to shoot automatically more than one shot, without a manual reloading, by a single function of the trigger. This term shall also include the frame or receiver of any such firearm, any part designed and intended solely and exclusively, or any combination of parts designed and intended, for use in converting a firearm into an automatic firearm, and any combination of parts from which an automatic firearm can be assembled if the parts are in the possession or under the control of a single person.

"Chief of police" means the chief of police of the counties of Hawaii, Maui, Kauai, or the city and county of Honolulu.

"Crime of violence" means any offense, as defined in title 37, that involves injury or threat of injury to the person of another, including sexual assault in the fourth degree under section 707-733 and harassment by stalking under section 711-1106.5.

"Electric gun" means any portable device that is electrically operated to project a missile or electromotive force. It does not include any electric livestock prod used in animal husbandry and any automatic external defibrillator used in emergency medical situations.

"Firearm" means any weapon, for which the operating force is an explosive, including but not limited to pistols, revolvers, rifles, shotguns, automatic firearms, noxious gas projectors, mortars, bombs, and cannon.

"Firearm loaded with ammunition" and "loaded firearm" means a firearm with ammunition present within the firing chamber, revolving cylinder, or within a magazine which is inserted in a firearm.

"Fugitive from justice" means any person (1) who has fled from any state, territory, the District of Columbia, or possession of the United States, to avoid prosecution for a felony or to avoid giving testimony in any criminal proceeding or (2) who has fled from any country other than the United States and is avoiding lawful extradition back to that country.

"Pistol" or "revolver" means any firearm of any shape with a barrel less than sixteen inches in length and capable of discharging loaded ammunition or any noxious gas.

"Public highway" shall have the same meaning as defined in section 264-1(a).

"Semiautomatic" means the mode of operation by which a firearm uses the energy of the explosive in a fixed cartridge to extract a fired cartridge and chamber a fresh cartridge with each single pull of a trigger.

## History

L 1988, c 275, pt of § 2; am L 1988, c 271, § 2; am *L 1989, c 263*, §§ 2, 3; am *L 1990, c 195*, § 1; am *L 1992, c 286*, § 1; am *L 1994, c 204*, § 2; am *L 2001, c 252*, § 2; am *L 2016, c 55*, § 1, effective June 6, 2016; am *L 2016, c 109*, § 2, effective June 22, 2016.

Annotations

## Notes

**Editor's note.**

*1992 Haw. Sess. Laws, Act 286*, § 5, provided that: "Prior to the effective date of this Act [July 1, 1992, except § 4 (§ 134-8) of this Act which became effective July 1, 1994], the attorney general, in consultation with the chiefs of police of the respective counties, shall make reasonable efforts to publicize, a list of the firearms which the chiefs of police have determined meet the definition of 'assault pistol' set forth in section 1 of this Act [§ 134-1]. The attorney general shall, at the written request of any person, advise that person as to whether or not a particular pistol meets the criteria and is an assault pistol. This Act, however, shall not be construed to authorize the chiefs of police of the respective counties or the attorney general to adopt rules pursuant to chapter 91 or any regulation having the force of law specifying which firearms meet the definition of an 'assault pistol.' "

*2016 Haw. Sess. Laws, Act 109*, § 3, provides: "This Act does not affect rights and duties that matured, penalties that were incurred, and proceedings that were begun before its effective date."

**Amendment Notes.**

**The 2001 amendment,** effective June 19, 2001, added "and any automatic external defibrillator used in emergency medical situations" at the end of the definition of "electric gun."

## HRS § 134-4

This document is current through the 2019 Legislative Session. Subject to changes by Revisor pursuant to HRS 23G-15.

*Michie's™ Hawaii Revised Statutes Annotated  >  Division 1. Government (Titles 1 — 21)  >  Title 10 Public Safety and Internal Security (Chs. 121 — 138)  >  Chapter 134 Firearms, Ammunition and Dangerous Weapons (Pts. I — IV)  >  Part I. General Regulations (§§ 134-1 — 134-29)*

# § 134-4. Transfer, possession of firearms.

**(a)**No transfer of any rifle having a barrel length of sixteen inches or over or any shotgun having a barrel length of eighteen inches or over, whether usable or unusable, serviceable or unserviceable, modern or antique, registered under prior law or by a prior owner, or unregistered shall be made to any person under the age of eighteen years, except as provided by section 134-5.

**(b)**No person shall possess any firearm that is owned by another, regardless of whether the owner has consented to possession of the firearm, without a permit from the chief of police of the appropriate county, except as provided in subsection (c) and section 134-5.

**(c)**Any lawfully acquired rifle or shotgun may be lent to an adult for use within the State for a period not to exceed fifteen days without a permit; provided that where the rifle or shotgun is to be used outside of the State, the loan may be for a period not to exceed seventy-five days.

**(d)**No person shall knowingly lend a firearm to any person who is prohibited from ownership or possession of a firearm under section 134-7.

**(e)**After July 1, 1992, no person shall bring or cause to be brought into the State an assault pistol. No assault pistol may be sold or transferred on or after July 1, 1992, to anyone within the State other than to a dealer licensed under section 134-32 or the chief of police of any county except that any person who obtains title by bequest or intestate succession to an assault pistol registered within the State shall, within ninety days, render the weapon permanently inoperable, sell or transfer the weapon to a licensed dealer or the chief of police of any county, or remove the weapon from the State.

## History

L 1988, c 275, pt of § 2; am *L 1992, c 286*, § 2.

Annotations

## Research References & Practice Aids

**Research References and Practice Aids**

**Cross references.**

As to hunting licenses, see §  183D-21 et seq.

**ALR.**

HRS § 134-4

What constitutes "constructive possession" of unregistered or otherwise prohibited weapon under state law. *88 A.L.R.5th 121*.

**Hierarchy Notes:**

*HRS Div. 1, Tit. 10, Ch. 134*

*HRS Div. 1, Tit. 10, Ch. 134, Pt. I*

Michie's™ Hawaii Revised Statutes Annotated
Copyright © 2019 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *HRS § 134-8*

This document is current through the 2019 Legislative Session. Subject to changes by Revisor pursuant to HRS 23G-15.

