George M. Lee (SBN 172982)
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, California 94111
Phone: (415) 979-0500
Fax: (415) 979-0511
Email: gml@seilerepstein.com

John W. Dillon (SBN 296788)
**GATZKE DILLON & BALLANCE LLP**
2762 Gateway Road
Carlsbad, California 92009
Phone: (760) 431-9501
Fax: (760) 541-9512
Email: jdillon@gdandb.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILLER, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of California, et al.,<br><br>Defendants. | Case No. 3:19-cv-01537-BEN-JLB<br><br>Hon. Roger T. Benitez<br>Magistrate Hon. Jill L. Burkhardt<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO STAY THE HEARING AND BRIEFING SCHEDULE ON MOTION FOR PRELIMINARY INJUNCTION [22] AND MOTION TO DISMISS [16] PENDING RULING ON DEFENDANTS' MOTION TO STAY [25]** |

Plaintiffs oppose Defendants' *ex parte* application requesting a "temporary stay" for the briefing and hearing schedule on Plaintiffs' preliminary injunction motion and Defendants' motion to dismiss until this Court has ruled on Defendants' motion to stay wherein Defendants ask this Court to rule on the "propriety of staying the action pending resolution of the Ninth Circuit appeals in *Rupp v. Becerra*, No. 19-56004 (9th Cir.), and *Duncan v. Becerra*, No. 19-55376 (9th Cir.). See Defendants' Ex Parte Application, p. 2, Dkt. 27. As shown below, Defendants have not made the requisite showing for any *ex parte* relief. Their only alleged prejudice is that they have to oppose a motion they have known about for more than a month. Further, Plaintiffs have shown irreparable harm in their preliminary injunction motion; and that motion must be heard and determined because the Court's decision on any stay necessarily turns in significant part on the factual and legal issues in that motion. Plaintiffs respectfully request that Defendants' application be denied and that the stay request be fully briefed as a noticed motion.

## I.  Reasons for Denying Defendants' Requested "Temporary" Stay

### A.  Defendants' *Ex Parte* Application is Procedurally Improper

No one disputes the general proposition that the Court has the inherent power to stay proceedings — temporarily or otherwise. Instead, the issue centers on Defendants' failure to satisfy the legal standards governing *ex parte* applications. At their core, *ex parte* applications "are nearly always improper." *In re Intermagnetics Am.*, 101 B.R. 191, 192 (C.D. Cal. 1989). The use of *ex parte* application procedures are justified only when: "(1) there is a threat of immediate or irreparable injury, (2) there is danger that notice to the other party may result in the destruction of evidence or the party's flight, or (3) the party seeks a routine procedural order that cannot be obtained through a regularly noticed motion, i.e., to file an overlong brief or shorten the time within which a motion may be brought." *Horne v. Wells Fargo Bank, N.A.*, 969 F. Supp. 2d 1203, 1205 (C.D. Cal. 2013).

The moving parties must show that their cause will be irreparably prejudiced if the underlying motion is heard according to the regular noticed motion procedures. Moreover, the moving parties must establish that they are without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.,* 883 F. Supp. 488, 492 (C.D. Cal. 1995).

Applying the legal standards, Defendants' ex parte application does not show any threat of an immediate or irreparable injury or prejudice; and Defendants created this false emergency by not promptly moving for a stay pursuant to regular noticed motion procedures. Indeed, the Defendants' own papers show that the appeal in *Duncan v. Becerra* was filed in April 2019; and the appeal in *Rupp v. Becerra* was filed in August 2019. See Defendants' Motion to Stay, p. 2, fn.2, Dkt. 25. The complaint in this case was first filed in August 2019 (Dkt. 1) and the First Amended Complaint was filed in September 2019. Dkt. 9. However, defendants waited until December 13, 2019 to move for a permanent stay of this case, and until December 19, 2019 to request this "temporary stay." Dkt. 27; see also Declaration of John W. Dillon (Dillon Dec.) ¶15, filed herewith. Defendants offer no justification for waiting until now to seek a stay of these proceedings.

