John W. Dillon (SBN 296788)
    jdillon@gandb.com
**GATZKE DILLON & BALLANCE LLP**
2762 Gateway Road
Carlsbad, California 92009
Phone: (760) 431-9501
Fax: (760) 431-9512

George M. Lee (SBN 172982)
    gml@seilerepstein.com
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, California 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILLER, an individual, et al.,<br><br>    Plaintiffs,<br><br>  vs.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of California, et al.,<br><br>    Defendants. | Case No. 3:19-cv-01537-BEN-JLB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS [ECF 25]**<br><br>Date:     January 27, 2020<br>Time:    10:30 a.m.<br>Courtroom 5A<br>Judge:   Hon. Roger T. Benitez |

– i –
PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS | CASE NO. 3:19-cv-01537-BEN-JLB

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. STATEMENT OF FACTS ..................................................................................... 2

    A. THE SCOPE OF PLAINTIFFS' CHALLENGE IN THE FIRST AMENDED COMPLAINT .................................................................................................. 2

    B. PROCEDURAL HISTORY ............................................................................... 3

III. ARGUMENT ......................................................................................................... 4

    A. STANDARD .................................................................................................... 4

    B. SUBSTANTIAL HARM TO PLAINTIFFS WOULD RESULT FROM A STAY OF INDEFINITE DURATION. ............................................................................... 6

    C. THE SCOPE THIS CASE IS BROADER THAN *DUNCAN* AND *RUPP*. ............. 9

    D. A STAY OF PROCEEDINGS MAY INVOLVE A LENGTHY DELAY. ............... 12

IV. CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Arakaki v. Cayetano*, 299 F.Supp.2d 1090 (D. Haw. 2002),
 aff'd in part, rev'd in part sub nom. *Arakaki v. Lingle*,
 423 F.3d 954 (9th Cir. 2005) .................................................................................. 15

*Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053 (9th Cir. 2014) ............... 9

*Camreta v. Greene*, 563 U.S. 692, 131 S.Ct. 2020 (2011) ..................................... 15

*Clinton v. Jones*, 520 U.S. 681, 117 S.Ct. 1636 (1997) ................................. 4, 5, 13

*CMAX Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) ..................................................... 5

*Dependable Highway Exp., Inc. v. Navigators Ins. Co.*,
 498 F.3d 1059 (9th Cir. 2007) ............................................................................. 5, 6

*Dister v. Apple-Bay E., Inc.*, No. C 07-01377 SBA,
 2007 WL 4045429 (N.D. Cal. Nov. 15, 2007) ............................................... 10, 12

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ......................................... 9, 14

*Duncan v. Becerra*, 265 F.Supp.3d 1106 (S.D. Cal. 2017) ...................................... 8

*Duncan v. Becerra*, 366 F.Supp.3d 1131 (S.D. Cal. 2019) .............................. 2, 10

*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................................................ 6

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ............................................ 8

*Grace v. District of Columbia*, 187 F.Supp.3d 124 (D.D.C. 2016) ......................... 8

*Gregorio T. By and Through Jose T. v. Wilson*, 59 F.3d 1002 (9th Cir. 1995) ...... 12

*Hart v. Massanari,* 266 F.3d 1155 (9th Cir. 2001) ................................................. 16

*Landis v. North Am. Co.*, 299 U.S. 248, 57 S.Ct. 163 (1936) ....................... 5, 6, 12

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) ..................................... 5, 6

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 126 S.Ct. 704 (2005) .................. 5

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) .................................................. 6

*Monterey Mech. Co. v. Wilson*, 125 F.3d 702 (9th Cir. 1997) ................................. 8

*Nken v. Holder*, 556 U.S. 418, 129 S. Ct. 1749 (2009) ............................................ 5

*Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002) .................................................. 3

*United States v. Bastide-Hernandez*, 360 F.Supp.3d 1127 (E.D. Wash. 2018)...... 15

*United States v. Miller*, 307 U.S. 174 (1939) ......................................................... 14

**Statutes**

Cal. Pen. Code § 30515 .......................................................................................... 2, 3

Cal. Pen. Code § 30600 ............................................................................................. 3

Cal. Pen. Code § 30605 ............................................................................................. 3

