# EXHIBIT 1
# TO THE DECLARATION OF JOHN D. ECHEVERRIA

**SB 880**
Page 1

Date of Hearing:  June 14, 2016
Counsel:          Gabriel Caswell

ASSEMBLY COMMITTEE ON PUBLIC SAFETY
Reginald Byron Jones-Sawyer, Sr., Chair

SB 880 (Hall) – As Amended May 17, 2016

**SUMMARY:** Redefines what constitutes an assault weapon in order to close the bullet button loophole. Also requires registration of weapons previously not prohibited, under the new definition. Specifically, **this bill**:

1) Revises the definition of "assault weapon" to mean "a semiautomatic centerfire rifle, or a semiautomatic pistol that does not have a fixed magazine but has any one of those specified attributes."

2) Defines "fixed magazine" to mean "an ammunition feeding device contained in, or permanently attached to, a firearm in such a manner that the device cannot be removed without disassembly of the firearm action."

3) Exempts a person who possessed an assault weapon prior to January 1, 2017, if specified requirements are met.

4) Requires that any person who, from January 1, 2001, to December 31, 2016, lawfully possessed an assault weapon that does not have a fixed magazine, as defined, register the firearm with the Department of Justice (DOJ) before January 1, 2018.

5) Permits the DOJ to increase the $20 registration fee as long as it does not exceed the reasonable processing costs of the department.

6) Requires registrations to be submitted electronically via the Internet utilizing a public-facing application made available by the DOJ.

7) Requires the registration to contain specified information, including, but not limited to, a description of the firearm that identifies it uniquely and specified information about the registrant.

8) Permits the DOJ to charge a fee of up to $15 per person for registration through the internet, not to exceed the reasonable processing costs of the department to be paid and deposited, as specified, for purposes of the registration program.

9) Requires the DOJ to adopt regulations for the purpose of implementing those provisions and would exempt those regulations from the Administrative Procedure Act.

AG00014486

Def. Exhibit 29
Page 001128

**SB 880**
Page 2

**EXISTING LAW**:

1) Contains legislative findings and declarations that the proliferation and use of assault and .50 BMG rifles poses a threat to the health, safety, and security of all citizens of California. (Pen. Code, § 30505.)

2) States legislative intent to place restrictions on the use of assault weapons and .50 BMG rifles and to establish a registration and permit procedure for their lawful sale and possession. (Pen. Code, § 30505.)

3) Prohibits several categories of assault weapons:

   a) Specified firearms listed by name and others listed by series (Pen. Code, § 30510);

   b) Semiautomatic centerfire rifles or semiautomatic pistols having the capacity to accept a detachable magazine and also having one of several specified characteristics;

   c) Semiautomatic centerfire rifles or semiautomatic pistols with a fixed magazine having the capacity to hold more than 10 rounds;

   d) Semiautomatic centerfire rifles with an overall length of less than 30 inches;

   e) Semiautomatic shotguns having two specified characteristics;

   f) Semiautomatic shotguns having the capacity to accept a detachable magazine; and,

   g) Any shotgun with a revolving cylinder.  (Pen. Code, § 30515.)

4) Defines a "detachable magazine" as any ammunition feeding device that can be removed readily from the firearm with neither disassembly of the firearm action nor use of a tool being required.  A bullet or ammunition cartridge is considered a tool.  Ammunition feeding device includes any belted or linked ammunition, but does not include clips, en bloc clips, or stripper clips that load cartridges into the magazine.  (11 Cal. Code Regs. Section 5469.)

5) Bans the manufacture, distribution, transportation, importation, sale, gift or loan of an assault weapon.  (Pen. Code, § 30600, subd. (a).)

6) Makes the possession of an assault weapon a criminal offense, subject to certain exceptions. (Pen. Code, § 30605.)

7) Defines a ".50 BMG rifle" as "a center fire rifle that can fire a .50 BMG cartridge and is not already an assault weapon or a machinegun."  (Pen. Code, § 30530.)

8) Bans the manufacture, distribution, transportation, importation, sale, gift, loan, or possession of .50 BMG rifles.  (Pen. Code §§ 30600 & 30610.)

