# EXHIBIT 25
# TO THE DECLARATION OF JOHN D. ECHEVERRIA

Atkinson-Baker, Inc.
www.depo.com

```
 1          IN THE UNITED STATES DISTRICT COURT

 2         FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3                    SOUTHERN DIVISION

 4

 5   - - - - - - - - - - - - - - - -x

 6   STEVEN RUPP, et al.,            :

 7              Plaintiffs,          :

 8        vs.                        : 8:17-cv-00746-JLS-JDE

 9   XAVIER BECERRA, in his          :

10   official capacity as Attorney   :

11   General of the State of         :

12   California; et al.,             :

13              Defendants.          :

14   - - - - - - - - - - - - - - - -x

15

16                    DEPOSITION OF

17                 GARY KLECK, PH.D.

18                  WASHINGTON, D.C.

19                 DECEMBER 12, 2018

20

21

22   ATKINSON-BAKER, INC.
     (800) 288-3376
23   www.depo.com

24   REPORTED BY:  KAREN YOUNG

25   FILE NO. ACOC3CB
```

**CERTIFIED COPY**

Gary Kleck, PH.D.
December 12, 2018
1
Def. Exhibit 15
Page 000584

Miller et al. v. Becerra et al. – Defs.' Exhibit 25
Page 000515

Atkinson-Baker, Inc.
www.depo.com

```
 1
 2              IN THE UNITED STATES DISTRICT COURT
 3            FOR THE CENTRAL DISTRICT OF CALIFORNIA
 4                       SOUTHERN DIVISION
 5
 6   - - - - - - - - - - - - - - - x
 7   STEVEN RUPP, et al.,           :
 8              Plaintiffs,         :
 9         vs.                      : 8:17-cv-00746-JLS-JDE
10   XAVIER BECERRA, in his         :
11   official capacity as Attorney  :
12   General of the State of        :
13   California; et al.,            :
14              Defendants.         :
15   - - - - - - - - - - - - - - - x
16
17          Deposition of GARY KLECK, PH.D., taken on
18   behalf of the Defendants, at the offices of Bradley
19   Arant Boult Cummings LLP, 1615 L Street, Northwest,
20   Washington, D.C., commencing at 9:44 a.m., Wednesday,
21   December 12, 2018, before KAREN YOUNG, Notary Public.
22
23
24
25
```

2

Gary Kleck, PH.D.
December 12, 2018

Def. Exhibit 15
Page 000585

Miller et al. v. Becerra et al. – Defs.' Exhibit 25
Page 000516

Atkinson-Baker, Inc.
www.depo.com

```
 1              A P P E A R A N C E S
 2    FOR THE PLAINTIFFS:
 3         BRADLEY ARANT BOULT CUMMINGS LLP
 4         BY:  JOHN PARKER SWEENEY, ESQ.
 5         1615 L Street, Northwest, Suite 1350
 6         Washington, D.C. 20036
 7         jsweeney@bradley.com
 8         (202) 719-8216
 9
10    FOR THE DEFENDANTS:
11         ATTORNEY GENERAL OF CALIFORNIA
12         BY:  JOHN D. ECHEVERRIA, ESQ.
13         300 South Spring Street, Suite 1702
14         Los Angeles, California 90013
15         John.Echeverria@doj.ca.gov
16         (213) 269-6249
17
18
19
20
21
22
23
24
25
```

3

Gary Kleck, PH.D.
December 12, 2018

Def. Exhibit 15
Page 000586

Miller et al. v. Becerra et al. – Defs.' Exhibit 25
Page 000517

Atkinson-Baker, Inc.
www.depo.com

```
 1   those research errors.
 2       Q.    Is it your opinion that right-to-carry laws
 3   decrease crime?
 4       A.    No.
 5       Q.    Is that an opinion that has been advanced
 6   by Professor John Lott?
 7       A.    Yes.
 8       Q.    And you do not agree with that assessment.
 9       A.    That's correct, I don't agree.
10       Q.    In fact, you've criticized John Lott's
11   research as being, quote, garbage in and garbage out?
12   Do you recall ever saying that?
13       A.    No, I do not.
14       Q.    Do you recall ever saying the following,
15   quote, "Do I know anybody who specifically believes
16   with more guns, there are less crimes and they're a
17   credible criminologist, no," unquote?
18       A.    Yes, I believe I said that.
19       Q.    And you would agree with that statement
20   today?
21       A.    Yes.  Well, actually, I'd be less certain
22   about it let's say.
23       Q.    Why would you be less certain about it
24   today?
25       A.    Well, because I believe that was just a
```

