UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILLER, et al.,<br><br>                         Plaintiffs,<br><br>v.<br><br>California Attorney General Xavier Becerra, et al.,<br><br>                         Defendants. | Case No.: 19-cv-1537-BEN (JLB)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |

In this challenge to California's regulation of firearms deemed to be "assault weapons," Defendants move to dismiss claims about seven statutes based on Plaintiffs' lack of Article III standing and for failure to state a claim for relief. Plaintiffs concede and withdraw one of their claims for relief (attacking Cal. Penal Code section 30925). For the reasons that follow, the remainder of the motion is denied.

## BACKGROUND[1]

Plaintiffs are a group of individuals who may lawfully possess firearms protected by the Second Amendment. In addition to the individual Plaintiffs, there are Plaintiffs that are firearm businesses, special interest groups, two foundations, and a political action committee, all which support the lawful exercise of Second Amendment rights. These

---

[1] The following overview of the facts are drawn from the allegations of Plaintiffs' First Amended Complaint, which the Court assumes true for purposes of evaluating Defendants' motion. The Court is not making factual findings.

Plaintiffs challenge a net of interlocking criminal statutes which impose strict regulations on a variety of firearms that fall under California's complex statutory definition of an "assault weapon." Firearms that are labeled as "assault weapons" by state statute and regulation are not rare museum pieces nor limited edition collector's items. They are popular guns owned and kept by numerous law-abiding citizens for manifold lawful purposes. In many respects, these firearms which are statutorily-deemed "assault weapons" are like commonplace rifles and pistols.

## LEGAL STANDARD

To address the merits of a case, a federal court must have jurisdiction. *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950–51 (2019). "One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so." *Id.* (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704, (2013)). Defendants challenge Plaintiffs' Article III standing at the outset of their suit. "Although rulings on standing often turn on a plaintiff's stake in initially filing suit, 'Article III demands that an actual controversy persist throughout all stages of litigation.'" *Id.* Because it is a jurisdictional requirement, standing cannot be waived or forfeited. *Id.* "And when standing is questioned by a court or an opposing party, the litigant invoking the court's jurisdiction must do more than simply allege a nonobvious harm. To cross the standing threshold, the litigant must explain how the elements essential to standing are met." *Id.* (citation omitted).

A lack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011). "For the purposes of ruling on a motion to dismiss for want of standing," the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

"To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized,

and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1618 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561 (1992)).  The Rule12(b)(1) motion to dismiss in this case focuses on the first element.

Under Federal Rule of Civil Procedure 12(b)(6), a court also may dismiss a complaint if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).  Dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which relief may be granted.  *Twombly*, 550 U.S. at 556.  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

Defendants argue that plaintiffs lack standing to challenge California Penal Code sections 30800 (deeming certain "assault weapons" a public nuisance), 30915 (regulating "assault weapons" obtained by bequest or inheritance), 30925 (restricting importation of "assault weapons" by new residents), 30945 (restricting use of registered "assault weapons"), 30950 (prohibiting possession of "assault weapons" by minors and prohibited persons), 31000 (authorizing additional uses of registered "assault weapons" with a permit), and 31005 (authorizing the sale of "assault weapons" to exempt recipients with a permit).  Plaintiffs consent to dismissal of their challenge to section 30925 and the motion to dismiss is hereby granted with respect to that claim.  With respect to their other claims, Plaintiffs disagree.

The Court finds Plaintiffs have standing on all claims in large part flowing from the criminal penalties they could face.  California Penal Code section 30600 imposes a

felony criminal penalty for anyone who manufactures, distributes, imports, keeps for sale, offers for sale, or lends an "assault weapon." The prescribed prison sentences are four, six, or eight years. *See* California Penal Code section 30600(a). One who merely possesses an "assault weapon" in California is guilty of a misdemeanor under section 30605(a) or a felony pursuant to California Penal Code section 1170(h)(1) ("a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years"). In other words, the criminal sanction for possession of any gun deemed an "assault weapon" is a wobbler and can be sentenced as either a felony or a misdemeanor.[2] The result is that any law-abiding citizen may lose his liberty, and (not ironically) his Second Amendment rights, as a result of exercising his constitutional right to keep and bear arms if the arm falls within the complicated legal definition of an "assault weapon." If ever the existence of a state statute had a chilling effect on the exercise of a constitutional right, this is it.

