XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JOHN D. ECHEVERRIA
Deputy Attorney General
State Bar No. 268843
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3479
  Fax:  (415) 703-1234
  E-mail:  John.Echeverria@doj.ca.gov
*Attorneys for Defendants Xavier Becerra, in his official capacity as Attorney General of the State of California, and Luis Lopez, in his official capacity as Director of the Department of Justice Bureau of Firearms*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

# CIVIL DIVISION

| | |
|---|---|
| **JAMES MILLER, et al.,**<br><br>    Plaintiffs,<br><br>v.<br><br>**CALIFORNIA ATTORNEY GENERAL XAVIER BECERRA, et al.,**<br><br>    Defendants. | 3:19-cv-01537-BEN-JLB<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF**<br><br>Dep't:    5A<br>Judge:    Hon. Roger T. Benitez<br>Trial Date:  January 21, 2021<br>Action Filed: August 15, 2019 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1
ARGUMENT ............................................................................................................ 2
    I.    Step One: The AWCA Does Not Burden Conduct Protected by the Second Amendment ................................................................... 2
        A.    Assault Pistols and Assault Shotguns Are Not Protected Under the Second Amendment ................................................. 3
        B.    Assault Rifles Are Not Protected by the Second Amendment .................................................................................. 5
    II.    Step Two: California's Assault-Weapon Restrictions Satisfy Intermediate Scrutiny ............................................................................ 7
        A.    The AWCA Is Subject to Intermediate Scrutiny Because Any Burden on the Core Second Amendment Right Is Not Severe ............................................................................... 7
        B.    The AWCA Is Reasonably Fitted to Important Government Interests ................................................................. 9
CONCLUSION ....................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Binderup v. Att'y Gen. U.S.A.*
   836 F.3d 336 (3d Cir. 2016) ................................................................................ 2

*District of Columbia v. Heller*
   554 U.S. 570 (2008) ....................................................................................... 2, 9

*Duncan v. Becerra*
   970 F.3d 1133 (9th Cir. Aug. 14, 2020) ....................................................... 3, 4, 8

*Fyock v. Sunnyvale*
   779 F.3d 991 (9th Cir. 2015) ................................................................ 2, 4, 8, 10

*Heller v. District of Columbia*
   670 F.3d 1244 (D.C. Cir. 2011) ....................................................................... 6, 7

*Kolbe v. Hogan*
   849 F.3d 114 (4th Cir. 2017) ........................................................................... 6, 7

*Maloney v. Singas*
   351 F. Supp. 3d 222 (E.D.N.Y. 2018) .................................................................. 5

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*
   804 F.3d 242 (2d Cir. 2015) ................................................................................ 7

*Rupp v. Becerra*
   401 F. Supp. 3d 978 (C.D. Cal. 2019) ............................................................ 6, 10

*Silvester v. Harris*
   843 F.3d 816 (9th Cir. 2016) ............................................................................ 2, 8

*Wilson v. Cook Cnty.*
   937 F.3d 1028 (7th Cir. 2019) ............................................................................. 7

*Worman v. Healey*
   922 F.3d 26 (1st Cir. 2019) .................................................................................. 7

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

California Penal Code
　§ 30515(a) ................................................................................................... 8
　§ 30515(a)(1)(C) ......................................................................................... 9
　§ 30900 ....................................................................................................... 4

**CONSTITUTIONAL PROVISIONS**

U.S. Constitution
　Second Amendment ............................................................................ *passim*

**COURT RULES**

Federal Rules of Civil Procedure
　Rule 25(d) ................................................................................................... 1

Defendants Xavier Becerra, in his official capacity as Attorney General of the State of California, and Luis Lopez, in his official capacity as Director of the Department of Justice Bureau of Firearms,[1] hereby submit their supplemental brief, as ordered by the Court at the conclusion of the evidentiary hearing on Plaintiffs' then-pending motion for a preliminary injunction, *see* Oct. 22, 2020 Transcript of Evidentiary Hearing – Day 3 ("Oct. 22, 2020 Hrg. Tr.") at 113:20-114:19, to address certain evidence presented at the hearing.

