1  XAVIER BECERRA
   Attorney General of California
2  State Bar No. 118517
   MARK R. BECKINGTON
3  Supervising Deputy Attorney General
   State Bar No. 126009
4  JOSE A. ZELIDON-ZEPEDA
   Deputy Attorney General
5  State Bar No. 227108
   PETER H. CHANG
6  Deputy Attorney General
   State Bar No. 241467
7  JOHN D. ECHEVERRIA
   Deputy Attorney General
8  State Bar No. 268843
    455 Golden Gate Avenue, Suite 11000
9   San Francisco, CA  94102-7004
    Telephone:  (415) 510-3479
10  Fax:  (415) 703-1234
    E-mail:  John.Echeverria@doj.ca.gov
11 *Attorneys for Defendants*

12

13              IN THE UNITED STATES DISTRICT COURT

14            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

15

16 | **JAMES MILLER, et al.,** | Case No. 19-cv-1537-BEN-JLB |

17                    Plaintiffs,  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
18        **v.**                  **DEFENDANTS' *DAUBERT* MOTION TO PRECLUDE**
19 **CALIFORNIA ATTORNEY**        **TESTIMONY OF JOHN R. LOTT,**
   **GENERAL XAVIER BECERRA,**    **JR.**
20 **et al.,**
                                  Date:         February 3, 2021
21                    Defendants. Time:         10:00 a.m.
                                  Dept:         5A
22                                Judge:        Hon. Roger T. Benitez
                                  Trial Date:   February 3, 2021
23                                Action Filed: August 15, 2019

24

25

26

27

28

**INTRODUCTION**

The opinions of Plaintiffs' expert witness, John R. Lott ("Lott"), do not reflect the "reliable principles and methods" required under Federal Rule of Evidence 702 to be admitted as expert testimony.  First, Lott has exhibited a pattern of dubious research methods and practices over many decades.  His work has been roundly criticized by researchers across the political spectrum, including by proponents of expanded firearm access.  The Court should preclude his testimony because Lott's lack of credibility as a researcher casts doubt on the reliability of his opinions in this case.  Second, Lott's opinions regarding the efficacy of assault-weapon restrictions, *see* Pls.' Ex. 10 (Lott Decl. (Dkt. 22-18)) ¶¶ 43-53, are based on conspicuously flawed data.  Lott's opinions are based on the mass shootings identified by Louis Klarevas in his book, *Rampage Nation* (2016), Mother Jones in its compilation of public mass shootings, and data collected by the Crime Prevention Research Center ("CPRC"), an organization founded by Lott.  *Id.* ¶ 46. But Lott's reporting of that data is riddled with errors.  As explained in the accompanying declaration of Louis Klarevas in support of this motion ("Klarevas Decl."), Lott misreports 83 percent of the datapoints relied upon for his analysis. The sheer quantity of his errors, and the relative ease by which those errors are identified, fundamentally undermine the reliability of his conclusions.  The Court should grant Defendants' *Daubert* motion and preclude his testimony.

**LEGAL STANDARD**

Federal Rule of Evidence 702 permits expert testimony only from a witness who is "qualified as an expert by knowledge, skill, experience, training, or education."  General qualifications, however, are not sufficient.  Rather, an expert witness must be qualified in the specific subject for which the testimony is offered. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590-91 (1993).  Rule 702 also "places limits on the areas of expertise and the methodologies of analysis

1

Defendants' Memorandum of Points and Authorities in Support of *Daubert* Motion to Preclude Testimony of John R. Lott, Jr. (3:19-cv-01537-BEN-JLB)

1   which may be covered and used by an expert witness." *DSU Med. Corp. v. JMS*
2   *Co., Ltd.*, 296 F. Supp. 2d 1140, 1146 (N.D. Cal. 2003).