*Michie's™ Hawaii Revised Statutes Annotated  >  Division 1. Government (Titles 1 — 21)  >  Title 10 Public Safety and Internal Security (Chs. 121 — 138)  >  Chapter 134 Firearms, Ammunition and Dangerous Weapons (Pts. I — IV)  >  Part I. General Regulations (§§ 134-1 — 134-29)*

# § 134-8. Ownership, etc., of automatic firearms, silencers, etc., prohibited; penalties.

**(a)** The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of any of the following is prohibited: assault pistols, except as provided by section 134-4(e); automatic firearms; rifles with barrel lengths less than sixteen inches; shotguns with barrel lengths less than eighteen inches; cannons; mufflers, silencers, or devices for deadening or muffling the sound of discharged firearms; hand grenades, dynamite, blasting caps, bombs, or bombshells, or other explosives; or any type of ammunition or any projectile component thereof coated with teflon or any other similar coating designed primarily to enhance its capability to penetrate metal or pierce protective armor; and any type of ammunition or any projectile component thereof designed or intended to explode or segment upon impact with its target.

**(b)** Any person who installs, removes, or alters a firearm part with the intent to convert the firearm to an automatic firearm shall be deemed to have manufactured an automatic firearm in violation of subsection (a).

**(c)** The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of detachable ammunition magazines with a capacity in excess of ten rounds which are designed for or capable of use with a pistol is prohibited. This subsection shall not apply to magazines originally designed to accept more than ten rounds of ammunition which have been modified to accept no more than ten rounds and which are not capable of being readily restored to a capacity of more than ten rounds.

**(d)** Any person violating subsection (a) or (b) shall be guilty of a class C felony and shall be imprisoned for a term of five years without probation. Any person violating subsection (c) shall be guilty of a misdemeanor except when a detachable magazine prohibited under this section is possessed while inserted into a pistol in which case the person shall be guilty of a class C felony.

## History

L 1988, c 275, pt of § 2; am *L 1989, c 261*, § 6; am *L 1989, c 263*, § 4; am *L 1992, c 286*, § 3; am *L 1992, c 286*, §§ 3, 4.

Annotations

## NOTES TO DECISIONS

**This section is not unconstitutionally vague.**

# EXHIBIT "8"

Exhibit 8
0059

## *Minn. Stat. § 624.712*

This document is current through the end of the Regular Session and the end of the 2019 First Special Session of the Minnesota 91st Legislature.

*LexisNexis® Minnesota Annotated Statutes  >  Crimes, Criminals (Chs. 609 — 624)  >  Chapter 624. Crimes, Other Provisions (§§ 624.01 — 624.74)  >  Firearms (§§ 624.71 — 624.719)*

# 624.712 DEFINITIONS

**Subdivision 1.  *Scope. —***As used in sections 624.711 to 624.717, the terms defined in this section shall have the meanings given them.

**Subd. 2.  *Pistol. —***"Pistol" includes a weapon designed to be fired by the use of a single hand and with an overall length less than 26 inches, or having a barrel or barrels of a length less than 18 inches in the case of a shotgun or having a barrel of a length less than 16 inches in the case of a rifle (1) from which may be fired or ejected one or more solid projectiles by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances; or (2) for which the propelling force is a spring, elastic band, carbon dioxide, air or other gas, or vapor.

"Pistol" does not include a device firing or ejecting a shot measuring .18 of an inch, or less, in diameter and commonly known as a "BB gun," a scuba gun, a stud gun or nail gun used in the construction industry or children's pop guns or toys.

**Subd. 3.  *Antique firearm. —***"Antique firearm" means any firearm, including any pistol, with a matchlock, flintlock, percussion cap, or similar type of ignition system, manufactured before 1899 and any replica of any firearm described herein if such replica is not designed or redesigned, made or remade, or intended to fire conventional rimfire or conventional centerfire ammunition, or uses conventional rimfire or conventional centerfire ammunition which is not readily available in the ordinary channels of commercial trade.

**Subd. 4.  *Saturday night special pistol. —***"Saturday night special pistol" means a pistol other than an antique firearm or a pistol for which the propelling force is carbon dioxide, air or other vapor, or children's pop guns or toys, having a frame, barrel, cylinder, slide or breechblock:

**(1)**of any material having a melting point (liquidus) of less than 1,000 degrees Fahrenheit, or

**(2)**of any material having an ultimate tensile strength of less than 55,000 pounds per square inch, or

**(3)**of any powdered metal having a density of less than 7.5 grams per cubic centimeter.

**Subd. 5. *Crime of violence. —***"Crime of violence" means: felony convictions of the following offenses: sections 609.185 (murder in the first degree); 609.19 (murder in the second degree); 609.195 (murder in the third degree); 609.20 (manslaughter in the first degree); 609.205 (manslaughter in the second degree); 609.215 (aiding suicide and aiding attempted suicide); 609.221 (assault in the first degree); 609.222 (assault in the second degree); 609.223 (assault in the third degree); 609.2231 (assault in the fourth degree); 609.224 (assault in the fifth degree); 609.2242 (domestic assault); 609.2247 (domestic assault by strangulation); 609.229 (crimes committed for the benefit of a gang); 609.235 (use of drugs to injure or facilitate crime); 609.24 (simple robbery); 609.245 (aggravated robbery); 609.25 (kidnapping); 609.255 (false imprisonment); 609.322 (solicitation, inducement, and promotion of prostitution; sex trafficking); 609.342 (criminal sexual conduct in the first degree); 609.343 (criminal sexual conduct in the second degree); 609.344 (criminal sexual conduct in the third degree); 609.345 (criminal sexual conduct in the fourth degree); 609.377 (malicious punishment of a child); 609.378 (neglect or endangerment of a child); 609.486 (commission of crime while wearing or possessing a bullet-resistant vest); 609.52 (involving theft of a firearm and theft involving the theft of a controlled substance, an explosive, or an incendiary device); 609.561 (arson in the first degree); 609.562 (arson

Minn. Stat. § 624.712

in the second degree); 609.582, subdivision 1 or 2 (burglary in the first and second degrees); 609.66, subdivision 1e (drive-by shooting); 609.67 (unlawfully owning, possessing, operating a machine gun or short-barreled shotgun); 609.71 (riot); 609.713 (terroristic threats); 609.749 (harassment); 609.855, subdivision 5 (shooting at a public transit vehicle or facility); and chapter 152 (drugs, controlled substances); and an attempt to commit any of these offenses.

**Subd. 6.   *Transfer.*** —"Transfer" means a sale, gift, loan, assignment or other delivery to another, whether or not for consideration, of a pistol or semiautomatic military-style assault weapon or the frame or receiver of a pistol or semiautomatic military-style assault weapon.