Defendants assert there is an "urgent need for relief from the burdensome briefing schedule imposed by Plaintiffs' motion for preliminary injunction." Defendants' Ex Parte App., p. 3, Dkt. 27. However, Defendants have not made any showing of "urgency" aside from having to oppose a well-considered and thorough motion for preliminary injunction.[1] Moreover, Defendants' assertion is made the day

---

[1] Defendants knew as of November 19, 2019 that Plaintiffs were intending to file an *extensive* motion for preliminary injunction and stipulated to an extension of the page limitations by seven additional pages. Dkt. 17.

after Plaintiffs joined with Defendants in filing a joint motion/stipulation to extend the briefing and hearing schedule for both Plaintiffs' preliminary injunction motion and Defendants' motion to dismiss, in order to provide Defendants' counsel some relief from a briefing schedule interrupted by the Holidays. Nevertheless, on Friday, December 20, 2019, this Court granted Defendants relief from the briefing schedule (per their request), and extended the hearing dates for these motions to January 29, 2020. Dkt. 28.  Simply stated, Defendants' "urgent" *ex parte* application is really just a motion to further continue the hearing dates for the two motions immediately after they already received an extension of time on the motions.  Defendants provide no evidence supporting the notion that they will suffer irreparable harm if this *ex parte* application is denied.

Further, the avoidance of effort is not "prejudice" justifying emergency relief on an ex parte basis.  For example, in *XR Commc'ns, LLC v. Ruckus Wireless, Inc.*, No. 2:17-cv-02961-AG-JCG, 2017 WL 6048895 (C.D. Cal. Aug. 10, 2017), the court rejected defendant's ex parte "emergency request" to stay discovery proceedings pending resolution of its motion to dismiss or transfer venue, specifically rejecting the defense's argument that allowing the matter to proceed would be "wasteful and burdensome." 2017 WL 6048895 at *2.  *See also*, *Komaiko v. LegalZoom.com, Inc.*, No. 2:15-cv-7877-R-KS, 2016 WL 9023013, at *2 (C.D. Cal. May 24, 2016) (a mere showing that the discovery may involve some inconvenience or expense does not suffice to establish good cause to justify a stay of proceedings).  In this case, the proceedings should not be ground to a halt in mid-stream, simply because Defendants suddenly realized how much there is to do and oppose, or less charitably, belatedly realized that the Plaintiffs' case has merit.  Prejudice is being unfairly deprived of the ability to make or present meritorious claims, not that the amount of work in having to defend the Legislature's irrational and arbitrary policies may be burdensome in itself.  Defendants' mid-stream realization that this case has substance does not

- 3 -

justify a lengthy stay in the proceedings, temporary or otherwise.

The second standard for a procedurally proper ex parte application is not applicable on its face (*i.e.*, no showing of any claims concerning the destruction of evidence or flight).

The third standard is likewise inapplicable. This stay request is not a "routine procedural order that cannot be obtained through a regularly noticed motion, i.e., to file an overlong brief or shorten the time within which a motion may be brought." *Horne,* 969 F. Supp. 2d at 1205. Defendants request to have their stay motion heard on a shortened time basis — without any showing of actual emergency or unfair prejudice — and to put their stay motion at the front of the line, in priority above all other motions filed and already partially briefed. As the court stated in *In re Intermagnetics Am., Inc.*, ex parte applicants "demand priority consideration, where such consideration is seldom deserved. In effect, they put the applicant "ahead of the pack," without cause or justification. 101 B.R. at 193. Defendants have failed to show why their "temporary" stay request could not have been brought through a regularly noticed motion well before December of this year. In short, Defendants' stay request is not merely a "routine procedural" requests.

If the stay request is granted, Plaintiffs' case will be put into a black hole for the duration of the appeals in *Duncan v. Becerra* and *Rupp v. Becerra*. Both appeals were filed in 2019, and they are not expected to be completed for more than 20 months from now (see https://blogs.duanemorris.com/appellatelaw/2018/04/06/how-long-does-a-ninth-circuit-civil-appeal-take/). The high likelihood of *en banc* consideration also should be taken into account, as many Second Amendment challenges in the Ninth Circuit have been considered *en banc. See, e.g.*, *Peruta v. Cnty. of San Diego*, 824 F.3d 919 (9th Cir. 2016), *Teixeira v. City of Alameda*, 873 F.3d 670 (9th Cir. 2017), *Young v. Hawaii*, 915 F.3d 681 (9th Cir. 2019). This time frame also does not account for the inevitable petition to the U.S. Supreme Court

regardless of the outcome of either of the two appeals. This could add several years to the process. And throughout, Plaintiffs' Second Amendment rights would be curtailed during this entire time frame.