Cal. Pen. Code § 32310 ........................................................................................... 10

**Regulations**

11 Cal. Code Regs. § 5471 ........................................................................................ 2

**Other Authorities**

Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995)................... 6

Moore et al., *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011).................... 15

# I. INTRODUCTION

Defendants have moved to stay these proceedings [ECF 25], rather than substantively oppose Plaintiffs' pending motion for preliminary injunction [ECF 22], or even file a reply in support of their own motion to dismiss [ECF 16]. Despite being served with the complaint [ECF 1] and subsequent amended complaint [ECF 9] in August and September respectively, it was not until Plaintiffs filed their motion for a preliminary injunction in December that Defendants sought to stay these proceedings, a tactic that can only be attributed to an attempt to cause unnecessary delay.

Defendants' arguments are without merit and their motion should be denied. First, Defendants fail to meet their burden in justifying the issuance of a stay. Second, the motion utterly dismisses, and fails to account for, the ongoing irreparable harm arising not only from the erosion and loss of constitutional rights as presented in Plaintiffs' motion for preliminary injunction, but from the effects of the stay itself, if issued. Third, the motion is further vague and dismissive of the length of the stay, of indefinite duration, which potentially could last for many years. Fourth, resolution of this case, despite Defendants' wishes, is <u>not</u> determinant on the outcome of the *Duncan* and *Rupp* appeals, as Defendants concede that this case is broader than either of those cases.

This Court has a new and qualitatively different record before it, as reflected in Plaintiffs' pending motion for preliminary injunction. There being no legal impediment to allowing Plaintiffs' preliminary injunction motion to proceed, Defendants' motion to stay should be denied.

//
//
//
//

## II. STATEMENT OF FACTS

### A. THE SCOPE OF PLAINTIFFS' CHALLENGE IN THE FIRST AMENDED COMPLAINT

This case presents a broad facial and as-applied challenge to California's Roberti-Roos Assault Weapons Control Act (AWCA) ban on common firearms with common characteristics the State pejoratively calls "assault weapons," and Defendants' policies, practices, and customs enforcing the same. Specifically, this case challenges the State's ever-expanding term "assault weapon" as it pertains to the features prevalent on commonly-held rifles (Pen. Code § 30515(a)(1)-(3)), pistols (Pen. Code § 30515(a)(4)-(5)), and shotguns (Pen. Code § 30515(a)(6)-(8)).

This case became necessary after the Legislature once again expanded the definition of "assault weapon" in 2016 to include any common semiautomatic, centerfire rifle or semiautomatic pistol that does not have a "fixed magazine" if it also has common characteristics. It also defined "fixed magazine" to mean "an ammunition feeding device contained in, or permanently attached to, a firearm in such a manner that the device cannot be removed without disassembly of the firearm action." Pen. Code § 30515(b); 11 Cal. Code Regs. § 5471(p). And thus, as the law stands, a California-compliant "fixed magazine" firearm may have one or more of the listed § 30515(a) characteristics.

However, if a lawfully owned "large-capacity" magazine – those this Court found to be common and constitutionally protected in *Duncan v. Becerra*, 366 F.Supp.3d 1131 (S.D. Cal. 2019) – is inserted into a "fixed magazine" firearm, it would convert the firearm into an illegal "assault weapon." Pen. Code § 30515(a)(2) and (a)(5). And by doing so, through operation of section 30515's definitions and Defendants' policies, practices, and customs, a person would have been subject to severe criminal penalties, such as for unlawfully "manufacturing" and possessing an unregistered "assault weapon." Moreover, without having a fixed magazine, a firearm may not be configured with any of the section 30515(a)

characteristics without it being classified as an "assault weapon."