9) Exempts the DOJ, law enforcement agencies, military forces, and other specified agencies from the prohibition against sales to, purchase by, importation of, or possession of assault

AG00014487

Def. Exhibit 29
Page 001129

**SB 880**
Page 3

weapons or .50 BMG rifles.   (Pen. Code, § 30625.)

10) Requires that any person who lawfully possesses an assault weapon prior to the date it was specified as an assault weapon to register the firearm with DOJ, as specified.   (Pen. Code, § 30900 et. seq.)

**FISCAL EFFECT**:  Unknown

**COMMENTS**:

1) **Author's Statement**:  According to the author, "bullet button-equipped semi-automatic weapons have no legitimate use for sport hunters or competitive shooters. They are designed only to facilitate the maximum destruction of human life. Such weapons have been used in a number of recent gun attacks including the recent terrorist attack in San Bernardino that left 14 Californians dead and 21 injured. Too many Californians have died at the hands of these dangerous weapons.

"SB 880 will make our communities safer and upholds our commitment to reduce gun violence in California by closing the bullet button loophole in California's Assault Weapons Ban. This bill clarifies the definition of assault weapons and provides the DOJ the authority to bring existing regulations into conformity with the original intent of California's Assault Weapon Ban. Absent this bill, the assault weapon ban is severely weakened, and these types of military-style firearms will continue to proliferate on our streets and in our neighborhoods."

2) **California's Assault Weapons Ban**:  The origin of and subsequent modifications to the assault weapons ban in California are described by the federal Court of Appeal in the following extended excerpt from *Silveira* v. *Lockyer*, 312 F.3d 1052 (9th Cir. 2002) (as amend. Jan. 27, 2003).

In response to a proliferation of shootings involving semi-automatic weapons, the California Legislature passed the Roberti-Roos Assault Weapons Control Act (AWCA) in 1989. The immediate cause of the AWCA's enactment was a random shooting earlier that year at the Cleveland Elementary School in Stockton, California. An individual armed with an AK-47 semi-automatic weapon opened fire on the schoolyard, where 300 pupils were enjoying their morning recess. Five children ages six to nine were killed, and one teacher and 29 children were wounded.

The California Assembly met soon thereafter in an extraordinary session called for the purpose of enacting a response to the Stockton shooting. The legislation that followed, the AWCA, was the first legislative restriction on assault weapons in the nation, and was the model for a similar federal statute enacted in 1994. The AWCA renders it a felony offense to manufacture in California any of the semi-automatic weapons specified in the statute, or to possess, sell, transfer, or import into the state such weapons without a permit. The statute contains a grandfather clause that permits the ownership of assault weapons by individuals who lawfully purchased them before the statute's enactment, so long as the owners register the weapons with DOJ. The grandfather clause, however, imposes significant restrictions on the use of weapons that are registered pursuant to its provisions. Approximately 40 models of firearms are listed in the statute as subject to its restrictions. The specified weapons

AG00014488

Def. Exhibit 29
Page 001130

SB 880
Page 4

include "civilian" models of military weapons that feature slightly less firepower than the military-issue versions, such as the Uzi, an Israeli-made military rifle; the AR-15, a semi-automatic version of the United States military's standard-issue machine gun, the M-16; and the AK-47, a Russian-designed and Chinese-produced military rifle. The AWCA also includes a mechanism for the Attorney General to seek a judicial declaration in certain California superior courts that weapons identical to the listed firearms are also subject to the statutory restrictions.

The AWCA includes a provision that codifies the legislative findings and expresses the legislature's reasons for passing the law: "The Legislature hereby finds and declares that the proliferation and use of assault weapons poses a threat to the health, safety, and security of all citizens of this state. The Legislature has restricted the assault weapons specified in [the statute] based upon finding that each firearm has such a high rate of fire and capacity for firepower that its function as a legitimate sports or recreational firearm is substantially outweighed by the danger that it can be used to kill and injure human beings. It is the intent of the Legislature in enacting this chapter to place restrictions on the use of assault weapons and to establish a registration and permit procedure for their lawful sale and possession. It is not, however, the intent of the Legislature by this chapter to place restrictions on the use of those weapons which are primarily designed and intended for hunting, target practice, or other legitimate sports or recreational activities."