58

Gary Kleck, PH.D.
December 12, 2018

Def. Exhibit 15
Page 000605

Miller et al. v. Becerra et al. – Defs.' Exhibit 25
Page 000518

Atkinson-Baker, Inc.
www.depo.com

```
 1   casual statement I made in the course of a
 2   conversation with a reporter, and you know, it's not
 3   -- it's not based on sort of a tranquil assessment of
 4   the full body of studies and their relative
 5   methodological merit, but it's what you say in the
 6   course of a conversation where you have to sort of
 7   spontaneously react to whatever questions are pitched
 8   at you by the reporter.  So I make a sharp
 9   distinction between what I say orally in conversation
10   with journalists and what I write down in -- in
11   scholarly articles.
12        Q.    So you do believe that John Lott is a
13   credible criminologist?
14        A.    No, I do not.  I believe that, you know,
15   you can -- you can do research that is credible
16   without you in the course of your entire career being
17   credible, and John Lott has given reason to indicate
18   he was not credible.  On the other hand, he's done
19   research that at the time was the best available work
20   on the subject.
21              So there's no contradiction between saying
22   that as a whole, a scholar has not been credible on a
23   particular topic like do shall issue laws reduce
24   crime, and yet on the other hand also saying that
25   he's done the best available research that existed at
```

59

Gary Kleck, PH.D.
December 12, 2018

Def. Exhibit 15
Page 000606

Miller et al. v. Becerra et al. – Defs.' Exhibit 25
Page 000519

Atkinson-Baker, Inc.
www.depo.com

```
 1   a particular point in time on a particular topic.
 2        Q.    Okay.  We'll move on to your discussion of
 3   paragraph 12 in Professor Donohue's report, which you
 4   begin on page 3 of Exhibit 30, your expert rebuttal
 5   report.  I'll give you a chance to turn to page 3 of
 6   Exhibit 30.  And in paragraph -- in your response to
 7   paragraph 12, you state that gun massacres did not
 8   fall substantially during the ten years when the
 9   federal assault weapons ban was in effect, correct?
10        A.    Yes.
11        Q.    And what was the basis for your statement
12   that gun massacres did not fall during that period?
13        A.    Work by Grant Duwe, that's swelled D-U-W-E,
14   and he's probably the nation's leading authority on
15   mass murders, and he relied in turn on the FBI's
16   supplementary homicide reports, and he basically says
17   that the trend was largely flat during the period
18   that Donohue was alluding to.
19        Q.    Okay.  So you referred on research -- you
20   referred on research done by Grant Duwe in arriving
21   at this opinion, and yet on page -- on page 14 of
22   Exhibit 30, you do not cite to any research by Duwe;
23   is that correct?
24        A.    No, because it wasn't the only foundation
25   for it, and there were other sources that I also
```

60

Gary Kleck, PH.D.
December 12, 2018

Def. Exhibit 15
Page 000607

Miller et al. v. Becerra et al. – Defs.' Exhibit 25
Page 000520

Atkinson-Baker, Inc.
www.depo.com

```
 1      A.    I mean, it's such a vague statement,
 2   closely tracks.  He doesn't even define that.  I
 3   mean, if he wanted to say well, the correlation is
 4   very strong, he could have cited a correlation, and
 5   correlations over time for large macro-level units
 6   like entire nations tend to be high regardless of
 7   whether there's any causal connection.  So by itself,
 8   the statement is both vague and not very meaningful
 9   with regard to whether this association in particular
10   is a strong correlation.
11      Q.    If two events are correlated and if there
12   is a correlation between them, does that make them
13   more likely or less likely that there's a causal
14   relationship between them?
15      A.    More likely.  Not sufficient, but more
16   likely.
17      Q.    Okay.  You also state in your rebuttal to
18   paragraph 57 that Professor Donohue apparently
19   seriously relied on the opinion of the executive
20   director of an organization that lobbies for assault
21   weapons bans.  Do you see that?
22      A.    I do.
23      Q.    Can we refer to Professor Donohue's report,
24   which was marked as Exhibit 4?  I'd like you to turn
25   to paragraph 25, which is where paragraph 57 is.  So
```