    It has long been the case that a plaintiff possesses Article III standing to bring a pre-enforcement challenge to a state statute which regulates the exercise of a federal constitutional right and threatens a criminal penalty. "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)

---

[2] The variety of punishments that a defendant can receive for being convicted for possession under § 30605 through the application of § 1170(h) demonstrate that the statute is a wobbler. "In the parlance of California law enforcement, a violation of the statute is a 'wobbler' that may be punished either as a felony or as a misdemeanor." *United States v. Diaz-Argueta*, 564 F.3d 1047, 1049 (9th Cir. 2009). "Under California law, a 'wobbler' is presumptively a felony and 'remains a felony except when the discretion is actually exercised' to make the crime a misdemeanor." *Ewing v. California*, 538 U.S. 11, 16 (2003) (quoting *People v. Williams*, 27 Cal.2d 220 (1945)).

4

19-cv-1537-BEN (JLB)

(quoting *Doe v. Bolton*, 410 U.S. 179, 188 (1973)). "[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). "In *Virginia v. American Booksellers Assn. Inc.*, 484 U.S. 383 (1988), we held that booksellers could seek preenforcement review of a law making it a crime to 'knowingly display for commercial purpose' material that is 'harmful to juveniles' as defined by the statute." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 160 (2014). Of course, "[s]uch challenges can proceed only when the plaintiff 'faces a realistic danger of sustaining a direct injury as a result of the law's operation or enforcement.'" *Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 968 F.3d 738 (9th Cir. 2020) (citations omitted). But the simple continued existence of the criminal penalty provision together with an absence of a defendant's disavowal of prosecution satisfies the requirement of a credible threat of prosecution. *Susan B. Anthony List*, 573 U.S. at 164 (threat of future enforcement of the false statement statute is substantial with history of past enforcement). "We have observed that past enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'" *Id.* (quoting *Steffel,* 415 U.S. at 459); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–129 (2007) ("Where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat.").

The Plaintiffs allege that they wish to have, acquire, possess, and lawfully use these firearms deemed to be assault weapons. First Amended Complaint, at para. 37. Specifically, for example, Miller and Russ allege that they want to exercise their Second Amendment rights by using lawfully acquired high capacity magazines with their lawfully possessed semi-automatic, fixed magazine, centerfire rifles, but for the State's laws and fear of arrest, prosecution, and loss of liberty and property. *Id.* at paras. 58 and 62. Similarly, Hauffen alleges she lawfully owns and possesses a lawful semiautomatic, centerfire rifle without a fixed magazine. She wants to add to the rifle a feature such as a

5

19-cv-1537-BEN (JLB)

pistol grip, a collapsible stock, or a flash hider, or change its length to between 26 and 30 inches, but will not because of the fear of arrest, prosecution, and loss of liberty and property under the state's laws. *Id.* at para. 64.  These are examples from among the many more Plaintiffs who similarly allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and have standing because there exists a credible threat of criminal prosecution and punishment thereunder. *Babbitt,* 442 U.S. at 289.

Some of the Plaintiffs are associations of individuals who share a common interest in the preservation and exercise of Second Amendment rights.  One example is the California Gun Rights Foundation with tens of thousands of members and supporters in California.  First Amended Complaint, at para. 11.  "An organization can assert Article III standing on behalf of either its members or the organization itself." *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 844 (9th Cir. 2020) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982)).  An organization may establish standing on its own behalf by showing that the defendant's conduct resulted in 'a diversion of its resources and frustration of its mission,' or caused a substantial loss in organizational funding." *Id.* (citations omitted).  The California Gun Rights Foundation says that the laws, policies, practices, and customs challenged in this case along with Defendants' actions "have caused GFC to dedicate resources that would otherwise be available for other purposes to protect the rights and property of its members, supporters, and the general public."  First Amended Complaint, at para. 11.  Moreover, the organization's members and supporters have been adversely affected by Defendants' enforcement of these laws. *Id.*  This is sufficient to support an organization's standing at this juncture of the case.  "The presence in a suit of even one party with standing suffices to make a claim justiciable." *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 981 (9th Cir. 2013) (quoting *Brown v. City of Los Angeles*, 521 F.3d 1238, 1240 n.1 (9th Cir. 2008)).