## INTRODUCTION

As discussed in Defendants' opposition to Plaintiffs' motion for preliminary injunction (Dkt. 33), California's Assault Weapons Control Act (the "AWCA") is constitutional under the Ninth Circuit's two-step framework for adjudicating Second Amendment claims. The testimony received by the Court during the evidentiary hearing on Plaintiffs' preliminary injunction motion does not undermine the constitutionality of the law. To the contrary, the evidence presented at the hearing further shows that the law comports with the Second Amendment.

At step one, Plaintiffs have failed to show that assault weapons—and particularly assault pistols and assault shotguns—are in common use for lawful purposes like self-defense. At step two, intermediate scrutiny must apply because the burden of the AWCA on the core Second Amendment right is not severe. Even if the AR-15 and other "modern sporting rifles" are in "common use," California law does not prohibit the sale or possession of those weapons. Californians are free to acquire semiautomatic, centerfire rifles (and semiautomatic pistols and shotguns) provided those firearms are not configured with certain accessories that facilitate more accurate rapid fire and thus enhance their lethality in mass shootings and violence against law enforcement personnel. Consistent with the weight of federal

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Bureau of Firearms Director Luis Lopez, in his official capacity, is substituted for former Interim Director Brent E. Orick.

1

circuit court authority examining assault-weapon restrictions, the AWCA satisfies intermediate scrutiny and thus does not violate the Second Amendment.

## ARGUMENT

**I. STEP ONE: THE AWCA DOES NOT BURDEN CONDUCT PROTECTED BY THE SECOND AMENDMENT**

At step one of the Ninth Circuit's Second Amendment framework, which "asks whether the challenged law burdens conduct protected by the Second Amendment," *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016), Plaintiffs have failed to show that the proscribed weapons are in common use for lawful purposes like self-defense. The Second Amendment "does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *District of Columbia v. Heller*, 554 U.S. 570, 625 (2008); *see also Fyock v. Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015). This articulation of what is protected by the Second Amendment finds its roots in the "historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627. Dangerous and unusual weapons are not "'the sorts of weapons' that are 'in common use'" for lawful purposes. *Silvester*, 843 F.3d at 830 (Thomas, C.J., concurring).

At step one, Plaintiffs bear the burden of persuasion of demonstrating that the challenged regulation burdens conduct protected by the Second Amendment. *See Binderup v. Att'y Gen. U.S.A.*, 836 F.3d 336, 347 (3d Cir. 2016) ("[I]f the challenger succeeds at step one, the burden shifts to the Government to demonstrate that the regulation satisfies some form of heightened scrutiny . . . at step two . . . ."). Assigning the burden to the Plaintiffs is especially warranted where the State would otherwise be obligated to prove a negative—that the regulated arm is *not* commonly possessed for lawful purposes. Here, Plaintiffs failed to show that the challenged provisions of the AWCA burden conduct protected by the Second Amendment.

And regardless of which party is assigned the burden of persuasion at step one, the evidence in this case shows that assault weapons are not in common use.

### A.  Assault Pistols and Assault Shotguns Are Not Protected Under the Second Amendment

Plaintiffs failed to present evidence showing that assault pistols and assault shotguns are in common use. Even if "[c]ommonality is determined largely by statistics," where "common use" is established primarily by evidence that a weapon is "overwhelmingly owned and used for lawful purposes," *Duncan v. Becerra*, 970 F.3d 1133, 1147 (9th Cir. Aug. 14, 2020), *petition for reh'g en banc filed*, the statistics offered by Plaintiffs are limited to certain semiautomatic *rifles*, and not assault pistols or assault shotguns. At the hearing, Plaintiffs conceded that they do not have national statistics regarding assault pistols and assault shotguns. *See* Oct. 22, 2020 Hrg. Tr. at 42:3-8 (Plaintiffs' counsel: "I will concede that the data that we have, that it pertains to modern sporting rifles as described by Mr. Curcuruto . . . that data is much more prevalent and trackable nationwide than it is for shotguns and for AR pistols, or what the State calls assault pistols. That's a function of its popularity, however."). Plaintiffs have offered no data to quantify the number of assault pistols and assault shotguns that have been manufactured and sold in the United States, let alone how many such weapons are possessed by law-abiding civilians and for what purposes. *See id.* at 37:14-17 (the Court: "I do have a problem with the idea of these assault pistols, and the same thing with the shotguns, I don't really have a whole lot of information about how common those may be.").