3   Expert witness testimony is admissible if it will assist the trier of fact to
4   determine a fact at issue, is based on sufficient facts or data, is the product of
5   reliable principles and methods, and the witness has reliably applied the principles
6   and methods to the facts of the case.  Fed. R. Evid. 702.  These requirements are
7   meant to help "ensure, as a condition of admissibility, that proffered expert
8   testimony rests on a sufficiently trustworthy foundation."  *Crowe v. Marchand*, 506
9   F.3d 13, 17 (1st Cir. 2008) (citing *Daubert*, 509 U.S. at 597).  Rule 702 requires
10  that the Court serve as a gatekeeper to ensure that all expert testimony "is not only
11  relevant, but reliable."  *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)
12  (citing *Daubert*, 509 U.S. at 589).  While "the Court's gatekeeping duty is 'less
13  pressing' regarding a bench trial," "the *Daubert* inquiry must still be performed."
14  *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-cv-00220-LHK, 2018 WL 6615050,
15  at *2 (N.D. Cal. Dec. 17, 2018) (quoting *AngioScore, Inc. v. TriReme Med., Inc.*, 87
16  F. Supp. 3d 986, 1016 (N.D. Cal. 2015)).

17                                  **ARGUMENT**

18  **I.   LOTT'S OPINION IS NOT RELIABLE BECAUSE LOTT IS NOT A CREDIBLE**
19       **RESEARCHER**

20       Lott's testimony concerning the efficacy of assault-weapon restrictions should
21  be precluded under *Daubert* because Lott is not credible.  Lott's lack of credibility
22  does not simply go to weight.  While the credibility of an expert is generally left for
23  the trier-of-fact to assess, "under certain circumstances, a district court, in order to
24  discharge its fact-finding responsibility under Rule 104(a), may need to evaluate an
25  expert's general credibility as part of the Rule 702 reliability inquiry."  *Elcock v.*
26  *Kmart Corp.*, 233 F.3d 734, 751 n.8 (3d Cir. 2000).  By way of this motion,
27  Defendants are not seeking to preclude Lott's testimony solely for his political bias
28

or for misconduct unrelated to his methods as a researcher; rather, Lott's dubious reputation as a researcher raises serious concerns about the reliability and veracity of his testimony in this action.  At a minimum, his lack of credibility must weigh heavily against him in the Court's assessment of his opinions and consideration of the other evidence in this case.

Defendants' expert witnesses, Professors Donohue and Klarevas, have noted that Lott suffers from a tarnished reputation as a researcher.  *See* Defs.' Ex. C (Donohue Decl.) (Dkt. 33-3) ¶ 124; Defs.' Ex. E (Klarevas Decl.) (Dkt. 33-5) ¶ 28 ("Lott has a long history of employing questionable and faulty practices to advance arguments against firearms regulations, resulting in accusations that his gun violence research is 'junk science.'" (quoting Evan DeFilippis & Devin Hughes, *Shooting Down the Gun Lobby's Favorite 'Academic': A Lott of Lies*, Armed with Reason, Dec. 1, 2014)).  Professors Donohue and Klarevas also surveyed the myriad flaws in Lott's proffered opinions in this action.  *See* Defs.' Ex. C ¶¶ 124-139; Defs.' Ex. E ¶¶ 28-46.

Notwithstanding his educational credentials and publications, *see* Lott Decl., Ex. 1 at 2-3,[1] Lott has a history of engaging in questionable practices in his research that calls into question the reliability of his opinions in this case.  Among other examples, Lott has:

- Advanced discredited positions, such as denying the link between firearm ownership and suicide, which has been found in at least 24 separate studies.  *See* Echeverria Decl., Ex. 1 (Evan DeFilippis & Devin Hughes, *The Bogus Claims of the NRA's Favorite Social Scientist*, Vox, Aug. 30, 2016); *id*, Ex. 2 (Evan DeFilippis, *Shooting Down the Gun Lobby's Favorite "Academic": A Lott of Lies*, Armed with Reason,

---

[1] Lott's Curriculum Vitae appears to be current only as of November 20, 2016.  *See* Lott Decl., Ex. 1 at 2.  Despite repeated requests of Defendants' counsel, Plaintiffs have not provided Defendants with an updated Curriculum Vitae to assess Lott's complete qualifications to serve as an expert witness.  *See* Decl. of John D. Echeverria in Supp. of Defs.' *Daubert* Mot. to Preclude Testimony of John R. Lott, Jr. ("Echeverria Decl.") ¶¶ 3-4.