**Subd. 7.   *Semiautomatic military-style assault weapon.*** —"Semiautomatic military-style assault weapon" means:

> **(1)** any of the following firearms:
>
> > **(i)** Avtomat Kalashnikov (AK-47) semiautomatic rifle type;
> >
> > **(ii)** Beretta AR-70 and BM-59 semiautomatic rifle types;
> >
> > **(iii)** Colt AR-15 semiautomatic rifle type;
> >
> > **(iv)** Daewoo Max-1 and Max-2 semiautomatic rifle types;
> >
> > **(v)** Famas MAS semiautomatic rifle type;
> >
> > **(vi)** Fabrique Nationale FN-LAR and FN-FNC semiautomatic rifle types;
> >
> > **(vii)** Galil semiautomatic rifle type;
> >
> > **(viii)** Heckler & Koch HK-91, HK-93, and HK-94 semiautomatic rifle types;
> >
> > **(ix)** Ingram MAC-10 and MAC-11 semiautomatic pistol and carbine types;
> >
> > **(x)** Intratec TEC-9 semiautomatic pistol type;
> >
> > **(xi)** Sigarms SIG 550SP and SIG 551SP semiautomatic rifle types;
> >
> > **(xii)** SKS with detachable magazine semiautomatic rifle type;
> >
> > **(xiii)** Steyr AUG semiautomatic rifle type;
> >
> > **(xiv)** Street Sweeper and Striker-12 revolving-cylinder shotgun types;
> >
> > **(xv)** USAS-12 semiautomatic shotgun type;
> >
> > **(xvi)** Uzi semiautomatic pistol and carbine types; or
> >
> > **(xvii)** Valmet M76 and M78 semiautomatic rifle types;
>
> **(2)** any firearm that is another model made by the same manufacturer as one of the firearms listed in clause (1), and has the same action design as one of the listed firearms, and is a redesigned, renamed, or renumbered version of one of the firearms listed in clause (1), or has a slight modification or enhancement, including but not limited to a folding or retractable stock; adjustable sight; case deflector for left-handed shooters; shorter barrel; wooden, plastic, or metal stock; larger clip size; different caliber; or a bayonet mount; and
>
> **(3)** any firearm that has been manufactured or sold by another company under a licensing agreement with a manufacturer of one of the firearms listed in clause (1) entered into after the effective date of Laws *1993, chapter 326*, to manufacture or sell firearms that are identical or nearly identical to those listed in clause (1), or described in clause (2), regardless of the company of production or country of origin.

The weapons listed in clause (1), except those listed in items (iii), (ix), (x), (xiv), and (xv), are the weapons the importation of which was barred by the Bureau of Alcohol, Tobacco, and Firearms of the United States Department of the Treasury in July 1989.

Minn. Stat. § 624.712

Except as otherwise specifically provided in paragraph (d), a firearm is not a "semiautomatic military-style assault weapon" if it is generally recognized as particularly suitable for or readily adaptable to sporting purposes under *United States Code, title 18, section 925*, paragraph (d)(3), or any regulations adopted pursuant to that law.

**Subd. 8.  *Included weapons.* —**By August 1, 1993, and annually thereafter, the superintendent of the Bureau of Criminal Apprehension shall publish a current authoritative list of the firearms included within the definition of "semiautomatic military-style assault weapon" under this section. Dealers, purchasers, and other persons may rely on the list in complying with this chapter.

**Subd. 9.  *Business day.* —**"Business day" means a day on which state offices are open for normal business and excludes weekends and legal holidays.

**Subd. 10.  *Crime punishable by imprisonment for a term exceeding one year.* —**"Crime punishable by imprisonment for a term exceeding one year" does not include:

**(1)**any federal or state offense pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices; or

**(2)**any state offense classified by the laws of this state or any other state as a misdemeanor and punishable by a term of imprisonment of two years or less.

What constitutes a conviction of a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside, or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this definition, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

**Subd. 11.  *Commissioner.* —**"Commissioner" means the commissioner of public safety unless otherwise indicated.

**Subd. 12. *Ammunition.* —**"Ammunition" has the meaning given in section 609.02, subdivision 17.

## History

1975 c 378 s 2; 1977 c 349 s 2; 1987 c 276 s 3; *1991 c 279 s 35*; *1993 c 326 art 1 s 23*-26; *1994 c 636 art 3 s 24*-26; *1995 c 226 art 2 s 32*; *1996 c 408 art 4 s 14*; *2003 c 28 art 2 s 3*, art 3 s 7; *2005 c 83 s 1*; *2009 c 137 s 11*; *2010 c 299 s 14*; *2014 c 260 s 1*; Sp2019 Sp c 5, art 2 s 26, effective August 1, 2019.

Annotations

## LexisNexis® Notes

## Notes

**EDITOR'S NOTE**

Section 1 of Laws *2014 chapter 260* provides, ""This section is effective August 1, 2014, and applies to crimes committed on or after that date."

**Amendment Notes**

## *Minn. Stat. § 624.7131*

This document is current through the end of the Regular Session and the end of the 2019 First Special Session of the Minnesota 91st Legislature.

*LexisNexis® Minnesota Annotated Statutes  >  Crimes, Criminals (Chs. 609 — 624)  >  Chapter 624. Crimes, Other Provisions (§§ 624.01 — 624.74)  >  Firearms (§§ 624.71 — 624.719)*

## 624.7131 TRANSFEREE PERMIT; PENALTY

**Subdivision 1.  *Information.* —**Any person may apply for a transferee permit by providing the following information in writing to the chief of police of an organized full time police department of the municipality in which the person resides or to the county sheriff if there is no such local chief of police:

> **(1)**the name, residence, telephone number, and driver's license number or nonqualification certificate number, if any, of the proposed transferee;

> **(2)**the sex, date of birth, height, weight, and color of eyes, and distinguishing physical characteristics, if any, of the proposed transferee;

> **(3)**a statement that the proposed transferee authorizes the release to the local police authority of commitment information about the proposed transferee maintained by the commissioner of human services, to the extent that the information relates to the proposed transferee's eligibility to possess a pistol or semiautomatic military-style assault weapon under section 624.713, subdivision 1; and

> **(4)**

>> a statement by the proposed transferee that the proposed transferee is not prohibited by section 624.713 from possessing a pistol or semiautomatic military-style assault weapon.

>> The statements shall be signed and dated by the person applying for a permit. At the time of application, the local police authority shall provide the applicant with a dated receipt for the application. The statement under clause (3) must comply with any applicable requirements of *Code of Federal Regulations, title 42, sections 2.31* to *2.35*, with respect to consent to disclosure of alcohol or drug abuse patient records.

**Subd. 2.  *Investigation.* —**The chief of police or sheriff shall check criminal histories, records and warrant information relating to the applicant through the Minnesota Crime Information System, the national criminal record repository, and the National Instant Criminal Background Check System. The chief of police or sheriff shall also make a reasonable effort to check other available state and local record-keeping systems. The chief of police or sheriff shall obtain commitment information from the commissioner of human services as provided in section 245.041.