In Plaintiffs' view, the better practice is to promptly hear and resolve this case, enter judgment, allow for an appeal, and reassess any "stay" request after the important issues in this case are adjudicated. By hearing this case now, this Court can join in these important issues now, both so that the Ninth Circuit can have the benefit of this Court's views and any evidence and any record findings that may reflect material differences, but also in order to expedite any responsive briefing should the Ninth Circuit decide those other appeals before this case is final. At that time, the landscape of the issues presented will be clear, and a stay can be reassessed at that time. The alternative is to add excessive delay not only while waiting an uncertain amount of time for the prior cases, but also while waiting for Defendants to brief the fundamental and unchanging aspects of Plaintiffs' preliminary injunction motion.

### B. This Court's Decision on the Motion to Stay Turns in Significant Part On the Issues to be Argued in Plaintiffs' Preliminary Injunction Motion

Briefing and argument on the merits of Plaintiffs' preliminary injunction motion will inform the propriety of a stay — particularly with regard to issues like irreparable harm to Plaintiffs, which would be exacerbated by granting a stay. Specifically, Plaintiffs' preliminary injunction motion makes the case that the challenged law deprives Plaintiffs of their Second Amendment rights, which constitutes irreparable injury. Dkt. 22 at 28. Further, the Ninth Circuit has applied the First Amendment's "irreparable-if-only-for-a-minute" rule to cases involving other rights; and, in doing so, has held a deprivation of these rights represents irreparable harm *per se*. *Id.* (a deprivation of the right to arms is "irreparable," with "no adequate remedy at law"). The Assault Weapons Control Act's (AWCA) restrictions on otherwise lawful conduct are enforced by severe criminal and civil

- 5 -

penalties, which can result in incarceration and a lifetime prohibition on an individual's Second Amendment rights. Plaintiffs have been deprived, and continue to be deprived, of their fundamental Second Amendment rights. See Dkt. 22 (Miller Dec.; Hauffen Dec.; Rutherford Dec.; Sevilla Dec.; Phillips Dec.; Peterson Dec.; Gottlieb Dec.; Hoffman Dec.; and Combs Dec.). Thus, the AWCA and Defendants' policies, practices, and customs have caused, and will continue to cause irreparable harm —absent injunctive relief. In contrast, Defendants will not suffer any irreparable harm if forced to timely submit briefs on the motions in question. Defendants admit that this case challenges "two provisions of the AWCA that were not directly addressed in *Rupp*." Dkt. 25-1 at 4. Defendants' also concede this case is "broader" than the two appeals. Dkt. 25-1 at 6. Thus, any factual findings from this Court's decision on the preliminary injunction motion may assist the Ninth Circuit.

### C. Any Prejudice is Due to Defendants' own Inaction and Defendants Have Not Made a Showing of Prejudice Beyond Simply Opposing a Motion

The only burden or prejudice cited by Defendants to justify *ex parte* relief is (1) the *potential* for unnecessary work on briefing the preliminary injunction and motion to dismiss, and (2) the supposedly burdensome briefing schedule currently in place regarding these motions. As stated above, to justify an *ex parte* application, it must be established that the moving party is without fault in creating the crisis that requires *ex parte* relief. *Mission Power Eng'g Co. v. Cont'l Cas. Co.,* 883 F. Supp. 488, 492 (C.D. Cal. 1995). In other words, *ex parte* applications are not intended "to save the day for parties who have failed to present requests when they should have." *In re Intermagnetics Am.,* 101 B.R. at 193.

There are three motions currently before this Court. Two of the three motions on calendar are Defendants' own motions. Again, Defendants have not provided any

- 6 -

*Plaintiffs' Opposition To Defendants' Ex Parte Application* (Case No. 3:19-cv-01537-BEN-JLB)

support as to why they waited until now to file their stay request. Defendants could have brought this motion to stay after Plaintiffs filed their complaint in August, or after Plaintiffs filed their first amended complaint in September. See Dillon Dec. ¶ 15. Both appeals cited by Defendants (*Duncan* and *Rupp*) were in place when this action was filed. Instead, Defendants *chose* to litigate this matter on the merits by filing a motion to dismiss, which was not made to dismiss the entirety of the complaint, or even any of the counts therein, but sought to limit Plaintiffs' claims for relief on a limited number of Penal Code provisions — none of which attacked the core allegations of Plaintiffs' complaint. Only after Plaintiffs filed an opposition to Defendants' motion to dismiss, and then filed their preliminary injunction motion on December 6, 2019, did Defendants seek to stay these proceedings. Defendants' "urgent" concern for avoiding unnecessary effort on these motions is entirely one-sided, as they waited for Plaintiffs to expend considerable time on both motions. Further, immediately after Plaintiffs stipulated to extend the briefing and hearing schedules on the preliminary injunction and dismissal motions, Defendants filed this ex parte application. Therefore, the only "prejudice" to Defendants is entirely the result of Defendants' own delay or inaction; and Defendants' burden is merely having to oppose the motion for preliminary injunction and file a reply to their own motion to dismiss.