By amending the law in 2016 in this manner, the Legislature did two things. First, it continued to ban the *use* of "large-capacity" magazines in certain firearms, by calling those firearms "assault weapons."  More broadly, it essentially foreclosed the ownership of most types of commonly-held semiautomatic firearms by ordinary civilians.  The AWCA bans the possession of such so-called "assault weapons" by private individuals. *Silveira v. Lockyer*, 312 F.3d 1052, 1059 (9th Cir. 2002).  It generally makes it a felony to manufacture or cause to be manufactured, distribute, transport, import into the state for sale, keep for sale, offer or expose for sale, give, or lend any "assault weapon." Pen. Code § 30600(a). It also makes it a crime *to possess* any firearm considered an "assault weapon," § 30605(a), even by a law-abiding person for lawful purposes like self-defense in the home, which strikes at the core of the Second Amendment.  Because of the AWCA ban and Defendants' policies, practices, and customs, the ordinary law-abiding California adult resident cannot, *inter alia*, acquire, possess, or use any rifle, pistol, or shotgun arbitrarily defined as an "assault weapon" for lawful purposes including but not limited to self-defense, proficiency training, sport, or hunting.

### B.     PROCEDURAL HISTORY

Plaintiffs filed this case on August 15, 2019, challenging the State's ban on "assault weapons"—common firearms based on the common characteristic of a "large-capacity" magazine in a "fixed magazine" firearm—as a violation of the Second Amendment to the United States Constitution.

Defendants filed their answer to the complaint on September 6, 2019 [ECF 7].

On September 27, 2019, Plaintiffs filed their First Amended Complaint [ECF 9].  This current and operative complaint added additional affected individual plaintiffs and organizational plaintiffs, as well as related allegations, that

1  challenge the AWCA's ban on common firearms with common firearm
2  characteristics.
3      On October 25, 2019, Defendants filed a motion to dismiss certain of
4  Plaintiffs' claims presented in the First Amended Complaint, originally scheduled
5  for hearing on December 16, 2019 [ECF 16]. Plaintiffs filed their opposition to the
6  motion to dismiss on December 4, 2019 [ECF 21].
7      Shortly after opposing the motion to dismiss, on December 6, 2019,
8  Plaintiffs also filed their motion for preliminary injunctive relief.  [ECF 22].  The
9  Court entered an order continuing the hearing of Defendants' motion to dismiss, so
10 that it would be heard on the same day, January 16, 2020, as the preliminary
11 injunction motion.  [ECF 23].  By stipulation and joint motion, but at the express
12 request of the Defendants who were requesting relief from the briefing schedule,
13 the parties agreed to continue the hearing on both motions to January 30, 2020
14 [ECF 27].  The Court granted this continuance and briefing schedule and scheduled
15 the hearings for January 29, 2020.  [ECF 28].
16     However, at the same time that Defendants were requesting a continuance of
17 the hearing on both motions, ostensibly to provide them with relief from a briefing
18 schedule that would have gone through the Holidays, Defendants also filed the
19 instant motion to stay proceedings.  [ECF 27].  Hearing of this motion is presently
20 scheduled for hearing on January 27, 2020.
21
22                 **III.   ARGUMENT**
23 **A.   STANDARD**
24     The parties do not dispute this District Court "has broad discretion to stay
25 proceedings as an incident to its power to control its own docket." *Clinton v. Jones*,
26 520 U.S. 681, 706–07, 117 S.Ct. 1636 (1997) (citing *Landis v. North Am. Co.*, 299
27 U.S. 248, 57 S.Ct. 163 (1936)).  But "[t]he fact that the issuance of a stay is left to
28 the court's discretion 'does not mean that no legal standard governs that discretion

.... '[A] motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles.'" *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 1761 (2009) (citing *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 126 S.Ct. 704 (2005)). In determining whether to grant a motion to stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)). "Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110 (citing *CMAX, Inc.*, 300 F.2d at 268). *See also*, *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("*Landis* cautions that "if there is even a fair possibility that the stay ... will work damage to some one else," the stay may be inappropriate absent a showing by the moving party of "hardship or inequity.")

"The proponent of a stay bears the burden of establishing its need." *Clinton*, 520 U.S. at 708 (citing *Landis*, 299 U.S. at 255). "[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Clinton*, 520 U.S. at 708; *Nken*, 556 U.S. at 433-434. It is well settled that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer*, 398 F.3d at 1112 (citing *Landis*, 299 U.S. at 255); *Dependable Highway Exp., Inc.*, 498

F.3d at 1066.