In 1999, the Legislature amended the AWCA in order to broaden its coverage and to render it more flexible in response to technological developments in the manufacture of semiautomatic weapons. The amended AWCA retains both the original list of models of restricted weapons, and the judicial declaration procedure by which models may be added to the list. The 1999 amendments to the AWCA statute add a third method of defining the class of restricted weapons: the amendments provide that a weapon constitutes a restricted assault weapon if it possesses certain generic characteristics listed in the statute. Examples of the types of weapons restricted by the revised AWCA include a "semiautomatic, center-fire rifle that has a fixed magazine with the capacity to accept more than 10 rounds," and a semiautomatic, centerfire rifle that has the capacity to accept a detachable magazine and also features a flash suppressor, a grenade launcher, or a flare launcher. The amended AWCA also restricts assault weapons equipped with "barrel shrouds," which protect the user's hands from the intense heat created by the rapid firing of the weapon, as well as semiautomatic weapons equipped with silencers.

3) **Changes This Bill Makes to the AWCA**: As the Court explained, in 1999 the assault weapons ban was amended to expand the definition of an assault weapon to include a definition by the generic characteristics, specifically, to include a "semiautomatic, centerfire rifle that has the capacity to accept a detachable magazine" in addition to one of several specified characteristics, such as a grenade launcher or flash suppressor. [SB 23 (Perata) Statutes of 1999, Chapter 129, Section 7 et seq.] SB 23 was enacted in response to the marketing of so-called "copycat" weapons - firearms that were substantially similar to weapons on the prohibited list but differed in some insignificant way, perhaps only the name of the weapon, thereby defeating the intent of the ban.

SB 23's generic definition of an assault weapon was intended to close the loophole in the law created by its definition of assault weapons as only those specified by make and model. Regulations promulgated after the enactment of SB 23 define a detachable magazine as any

AG00014489

Def. Exhibit 29
Page 001131

Miller et al. v. Becerra et al. – Defs.' Exhibit 1
Page 000005

SB 880
Page 5

ammunition feeding device that can be removed readily from the firearm with neither disassembly of the firearm action nor use of a tool being required. A bullet or ammunition cartridge is considered a tool. In response to this definition, a new feature has been developed by firearms manufacturers to make military-style, high-powered, semi-automatic rifles "California compliant," the bullet button.

In 2012, researchers at the nonprofit Violence Policy Center in Washington, D.C. released a paper describing the phenomenon of the bullet button and its effect on California's assault weapons ban:

> ### The "Bullet Button"–Assault Weapon Manufacturers' Gateway to the California Market
>
> Catalogs and websites from America's leading assault rifle manufacturers are full of newly designed "California compliant" assault weapons. Number one and two assault weapon manufacturers Bushmaster and DPMS, joined by ArmaLite, Colt, Sig Sauer, Smith & Wesson, and others are all introducing new rifles designed to circumvent California's assault weapons ban and are actively targeting the state in an effort to lift now-sagging sales of this class of weapon. They are accomplishing this with the addition of a minor design change to their military-style weapons made possible by a definitional loophole: the "bullet button." [Please see the Appendix beginning on page six for 2012 catalog copy featuring "California compliant" assault rifles utilizing a "bullet button" from leading assault weapon manufacturers.]
>
> California law bans semiautomatic rifles with the capacity to accept a detachable ammunition magazine and any one of six enumerated additional assault weapon characteristics (e.g., folding stock, flash suppressor, pistol grip, or other military-style features).
>
> High-capacity detachable ammunition magazines allow shooters to expel large amounts of ammunition quickly and have no sporting purpose. However, in California an ammunition magazine is not viewed as detachable if a "tool" is required to remove it from the weapon. The "bullet button" is a release button for the ammunition magazine that can be activated with the tip of a bullet. With the tip of the bullet replacing the use of a finger in activating the release, the button can be pushed and the detachable ammunition magazine removed and replaced in seconds. Compared to the release process for a standard detachable ammunition magazine it is a distinction without a difference. (*Bullet Buttons, The Gun Industry's Attack on California's Assault Weapons Ban*, Violence Policy Center, Washington D.C., May 2012.)