159

Gary Kleck, PH.D.
December 12, 2018

Def. Exhibit 15
Page 000668

Miller et al. v. Becerra et al. – Defs.' Exhibit 25
Page 000521

Atkinson-Baker, Inc.
www.depo.com

```
 1   rebutting?
 2       A.    When you refer to a correlation to a
 3   layperson, let's say a judge, and you don't have an
 4   explicit qualifier saying this does not mean
 5   causation, it's understandable people misinterpret
 6   that to mean a statement that one thing causes
 7   another, that in this case use of so-called assault
 8   weapons increases the number of shots fired, victims
 9   injured, et cetera et cetera.
10             So you sometimes have an obligation to make
11   clear what your meaning is by disabusing your
12   audience of possible misinterpretations that are
13   extremely likely, and in this case they are extremely
14   likely.  There's a reason why you have to have that
15   caution, correlation is not causation.  You wouldn't
16   need to say that if people didn't assume that
17   correlation does imply causation.  And so there was
18   absolutely nothing in Donohue to contradict that
19   natural interpretation that many laypeople would
20   apply to his statement about a correlation.
21       Q.    But going back to my question, do you
22   dispute his finding that there is a correlation
23   between the use of assault weapons and the number of
24   victims injured or killed?
25       A.    No, no.
```

185

Gary Kleck, PH.D.
December 12, 2018

Def. Exhibit 15
Page 000681

Miller et al. v. Becerra et al. – Defs.' Exhibit 25
Page 000522

Atkinson-Baker, Inc.
www.depo.com

```
 1      Q.   You do not dispute that correlation.
 2      A.   No.  What I dispute is any implication that
 3 it's causal rather than being a spurious association
 4 attributable to the fact that the lethality of the
 5 aggressor's intent will affect both the number of
 6 victims they hurt, number of shots fired, et cetera
 7 et cetera, and their choice of weaponry.
 8      Q.   Do you have any empirical evidence that the
 9 use of assault weapons and the number of victims
10 killed or injured is not causally related?
11      A.   Well, you can't -- you can never prove a
12 negative.  It's a logical impossibility.  What I can
13 say is there's no affirmative evidence to indicate
14 it's anything more than a spurious association, and I
15 can be very specific about what affirmative evidence
16 would be.  If you could control for the likely
17 sources of a spurious association, for example, the
18 lethality of the aggressor's intent, and then you
19 still found an association between the use of these
20 weapons and the casualty count, then you would have
21 done something in the way of affirmative evidence to
22 establish that it might be causal, but if you only
23 present the association without any further evidence,
24 it's -- there's no affirmative evidence that it's
25 anything other than a spurious association.
```

186

Gary Kleck, PH.D.
December 12, 2018

Def. Exhibit 15
Page 000682

Atkinson-Baker, Inc.
www.depo.com

```
 1              MR. SWEENEY:  Objection.
 2   BY MR. ECHEVERRIA:
 3       Q.   That would be an opinion that's expressed
 4   in paragraph 10 of her report on page 5?
 5       A.   Yes.
 6       Q.   And nothing in your expert rebuttal report
 7   rebuts Ms. Allen's conclusion that in 25 of the 27
 8   mass shootings that involved an assault weapon, the
 9   assault weapon used was an assault rifle rather than
10   a pistol or a shotgun; is that correct?
11              MR. SWEENEY:  Objection.
12       A.   I don't recall addressing that issue one
13   way or the other, so I neither confirm nor deny her
14   conclusion in that regard.
15       Q.   And nothing in your expert rebuttal report
16   rebuts Ms. Allen's opinion that an average number of
17   fatalities or injuries of 46 per mass shooting with
18   an assault weapon versus 12 for those without?
19       A.   No, I did not address that issue either.
20       Q.   And you agree with Ms. Allen that there is
21   a correlation between the use of an assault weapon
22   and the number of fatalities that occur in a mass
23   shooting?
24       A.   Yes.
25       Q.   Do you have any other opinions that you
```

263

Gary Kleck, PH.D.
December 12, 2018

Def. Exhibit 15
Page 000728

Miller et al. v. Becerra et al. – Defs.' Exhibit 25
Page 000524