The bar for standing is not particularly high.  For example, organizations that have been "perceptibly impaired" by a government rule "in their ability to perform the services

they were formed to provide" is sufficient for organizational standing. *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1266–67 (9th Cir. 2020) ("The Organizations are not required to demonstrate some threshold magnitude of their injuries; one less client that they may have had but-for the Rule's issuance is enough. In other words, plaintiffs who suffer concrete, redressable harms that amount to pennies are still entitled to relief."). An organization has standing to sue on behalf of its members when "the interests it seeks to protect are germane to the organization's purpose." *Sierra Club v. Trump*, 963 F.3d 874, 883 (9th Cir. 2020) (also noting individual's standing to challenge border wall construction based on: "concern[] that the wall 'would disrupt the desert views and inhibit him from fully appreciating the area,' and that the additional presence of U.S. Customs and Border Protection agents 'would further diminish his enjoyment of these areas' and 'deter him from further exploring certain areas' [while] worrie[d] that 'construction and maintenance of the border wall will limit or entirely cut off his access to fishing spots' along the border, where he has fished for more than 50 years.").

In *City & Cty. of San Francisco v. United States Citizenship & Immigration Servs.*, 944 F.3d 773, 787 (9th Cir. 2019), municipal and county plaintiffs had standing. The plaintiffs argued that a federal rule would encourage aliens to disenroll from public benefits programs, which they predicted would result in a reduction of Medicaid reimbursement payment to the State and increase administrative expenses. The Court dismissed the argument that "predictions of future financial harm are based on an attenuated chain of possibilities." Instead, it explained that the injuries are not entirely speculative and that "this type of 'predictable effect of Government action on the decisions of third parties' is sufficient to establish injury in fact." *Id.* (citations omitted).

In *Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019), organizations challenged the reprogramming and expenditure of funds to build a border wall. The organizations alleged that use of the reprogrammed funds would "injure their members because the noise of construction, additional personnel, visual blight, and negative ecological effects that would accompany a border barrier and its construction would detract from their

ability to hike, fish, enjoy the desert landscapes, and observe and study a diverse range of wildlife in areas near the U.S.-Mexico border." *Id.* at 682-83.  The plaintiff organizations also alleged that "they participated in the legislative process by 'devoting substantial staff and other resources towards legislative advocacy leading up to the appropriations bill passed by Congress in February 2019, specifically directed towards securing Congress's denial of substantial funding to the border wall." *Id.*  This satisfied the requirements for standing.  *Id.* at 685-86.

Similarly, in *Hawaii v. Trump*, 859 F.3d 741, 765 (9th Cir.), *vacated and remanded*, 138 S. Ct. 377 (2017), the Ninth Circuit found that Hawaii had standing to challenge a federal no-fly list policy because Hawaii as operator of its university alleged that "(1) students and faculty suspended from entry are deterred from studying or teaching at the University; and (2) students who are unable to attend the University will not pay tuition or contribute to a diverse student body."

In environmental cases, plaintiffs generally satisfy the injury-in-fact requirement by alleging that they are less able to use land affected by a defendant's conduct. *Gingery v. City of Glendale*, 831 F.3d 1222, 1227 (9th Cir. 2016) (citation omitted); *Nat. Res. Def. Council v. EPA*, 542 F.3d 1235, 1245 (9th Cir. 2008) (injury in fact established where plaintiffs alleged that their "use and enjoyment" of certain waterways "has been diminished" due to pollution).  For standing, it was enough that an individual alleged "both that he avoids public land that he would like to use again, and that his enjoyment of the park and the park's facilities has been 'diminished.'" *Id.* at 1227.  In *White v. Univ. of California*, 765 F.3d 1010, 1023 (9th Cir. 2014), scientists had Article III standing to seek a declaration that ancient skeletal remains known as the La Jolla remains were not "Native American" and allowing them to study the remains.  In *California v. Trump*, 963 F.3d 926 (9th Cir. 2020), a state had standing to allege that a border wall project would have an adverse effect on environmental resources including direct and indirect impacts to endangered or threatened wildlife such as the peninsular desert bighorn sheep and the flat-tailed horned lizard.  In particular, the state alleged that "the construction of the

border wall will also greatly increase the predation rate of lizards adjacent to the wall by providing a perch for birds of prey and will effectively sever the linkage that currently exists between populations on both sides of the border." *Id.* at 935-37.

In abortion cases physicians often seek relief not on the basis of their own right to perform abortions, however, but on the basis of the constitutional right of their patients. "Recognizing the confidential nature of the physician-patient relationship and the difficulty for patients of directly vindicating their rights without compromising their privacy, the Supreme Court has entertained both broad facial challenges and pre-enforcement as-applied challenges to abortion laws brought by physicians on behalf of their patients." *Isaacson v. Horne*, 716 F.3d 1213, 1221 (9th Cir. 2013) (citations omitted).