At the hearing, Defendants noted that the State has information on the number of assault pistols and assault shotguns registered under the AWCA in California. *See* Oct. 22, 2019 Hrg. Tr. at 39:24-40:6. In *Rupp v. Becerra*, the Attorney General submitted evidence indicating that, as of November 2, 2018, approximately 184,552 assault weapons were registered with the California Department of Justice under

California Penal Code section 30900, of which 166,640 were assault rifles, leaving only 17,912 assault weapons that were not rifles, *e.g.* assault pistols and assault shotguns. *See Rupp v. Becerra*, No. 8:17-cv-00746-JLS-JDE (C.D. Cal.) (Dkt. 76-18) at 6.[2] These figures may overstate the number of registered firearms, however, because 9,313 of the registered assault weapons were registered by two or more individuals. *Id.* While the number of registered assault pistols and assault shotguns in California might provide at least some indication of the number of such firearms in the State, those statistics do not demonstrate how many assault pistols and assault shotguns may be possessed nationwide. *See Duncan*, 970 F.3d at 1168 n.29 (noting that "we look to national statistics to determine common ownership" where a restriction has "been operative for years"). As the Court indicated at the hearing, Plaintiffs should be required to submit national statistics, if they exist, to support their claim that the challenged law burdens protected conduct at step one. *See* Oct. 29, 2020 Hrg. Tr. at 44:22-45:1 (noting that obtaining national statistics is Plaintiffs' "problem, and I would expect you would look for that, and you would provide that information to the State, just like I expect the State to provide you with the information that they have."). Plaintiffs have not, however, offered any national statistics concerning assault pistols or assault shotguns, and the absence of such data suggests that those weapons are not in common use for lawful purposes.[3]

To the extent Plaintiffs rely on purported self-defense uses of assault pistols or assault shotguns, such potential uses are not sufficient to establish that those firearms are in common use for self-defense, because any weapon could conceivably be used in self-defense. And the fact that law enforcement agencies use shotguns equipped with pistol grips and collapsible stocks, which would

---

[2] Defendants will endeavor to obtain more current registration figures specific to assault pistols and assault rifles, respectively, for trial.
[3] Even if Plaintiffs were able to submit sales statistics regarding assault pistols or assault shotguns, "marketing materials and sales statistics" would "not necessarily show that [they] are in fact commonly possessed by law-abiding citizens for lawful purposes." *Fyock*, 779 F.3d at 998.

otherwise qualify as assault weapons, plays no role in the analysis; law enforcement use is not considered when determining whether an arm is in common use by law-abiding citizens for lawful purposes. *See* Oct. 22, 2020 Hrg. Tr. at 42:16-21; *Maloney v. Singas*, 351 F. Supp. 3d 222, 229 n.10 (E.D.N.Y. 2018) (excluding sales of arms to law enforcement agencies because "the Second Amendment is only concerned with weapons 'typically possessed by law-abiding citizens for lawful purposes.'" (quoting *Heller*, 554 U.S. at 625)). Therefore, the evidence shows that assault pistols and assault shotguns are not protected by the Second Amendment.

### B. Assault Rifles Are Not Protected by the Second Amendment

Plaintiffs have also failed to show that assault rifles are in common use for lawful purposes like self-defense. While Plaintiffs have provided industry data concerning the manufacturing and sales of "modern sporting rifles," like the AR-15, those numbers do not necessarily reflect the number of semiautomatic rifles that qualify as assault weapons under the AWCA in the United States. Plaintiffs' witness, Mr. Curcuruto, relies on statistics from the Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF") Annual Firearms Manufacturers and Exports Reports ("AFMER"), *see* Curcuruto Decl. ¶ 8, Ex. 3, but the AFMER includes semiautomatic rifles manufactured for sale in California and other states that restrict the sale of assault weapons (*e.g.*, rimfire rifles or featureless centerfire rifles). Thus, the AFMER includes weapons that do not qualify as assault weapons under the AWCA. In addition, the AFMER includes data on sales of semiautomatic rifles to law enforcement agencies. *See* ATF, Firearms Commerce in the United States: Annual Statistical Update at 1 (2016) ("The AFMER report excludes production for the U.S. military but includes firearms purchased by domestic law enforcement agencies."), *available at* https://www.atf.gov/resource-center/docs/2016-firearms-commerce-united-states/download#:~:text=The%20AFMER%20report%20excludes%20production,includes%20firearms%20manufactured%20for%20export (last visited Nov. 4, 2020).