3

Dec. 1, 2014) (discussing faulty data in Lott's "more guns, less crime" theory, which contradict established facts in criminology).

- Claimed to have published a peer-reviewed study in Econ Journal Watch, even though the paper had been rejected by the publication. *See* Echeverria Decl., Ex. 3 (Evan DeFilippis & Devin Hughes, *The GOP's Favorite Gun 'Academic' Is a Fraud*, ThinkProgress, Aug. 12, 2016).

- Assumed a pseudonym (Mary Rosh) to defend his work online over a period of three years. *See* Echeverria Decl. Ex. 4 (Richard Morin, *Scholar Invents Fan to Answer His Critics*, Wash. Post, Feb. 1, 2003).

In addition, Defendants are aware that Lott has accepted a position with the federal Department of Justice.[2] But it is unclear at this time what his role and responsibilities are, and Defendants have not had an opportunity to question Lott about his current employment.[3] In any event, the appointment was highly controversial, and several United States Senators have expressed concerns about the hiring of Lott, given his reputation as a "pro-gun advocate," and requested information about his position in the federal government. *See* Echeverria Decl., Ex. 5 (Ltr. from Sen. D. Feinstein to Att'y Gen. Barr, Dec. 8, 2020); *id.*, Ex. 6 (Josh Gerstein, *Controversial Gun Advocate Hired by Justice Department Last Month*, Politico, Nov. 25, 2020).

The Court should not permit such an unreliable witness, who has a history of engaging in dubious practices and disseminating false information, to provide expert testimony in this case.

---

[2] Lott's recent appointment further complicates matters, as it is unclear whether Lott's testimony will represent the views of the federal Department of Justice in this case.

[3] Defendants have not yet been able to depose Lott. Echeverria Decl. ¶ 5. Given the compressed schedule of this case, Defendants may seek to supplement the evidence submitted in support of this motion with relevant deposition testimony in advance of the trial.

4

## II.   LOTT'S OPINION IS NOT RELIABLE BECAUSE IT IS BASED ON FLAWED DATA

In this action, Lott has continued his pattern of advancing flawed analysis by basing his opinion regarding the effectiveness of assault-weapon bans on inaccurate data.  Lott's testimony should be precluded due to the numerous errors in his underlying data.  *See In re Silicone Gel Breast Implants Prods. Liability Litig.*, 318 F. Supp. 2d 879, 890 (C.D. Cal. 2004) ("[A]ny step that renders [the expert's] analysis unreliable . . . renders the expert's testimony inadmissible.  This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994))); *Henricksen v. ConocoPhillips Co.*, 605 F. Supp. 2d 1142, 1163 (E.D. Wash. 2009) (excluding expert opinion where, "at each step of his analysis, [the expert] bases his analysis upon speculation and/or erroneous data, and without adequate explanation, these steps render his methodology unreliable and misleading, and his opinions are therefore inadmissible.").

The key relevant, substantive opinion advanced in Lott's declaration is that the federal assault weapons ban was not effective in reducing the number of mass shootings or the number of fatalities in mass shootings.[4]  A significant portion of his declaration is devoted to this point.  *See* Lott Decl. ¶¶ 43-53.  That opinion, however, was based on conspicuously flawed data—errors that are readily apparent if one examines the source material cited by Lott, including some of CPRC's own data.

In claiming that the federal assault weapons ban was ineffective in preventing or mitigating mass shootings, Lott purports to rely on mass shootings identified by three sources: Professor Klarevas in *Rampage Nation*, Mother Jones, and Lott's

---

[4] Most of Lott's declaration provides a slanted interpretation of the literature. Professors Donohue and Klarevas have explained how Lott does not accurately represent the literature regarding gun-violence prevention, particularly as it pertains to assault weapons and mass shootings.  *See* Defs.' Ex. C ¶¶ 124-139; Defs.' Ex. E ¶¶ 28-46.

former organization, CPRC.  *See* Lott Decl. ¶ 46.  Lott presents several charts based on these data.  In his accompanying declaration, Professor Klarevas details the numerous errors in Lott's declaration and provides revised charts based on corrected data, which show that Lott's incorrect charts minimize the effectiveness of the federal assault weapons ban.[5]  Though Lott has not provided Defendants with the data relied on for his declaration, the charts appearing in his declaration were originally published on CPRC's website in 2018, along with an Excel workbook providing the underlying data.  Klarevas reviewed that data and determined that a staggering 83 percent of the datapoints are incorrect, *e.g.*, Lott erroneously classifying mass shootings involving an assault weapon as mass shootings not involving an assault weapon.  Klarevas Decl. ¶ 23.