**Subd. 3.  *Forms.* —**Chiefs of police and sheriffs shall make transferee permit application forms available throughout the community. There shall be no charge for forms, reports, investigations, notifications, waivers or any other act performed or materials provided by a government employee or agency in connection with application for or issuance of a transferee permit.

**Subd. 4.  *Grounds for disqualification.* —**A determination by the chief of police or sheriff that the applicant is prohibited by section 624.713 from possessing a pistol or semiautomatic military-style assault weapon shall be the only basis for refusal to grant a transferee permit.

**Subd. 5.  *Granting of permits.* —**The chief of police or sheriff shall issue a transferee permit or deny the application within seven days of application for the permit. The chief of police or sheriff shall provide an

Minn. Stat. § 624.7131

applicant with written notification of a denial and the specific reason for the denial. The permits and their renewal shall be granted free of charge.

**Subd. 6.  *Permits valid statewide. —***Transferee permits issued pursuant to this section are valid statewide and shall expire after one year. A transferee permit may be renewed in the same manner and subject to the same provisions by which the original permit was obtained, except that all renewed permits must comply with the standards adopted by the commissioner under section 624.7151. Permits issued pursuant to this section are not transferable. A person who transfers a permit in violation of this subdivision is guilty of a misdemeanor.

**Subd. 7.  *Permit voided. —***The transferee permit shall be void at the time that the holder becomes prohibited from possessing a pistol under section 624.713, in which event the holder shall return the permit within five days to the issuing authority. Failure of the holder to return the permit within the five days is a misdemeanor unless the court finds that the circumstances or the physical or mental condition of the permit holder prevented the holder from complying with the return requirement.

**Subd. 8.  *Hearing upon denial. —***Any person aggrieved by denial of a transferee permit may appeal the denial to the district court having jurisdiction over the county or municipality in which the denial occurred.

**Subd. 9.  *Permit to carry. —***A valid permit to carry issued pursuant to section 624.714 constitutes a transferee permit for the purposes of this section and section 624.7132.

**Subd. 10.  *Transfer report not required. —***A person who transfers a pistol or semiautomatic military-style assault weapon to a person exhibiting a valid transferee permit issued pursuant to this section or a valid permit to carry issued pursuant to section 624.714 is not required to file a transfer report pursuant to section 624.7132, subdivision 1.

**Subd. 11.  *Penalty. —***A person who makes a false statement in order to obtain a transferee permit knowing or having reason to know the statement is false is guilty of a gross misdemeanor.

**Subd. 12.  *Local regulation. —***This section shall be construed to supersede municipal or county regulation of the issuance of transferee permits.

## History

1977 c 349 s 4; 1986 c 444; *1992 c 571 art 15 s 5*,6; *1993 c 326 art 1 s 28*-30; *1994 c 618 art 1 s 41*,42; *1994 c 636 art 3 s 29*-31; *1998 c 254 art 2 s 67*; *2003 c 28 art 2 s 34*; *2009 c 139 s 4*.

LexisNexis® Minnesota Annotated Statutes
Copyright © 2019 Matthew Bender & Company, Inc.,
a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Minn. Stat. § 624.7132*

This document is current through the end of the Regular Session and the end of the 2019 First Special Session of the Minnesota 91st Legislature.

*LexisNexis® Minnesota Annotated Statutes  >  Crimes, Criminals (Chs. 609 — 624)  >  Chapter 624. Crimes, Other Provisions (§§ 624.01 — 624.74)  >  Firearms (§§ 624.71 — 624.719)*

## 624.7132 REPORT OF TRANSFER

**Subdivision 1.   *Required information.* —**Except as provided in this section and section 624.7131, every person who agrees to transfer a pistol or semiautomatic military-style assault weapon shall report the following information in writing to the chief of police of the organized full-time police department of the municipality where the proposed transferee resides or to the appropriate county sheriff if there is no such local chief of police:

**(1)**the name, residence, telephone number, and driver's license number or nonqualification certificate number, if any, of the proposed transferee;

**(2)**the sex, date of birth, height, weight, and color of eyes, and distinguishing physical characteristics, if any, of the proposed transferee;

**(3)**a statement that the proposed transferee authorizes the release to the local police authority of commitment information about the proposed transferee maintained by the commissioner of human services, to the extent that the information relates to the proposed transferee's eligibility to possess a pistol or semiautomatic military-style assault weapon under section 624.713, subdivision 1;

**(4)**a statement by the proposed transferee that the transferee is not prohibited by section 624.713 from possessing a pistol or semiautomatic military-style assault weapon; and

**(5)**

the address of the place of business of the transferor.

The report shall be signed and dated by the transferor and the proposed transferee. The report shall be delivered by the transferor to the chief of police or sheriff no later than three days after the date of the agreement to transfer, excluding weekends and legal holidays. The statement under clause (3) must comply with any applicable requirements of *Code of Federal Regulations, title 42, sections 2.31* to *2.35*, with respect to consent to disclosure of alcohol or drug abuse patient records.

**Subd. 2.   *Investigation.* —**Upon receipt of a transfer report, the chief of police or sheriff shall check criminal histories, records and warrant information relating to the proposed transferee through the Minnesota Crime Information System, the national criminal record repository, and the National Instant Criminal Background Check System. The chief of police or sheriff shall also make a reasonable effort to check other available state and local record-keeping systems. The chief of police or sheriff shall obtain commitment information from the commissioner of human services as provided in section 245.041.

**Subd. 3.   *Notification.* —**The chief of police or sheriff shall notify the transferor and proposed transferee in writing as soon as possible if the chief or sheriff determines that the proposed transferee is prohibited by section 624.713 from possessing a pistol or semiautomatic military-style assault weapon. The notification to the transferee shall specify the grounds for the disqualification of the proposed transferee and shall set forth in detail the transferee's right of appeal under subdivision 13.

**Subd. 4.   *Delivery.* —**

Minn. Stat. § 624.7132

Except as otherwise provided in subdivision 7 or 8, no person shall deliver a pistol or semiautomatic military-style assault weapon to a proposed transferee until five business days after the date the agreement to transfer is delivered to a chief of police or sheriff in accordance with subdivision 1 unless the chief of police or sheriff waives all or a portion of the seven-day waiting period. The chief of police or sheriff may waive all or a portion of the five business day waiting period in writing if the chief of police or sheriff finds that the transferee requires access to a pistol or semiautomatic military-style assault weapon because of a threat to the life of the transferee or of any member of the household of the transferee.