Defendants contend it "makes the most practical sense" for the Court and parties to temporarily stay the hearing and briefing schedule on Plaintiffs' motion for preliminary injunction and Defendants' motion to dismiss until the Court has ruled on Defendants' broader motion to stay the action. But this simply assumes that their stay motion has inherent merit, deserves to be put above all other motions, and that it will be granted. See Defendants' Ex Parte Application, p. 3, Dkt. 27.

Additionally, the appeals are in their very early stages. By Defendants' own admission, the Ninth Circuit will not even entertain oral argument until mid-2020 or

- 7 -

*Plaintiffs' Opposition To Defendants' Ex Parte Application* (Case No. 3:19-cv-01537-BEN-JLB)

later, followed by 6-9 months before a decision is reached and final, and then followed by a petition to the U.S. Supreme Court. As a result of granting any stay, Plaintiffs' case would be delayed for several years, all while Plaintiffs' Second Amendment rights are being infringed. Plaintiffs will sustain immediate and irreparable harm should a stay be granted.

Finally, Defendants improperly conflate these three cases. *Duncan* is limited to the legality of large capacity magazines. *Rupp* is a limited challenge to some of the provisions in California's Assault Weapon Control Act specifically relating to semiautomatic rifles only. As Defendants acknowledge and admit, Plaintiffs' case here is "broader," as it challenges the many provisions of the AWCA as it relates to all semiautomatic firearms (*e.g.*, rifles, shotguns, and pistols) with various prohibited features including, but not limited to, large capacity and detachable magazines, pistol grips, adjustable stocks, flash suppressors, and forward vertical grips. In fact, the factual records and expert testimony in this case differ significantly from that in *Rupp* and *Duncan*. Thus, it is uncertain whether any ruling in these appeals — likely several years from now — would affect this case. Moreover, because the present case is broader—which the Defendants appear to acknowledge—the case is obviously not co-extensive with any anticipated appeals in *Duncan* and *Rupp* that would somehow determine the outcome of this case. Defendants cannot have it both ways, and the present case should proceed because broader and different factual and evidentiary issues are presented.

### D. Meet and Confer Process

Defendants spend an inordinate amount of time on the meet and confer process and describe counsels' interactions in a surprising manner. Plaintiffs' counsel was not dilatory in the meet and confer process on either the preliminary injunction motion or the joint motion to continue the briefing and hearing schedules. See Declaration of John W. Dillon, **Ex. 1** (copies of counsels' email exchanges

- 8 -

discussing these matters). After receiving the hearing date and filing Plaintiffs' preliminary injunction motion, Plaintiffs met and conferred to extend the briefing and hearing schedules of both the preliminary injunction motion and Defendants' motion to dismiss. The effort to reach an agreement on the joint motion entailed numerous revisions. Once the revisions were made, Plaintiffs' consented to the filing of the joint motion. This *ex parte* application was then filed on the heels of the joint motion, before even receiving the Court's order on the joint motion.

## II.   CONCLUSION

For all the foregoing reasons, Plaintiffs request that the temporary stay request be denied. This case should be quickly heard and determined based on the pending preliminary injunction motion. That motion will inform the Court as to the propriety of the stay, particularly after all the issues and evidence have been presented. The factual record and evidentiary showing, including the expert testimony, differs from and is broader than that presented in the *Duncan* and *Rupp* appeals.   Any stay request is more appropriately addressed at the appellate level — once the issues in this case have been fully briefed, heard, and determined.

December 23, 2019             Respectfully submitted,

**SEILER EPSTEIN LLP**

**GATZKE DILLON & BALLANCE LLP**

Attorneys for Plaintiffs

*/s/ John W. Dillon*_____
John W. Dillon

- 9 -

*Plaintiffs' Opposition To Defendants' Ex Parte Application* (Case No. 3:19-cv-01537-BEN-JLB)