## B. SUBSTANTIAL HARM TO PLAINTIFFS WOULD RESULT FROM A STAY OF INDEFINITE DURATION.

Applying these principles, the Court must carefully consider the potential harm to Plaintiffs as well as the thousands of California residents similarly situated arising from the proposed stay, which is of an indefinite duration.  Defendants' dismissive assertion that "no prejudice [would] result from a stay," completely ignores the Plaintiffs' claim of irreparable injury arising from the deprivation of constitutionally-guaranteed liberty interests, as asserted in Plaintiffs' preliminary injunction motion.  As argued there, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). As shown by and through the declarations supporting Plaintiffs' preliminary injunction motion, Plaintiffs have been and continue to be deprived of their fundamental Second Amendment rights.

Defendants' motion is borderline contemptuous of Plaintiffs' concerns, claiming somehow that any proposed stay would actually *benefit* them, and further minimizes any harm by incorrectly asserting that Plaintiffs have lived with but somehow failed to challenge the AWCA for twenty years.  This argument is absurd on its face.  As asserted in the First Amended Complaint, and as is likely undisputed by the Defendants, the DOJ itself had estimated that prior to the 2016 amendments to the assault weapon statutes, there were as many as 1.5 million "bullet button assault weapons" which had been legally acquired in California

alone. (FAC, ¶ 44). The 2016 amendments to the assault weapons statutes, through passage of SB 880 and AB 1135, which prohibited new importation/acquisition of "bullet button assault weapons," all but foreclosed ordinary California citizens' access to any form of commonly-held firearms that are in common use in virtually every other state of the Union.

Since its enactment, the AWCA has been expanded several times. Each expansion has redefined what constitutes an "assault weapon" and restricts an increasing number of firearms originally lawfully purchased and owned. With each expansion, thousands — even millions — of gun owners are threatened with criminal liability.

Moreover, Plaintiffs, as well as thousands of gun owners in California, continue to suffer ongoing harm because of the utter uncertainty as to which configurations of their firearms are even legal. Although there are hundreds if not thousands of products on the market to make the firearms in question "California compliant," the State has provided zero guidance as to what satisfies the State's complicated and uncertain definitions. To even determine if a muzzle attachment is a "flash suppressor" or a "compensator" requires the State to subject the product to live-fire testing and reliance on the opinions of experts. Ordinary individuals do not have access to these tests or experts — nor should they be expected to. Thus, at any moment, the State could make the determination that a long-sold, widely available compliance product is not actually "compliant," potentially putting thousands in jeopardy of criminal liability for possessing assault weapons, overnight and without notice. This lawsuit is necessary, and Plaintiffs continue to suffer irreparable harm every day these constitutional violations continue.

Defendants' attempt to distort a well-understood maxim about justice being delayed (perhaps "justice delayed for a while longer is not really an injustice"?) is legally unsupportable as well. As asserted in Plaintiffs' motion for preliminary

injunction, the Ninth Circuit has applied the First Amendment's "irreparable-if-only-for-a-minute" rule to cases involving other rights and, in doing so, has held a deprivation of these rights represents irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). And as this Court has already concluded, "[t]he same is true for Second Amendment rights. Their loss constitutes irreparable injury." *Duncan v. Becerra*, 265 F.Supp.3d 1106, 1135 (S.D. Cal. 2017). "The right to keep and bear arms protects tangible and intangible interests which cannot be compensated by damages. […] 'The right to bear arms enables one to possess not only the means to defend oneself but also the self-confidence—and psychic comfort—that comes with knowing one could protect oneself if necessary.'" *Id*. (citing *Grace v. District of Columbia*, 187 F.Supp.3d 124, 150 (D.D.C. 2016) and *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011)). "Loss of that peace of mind, the physical magazines, and the enjoyment of Second Amendment rights constitutes irreparable injury." *Duncan*, 265 F.Supp.3d at 1135. See also, *Ezell*, 651 F.3d at 700 (a deprivation of the right to arms is "irreparable," with "no adequate remedy at law").