One approach to this issue, taken by SB 249 (Yee) in 2012 and SB 47 (Yee) of 2014, as well as AB 1664 (Levine) of this session, and this bill, amends the statute to replace the language regarding detachable magazines This approach also defines a "detachable magazine" as "an ammunition feeding device that can be removed readily from the firearm without disassembly of the firearm action, including an ammunition feeding device that can be removed readily from the firearm with the use of a tool." In other words, a semiautomatic rifle could have a detachable magazine, as long as that rifle did not also have any of the six prohibited features or that rifle could have the prohibited features as long as it had a fixed

AG00014490

Def. Exhibit 29
Page 001132

SB 880
Page 6

magazine.

Proponents argue the feature that makes one semi-automatic rifle capable of killing or wounding more people in a shorter amount of time than another is the capacity to rapidly reload large amounts of ammunition. For example, proponents note that, in 2011, a man opened fire on teenagers at a summer youth camp in Norway, killing 69 and wounding another 110, using a high-powered, semi-automatic rifle, the .223 caliber Ruger Mini-14. That rifle had none of the features listed in California's definition of an assault weapon and it is a perfectly legal weapon in California; supporters of this bill submit that what made that weapon such an effective tool of mass murder is the fact that the killer was able to rapidly reload one magazine after another of ammunition.

4) **Constitutionality**: The Constitutionality of California's assault weapons ban has been upheld by both the California Supreme Court [*Kasler* v. *Lockyer*, 23 Cal. 4th 472 (2000)] and the federal Court of Appeal. [*Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002*) (*as amend. Jan. 27, 2003).] While the California Supreme Court rejected allegations that the law violated equal protection guarantees, the separation of powers, and failed to provide adequate notice of what was prohibited under the law, the Ninth Circuit Court of Appeal decision in *Silveira* was based largely on its interpretation of the Second Amendment right to keep and bear arms. The Second Amendment of the Constitution states, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." (United States Const. Amend. 2.) The *Silveira* Court based its ruling on the widely held interpretation of the Second Amendment known as the "collective rights" view, that the right secured by the Second Amendment relates to firearm ownership only in the context of a "well regulated militia." [*Silveira* v. *Lockyer*, 312 F.3d 1052, 1086 (9th Cir. Cal. 2002).]

The *Silveira* Court's interpretation of the meaning of the Second Amendment has since been squarely rejected by the U.S. Supreme Court in *District of Columbia* v. *Heller*, 554 U.S. 570 (2008) and *McDonald* v. *City of Chicago*, 130 S. Ct. 3020 (2010). Whether the *Heller* and *McDonald* cases mean that California's assault weapons ban violates the Second Amendment and is, therefore, unconstitutional is a different matter.

In *Heller*, the Supreme Court rejected the "collective rights" view of the Second Amendment and, instead, endorsed the "individual rights" interpretation, that the Second Amendment protects the right of each citizen to firearm ownership. After adopting this reading of the Second Amendment, the Supreme Court held that federal law may not prevent citizens from owning a handgun in their home. (*District of Columbia* v. *Heller*, 554 U.S. 570, 683-684.) In the *McDonald* case, the Supreme Court extended this ruling to apply to laws passed by the 50 states. (*McDonald* v. *City of Chicago*, 130 S. Ct. 3020, 3050.)

In deciding that the Second Amendment guaranteed the right to own a handgun in the home for self-defense, the Supreme Court stated that this ruling has its limitations:

"Like most rights, the right secured by the Second Amendment is not unlimited. From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the

AG00014491

Def. Exhibit 29
Page 001133

Miller et al. v. Becerra et al. – Defs.' Exhibit 1
Page 000007

**SB 880**
Page 7

Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."

5) **Governor's Veto Message of 2013's SB 374 (Steinberg)**:  Governor Brown vetoed somewhat similar legislation (requiring a fixed magazine) in 2013 with the following veto message:

"I am returning Senate Bill 374 without my signature.

"The State of California already has some of the strictest gun laws in the country, including bans on military-style assault rifles and high-capacity ammunition magazines.

"While the author's intent is to strengthen these restrictions, this bill goes much farther by banning any semi-automatic rifle with a detachable magazine. This ban covers low-capacity rifles that are commonly used for hunting, firearms training, and marksmanship practice, as well as some historical and collectible firearms. Moreover, hundreds of thousands of current gun owners would have to register their rifles as assault weapons and would be banned from selling or transferring them in the future.