Aliens who have left the United States, have been held to have Article III standing. *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983, 994 (9th Cir. 2012) (rejecting argument that Ibrahim has no right to assert claims under the First and Fifth Amendments because she is an alien who voluntarily left the United States); *see also Innovation Law Lab v. Wolf*, 951 F.3d 1073, 1078 (9th Cir. 2020) ("The individual plaintiffs, all of whom have been returned to Mexico under the MPP, obviously have Article III standing.").

In *Southcentral Found. v. Alaska Native Tribal Health Consortium*, No. 18-35868, 2020 WL 5509742, at *7 (9th Cir. Sept. 14, 2020), an organization was found to have standing to bring "an informational injury claim."

In other cases, the actual or imminent injury prong of Article III standing is virtually eliminated. The "deterrent effect doctrine" affords a plaintiff standing. "[W]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury." *Namisnak v. Uber Techs., Inc.*, No. 18-15860, 2020 WL 4930650, at *3 (9th Cir. Aug. 24, 2020) (quoting *Civil Rights Educ. and Enforcement Ctr. v. Hospitality Props. Tr.*, 867 F.3d 1093, 1098–99 (9th Cir. 2017)). *Namisnak* explains that

"[t]his doctrine was first set out in *Teamsters v. United States*, 431 U.S. 324 (1977), in which the Supreme Court held that an employment-discrimination plaintiff need not take 'futile gestures'—like applying for a job he knows he will not get due to the employer's discrimination—that would merely subject him to the 'humiliation of explicit and certain rejection.'" *Id.*

As noted at the outset, Defendants argue that Plaintiffs lack standing to challenge seven particular statutes among all of the various interlocking statutes affecting the regulation of guns deemed assault weapons. The Court finds to the contrary, that at least one and perhaps all of the Plaintiffs have Article III standing to challenge each of the statutes -- whether singly or as an entire regulatory scheme. To sum up, the Court finds that the individual Plaintiffs and the organizational Plaintiffs have standing to challenge the nuisance statute along with the rest of the statutory scheme which defines, identifies and restricts "assault weapons" which are alleged to be protected by the Second Amendment for possession and use by law-abiding citizens for lawful purposes.

Under Federal Rule of Civil Procedure 12(b)(6), Defendants also assert that Plaintiffs fail to state claims upon which relief can be granted with respect to the seven cited provisions. Unlike Article III standing, the test for a sufficiently-stated claim requires only a short and plain statement and plausibility. Plaintiffs' claims meet this test. Defendants do not separately discuss the seven claims but generally argue that the Complaint lacks particularized factual allegations as to each. However, the claims are particularized enough, at least at the pleading stage, to permit the case to move forward.

The single claim Defendants specifically do discuss is the challenge to California Penal Code section 30950 which prohibits possession of an "assault weapon" by one under the age of 18. Defendants assert that this provision is constitutional on its face and that therefore, the claim must be dismissed. Defs' Mem. of Points and Auth's in Support of Mot. to Dismiss, at 16. This is based on Defendants' argument that a prohibition aimed at juveniles is a presumptively lawful and longstanding prohibition falling outside Second Amendment protection. On summary judgment, at least one court recently

agreed. *See Mitchell v. Atkins*, No. C19-5106-RBL, 2020 WL 5106723, at *5 (W.D. Wash. Aug. 31, 2020) ("There is no reason why a restriction on sale and possession of SARs [semiautomatic assault rifles] —powerful weapons that can be wielded against the public—constitutes a break from this pattern.  The Age Provision does not burden Second Amendment rights.").  While the *Mitchell* court so held, it did so persuaded by the reasoning of the Fifth Circuit Court of Appeals (*id.* at *4 citing *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 201 (5th Cir. 2012)), federal district courts in West Virginia and Massachusetts and an Illinois state court.  There are no decisions from the Supreme Court or the Ninth Circuit Court of Appeals that would be binding on this Court.  Consequently, while the *Mitchell* decision may or may not ultimately be persuasive authority, it is not binding authority.  And this is not summary judgment.  At this stage of the proceedings, the claim that the California "assault weapon" restrictions on citizens under the age of 18 impinges on Second Amendment rights states a sufficient claim upon which relief can be granted.

## CONCLUSION

For the reasons stated above, the Court denies Defendants' motion to dismiss. Plaintiff's concession and withdrawal of its claim challenging California Penal Code section 30925 is accepted.

DATED: September 23, 2020

Hon. Roger T. Benitez
United States District Judge