1  As discussed, sales to law enforcement agencies should not be considered when
2  examining common use by civilians. *See supra* Section I.A. Curcuruto's other
3  source, sales data from the National Shooting Sports Foundation ("NSSF"), is
4  similarly flawed because it too considers sales of "modern sporting rifles"
5  generally—including rifles that are California-compliant—and not just
6  semiautomatic rifles that would qualify as assault weapons under the AWCA.[4]

7  If there were any doubt that assault rifles are both dangerous *and* unusual, the
8  assault rifles are "like" M-16 rifles, which the Supreme Court has stated "may be
9  banned," because these weapons have similar features and configurations. *Kolbe v.*
10 *Hogan*, 849 F.3d 114, 136 (4th Cir. 2017) (en banc) ("Because the banned assault
11 weapons and large-capacity magazines are 'like' 'M-16 rifles'—'weapons that are
12 most useful in military service'—they are among those arms that the Second
13 Amendment does not shield." (citing *Heller*, 554 U.S. at 627)); *Rupp v. Becerra*,
14 401 F. Supp. 3d 978, 988  (C.D. Cal. 2019) ("[T]he Court concludes that
15 semiautomatic rifles within the AWCA's scope are virtually indistinguishable from
16 M-16s . . . ."). During the evidentiary hearing, Plaintiffs attempted to distinguish
17 assault rifles, like the AR-15, from the M-16 on the basis that the former is only
18 semiautomatic and the latter is select-fire and thus capable of automatic fire. *See*
19 Oct. 19, 2020 Hrg. Tr. at 21:16-22:3. That distinction is not material, however,
20 because semiautomatic rifles can "still fire almost as rapidly as automatics." *Heller*
21 *v. District of Columbia* (*Heller II*), 670 F.3d 1244, 1263 (D.C. Cir. 2011).
22 Plaintiffs' witness, Mr. Kapelson, testified that "most any of us . . . can fire five to
23 seven rounds per second from a semi-automatic pistol or any semi-automatic rifle"
24 and that a shooter would be able to maintain such rapid fire for "[q]uite a while."
25 Oct. 19, 2020 Evidentiary Hearing – Day 1 ("Oct. 19, 2020 Hrg. Tr.") at 23:14-22.[5]

---

[4] While statistics may be part of the common-use analysis, the Court should also consider the qualitative attributes of assault weapons, which are not particularly useful for self-defense.

[5] Mr. Kapelson testified that automatic weapons have a cyclic rate of fire of

Plaintiffs' own evidence confirms that fully automatic M-16s and semiautomatic assault rifles are not materially different with respect to their ability to fire a significant number of rounds rapidly.

Accordingly, whether the Court considers statistics of assault-rifle sales or compares assault-rifles to the M-16 in determining whether assault weapons are in common use, the semiautomatic rifles restricted under the AWCA are not protected by the Second Amendment.

## II. STEP TWO: CALIFORNIA'S ASSAULT-WEAPON RESTRICTIONS SATISFY INTERMEDIATE SCRUTINY

### A. The AWCA Is Subject to Intermediate Scrutiny Because Any Burden on the Core Second Amendment Right Is Not Severe

Even assuming the AWCA burdens conduct protected under the Second Amendment, intermediate scrutiny should apply for the same reasons that the five federal circuit courts have selected intermediate scrutiny in upholding substantially identical assault-weapon restrictions. *See Wilson v. Cook Cnty.*, 937 F.3d 1028, 1036 (7th Cir. 2019) (following *Friedman v. City of Highland Park, Ill.*, 784 F.3d 406, 412 (7th Cir. 2015)), *cert. denied*, __ S.C. __, 2020 WL 3146694 (June 15, 2020); *Worman v. Healey*, 922 F.3d 26, 38 (1st Cir. 2019), *cert. denied*, __ S.C. __, 2020 WL 3146687 (June 15, 2020); *Kolbe*, 849 F.3d at 138-39; *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 257-61 (2d Cir. 2015); *Heller II*, 670 F.3d at 1261-62. The testimony at the evidentiary hearing further shows that the burden on the core Second Amendment right to use firearms in defense of hearth and home is not severe because the law prohibits possession of only a subset of firearms that are configured with certain features. As Plaintiff Peterson testified, his store is able to sell AR- and AK-platform rifles that are compliant with the AWCA and that the

---

750 to 900 rounds per minute in controlled circumstances—e.g., not accounting for real-world circumstances—which translates into a cyclic rate of between 12.5 and 15 rounds per second. *See* Oct. 19, 2020 Hrg. Tr. at 22:17-19. Mr. Kapelson's testimony regarding the five- to seven-round per second firing rate of a semiautomatic firearm concerns the *effective* rate of fire in real-world circumstances, which would likely be lower than the theoretical cyclic rate for that same firearm.