First, Lott miscounts the number of gun massacres resulting in six or more fatalities included in the Klarevas dataset.  Four of the six datapoints for the number of incidents are incorrect, which reduces the number of deaths in mass shootings involving assault weapons after the expiration of the federal assault weapons ban by approximately 30 percent.  *See* Klarevas Decl. ¶¶ 6-9 & figs. 1a-2b.  Lott's errors are readily apparent if one consults the sources cited by Lott.  *See id.* ¶¶ 7-9.  For example, Lott did not count the June 1, 2006 mass shooting in Indianapolis, Indiana as one involving an assault weapon even though Lott's cited source, an opinion of the Indiana Supreme Court, indicates that the weapon was an AK-47 assault rifle.  *See id.* ¶ 9.  Lott also misrepresents Klarevas's data in his analysis of the share of mass shootings with assault weapons, making it appear that the share dropped dramatically after the enactment of the federal ban and continued to fall after its

---

[5] As Professor Klarevas explains, analyzing the share of mass shootings involving assault weapons is not an appropriate measure of the effectiveness of an assault weapons ban.  *See* Klarevas Decl. ¶ 22.  Assault weapon bans may dissuade individuals from attempting mass shootings due to the unavailability of more lethal weapons or cause them to use less lethal weapons.

expiration; the corrected chart shows that the share has been relatively flat over 30 years.  *See id.* ¶ 20 & figs. 6a-6b.[6]

Second, Lott misrepresents the data from Mother Jones.  Seven of the 12 datapoints for the number of incidents derived from the Mother Jones dataset are incorrect.  *See* Klarevas Decl., ¶ 10 & figs. 3a-3b.  Lott's analysis of the share of mass shootings involving assault weapons based on the Mother Jones data is similarly incorrect.  *See id.*, ¶ 20 & figs. 7a-7b.

Third, Lott relies on faulty data of his former organization, CPRC, regarding the number of incidents and fatalities in "mass *public* shootings."  *See* Lott Decl. ¶ 52 (emphasis added).[7]  Lott does not disclose the criteria used to limit the dataset to public shootings.  *See* Klarevas Decl. ¶ 18.  CPRC undercounts the number of incidents, and thus the number of deaths, by excluding numerous incidents included in the Klarevas dataset.  *See id.* ¶¶ 19.  The faulty data also distorts the share of mass shootings involving assault weapons based on the CPRC dataset.  *See id.* ¶ 20 & figs. 8a-8b.

The sheer quantity of errors is astonishing and, at best, displays a lack of scholarly rigor and care.  The Court cannot rely on Lott's conclusions given the faulty data on which they rely.

## CONCLUSION

For these reasons, the Court should preclude Lott's testimony at trial.

---

[6] Klarevas reproduces the data relied on by Lott, including Lott's sources, in Exhibit 2 to this declaration.
[7] It should be noted that Lott's chart on page 21 of his declaration is incorrectly titled, "Changes in Number of Mass Public Shootings Before, During, and After the Federal Assault Weapons Ban."  That chart refers to the number of *deaths* in such shootings.

7

Dated:  December 28, 2020

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
MARK R. BECKINGTON
Supervising Deputy Attorney General
JOSE A. ZELIDON-ZEPEDA
PETER H. CHANG
Deputy Attorneys General

s/ John D. Echeverria

JOHN D. ECHEVERRIA
Deputy Attorney General
*Attorneys for Defendants*

SA2019104420
42491120.docx

Defendants' Memorandum of Points and Authorities in Support of *Daubert* Motion to Preclude
Testimony of John R. Lott, Jr. (3:19-cv-01537-BEN-JLB)