No person shall deliver a pistol or semiautomatic military-style assault weapon to a proposed transferee after receiving a written notification that the chief of police or sheriff has determined that the proposed transferee is prohibited by section 624.713 from possessing a pistol or semiautomatic military-style assault weapon.

If the transferor makes a report of transfer and receives no written notification of disqualification of the proposed transferee within five business days after delivery of the agreement to transfer, the pistol or semiautomatic military-style assault weapon may be delivered to the transferee.

**Subd. 5.** *Grounds for disqualification.* —A determination by the chief of police or sheriff that the proposed transferee is prohibited by section 624.713 from possessing a pistol or semiautomatic military-style assault weapon shall be the sole basis for a notification of disqualification under this section.

**Subd. 6.** *Transferee permit.* —If a chief of police or sheriff determines that a transferee is not a person prohibited by section 624.713 from possessing a pistol or semiautomatic military-style assault weapon, the transferee may, within 30 days after the determination, apply to that chief of police or sheriff for a transferee permit, and the permit shall be issued.

**Subd. 7.**[Repealed, *1994 c 636 art 3 s 46*]

**Subd. 8.** *Report not required.* —If the proposed transferee presents a valid transferee permit issued under section 624.7131 or a valid permit to carry issued under section 624.714, the transferor need not file a transfer report.

**Subd. 9.** *Number of pistols or semiautomatic military-style assault weapons.* —Any number of pistols or semiautomatic military-style assault weapons may be the subject of a single transfer agreement and report to the chief of police or sheriff. Nothing in this section or section 624.7131 shall be construed to limit or restrict the number of pistols or semiautomatic military-style assault weapons a person may acquire.

**Subd. 10.** *Restriction on records.* —If, after a determination that the transferee is not a person prohibited by section 624.713 from possessing a pistol or semiautomatic military-style assault weapon, a transferee requests that no record be maintained of the fact of who is the transferee of a pistol or semiautomatic military-style assault weapon, the chief of police or sheriff shall sign the transfer report and return it to the transferee as soon as possible. Thereafter, no government employee or agency shall maintain a record of the transfer that identifies the transferee, and the transferee shall retain the report of transfer.

**Subd. 11.** *Forms; cost.* —Chiefs of police and sheriffs shall make transfer report forms available throughout the community. There shall be no charge for forms, reports, investigations, notifications, waivers or any other act performed or materials provided by a government employee or agency in connection with a transfer.

**Subd. 12.** *Exclusions.* —Except as otherwise provided in section 609.66, subdivision 1f, this section shall not apply to transfers of antique firearms as curiosities or for their historical significance or value, transfers to or between federally licensed firearms dealers, transfers by order of court, involuntary transfers, transfers at death or the following transfers:

    **(1)**a transfer by a person other than a federally licensed firearms dealer;

    **(2)**a loan to a prospective transferee if the loan is intended for a period of no more than one day;

    **(3)**the delivery of a pistol or semiautomatic military-style assault weapon to a person for the purpose of repair, reconditioning or remodeling;

Minn. Stat. § 624.7132

**(4)** a loan by a teacher to a student in a course designed to teach marksmanship or safety with a pistol and approved by the commissioner of natural resources;

**(5)** a loan between persons at a firearms collectors exhibition;

**(6)** a loan between persons lawfully engaged in hunting or target shooting if the loan is intended for a period of no more than 12 hours;

**(7)** a loan between law enforcement officers who have the power to make arrests other than citizen arrests; and

**(8)** a loan between employees or between the employer and an employee in a business if the employee is required to carry a pistol or semiautomatic military-style assault weapon by reason of employment and is the holder of a valid permit to carry a pistol.

**Subd. 13.  *Appeal.* —**

A person aggrieved by the determination of a chief of police or sheriff that the person is prohibited by section 624.713 from possessing a pistol or semiautomatic military-style assault weapon may appeal the determination as provided in this subdivision. The district court shall have jurisdiction of proceedings under this subdivision.

On review pursuant to this subdivision, the court shall be limited to a determination of whether the proposed transferee is a person prohibited from possessing a pistol or semiautomatic military-style assault weapon by section 624.713.

**Subd. 14.  *Transfer to unknown party.***

**(a)** No person shall transfer a pistol or semiautomatic military-style assault weapon to another who is not personally known to the transferor unless the proposed transferee presents evidence of identity to the transferor.

**(b)** No person who is not personally known to the transferor shall become a transferee of a pistol or semiautomatic military-style assault weapon unless the person presents evidence of identity to the transferor.

**(c)** The evidence of identity shall contain the name, residence address, date of birth, and photograph of the proposed transferee; must be made or issued by or under the authority of the United States government, a state, a political subdivision of a state, a foreign government, a political subdivision of a foreign government, an international governmental or an international quasi-governmental organization; and must be of a type commonly accepted for the purpose of identification of individuals.

**(d)** A person who becomes a transferee of a pistol or semiautomatic military-style assault weapon in violation of this subdivision is guilty of a misdemeanor.

**Subd. 15.  *Penalties.***

**(a)** Except as otherwise provided in paragraph (b), a person who does any of the following is guilty of a gross misdemeanor:

**(1)** transfers a pistol or semiautomatic military-style assault weapon in violation of subdivisions 1 to 13;

**(2)** transfers a pistol or semiautomatic military-style assault weapon to a person who has made a false statement in order to become a transferee, if the transferor knows or has reason to know the transferee has made the false statement;

**(3)** knowingly becomes a transferee in violation of subdivisions 1 to 13; or

**(4)** makes a false statement in order to become a transferee of a pistol or semiautomatic military-style assault weapon knowing or having reason to know the statement is false.

**(b)** A person who does either of the following is guilty of a felony:

Minn. Stat. § 624.7132

**(1)** transfers a pistol or semiautomatic military-style assault weapon to a person under the age of 18 in violation of subdivisions 1 to 13; or

**(2)** transfers a pistol or semiautomatic military-style assault weapon to a person under the age of 18 who has made a false statement in order to become a transferee, if the transferor knows or has reason to know the transferee has made the false statement.

**Subd. 16.** *Local regulation.* **—** This section shall be construed to supersede municipal or county regulation of the transfer of pistols.

# History

1977 c 349 s 5; 1985 c 144 s 2; 1986 c 444; *1992 c 571 art 15 s 7*; *1993 c 326 art 1 s 31*; *1994 c 576 s 57*; *1994 c 618 art 1 s 43*,44; *1994 c 636 art 3 s 32*-37; *1996 c 305 art 1 s 122*; *1998 c 254 art 2 s 68*; *2009 c 139 s 5*.