Defendants are further dismissive of the merits of Plaintiffs' preliminary injunction motion, claiming that it is unlikely that Plaintiffs will obtain preliminary injunctive relief here. (Motion at 8-9). If that were such a foregone conclusion, perhaps the Defendants might have simply *opposed* Plaintiffs' motion instead of making a separate motion to stay it. In any event, Defendants' attempt to make a distinction between the prohibitory preliminary injunction issued in *Duncan* with the preliminary injunction sought here is off the mark. In *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053 (9th Cir. 2014), the Ninth Circuit reversed the district court's denial of the plaintiffs' motion for a preliminary injunction, where they sought to enjoin Arizona's enforcement of state law and policy which would have prevented persons who were brought to the United States as children from

obtaining drivers' licenses.  The Ninth Circuit held that the requested injunction was prohibitory, and not mandatory, because it would not have ordered defendants to issue drivers' licenses to the plaintiffs, even if enjoining the state's newly-enacted policies would have achieved the same result.  757 F.3d at 1061.

Likewise, Plaintiffs here contest the enforceability of the defendants' newly-enacted policies, following passage of SB 880 and AB 1135, which now effectively foreclose Plaintiffs and millions of other law-abiding California citizens from acquiring semi-automatic firearms which are in common use, for lawful purposes, in most places in the nation, under the test articulated in *District of Columbia v. Heller*, 554 U.S. 570, 624-25 (2008) (the Second Amendment protects the right to of individuals to keep and bear arms that are in common use for lawful purposes, such as self-defense, sport, hunting, and maintaining preparedness for service in the militia).  Defendants' attempt to distinguish the scope of the injunctive relief requested and obtained in *Duncan* completely ignores that this Court also granted the plaintiffs *permanent* injunctive relief, not only to maintain the status quo and prevent enforcement of a law which prohibited the mere *possession* of "large-capacity" magazines, but also to strike down Penal Code § 32310 (a law which had been on the books for twenty years) in its entirety.  See, *Duncan v. Becerra*, 366 F.Supp.3d 1131, 1186 (S.D. Cal. 2019).

### C.   THE SCOPE OF THIS CASE IS BROADER THAN *DUNCAN* AND *RUPP*.

In pressing the case for a stay, Defendants' motion ambiguously claims that "The *Rupp* case is both broader and narrower than this case." (Motion at p. 6, fn.2).  This is simply Defendants' way of hedging their bets.  To the extent that the cases argue identical or similar issues, based on similar evidence, then there is or would be little burden for Defendants to proceed here, as they could simply use the same arguments and evidence as they did in their summary judgment motion in

*Rupp*. But to the extent that the present case is broader – which the Defendants concede – then the case is obviously not coextensive with any anticipated ruling in *Rupp* that would somehow determine the outcome of this case. Defendants cannot have it both ways, and this Court should allow the present case to proceed to present any overlapping questions in a broader or different factual context than those previously presented by other parties with whom the plaintiffs here have no affiliation. Regardless, Defendants fail to assert how they are prejudiced by defending against this "broader and narrower" case.

"Another interest to be weighed in deciding upon a motion to stay is whether such action will promote the 'orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Dister v. Apple-Bay E., Inc.*, No. C 07-01377 SBA, 2007 WL 4045429, at *5 (N.D. Cal. Nov. 15, 2007) (citing *Lockyer*, 398 F.3d at 1110). Here, Defendants improperly conflate these three cases. *Duncan* is limited to the legality of "large-capacity" magazines. *Rupp* is a limited challenge to some of the provisions in California's AWCA specifically relating to semiautomatic rifles only. As Defendants acknowledge and admit, Plaintiffs' case here is "broader," as it challenges the many provisions of the AWCA as it relates to all semiautomatic firearms (e.g., rifles, shotguns, and pistols) with various prohibited characteristics including, but not limited to, "large-capacity" and detachable magazines, pistol grips, adjustable stocks, flash suppressors, and forward vertical grips. In fact, the factual records and expert testimony in this case differ significantly from that in *Rupp* and *Duncan*, and encompass a broader contextual scope addressing the entirety of the State's ban on common semiautomatic firearms with common characteristics. Thus, it is uncertain whether any ruling in these appeals — likely several years from now, as articulated below — would affect this case.