"Today I signed a number of bills that strengthen California's gun laws, including AB 48, which closes a loophole in the existing ban on dangerous high-capacity magazines. I also signed AB 1131 and SB 127, which restrict the ability of mentally unstable people to purchase or possess guns.

"I don't believe that this bill's blanket ban on semi-automatic rifles would reduce criminal activity or enhance public safety enough to warrant this infringement on gun owners' rights."

6) **Argument in Support**:  According to the *Law Center to Prevent Gun Violence,* "The California Legislature recognized long ago—after a gunman with an assault weapon shot 34 children at Cleveland Elementary School in Stockton, California—that these military-grade weapons of war have no place in our communities. Since 1989, California has led the nation in enacting common sense gun safety laws to keep assault weapons off our streets. However, the gun industry has repeatedly skirted the limits of this law and exploited its loopholes in order to continue selling military-style weaponry within the state.

"Existing California law defines prohibited assault weapons to include firearms that have both the capacity to accept a detachable magazine and specified military-style features. The ability to accept a detachable magazine allows a shooter to quickly reload an assault weapon to continue firing and killing without interruption.

"California's assault weapons ban does not define the term 'detachable magazine,' however. Perplexingly, current DOJ regulations define 'detachable magazine' in a manner that runs counter to both the spirit and the letter of the state's assault weapons ban. Under these regulations' definition, a weapon is not considered to have a detachable magazine, and is

AG00014492

Def. Exhibit 29
Page 001134

SB 880
Page 8

therefore not a prohibited assault weapon, if a 'tool' is used to release the firearm's magazine instead of the shooter's finger alone. The regulations specifically state that "a bullet or an ammunition feeding device is considered a tool.[1]

"The gun industry has exploited this dangerous loophole in recent years by marketing 'California compliant' assault weapons that are equipped with a 'bullet button.' These weapons are the functional equivalents of illegal assault weapons in every respect, except that the shooter uses a bullet, magnet, or other instrument, instead of his or her finger, to depress the button that releases the weapon's magazine. These weapons may be reloaded as quickly and efficiently as prohibited assault weapons, but they have been permitted to flood into this state at an alarming rate, threatening Californians' safety.

"SB 880 would further the letter and spirit of California's assault weapons law by adding a statutory definition of 'fixed magazine' to clarify that bullet button weapons are illegal assault weapons. This definition would establish that firearms like bullet button weapons, whose magazines may be removed and reloaded without disassembling the firearm action, do not have 'fixed magazines.' Individuals who lawfully obtained these weapons prior to January 1, 2017, would be required to register their weapons with DOJ.

"A December 2015 mass shooting tragedy illustrates the compelling need for this legislation. On that day, two radicalized assailants used bullet button weapons to shoot 36 people in a San Bernardino community building in the span of less than four minutes. The 'California compliant' bullet button weapons they used were designed to inflict maximal carnage on military battlefields and were nearly indistinguishable from illegal assault weapons. Any legitimate function these weapons might serve in sport or recreation is substantially outweighed by the danger that they may be used to—and in fact have been used to—quickly and efficiently take large numbers of human lives. By prohibiting all future manufacturing, possession, and sale of these weapons, SB 880 would help protect the public and law enforcement from battlefield weaponry that has no place in our civilian communities.

"This legislation is substantively similar to AB 1664 (Levine), which recently passed with strong support in this Committee and on the Assembly floor."

7)  **Argument in Opposition**: According to the *Firearms Policy Coalition*, "On behalf of the members and supporters of Firearms Policy Coalition, I respectfully submit our opposition to Senate Bill 880 (Hall and Glazer) and respectfully request your 'NO' vote.

"SB 880 seeks to expand the ban on so-called 'assault weapon' through vague language, by re-defining the term 'detachable magazine' to mean 'an ammunition feeding device that can be removed readily from the firearm without disassembly of the firearm action, including an ammunition feeding device that can be removed readily from the firearm with the use of a tool.'

"SB 880 would ban millions of semi-automatic rifles protected by the Second Amendment to the United States Constitution and violate the civil rights of every law-abiding person in (and visitor to) California, moving the goal posts yet again for the millions of law abiding residents and visitors who have [quite reasonably, given the volume] struggled for years to keep up with the frenetic pace of California's ever-increasing and expensive firearm regulations.