7

"overwhelming majority of purchases have been . . . modern sporting guns." *See* Oct. 22, 2020 Hrg. Tr. at 20:7-8, 21:6-16.

The burden on the core right is further minimized by the fact that the AWCA in effect operates as a restriction on the manner in which certain semiautomatic firearms are sold and possessed, rather than a prohibition on the possession of any particular class of firearm. Under the AWCA, Californians may acquire and possess semiautomatic, centerfire rifles and semiautomatic pistols and shotguns, provided the weapons do not have any of the proscribed accessories or features listed in California Penal Code section 30515(a). *See* Oct. 19, 2020 Hrg. Tr. at 188:21-24.[6] Because the challenged provisions of the AWCA regulate the *manner* in which certain rifles, pistols, and shotguns may be configured—without rendering those firearms inoperable—the burden on the core Second Amendment right, if any, is minimal. *See Silvester*, 843 F.3d at 827 ("This court has explained that laws which merely regulate only the '*manner* in which persons may exercise their Second Amendment rights' are less burdensome than those which bar firearm possession completely." (quoting *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013))).[7]

The Ninth Circuit's recent decision in *Duncan v. Becerra* does not require application of strict scrutiny here.[8] In contrast with *Duncan*, which applied strict

---

[6] The fact that the AWCA defines firearms with prohibited configurations as "assault weapons" for regulatory purposes does not create a "class" of arms.

[7] The Ninth Circuit has indicated that the Second Amendment may protect the right to possess certain firearm accessories or hardware that may be necessary to operate the firearm. *See Fyock*, 779 F.3d at 997 ("[O]ur case law supports the conclusion that there must also be some corollary, albeit not unfettered, right to possess the magazines *necessary to render those firearms operable*." (emphasis added) (quoting *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014))). None of the features enumerated in California Penal Code section 30515(a) are necessary to operate a firearm.

[8] Notably, the *Duncan* court did not adopt a "categorical approach" that would dispense with any means-ends scrutiny, as Plaintiffs have argued in this case. *See* Dkt. 22-1 at 11:11-12:4. Instead, the court selected strict scrutiny based on a determination that the challenged "law *categorically* bars the possession of magazines that are commonly used in handguns, the 'quintessential self-defense weapon.'" *Duncan*, 970 F.3d at 1152 (emphasis added and quotation omitted).

scrutiny to a law deemed to "categorically bar[] the possession of magazines" in common use for lawful purposes, the AWCA does not prohibit "an entire class of 'arms' that is overwhelmingly chosen by American society for th[e] lawful purpose [of self-defense]." *Heller*, 554 U.S. at 628.  The AWCA is not nearly as broad and thus should not be viewed as categorically prohibiting any class of arms, let alone a class of harms that are overwhelmingly chosen for self-defense.  Accordingly, the AWCA is subject to intermediate scrutiny at step two.

### B. The AWCA Is Reasonably Fitted to Important Government Interests

The AWCA exhibits a reasonable fit to the State's important interests in protecting the public and law enforcement from gun violence.  The evidence shows that the features prohibited under the AWCA increase the lethality of semiautomatic weapons by enhancing accuracy when firing rapidly and, in the case of collapsible stocks and semiautomatic rifles that are less than 30 inches in length, enhance the concealability of the firearm.[9]  Assault weapons enable a shooter to fire more rounds rapidly in a given period with greater accuracy, increasing the likelihood that more individuals will be shot and suffer more numerous injuries. The testimony at the hearing confirms that when an individual suffers multiple gunshot wounds it is "far more likely" that the individual will suffer complications and die of those injuries.  Oct. 22, 2020 Hrg. Tr. at 35:24-36:5 (testimony of Dr. Colwell).[10]  To the extent Plaintiffs claim that the prohibited features do not enhance the lethality of semiautomatic firearms in mass shootings based on the testimony of Mr. Kraut, that testimony undermines any claim that the features are useful for self-defense.  *See id.* at 24:20-25:4 (testifying that, "in either

---

[9] Plaintiffs have not offered evidence concerning folding stocks. *See* Cal. Penal Code § 30515(a)(1)(C).