Annotations

# Opinion Notes

**OPINIONS OF ATTORNEY GENERAL**

FIREARMS: CARRYING: A proprietary, interst in business is required to carry a pistol about a "person's place of business" without a permit. *Minn. Stat. § 624.714* (1990)., No. 201a-2, *1991 Minn. AG LEXIS 6*.

# Research References & Practice Aids

**Legal Periodicals**

*25 Hamline J. Pub. L. & Pol'y 21*.

LexisNexis® Minnesota Annotated Statutes
Copyright © 2019 Matthew Bender & Company, Inc.,
a member of the LexisNexis Group. All rights reserved.

End of Document

# EXHIBIT "9"

Exhibit 9
0069

## *Va. Code Ann. Section 18.2-308.2:01*

Current through the 2019 Regular Session of the General Assembly.

*VA - Code of Virginia (Annotated)  >  TITLE 18.2. CRIMES AND OFFENSES GENERALLY  > CHAPTER 7. CRIMES INVOLVING HEALTH AND SAFETY  >  ARTICLE 7. OTHER ILLEGAL WEAPONS*

## Section 18.2-308.2:01. Possession or transportation of certain firearms by certain persons

**A.**  It shall be unlawful for any person who is not a citizen of the United States or who is not a person lawfully admitted for permanent residence to knowingly and intentionally possess or transport any assault firearm or to knowingly and intentionally carry about his person, hidden from common observation, an assault firearm.

**B.**  It shall be unlawful for any person who is not a citizen of the United States and who is not lawfully present in the United States to knowingly and intentionally possess or transport any firearm or to knowingly and intentionally carry about his person, hidden from common observation, any firearm. A violation of this section shall be punishable as a Class 6 felony.

**C.**  For purposes of this section,   *"assault firearm"* means any semi-automatic center-fire rifle or pistol that expels single or multiple projectiles by action of an explosion of a combustible material and is equipped at the time of the offense with a magazine which will hold more than 20 rounds of ammunition or designed by the manufacturer to accommodate a silencer or equipped with a folding stock.

## History

*1993, c. 674* ;  *2003, c. 976* ;  *2004, cc. 347* ,  *995* ;  *2008, c. 408* .

Annotations

## Notes

**EDITOR'S NOTE. --**

Acts   *2008, c. 408* , cl. 2, provides: "That the provisions of this act may result in a net increase in periods of imprisonment or commitment. Pursuant to *Section 30-19.1:4,* the estimated amount of the necessary appropriation cannot be determined for periods of imprisonment in state adult correctional facilities and cannot be determined for periods of commitment to the custody of the Department of Juvenile Justice."

  THE 2003 AMENDMENTS. --The 2003 amendment by c. 976 substituted "that expels single or multiple projectiles by action of an explosion of a combustible material and is equipped at the time of the offense with a magazine which will hold more than 20" for "which expels a projectile by action of an explosion and is equipped at the time of the offense with a magazine which will hold more than twenty" in the last paragraph.

Exhibit 9
Alexandria Gibson
0070

*Va. Code Ann. Section 18.2-308.2:2*

Current through the 2019 Regular Session of the General Assembly.

*VA - Code of Virginia (Annotated)  >  TITLE 18.2. CRIMES AND OFFENSES GENERALLY  > CHAPTER 7. CRIMES INVOLVING HEALTH AND SAFETY  >  ARTICLE 7. OTHER ILLEGAL WEAPONS*

## Section 18.2-308.2:2. Criminal history record information check required for the transfer of certain firearms

**A.**  Any person purchasing from a dealer a firearm as herein defined shall consent in writing, on a form to be provided by the Department of State Police, to have the dealer obtain criminal history record information. Such form shall include only the written consent; the name, birth date, gender, race, citizenship, and social security number and/or any other identification number; the number of firearms by category intended to be sold, rented, traded, or transferred; and answers by the applicant to the following questions: (i) has the applicant been convicted of a felony offense or found guilty or adjudicated delinquent as a juvenile 14 years of age or older at the time of the offense of a delinquent act that would be a felony if committed by an adult; (ii) is the applicant subject to a court order restraining the applicant from harassing, stalking, or threatening the applicant's child or intimate partner, or a child of such partner, or is the applicant subject to a protective order; and (iii) has the applicant ever been acquitted by reason of insanity and prohibited from purchasing, possessing or transporting a firearm pursuant to *Section 18.2-308.1:1* or any substantially similar law of any other jurisdiction, been adjudicated legally incompetent, mentally incapacitated or adjudicated an incapacitated person and prohibited from purchasing a firearm pursuant to *Section 18.2-308.1:2* or any substantially similar law of any other jurisdiction, or been involuntarily admitted to an inpatient facility or involuntarily ordered to outpatient mental health treatment and prohibited from purchasing a firearm pursuant to *Section 18.2-308.1:3* or any substantially similar law of any other jurisdiction.

**B.**  1. No dealer shall sell, rent, trade or transfer from his inventory any such firearm to any other person who is a resident of Virginia until he has (i) obtained written consent and the other information on the consent form specified in subsection A, and provided the Department of State Police with the name, birth date, gender, race, citizenship, and social security and/or any other identification number and the number of firearms by category intended to be sold, rented, traded or transferred and (ii) requested criminal history record information by a telephone call to or other communication authorized by the State Police and is authorized by subdivision 2 to complete the sale or other such transfer. To establish personal identification and residence in Virginia for purposes of this section, a dealer must require any prospective purchaser to present one photo-identification form issued by a governmental agency of the Commonwealth or by the United States Department of Defense that demonstrates that the prospective purchaser resides in Virginia. For the purposes of this section and establishment of residency for firearm purchase, residency of a member of the armed forces shall include both the state in which the member's permanent duty post is located and any nearby state in which the member resides and from which he commutes to the permanent duty post. A member of the armed forces whose photo identification issued by the Department of Defense does not have a Virginia address may establish his Virginia residency with such photo identification and either permanent orders assigning the purchaser to a duty post, including the Pentagon, in Virginia or the purchaser's Leave and Earnings Statement. When the photo identification presented to a dealer by the prospective purchaser is a driver's license or other photo identification issued by the Department of Motor Vehicles, and such identification form contains a date of issue, the dealer shall not, except for a renewed driver's license or other photo identification issued by the Department of Motor Vehicles, sell or otherwise

Exhibit 9
0071
Alexandria Gibson

transfer a firearm to the prospective purchaser until 30 days after the date of issue of an original or duplicate driver's license unless the prospective purchaser also presents a copy of his Virginia Department of Motor Vehicles driver's record showing that the original date of issue of the driver's license was more than 30 days prior to the attempted purchase.