Defendants' motion also argues that a stay is necessary, in part, to avoid potentially inconsistent rulings that might need to be "disentangled" following resolution of the *Rupp* and *Duncan* appeals. (Motion, at p. 11). But that might be the rationale for justifying *any* case where a similar issue is pending before a court of appeal. And in any event, that is not what is directly and presently before this Court at this time, which are simply: a motion to dismiss [ECF 21] and a motion for preliminary injunction [ECF 22]. As far as the latter is concerned, there is no risk of inconsistent adjudications; as this Court is aware, the *only* issue on an appeal of the grant of a preliminary injunction is whether the district court correctly applied the law, and not the merits of the case. *Gregorio T. By and Through Jose T. v. Wilson*, 59 F.3d 1002, 1004 (9th Cir. 1995). Accordingly, and at present, this Court is certainly empowered to decide as a preliminary matter the merits of California's ban on so-called assault weapons in deciding to grant preliminary injunctive relief, irrespective and independently of what any other district court might have concluded with a different evidentiary record.

      Finally, Defendants suggest that another district court has stayed a similar "large-capacity" magazine case (*Wiese v. Becerra*, in the Eastern District of California), pending the outcome in *Duncan*. However, the Defendants fail to point out that the plaintiffs in *Wiese* did not object to the stay issued in that matter. And as the district court pointed out in *Dister v. Apple-Bay E., Inc.*, even if some litigants have mutually agreed to place their own actions on hold, "it does not necessarily follow that all defendants, even ones who vigorously oppose any stay, should be forced to wait many months to resolve their own disputes. As the Supreme Court explains, '[o]nly in rare circumstances will a litigant in one c[a]se be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.'" *Dister*, 2007 WL 4045429, at *5 (citing *Landis*, 299 U.S. at 255).

**D.     A STAY OF PROCEEDINGS MAY INVOLVE A LENGTHY DELAY.**

Defendants assert that the *Rupp* and *Duncan* appeals "are proceeding expeditiously" (Motion at 12:11-12), suggesting that the matters will be resolved soon.  This is quite an assumption.  In fact, the parties in *Rupp* have recently agreed, and the Court approved the appellants' unopposed motion, to a further delay in the proceedings pending the Supreme Court's distribution of the matter of *Worman v. Healey*, Sup. Ct. Case No. 19-404, for its January 10, 2020 conference.  The *Worman* matter involves a Second Amendment challenge to a Massachusetts law banning the acquisition and possession of Massachusetts-defined "assault weapons."  So in other words, the Defendants here would ask to stay the instant matter, pending the outcome of the Ninth Circuit review in two other matters, which in turn, may hinge and be indefinitely delayed by the Supreme Court's grant of certiorari, briefing, and argument in a matter from the First Circuit.

That's a lot of potential waiting on other cases. As this Court may recognize the large number of Second Amendment cases that have been held in abeyance pending the Supreme Court's decision in *New York State Rifle & Pistol Assn. v. City of New York*, Sup. Ct. Case No. 18-280,[1] including, possibly *Worman* itself, one could easily conclude that waiting for higher courts to provide guidance and delay – over multiple matters which are not completely coextensive with the issues in the present case – could involve a delay of many years on such grounds alone. Moreover, even if the *Duncan* and *Rupp* cases do not, in turn, depend upon further guidance from Supreme Court review, the outcome of those cases themselves would presumably be subject to their own potential review by petitions for certiorari to the Supreme Court.

---

[1] For a current list of cases being held pending *NYSRPA*, see:
https://sites.law.duke.edu/secondthoughts/2020/01/13/scotus-gun-watch-week-of-1-13-20/

If the median time from notice of appeal to decision in the Ninth Circuit is 22.8 months[2] (and that is just the median time, as half of the appeals would necessarily take longer), and the *Duncan* and *Rupp* appeals were only filed last year, we can confidently predict a delay of years even without further review by the Supreme Court if a stay is issued here.  The courts must take into consideration whether such a lengthy delay, of indefinite duration, could "increase the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party." *Clinton*, 520 U.S. at 707–708 ("[s]uch a lengthy and categorical stay takes no account whatever of the respondent's interest in bringing the case to trial.")  Thus, even if Defendants' views are to be credited at all, wouldn't the better approach be to have this Court promptly hear and resolve this case, enter judgment, allow for an appeal, and reassess the merits of a "stay" at the appellate court level?  By that time, the landscape of the issues presented will be clear, and the issue of a stay can be reassessed at that time.