AG00014493

Def. Exhibit 29
Page 001135

**SB 880**
Page 9

"The California Department of Justice (DOJ) will have to start from scratch to create new regulations, new forms, new databases and new online interfaces. Even with modest compliance by the public, the already struggling DOJ will have to hire or re-purpose dozens of staff in order to process millions of firearms lawfully owned by hundreds of thousands of California residents.

"Law enforcement will find cause to arrest thousands of residents and visitors annually as SB 880 wraps in tens of millions of firearms owned by millions of Californians and visitors. This will burden the courts and the correctional system—with people who are otherwise law-abiding.

"To summarize;

- "SB 880's uninformed new definitions put millions of law–abiding residents and visitors in to our jails and prisons and therefore probation and parole.

- "SB 880 contains no provision for outreach to the millions of Californians who have lawfully acquired firearms that would be subject to SB 880's reach.

- "SB 880 contains no provision for educating law enforcement officers or prosecutors—the very people who will have to interpret and enforce it—which will lead to false arrests and ruined lives.

"SB 880 creates overnight felons for mere possession, transfer, transport or inheritance of common, constitutionally protected items, creating a crisis for residents and visitors who have been law abiding all their lives and could lose all they have worked for –by simply exercising a fundamental right."

8) **Related Legislation**:

a) AB 1663 (Chiu) takes a different approach to closing the bullet button loophole. AB 1663 was held in Assembly Appropriations Committee.

b) AB 1664 (Levine) is substantially similar to this legislation. AB 1664 is currently awaiting a hearing in Senate Public Safety.

9) **Prior Legislation**:

a) SB 47 (Yee), of the 2013-2014 Legislative Session, would have closed the bullet button loophole by redefining an assault weapon in statute as 'a semiautomatic, centerfire rifle that does not have a fixed magazine' and has any one of several specified features. SB 47 was held on the Assembly Appropriations Committee suspense file.

b) SB 374 (Steinberg), of the 2013-2014 Legislative Session, would have closed the bullet button loophole by redefining an assault weapon as it pertains to rifles and defines "detachable magazines" and "fixed magazines." Specifies that rifles which are not assault weapons have fixed magazines. SB 347 was vetoed by the Governor.

AG00014494

Def. Exhibit 29
Page 001136

**SB 880**
Page 10

   c) SB 249 (Yee), of the 2011-12 Legislative Session, would have prohibited any person from importing, making, selling, loaning, transferring or possessing any conversion kit designed to convert certain firearms with a fixed magazine into firearms with a detachable magazine.  SB 249 was held on the Assembly Appropriations Committee suspense file.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

American Academy of Pediatrics
American College of Emergency Physicians, California Chapter
Bend the Arc
Brady Campaign to Prevent Gun Violence, Orange County
Brotherhood Crusade
California Attorney General
California Academy of Family Physicians
California Catholic Conference
California Chapters of the Brady Campaign
California Communities United Institute
California State PTA
Charles R. Drew University of Medicine and Science
City of Berkeley
City of Long Beach
City of Los Angeles
City of Oakland
Coalition Against Gun Violence
Community Clinic Association
Courage Campaign
International Health and Epidemiology Research Center
Law Center to Prevent Gun Violence
Laguna Woods Democratic Club
Nevada County Democrats
Peace Over Violence
Physicians for Social Responsibility, Sacramento
Physicians for Social Responsibility, San Francisco Bay
Rainbow Services
Santa Clara County Board of Supervisors
Violence Prevention Coalition
Youth Alive

31 private individual

**Opposition**

California Rifle and Pistol Association
California Sportsman's Lobby
California State Sheriffs' Association
California Waterfowl Association

AG00014495

Def. Exhibit 29
Page 001137

Miller et al. v. Becerra et al. – Defs.' Exhibit 1
Page 000011

SB 880
Page 11

Crossroads of the West
Gun Owners of California
Firearms Policy Coalition
National Rifle Association
National Shooting Sports Foundation
Outdoor Sportsmen's Coalition of California
Rick Farinelli, District 3 Supervisor, Madera County
Safari Club International
San Bernardino Sheriff's Office

**Analysis Prepared by**: Gabriel Caswell / PUB. S. / (916) 319-3744

---

[i] 11 CCR 5469.

AG00014496

Def. Exhibit 29
Page 001138