[10] Dr. Margulies' comparison of the lethality of assault weapons and comparable non-assault weapons, Margulies Decl. ¶ 14 (Dkt. 38-1), fails to account for the fact that, while they may fire the same caliber of ammunition, assault weapons have features that enable that ammunition to be fired rapidly with greater accuracy, causing more wounds per victim and thus greater morbidity.

configuration," an individual can shoot a particular target "in rapid succession using either a California featureless rifle or a standard configuration AR").

The evidence shows that more people are injured and killed in mass shootings involving assault weapons. *See* Allen Decl. ¶¶ 26, 33-34 (finding correlation in public mass shootings involving four or more fatalities excluding the shooter); Klarevas Decl. ¶ 17 (finding correlation in gun massacres involving six or more fatalities excluding the shooter). Defendants' expert witnesses have disclosed the data sets on which they rely and their methodologies, which enables Plaintiffs' experts to replicate their findings, but none of Plaintiffs' witnesses disputed their calculations and the correlation between the use of assault weapons in mass shootings and greater numbers of average casualties during the hearing. The unrebutted correlation strongly supports the reasonableness of the AWCA's fit. *See Rupp*, 401 F. Supp. 3d at 993 (noting that "'a correlation between the use of assault weapons and the number of victims injured or killed' makes it '[m]ore likely' that there is a causal relationship" and that "California is entitled to make 'reasonable inferences' from the available data that shows a correlation" (citations omitted)).

The evidence also shows that California's assault-weapon restrictions are effective in mitigating the lethality of mass shootings and can even reduce the incidence of mass shootings. *See* Klarevas Decl. ¶¶ 22-23; Oct. 19, 2020 Hrg. Tr. at 122:4-123:14 (Dr. Klarevas discussing the substitution effect where potential shooters may substitute less lethal weapons).[11] Dr. Lott's testimony based on Dr. Klarevas' list of gun massacres is flawed. As noted in several of Defendants' declarations, Dr. Lott relied on incorrect data in arguing that assault weapons bans are not effective, *see* Klarevas Decl. ¶ 45 (noting that Dr. Lott incorrectly classified mass shootings as involving assault weapons); Donohue Decl. ¶ 138 (noting that

---

[11] The State is not restricted to examining mass shootings in California to demonstrate a reasonable fit and may "rely on any evidence 'reasonably believed to be relevant'"—such as mass shootings in other jurisdictions—"to substantiate its important interests" under intermediate scrutiny. *Fyock*, 779 F.3d at 1000 (quotations omitted).

Dr. Lott's critique of Dr. Klarevas' findings fails, in part, because "he completely miscalculates mass shootings conducted with weaponry banned by the federal law"). Nevertheless, at the evidentiary hearing, Dr. Lott did not correct any of these flaws or revise his opinions. *See* Oct. 22, 2020 Hrg. Tr. at 107:18-108:5.

Consistent with the unanimous view of the five federal circuit courts that have examined assault-weapon restrictions, the AWCA amply satisfies intermediate scrutiny.

## CONCLUSION

For these reasons, and those that will be further adduced at trial, the AWCA is constitutional under the Second Amendment.

Dated:  November 5, 2020                         Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General

*s/ John D. Echeverria*

JOHN D. ECHEVERRIA
Deputy Attorney General
*Attorneys for Defendants Xavier Becerra, in his official capacity as Attorney General of the State of California, and Luis Lopez, in his official capacity as Director of the Department of Justice Bureau of Firearms*

# CERTIFICATE OF SERVICE

Case Name: **James Miller et al. v. Xavier Becerra, et al.**
Case No. **3:19-cv-01537-BEN-JLB**

I hereby certify that on <u>November 5, 2020</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANTS' SUPPLEMENTAL BRIEF**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>November 5, 2020</u>, at San Francisco, California.

| Robert Hallsey | /s/ Robert Hallsey |
|---|---|
| Declarant | Signature |

SA2019104420
42417081.docx