In addition, no dealer shall sell, rent, trade, or transfer from his inventory any assault firearm to any person who is not a citizen of the United States or who is not a person lawfully admitted for permanent residence.

Upon receipt of the request for a criminal history record information check, the State Police shall (a) review its criminal history record information to determine if the buyer or transferee is prohibited from possessing or transporting a firearm by state or federal law, (b) inform the dealer if its record indicates that the buyer or transferee is so prohibited, and (c) provide the dealer with a unique reference number for that inquiry.

**2.** The State Police shall provide its response to the requesting dealer during the dealer's request, or by return call without delay. If the criminal history record information check indicates the prospective purchaser or transferee has a disqualifying criminal record or has been acquitted by reason of insanity and committed to the custody of the Commissioner of Behavioral Health and Developmental Services, the State Police shall have until the end of the dealer's next business day to advise the dealer if its records indicate the buyer or transferee is prohibited from possessing or transporting a firearm by state or federal law. If not so advised by the end of the dealer's next business day, a dealer who has fulfilled the requirements of subdivision 1 may immediately complete the sale or transfer and shall not be deemed in violation of this section with respect to such sale or transfer. In case of electronic failure or other circumstances beyond the control of the State Police, the dealer shall be advised immediately of the reason for such delay and be given an estimate of the length of such delay. After such notification, the State Police shall, as soon as possible but in no event later than the end of the dealer's next business day, inform the requesting dealer if its records indicate the buyer or transferee is prohibited from possessing or transporting a firearm by state or federal law. A dealer who fulfills the requirements of subdivision 1 and is told by the State Police that a response will not be available by the end of the dealer's next business day may immediately complete the sale or transfer and shall not be deemed in violation of this section with respect to such sale or transfer.

**3.** Except as required by subsection D of *Section 9.1-132*, the State Police shall not maintain records longer than 30 days, except for multiple handgun transactions for which records shall be maintained for 12 months, from any dealer's request for a criminal history record information check pertaining to a buyer or transferee who is not found to be prohibited from possessing and transporting a firearm under state or federal law. However, the log on requests made may be maintained for a period of 12 months, and such log shall consist of the name of the purchaser, the dealer identification number, the unique approval number and the transaction date.

**4.** On the last day of the week following the sale or transfer of any firearm, the dealer shall mail or deliver the written consent form required by subsection A to the Department of State Police. The State Police shall immediately initiate a search of all available criminal history record information to determine if the purchaser is prohibited from possessing or transporting a firearm under state or federal law. If the search discloses information indicating that the buyer or transferee is so prohibited from possessing or transporting a firearm, the State Police shall inform the chief law-enforcement officer in the jurisdiction where the sale or transfer occurred and the dealer without delay.

**5.** Notwithstanding any other provisions of this section, rifles and shotguns may be purchased by persons who are citizens of the United States or persons lawfully admitted for permanent residence but residents of other states under the terms of subsections A and B upon furnishing the dealer with one photo-identification form issued by a governmental agency of the person's state of residence and one other form of identification determined to be acceptable by the Department of Criminal Justice Services.

**6.** For the purposes of this subsection, the phrase "dealer's next business day" shall not include December 25.

Va. Code Ann. Section 18.2-308.2:2

**C.** No dealer shall sell, rent, trade or transfer from his inventory any firearm, except when the transaction involves a rifle or a shotgun and can be accomplished pursuant to the provisions of subdivision B 5 to any person who is not a resident of Virginia unless he has first obtained from the Department of State Police a report indicating that a search of all available criminal history record information has not disclosed that the person is prohibited from possessing or transporting a firearm under state or federal law. The dealer shall obtain the required report by mailing or delivering the written consent form required under subsection A to the State Police within 24 hours of its execution. If the dealer has complied with the provisions of this subsection and has not received the required report from the State Police within 10 days from the date the written consent form was mailed to the Department of State Police, he shall not be deemed in violation of this section for thereafter completing the sale or transfer.

**D.** Nothing herein shall prevent a resident of the Commonwealth, at his option, from buying, renting or receiving a firearm from a dealer in Virginia by obtaining a criminal history record information check through the dealer as provided in subsection C.

**E.** If any buyer or transferee is denied the right to purchase a firearm under this section, he may exercise his right of access to and review and correction of criminal history record information under *Section 9.1-132* or institute a civil action as provided in *Section 9.1-135*, provided any such action is initiated within 30 days of such denial.

**F.** Any dealer who willfully and intentionally requests, obtains, or seeks to obtain criminal history record information under false pretenses, or who willfully and intentionally disseminates or seeks to disseminate criminal history record information except as authorized in this section shall be guilty of a Class 2 misdemeanor.

**G.** For purposes of this section:

*"Actual buyer"* means a person who executes the consent form required in subsection B or C, or other such firearm transaction records as may be required by federal law.

*"Antique firearm"* means:

   **1.** Any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898;

   **2.** Any replica of any firearm described in subdivision 1 of this definition if such replica (i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition or (ii) uses rimfire or conventional centerfire fixed ammunition that is no longer manufactured in the United States and that is not readily available in the ordinary channels of commercial trade;

   **3.** Any muzzle-loading rifle, muzzle-loading shotgun, or muzzle-loading pistol that is designed to use black powder, or a black powder substitute, and that cannot use fixed ammunition. For purposes of this subdivision, the term "antique firearm" shall not include any weapon that incorporates a firearm frame or receiver, any firearm that is converted into a muzzle-loading weapon, or any muzzle-loading weapon that can be readily converted to fire fixed ammunition by replacing the barrel, bolt, breech-block, or any combination thereof; or

   **4.** Any curio or relic as defined in this subsection.

*"Assault firearm"* means any semi-automatic center-fire rifle or pistol which expels single or multiple projectiles by action of an explosion of a combustible material and is equipped at the time of the offense with a magazine which will hold more than 20 rounds of ammunition or designed by the manufacturer to accommodate a silencer or equipped with a folding stock.

*"Curios or relics"* means firearms that are of special interest to collectors by reason of some quality other than is associated with firearms intended for sporting use or as offensive or defensive weapons. To be recognized as curios or relics, firearms must fall within one of the following categories:

   **1.** Firearms that were manufactured at least 50 years prior to the current date, which use rimfire or conventional centerfire fixed ammunition that is no longer manufactured in the United States and

that is not readily available in the ordinary channels of commercial trade, but not including replicas thereof;

**2.** Firearms that are certified by the curator of a municipal, state, or federal museum that exhibits firearms to be curios or relics of museum interest; and

**3.** Any other firearms that derive a substantial part of their monetary value from the fact that they are novel, rare, bizarre, or because of their association with some historical figure, period, or event. Proof of qualification of a particular firearm under this category may be established by evidence of present value and evidence that like firearms are not available except as collectors' items, or that the value of like firearms available in ordinary commercial channels is substantially less.