Defendants have simply pointed out that Second Amendment litigation has generated a fair amount of interest and activity on the appellate level.  And those matters will be fully resolved on their own records.  But there is no current legal impediment that should prevent *this* Court from weighing in with its own views as to whether California's gun laws have gone too far in restricting the rights of ordinary citizens to obtain firearms that are in common use, for lawful purposes, and whether the lower courts have been faithfully applying the principles articulated in *Heller*.  Defendants point out that the district court in *Rupp* ultimately believed that "semiautomatic rifles within the AWCA's scope are

---

[2] https://blogs.duanemorris.com/appellatelaw/2018/04/06/how-long-does-a-ninth-circuit-civil-appeal-take/

virtually indistinguishable from M-16s and thus are not protected by the Second Amendment" (Motion at 3:23-26), or that it believed that such bans did not severely burden the core of the Second Amendment right (Id., at 3:28-4:2).  But notwithstanding what evidence another district court relied upon and believed to carry the day in the *Rupp* matter, in granting summary judgment for the State, this Court has before it new litigants, with different facts and evidence that it could readily review to weigh in on the matter.

One issue that is not present in either *Duncan* or *Rupp*, for example, is whether certain firearms covered by the AWCA are well-suited for militia service, following *United States v. Miller*, 307 U.S. 174, 178 (1939).  This is an issue that is now squarely before this Court, as set forth in Plaintiffs' motion for preliminary injunction [ECF 22-1, Plaintiffs' Memo. at pp. 15-16].  That issue was neither directly raised nor argued in either the *Duncan* appeal, or the *Rupp* proceedings, and is therefore a separate and independent issue that this Court ought to adjudicate independently, irrespective of any appellate decisions in those cases.

Plaintiffs here have also undertaken a thorough and fresh analysis of whether the AWCA can be historically justified, or whether the firearms at issue are in common, use as measured both by their commonality in the nation, and an analysis of their commonality as measured by their availability by the lack of bans in a majority of other jurisdictions. These are new and important considerations not contained in any other record.  Plaintiffs here have presented a compelling case that the AWCA, as now codified, cannot be justified under any of these analyses, and this Court should weigh in now with a view of the evidence presented in *this* case, uncolored by what district courts in other cases have decided, or what an appellate court *might* decide in the future.  "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v.*

*Greene*, 563 U.S. 692, 709, 131 S.Ct. 2020, 2033 n.7 (2011) (citing 18 J. Moore et al., *Moore's Federal Practice* § 134.02[1] [d], p. 134–26 (3d ed. 2011)); *United States v. Bastide-Hernandez*, 360 F.Supp.3d 1127, 1134 (E.D. Wash. 2018). "No district court opinion, published or unpublished, constitutes precedent binding in any other case on any judge; that is, other district judges may freely differ with any district judge's opinion, published or unpublished." *Arakaki v. Cayetano*, 299 F.Supp.2d 1090, 1094 (D. Haw. 2002), *aff'd in part, rev'd in part sub nom. Arakaki v. Lingle*, 423 F.3d 954 (9th Cir. 2005). "That the binding authority principle applies only to appellate decision, and not to trial court decisions, is yet another policy choice. There is nothing inevitable about this; the rule could just as easily operate so that the first district judge to decide an issue within a district, or even within a circuit, would bind all similarly situated district judges, but it does not." *Hart v. Massanari,* 266 F.3d 1155, 1174 (9th Cir. 2001).

This case presents matters of the utmost importance, which ultimately will not be decided by the Ninth Circuit alone. And contrary to Defendants' suggestion, it is not *this* Court that should be the one to defer and yield to the views of another court as it pertains to so-called assault weapons. It should be the reviewing courts who would be better informed by a diversity of opinions, including those that may be expressed by this Court, which now has substantial amounts and quality of evidence before it to make its own informed decision on these important substantive questions.

### IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to stay these proceedings should be denied, and the matter should proceed to allow hearing on both the Defendants' motion to dismiss, and Plaintiffs' motion for preliminary injunction.

//

– 16 –

| | | |
|---|---|---|
| 1 | Dated: January 13, 2020 | **SEILER EPSTEIN LLP** |
| 2 | | |
| 3 | | /s/ George M. Lee |
| | | George M. Lee |
| 4 | | |
| 5 | | Attorneys for Plaintiffs |