*"Dealer"* means any person licensed as a dealer pursuant to *18 U.S.C. Section 921* et seq.

*"Firearm"* means any handgun, shotgun, or rifle that will or is designed to or may readily be converted to expel single or multiple projectiles by action of an explosion of a combustible material.

*"Handgun"* means any pistol or revolver or other firearm originally designed, made and intended to fire single or multiple projectiles by means of an explosion of a combustible material from one or more barrels when held in one hand.

*"Lawfully admitted for permanent residence"* means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.

**H.** The Department of Criminal Justice Services shall promulgate regulations to ensure the identity, confidentiality and security of all records and data provided by the Department of State Police pursuant to this section.

**I.** The provisions of this section shall not apply to (i) transactions between persons who are licensed as firearms importers or collectors, manufacturers or dealers pursuant to *18 U.S.C. Section 921* et seq.; (ii) purchases by or sales to any law-enforcement officer or agent of the United States, the Commonwealth or any local government, or any campus police officer appointed under Article 3 (*Section 23.1-809* et seq.) of Chapter 8 of Title 23.1; or (iii) antique firearms, curios or relics.

**J.** The provisions of this section shall not apply to restrict purchase, trade or transfer of firearms by a resident of Virginia when the resident of Virginia makes such purchase, trade or transfer in another state, in which case the laws and regulations of that state and the United States governing the purchase, trade or transfer of firearms shall apply. A National Instant Criminal Background Check System (NICS) check shall be performed prior to such purchase, trade or transfer of firearms.

**J1.** All licensed firearms dealers shall collect a fee of $ 2 for every transaction for which a criminal history record information check is required pursuant to this section, except that a fee of $ 5 shall be collected for every transaction involving an out-of-state resident. Such fee shall be transmitted to the Department of State Police by the last day of the month following the sale for deposit in a special fund for use by the State Police to offset the cost of conducting criminal history record information checks under the provisions of this section.

**K.** Any person willfully and intentionally making a materially false statement on the consent form required in subsection B or C or on such firearm transaction records as may be required by federal law, shall be guilty of a Class 5 felony.

**L.** Except as provided in *Section 18.2-308.2:1*, any dealer who willfully and intentionally sells, rents, trades or transfers a firearm in violation of this section shall be guilty of a Class 6 felony.

**L1.** Any person who attempts to solicit, persuade, encourage, or entice any dealer to transfer or otherwise convey a firearm other than to the actual buyer, as well as any other person who willfully and intentionally aids or abets such person, shall be guilty of a Class 6 felony. This subsection shall not apply to a federal law-enforcement officer or a law-enforcement officer as defined in *Section 9.1-101*, in the performance of his official duties, or other person under his direct supervision.

**M.**  Any person who purchases a firearm with the intent to (i) resell or otherwise provide such firearm to any person who he knows or has reason to believe is ineligible to purchase or otherwise receive from a dealer a firearm for whatever reason or (ii) transport such firearm out of the Commonwealth to be resold or otherwise provided to another person who the transferor knows is ineligible to purchase or otherwise receive a firearm, shall be guilty of a Class 4 felony and sentenced to a mandatory minimum term of imprisonment of one year. However, if the violation of this subsection involves such a transfer of more than one firearm, the person shall be sentenced to a mandatory minimum term of imprisonment of five years. The prohibitions of this subsection shall not apply to the purchase of a firearm by a person for the lawful use, possession, or transport thereof, pursuant to *Section 18.2-308.7*, by his child, grandchild, or individual for whom he is the legal guardian if such child, grandchild, or individual is ineligible, solely because of his age, to purchase a firearm.

**N.**  Any person who is ineligible to purchase or otherwise receive or possess a firearm in the Commonwealth who solicits, employs or assists any person in violating subsection M shall be guilty of a Class 4 felony and shall be sentenced to a mandatory minimum term of imprisonment of five years.

**O.**  Any mandatory minimum sentence imposed under this section shall be served consecutively with any other sentence.

**P.**  All driver's licenses issued on or after July 1, 1994, shall carry a letter designation indicating whether the driver's license is an original, duplicate or renewed driver's license.

**Q.**  Prior to selling, renting, trading, or transferring any firearm owned by the dealer but not in his inventory to any other person, a dealer may require such other person to consent to have the dealer obtain criminal history record information to determine if such other person is prohibited from possessing or transporting a firearm by state or federal law. The Department of State Police shall establish policies and procedures in accordance with *28 C.F.R. Section 25.6* to permit such determinations to be made by the Department of State Police, and the processes established for making such determinations shall conform to the provisions of this section.

# History

*1989, c. 745* ;  1990, cc. 594 ,  *692* ;  *1991, cc. 515* ,  *525* ,  *716* ;  *1992, cc. 637* ,  *872* ;  *1993, cc. 451* ,  *461* ,  *486* ,  *493* ,  *674* ;  *1994, c. 624* ;  *1997, c. 341* ;  *1998, c. 844* ;  *2002, c. 695* ;  *2003, cc. 833* ,  *976* ;  *2004, cc. 354* ,  *461* ,  *837* ,  *904* ,  *922* ;  *2005, cc. 578* ,  *859* ;  *2007, c. 509* ;  *2008, cc. 854* ,  *869* ;  *2009, cc. 813* ,  *840* ;  *2011, c. 235* ;  *2012, cc. 37* ,  *257* ,  *776* ;  *2013, cc. 450* ,  *662* ,  *761* ,  *774* ,  *797* ;  *2015, c. 759* ;  *2016, cc. 697* ,  *727* .

Annotations

# Notes

**EDITOR'S NOTE. --**

Acts  *2013, cc. 761*  and  *774* , cl. 2 provides: "That the provisions of this act may result in a net increase in periods of imprisonment or commitment. Pursuant to *Section 30-19.1:4*, the estimated amount of the necessary appropriation cannot be determined for periods of imprisonment in state adult correctional facilities; therefore, *Chapter 3 of the Acts of Assembly of 2012* , Special Session I, requires the Virginia Criminal Sentencing Commission to assign a minimum fiscal impact of $50,000. Pursuant to *Section 30-19.1:4*, the estimated amount of the necessary appropriation cannot be determined for periods of commitment to the custody of the Department of Juvenile Justice."