John W. Dillon (SBN 296788)
   jdillon@dillonlawgp.com
**DILLON LAW GROUP APC**
2647 Gateway Road
Suite 105, No. 255
Carlsbad, California 92009
Phone: (760) 642-7150
Fax: (760) 642-7151

George M. Lee (SBN 172982)
   gml@seilerepstein.com
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, California 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILLER, an individual, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>XAVIER BECERRA, in his official capacity as Attorney General of California, et al.,<br><br>Defendants. | Case No. 3:19-cv-01537-BEN-JLB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE OR LIMIT TESTIMONY AT TRIAL [ECF NO. 75]**<br><br>Trial: February 3, 2021<br>Time: 10:00 a.m.<br>Courtroom 5A<br>Judge: Hon. Roger T. Benitez |

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.  STATEMENT OF FACTS ................................................................................. 1

  A. SCOPE OF CHALLENGE .............................................................................. 1

  B. PROCEDURAL HISTORY .............................................................................. 3

  C. THE EVIDENTIARY HEARING AND SUPPLEMENTAL
     INFORMATION REGARDING SHOTGUNS AND PISTOLS ....................... 4

  D. PRETRIAL AGREEMENT RE AUTHENTICITY OF EXHIBITS ................. 7

III. ARGUMENT ................................................................................................... 8

  A. STANDARD .................................................................................................. 8

  B. THE DECLARATIONS OF ADAM KRAUT AND WENDY
     HAUFFEN ARE ADMISSIBLE. .................................................................. 9

  C. THE TESTIMONY AND EXHIBITS AUTHENTICATED BY JOSEPH OSTINI,
     KENNETH BROWN AND NATHAN SIEGEL ARE ADMISSIBLE. ........... 13

    1. Defendants Waived Any Application of the Best
       Evidence Rule by Stipulating to the Authenticity
       of Plaintiffs' Exhibits. .......................................................................... 13

    2. The Ostini, Brown and Siegel Declarations are Not
       Hearsay, or are Subject to Exceptions. ................................................. 14

  D. THE DECLARATION OF GEORGE MOCSARY SHOULD BE ADMITTED
     FOR THE PURPOSE FOR WHICH IT IS OFFERED: A JURISDICTIONAL SURVEY. . 16

  E. THERE SHOULD BE NO LIMITATION ON THE ADMISSION OF
     MATTERS NOT DISCLOSED "IN DISCOVERY" BECAUSE THERE HAS BEEN
     NO DISCOVERY, EXCEPT FOR DEPOSITION TESTIMONY CONDUCTED BY
     STIPULATION. ............................................................................................ 18

IV.  CONCLUSION ............................................................................................... 20

– ii –

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO PRECLUDE OR LIMIT TESTIMONY AT TRIAL
CASE NO. 3:19-cv-01537-BEN-JLB

## TABLE OF AUTHORITIES

**Cases**

*Acosta v. City of Costa Mesa*, 718 F.3d 800 (9th Cir. 2013).........................................9

*Bailey v. Mitchell*, 271 F.3d 652 (6th Cir. 2001)........................................................14

*Barrowman v. Wright Med. Tech. Inc.*, No. C15-0717 JLR,
2017 WL 4161688 (W.D. Wash. Sept. 19, 2017)....................................................12

*Caetano v. Massachusetts*, 136 S.Ct. 1027 (2016)................................................16, 17

*CFM Commc'ns, LLC v. Mitts Telecasting Co.*,
424 F.Supp.2d 1229 (E.D. Cal. 2005).....................................................................18

*Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993)........................................8

*District of Columbia v. Heller*, 554 U.S. 570 (2008).................................................16

*Duncan v. Becerra*, 366 F.Supp.3d 1131 (S.D. Cal. 2019)............................................3

*Fresenius Med. Care Holdings, Inc., v. Baxter Int'l, Inc.*,
No. C 03-1431 SBA (EDL), 2006 WL 1646113 (N.D. Cal. June 12, 2006)............8

*Garcia v. Los Banos Unified Sch. Dist.*, No. 1:04-cv-6059-SMS,
2007 WL 778640 (E.D. Cal. Mar. 9, 2007)..............................................................10

*GCIU-Employer Ret. Fund v. Quad Graphics, Inc.*, No. 2:16-cv-00100-ODW,
2019 WL 7945594 (C.D. Cal. Oct. 29, 2019)............................................................10

*Harper v. City of Los Angeles*, 533 F.3d 1010 (9th Cir. 2008)......................................9

*Interactive Educ. Concepts, Inc. v. TCDL Texas, Inc.*, No. CV 18-cv-7379 RSWL,
2019 WL 134540 (C.D. Cal. Jan. 8, 2019).................................................................15

*Labadie Coal Co. v. Black*, 672 F.2d 92, 95 (D.C. Cir. 1982)......................................19

*Luce v. United States*, 469 U.S. 38 (1984).....................................................................8

*Maiorano v. Home Depot U.S.A., Inc.*, No. 3:16-cv-02862-BEN-MDD,
2018 WL 2128609 (S.D. Cal. May 9, 2018)...............................................................8

*Martin v. Ind. Mich. Power Co.*, 292 F.Supp.2d 947 (W.D. Mich. 2002)...................18

*McEwen v. City of Norman, Okla.*, 926 F.2d 1539 (10th Cir. 1991)...........................10

*McMorgan & Co. v. First Cal. Mortg. Co.*, 931 F.Supp. 699 (N.D. Cal. 1996) ......... 14

*Medina v. Multaler, Inc.*, 2007 WL 5124009 (C.D. Cal. Feb. 7, 2007) ..................... 13

*Park v. Transamerica Ins. Co.*, 917 F.Supp. 731 (D. Haw. 1996) ............................. 14

*People v. Tolliver*, 179 Cal.App.2d 736, 4 Cal.Rptr. 271 (Cal. App. 1960).............. 10

*Polanski v. KLM Royal Dutch Airlines*, 378 F.Supp.2d 1222 (S.D. Cal. 2005).......... 11

*Rogers v. Raymark Indus., Inc.*, 922 F.2d 1426 (9th Cir. 1991)................................. 10

*Schleunes v. American Cas. Co. of Reading, Penn.*, 528 F.2d 634 (5th Cir. 1976) .... 11

*Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316 (9th Cir. 1986) ............................................ 13

*Silveira v. Lockyer*, 312 F.3d 1052 (9th Cir. 2002) ..................................................... 3

*T I Fed. Credit Union v. DelBonis*, 72 F.3d 921 (1st Cir. 1995) ................................ 14

*U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040 (9th Cir. 2009)....... 16

*United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465 (1984) ............................................ 9

*United States v. Bensimon*, 172 F.3d 1121 (9th Cir. 1999) .......................................... 8

*United States v. Conn*, 297 F.3d 548 (7th Cir. 2002) ................................................. 12

*United States v. TDC Management Corporation, Inc.*,
    827 F.3d 1127 (D.C. Cir. 2016) ............................................................................. 18

*United States v. Williams*, 461 F.3d 441 (4th Cir. 2006).............................................. 11

**Statutes**

Cal. Pen. Code § 30600 ................................................................................................ 3

Cal. Pen. Code § 16740 ................................................................................................ 1

Cal. Pen. Code § 30515 ...................................................................................... *passim*

//

//

**Rules**

Fed. Rule Civ. Pro. 26 ................................................................................. 18

Fed. Rule Evid. 1002 ................................................................................... 13

Fed. Rule Evid. 1006 ................................................................................... 15

Fed. Rule Evid. 103 ..................................................................................... 16

Fed. Rule Evid. 401 ....................................................................................... 9

Fed. Rule Evid. 403 .................................................................................. 9, 18

Fed. Rule Evid. 701 ................................................................................ 11, 12

Fed. Rule Evid. 803(6) ............................................................................ 15, 16

**Regulations**

11 Cal. Code Regs. § 5471 ......................................................................... 2, 9

## I.   INTRODUCTION

In advance of the current bench trial to be conducted through the submission of declarations and deposition testimony by stipulation, defendants Xavier Becerra, et al. have moved "to preclude or limit" the testimony of seven plaintiff witnesses in this matter: Adam Kraut, Wendy Hauffen, Joseph Ostini, Kenneth Brown, Nathan Siegel, and George Mocsary [ECF No. 75] ("Motion"), on various grounds. Plaintiffs James Miller, et al. ("plaintiffs") oppose their Motion.

## II.   STATEMENT OF FACTS

### A.   SCOPE OF CHALLENGE

This case presents a broad facial and as-applied challenge to California's Roberti-Roos Assault Weapons Control Act (AWCA) ban on common firearms and common characteristics the State pejoratively calls "assault weapons," and Defendants' policies, practices, and customs enforcing the same.

Under Pen. Code § 30515, a rifle is an "assault weapon" if it is:

- a semiautomatic, centerfire rifle that does not have a fixed magazine, but has one or more of the following characteristics: a pistol grip that protrudes conspicuously beneath the action of the rifle, a thumbhole stock, a folding or telescoping stock, a grenade or flare launcher, a flash suppressor, or a forward pistol grip, § 30515(a)(1);

- a semiautomatic, centerfire rifle that has a fixed magazine capable of accepting more than 10 rounds (i.e., a "large-capacity" magazine, defined at § 16740), § 30515(a)(2); or,

- a semiautomatic, centerfire rifle that has an overall length of less than 30 inches, § 30515 (a)(3).

Under § 30515, a pistol is an "assault weapon" if it is:

- a semiautomatic pistol that does not have a fixed magazine, but has a

threaded barrel, capable of accepting a flash suppressor, a forward handgrip, or a silencer, § 30515(a)(4)(A);

- a semiautomatic pistol that does not have a fixed magazine, but has a second handgrip, § 30515(a)(4)(B);
- a semiautomatic pistol that does not have a fixed magazine, but has a "shroud that is attached to, or partially or completely encircles, the barrel that allows the bearer to fire the weapon without burning the bearer's hand, except a slide that encloses the barrel," § 30515(a)(4)(C);
- a semiautomatic pistol that does not have a fixed magazine, but has the "capacity to accept a detachable magazine at some location outside of the pistol grip," § 30515(a)(4)(D); or,
- a semiautomatic pistol with a fixed magazine that has the capacity to accept more than ten rounds, § 30515(a)(5).

A shotgun is an assault weapon under § 30515 if it:
- is a semiautomatic shotgun that has both a "folding or telescoping stock" and "pistol grip that protrudes conspicuously beneath the action of the weapon, thumbhole stock, or vertical handgrip," § 30515(a)(6);
- is a semiautomatic shotgun that has the ability to accept a detachable magazine, § 30515(a)(7); or,
- Has a revolving cylinder, § 30515(a)(8).

In 2016, the Legislature further expanded the definition of "assault weapon" to include any common semiautomatic, centerfire rifle or semiautomatic pistol that does not have a "fixed magazine" if it also has common characteristics. It also defined "fixed magazine" to mean "an ammunition feeding device contained in, or permanently attached to, a firearm in such a manner that the device cannot be removed without disassembly of the firearm action." Pen. Code § 30515(b); 11 Cal. Code Regs. § 5471(p). Thus, as the law stands, a California-compliant "fixed magazine" firearm may have one or more of the listed § 30515(a) characteristics.

However, if a lawfully owned "large-capacity" magazine – those this Court found to be common and constitutionally protected in *Duncan v. Becerra*, 366 F.Supp.3d 1131 (S.D. Cal. 2019) – is inserted into a "fixed magazine" firearm, it would convert the firearm into an illegal "assault weapon." Pen. Code § 30515(a)(2) and (a)(5). And by doing so, through operation of section 30515's definitions and defendants' policies, practices, and customs, a person would have then been subject to severe criminal penalties for e.g., unlawfully "manufacturing" and possessing an unregistered "assault weapon." Moreover, without having a fixed magazine, a firearm may not be configured with any of the section 30515(a) characteristics without it being classified as an "assault weapon."

The AWCA bans the possession of such so-called "assault weapons" by private individuals. *Silveira v. Lockyer*, 312 F.3d 1052, 1059 (9th Cir. 2002). It generally makes it a felony to manufacture or cause to be manufactured, distribute, transport, import into the state for sale, keep for sale, offer or expose for sale, give, or lend any "assault weapon." Pen. Code § 30600(a). It also makes it a crime *to possess* any firearm considered an "assault weapon," § 30605(a), even by a law-abiding person for lawful purposes like self-defense in the home. Because of the AWCA ban and Defendants' policies, practices, and customs, the ordinary law-abiding California adult resident cannot, *inter alia*, acquire, possess, or use an "assault weapon" for lawful purposes including but not limited to self-defense, proficiency training, sport, or hunting.

## B.   PROCEDURAL HISTORY

Plaintiffs filed this case on August 15, 2019, challenging the State's ban on "assault weapons"—common firearms based on the common characteristic of a "large-capacity" magazine in a "fixed magazine" firearm—as a violation of the Second Amendment to the United States Constitution.

Defendants filed their answer to the complaint on September 6, 2019 [ECF No. 7].

On September 27, 2019, Plaintiffs filed their First Amended Complaint [ECF No. 9]. The current and operative complaint added additional affected individual plaintiffs and organizational plaintiffs, as well as related allegations, that challenge the AWCA's ban on common firearms and common firearm characteristics. Specifically, plaintiffs challenge those provisions of the AWCA that are based upon the Penal Code's definition of "assault weapon" set forth in section 30515(a).

On December 6, 2019, plaintiffs filed their motion for preliminary injunction. [ECF No. 22]. Supporting that motion for injunctive relief were the declarations of plaintiffs, plaintiffs' witnesses and expert witnesses [ECF Nos. 22-2 through 22-19], most of which have been repackaged in support of the present trial.

On January 23, 2020, defendants filed their opposition to plaintiffs' motion for preliminary injunction. [ECF No. 33]. Supporting defendants' opposition were the declarations of defendants' witnesses, presumably offered as experts [ECF Nos. 33-1 through 33-5], and the declaration of defendants' counsel attaching an additional 26 exhibits. [ECF Nos. 33-6 through 33-32].

On January 30, 2020, plaintiffs filed their reply memorandum in support of the preliminary injunction motion [ECF No. 38], and offered the declaration of Dr. Robert Margulies, M.D., offered as a rebuttal witness. [ECF No. 38-1].

The Court originally rescheduled a hearing on plaintiffs' motion for preliminary injunction, and defendants' motion to dismiss, on March 19, 2020. [ECF No. 41]. However, in light of the then-emerging COVID-19 conditions and recommendations regarding social distancing, the Court vacated hearing of the motions. [Minute Order entered 3/16/20].

## C.  THE EVIDENTIARY HEARING AND SUPPLEMENTAL INFORMATION REGARDING SHOTGUNS AND PISTOLS

On September 23, 2020, the Court held a telephonic status conference with the parties' counsel [ECF No. 47], and further issued an order denying defendants' motion

1  to dismiss. [ECF No. 46]. The Court further ordered an evidentiary hearing on

2  plaintiffs' pending motion for preliminary injunction, which then took place on

3  October 19, 2020. [ECF No. 53]. The evidentiary hearing took place over two days of

4  testimony. Plaintiffs offered the live and video conference testimony of eight

5  witnesses from whom the Court was interested in hearing. Defendants largely declined

6  to cross-examine any of plaintiffs' witnesses, and offered the testimony of five of their

7  own witnesses. (See Transcripts ("Tx") of hearings of October 19, 2020 and October

8  22, 2020, ECF No. 58 and 59).

9      At the hearing on October 22, 2020, the Court queried counsel whether there

10  was sufficient information pertaining to pistols and shotguns classified as assault

11  weapons (Tx of 10/22/20 hearing at 37:14-17) concluding that "I think it would be

12  important in the end, in the final analysis[.]" (Id., at 37:18-19). At the same time, the

13  Court also believed that the best evidence of how common those firearms are would

14  be sales data that would be provided to the State. (Id., at 38:18 – 39:4). However,

15  defendants' counsel informed the Court that he wouldn't know whether the state

16  would have that information about how common the restricted firearms would be in

17  other jurisdictions throughout the country. (Id. at 39:10-12). However, defendants'

18  counsel "agreed to look into" the issue of any records pertaining to the sale of

19  restricted pistols and shotguns that may have been registered. (Id., at 40:2-8).

20      The Court further suggested that this is not a matter of "discovery," as it was

21  not sure how much discovery is necessary in this case (Tx of 10/22/20 hearing at 40:9-

22  11), and that the Court would prefer not to drag the case out with delays attendant

23  with discovery. (Id., at 40:23 – 41:1). The Court concluded, "since it's really not

24  discovery, I think it's a question of whether or not the State can and will search for

25  those records for me. [¶] So I'm not waiting for discovery. I do think that the State has

26  the best evidence in connection with that information. [¶] I think it would be good to

27  know what information there is so that we can find out, you know, just how common

28  are these [firearms]?" (Id., at 41:2-10).

Taking a cue from the Court's expressly-stated desire to have further information pertaining to the commonality of both shotguns and pistols classified as "assault weapons" under California law, plaintiffs did not seek to rely solely on whatever information the State might decide to provide. Instead, and with the Court's permission to file supplemental briefing, on November 5, 2020, plaintiffs submitted both supplemental briefing [ECF No. 63], as well as the declarations of several additional witnesses who had information pertaining to shotguns and pistols.

The Declaration of Joseph Ostini [ECF No. 63-3] included the results of his search of commercially available firearm variations, particularly as to pistols and shotguns that contain some of the features prohibited by Pen. Code § 30515(a)(4)-(5) as to pistols, and § 30515(a)(6)-(8) as to shotguns. (Ostini Decl., ¶¶ 7-8). Having conducted this survey, Mr. Ostini concluded that in looking at 61 different manufacturers of pistols, there were approximately 356 different models of semiautomatic pistols that would be identified as "assault weapons." (Id., ¶ 11.). Having looked at 12 manufacturers of shotguns, there were 54 different models of semiautomatic shotguns that would be identified as "assault weapons." (Id., ¶ 12.) Mr. Ostini's research showed that these models of pistols and shotguns were "freely available for sale for much in the U.S." (Id., ¶ 10). A table that Mr. Ostini created was attached as Exhibit A to his declaration.

The Declaration of Nathan Lewis Siegel [ECF No. 63-4], who is an employee of Strum, Ruger & Company, Inc. included industry-relevant information pertaining to sales of semiautomatic pistols by that company of semiautomatic pistols that have at least one feature listed in Pen. Code § 30515(a)(4) (thereby making it an "assault pistol"). His results, made pursuant to a search of Ruger's business records, reflect that between 2017 and October 26, 2020, the company domestically distributed at least 283,579 semiautomatic pistols that accept a detachable magazine and have at least one feature generally banned by Pen. Code § 30515(a)(4) in California. (Siegel Decl., ¶ 6).

The Declaration of Kenneth Brown [ECF No. 63-5], likewise offered in response to the Court's query regarding the prevalence of semiautomatic shotguns classified as "assault weapons," provided information pertaining to the popularity of the Benelli M1014 shotgun, a very popular semiautomatic shotgun that has both a pistol grip, and an adjustable stock, thereby making it an "assault weapon" under Pen. Code § 30515(a)(6). Mr. Brown, who is an authorized distributor for Benelli USA, he offered this Court information that thousands of that popular shotgun, in various model iterations, have been distributed throughout his region from 2016 to 2020. Mr. Brown's declaration also included an attached letter from then-deputy Attorney General Tim Rieger, who informed general counsel for Benelli USA that the M1014 shotgun could be considered an "assault weapon" under California law and that "the Department strongly encourages you to cease importation of the Benelli M1014 into California." (Brown Decl., Exh. A, p. 0002 [ECF 63-5]).

## D.   PRETRIAL AGREEMENT RE AUTHENTICITY OF EXHIBITS

At the evidentiary hearing in October, the Court ordered a further trial on the merits, pursuant to FRCP 65. (Tx of 10/22/20 hearing at 115:15-17). Trial was initially set for hearing on January 21, 2021. [ECF No. 55]. Presently, it is set for hearing on February 3, 2021.

In advance of the pretrial conference, the parties exchanged lists of all witnesses upon whose testimony they intend to use at trial, and exchanged all exhibits on November 30, 2020. (Lee Decl., ¶ 4). On that day, the parties also met and conferred to discuss the admissibility of exhibits and other matters required by S.D. Local Rule 16.1(f)(4). At the time of that hearing, plaintiffs suggested stipulating to the authenticity and admissibility of all exhibits offered by all parties, and defendants initially were open to that idea. (Id.) In light of worsening COVID-19 pandmeic conditions, the parties also agreed to request the Court to permit them to submit all direct testimony by declaration, subject to cross-examination through deposition

1  testimony. (Id., ¶ 5.)

2      On December 3, 2020, the parties further met and conferred to discuss these

3  pretrial matters. (Lee Decl., ¶ 6.) At that time, there still appeared to be consensus that

4  the parties were agreeing to the authenticity and admissibility of all trial exhibits. (Id.)

5  However, the defendants also indicated a general desire to file motions in limine to

6  limit/preclude some testimony, including expert witness testimony under *Daubert v.*

7  *Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 (1993). That, of course, was directly at

8  odds with the prior suggestion that the parties stipulate to the admissibility of all

9  exhibits. (Id., ¶ 7.) Accordingly, when plaintiffs submitted a draft proposed pretrial

10  order to the defense, the parties ultimately could not agree to stipulate to the

11  admissibility of all exhibits. (Id.) However, the parties did keep and maintain their

12  express stipulation to the *authenticity* of all exhibits – expressly to save the parties

13  from having to produce witnesses to authenticate the exhibits at trial. This stipulation

14  to the authenticity of all exhibits made its way into the proposed pretrial order,

15  submitted to the Court on December 9, 2020, and which was approved as to form by

16  defense counsel. (Id., Exhibit A, at 30:9). That proposed pretrial order stated: "The

17  parties have stipulated to the authenticity of all exhibits marked below." (Id., p. 7:10.)

18

19                        **III.   ARGUMENT**

20  **A.  STANDARD**

21

22      Rulings on motions in limine fall entirely within this Court's discretion. *United*

23  *States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce v. United States*,

24  469 U.S. 38, 41-42 (1984)). Evidence is excluded on a motion in limine only if the

25  evidence is clearly inadmissible for any purpose. *Maiorano v. Home Depot U.S.A.,*

26  *Inc.*, No. 3:16-cv-02862-BEN-MDD, 2018 WL 2128609, at *1 (S.D. Cal. May 9,

27  2018) (citing *Fresenius Med. Care Holdings, Inc., v. Baxter Int'l, Inc.*, No. C 03-1431

28  SBA (EDL), 2006 WL 1646113, at *3 (N.D. Cal. June 12, 2006)).

      A district court is afforded "'wide discretion in determining the admissibility of

1    evidence under the Federal Rules. […] Assessing the probative value of [the proffered

2    evidence], and weighing any factors counseling against admissibility is a matter first

3    for the district court's sound judgment under Rules 401 and 403'" *Acosta v. City of*

4    *Costa Mesa*, 718 F.3d 800, 827 (9th Cir. 2013) (citing *United States v. Abel*, 469 U.S.

5    45, 54, 105 S.Ct. 465 (1984)). To reverse on the basis of an erroneous evidentiary

6    ruling, an reviewing court must conclude that the error was prejudicial. *Acosta*, 718

7    F.3d at 827 (citing *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir.

8    2008)).

9

10   **B.     THE DECLARATIONS OF ADAM KRAUT AND WENDY HAUFFEN ARE**
          **ADMISSIBLE.**

11

12          Defendants' motion first focuses upon the declarations of Adam Kraut

13   (Plaintiffs' Trial Exhibit 011)[1] and Wendy Hauffen (Exhibit 014) on the grounds that

14   their declarations offer "improper[] testimony from lay witnesses that is outside their

15   percipient knowledge and amounts to expert opinion[]." (Motion at 3:8-9).

16          Mr. Kraut's declaration (Exhibit 011) is offered to authenticate a video he

17   filmed in support of the preliminary injunction motion (Kraut Decl., Exh. 011 at ¶ 4),

18   and to explain the demonstration itself. The video[2] was a physical demonstration of

19   both the differences in the rate of fire between a standard configuration AR-15 rifle,

20   and a California "featureless"[3] version, and his ability to perform a magazine change

21   of the two firearms with marginal difference. "Employing no specialized techniques

22   for these shooting demonstrations, this video demonstration shows that there is no

23

24   [1] All of the declarations at issue have been pre-marked as trial exhibits, and are attached to the

25   supporting Declaration of George M. Lee ("Lee Decl.")

     [2] The video itself can be viewed at at: http://bit.ly/miller-kraut-video.

26   [3] According to the State, a "featureless" rifle means "a semiautomatic firearm (rifle, pistol, or

27   shotgun) lacking the characteristics associated with that weapon, as listed in Penal Code section
     30515." 11 Cal. Code Regs. § 5471(o). "Featureless" rfiles, such as the Ruger Mini-14 in its stock

28   version, are legal for sale/transfer in California. See Decl. of Blake Graham, Defense Exhibit D, at ¶
     45.

1  significant or discernible difference between the ability to accurately shoot at a rapid

2  rate and reload the firearm in either configuration." (Kraut Decl., Exh. 011, at ¶ 14).

3      Mr. Kraut was produced at the evidentiary hearing on October 22, 2020, and the

4  Court conducted examination of him at that time. (Tx of 10/22/20 hearing, at pp. 23-

5  27). At the hearing, Mr. Kraut testified that the video depicts the difference in firing

6  the same rifle, both with the prohibited 30515(a) features attached, and a "featureless"

7  version that would not be prohibited under California law. (Id., at 23:11 – 24:7). As

8  Mr. Kraut testified, "[t]he purpose of the video was to demonstrate that, in either

9  configuration, it was possible to shoot a man-sized target at 25 yards in rapid

10  succession using either a California featureless rifle or a standard configuration AR."

11  (Id., at 24:20-25). Mr. Kraut demonstrated that he was able, in both configurations, to

12  hit the target at the same rate with about the same accuracy. (Id., at 26:13-17).

13      A physical demonstration is not "opinion testimony." It is simply a

14  demonstration, intended to illustrate or demonstrate a party's testimony, or theory of

15  the case. *GCIU-Employer Ret. Fund v. Quad Graphics, Inc.*, No. 2:16-cv-00100-

16  ODW, 2019 WL 7945594, at *4 (C.D. Cal. Oct. 29, 2019) (citing *Garcia v. Los Banos*

17  *Unified Sch. Dist.*, No. 1:04-cv-6059-SMS, 2007 WL 778640, at *3 (E.D. Cal. Mar. 9,

18  2007) (demonstrative evidence is generally not considered cumulative of oral

19  testimony on the same subject matter because it illustrates it)). The admissibility of

20  demonstrative evidence lies largely within the discretion of the trial court. *Rogers v.*

21  *Raymark Indus., Inc.*, 922 F.2d 1426, 1429 (9th Cir. 1991). Courtroom demonstrations

22  of a testifying witness to illustrate a point are quite common. *People v. Tolliver*, 179

23  Cal.App.2d 736, 740-741, 4 Cal.Rptr. 271, 274 (Cal. App. 1960) (courtroom

24  demonstration by a police officer of his ability to reach into a hat while handcuffed

25  was proper); *McEwen v. City of Norman, Okla.*, 926 F.2d 1539, 1553 (10th Cir. 1991)

26  (police officer properly permitted to demonstrate the manner in which he handcuffed

27  the plaintiff). Here, of course, a demonstration of the rapid fire capabilities of two

28  rifles – one of which would be illegal to possess in California – is not possible in the

1  courtroom. Accordingly, the video demonstration is offered in its place, and more

2  importantly, Mr. Kraut was made available for cross-examination, both at the

3  evidentiary hearing on October 22, 2020 and for deposition.

4       Whether to allow an in-court demonstration is within the trial court's sound

5  discretion. *Schleunes v. American Cas. Co. of Reading, Penn.*, 528 F.2d 634, 636 (5th

6  Cir. 1976). "For a courtroom demonstration to be admissible as evidence, the

7  proponent of the demonstration, like the proponent of any evidence, must show that

8  the demonstration is relevant." *United States v. Williams*, 461 F.3d 441, 446 (4th Cir.

9  2006).

10      Mr. Kraut does not offer any expert witness opinion testimony, and that is the

11 point. He demonstrates to the Court that an "average to slightly above average

12 shooter" (Tx of 10/22/20 hearing at 25:19-24) is still able to rapidly fire and hit a man-

13 sized target at 25 yards. This goes directly to the State's theory that prohibiting

14 various features is necessary to prevent "rapid fire," presumably by an ill-intentioned,

15 indiscriminate shooter. While there certainly is a difference in comfort, controllability

16 and accuracy as between the two rifles, for a shooter of ill intent who intends to fire

17 indiscriminately, without as much concern for accuracy as a law-abiding citizen, those

18 factors would not make a difference.

19      To the extent that Mr. Kraut does offer opinion testimony regarding "no

20 significant or discernible difference between the ability to accurately shoot at a rapid

21 rate and reload the firearm in either configuration," (Kraut Decl., ¶ 14), as

22 demonstrated in the video, these such opinions are proper lay opinions under Fed.

23 Rule of Evid. 701. Lay opinion is admissible under FRE 701 if it is rationally based

24 on the perception of the witness, helpful, and not based on scientific or technical

25 knowledge. *Polanski v. KLM Royal Dutch Airlines*, 378 F.Supp.2d 1222, 1230 n.7

26 (S.D. Cal. 2005). Here, the testimony of Mr. Kraut is neither scientific nor technical,

27 and is wholly related to his description of the demonstration itself. "Testimony that is

28 admissible under Rule 701 'most often takes the form of first-hand sensory

observations,' whereas expert testimony 'brings an appraisal to those facts [of the case] a scientific, technological, or other specialized knowledge that the lay person cannot be expected to possess.'" *Barrowman v. Wright Med. Tech. Inc.*, No. C15-0717 JLR, 2017 WL 4161688, at *3 (W.D. Wash. Sept. 19, 2017) (citing *United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (citations omitted)). Here, Mr. Kraut described his sensory observations that any firearm shooter of his ability would or could observe.

Likewise, in the testimony of plaintiff Wendy Hauffen (Exh. 014), who is a firearms trainer who specializes in training other women in the proficiency of arms and self-defense, she opines that the AR-15 rifle is well-suited to the women shooters she trains because of its relatively light weight, and because the collapsible/telescoping stock can be adjusted to accommodate female shooters. (Hauffen Decl., Exh. 014, ¶ 8). This is a description of her own experience, individually and as a firearms instructor. She is not offering this testimony as an expert witness, and it simply corroborates and illustrates the testimony of plaintiff's firearms expert, Emanuel Kapelsohn, who testified that because of its light weight and ergonomics, the AR-15 rifle is particularly well suited for use by people of all statures and varying levels of strength (Tx of 10/19/20 Hearing at 26:24 – 27:8), and that the telescoping stock is beneficial to female shooters and people of smaller stature. (Id., at 28:10 – 29:1)

Plaintiff Hauffen's testimony simply describes her personal experience and preferences, which are derived from her own sensory impressions. As such, to the extent it does contain opinion testimony in part, it would be proper lay opinion testimony under FRE 701 as well.

**C.**     **THE TESTIMONY AND EXHIBITS AUTHENTICATED BY JOSEPH OSTINI, KENNETH BROWN AND NATHAN SIEGEL ARE ADMISSIBLE.**

**1.     Defendants <u>Waived</u> Any Application of the Best Evidence Rule by Stipulating to the Authenticity of Plaintiffs' Exhibits.**

Defendants' Motion further seeks to exclude the declaration testimony of three witnesses, Joseph Ostini (Plaintiffs' Ex. 005), Kenneth Brown (Ex. 007) and Nathan Siegel (Ex. 006). (Motion at pp. 5-7). First, defendants move to exclude on the grounds that the exhibits these witnesses attach to their declarations fail to adhere to Fed. Rule of Evid. 1002, known as the "best evidence rule," which provides: "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." The "best evidence rule," more accurately described as the "original document rule," is grounded in the belief that original documents are necessary to prevent inaccuracy and fraud when attempting to prove the contents of a writing. See, Fed. Rule Evid. 1002, advisory committee notes. *Medina v. Multaler, Inc.*, 2007 WL 5124009, at *1 (C.D. Cal. Feb. 7, 2007). "In the days before liberal rules of discovery and modern techniques of electronic copying, the rule guarded against incomplete or fraudulent proof. By requiring the possessor of the original to produce it, the rule prevented the introduction of altered copies and the withholding of originals." *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319 (9th Cir. 1986).

But if defendants had any concern about the accuracy of the content of the writings offered by the plaintiffs, they expressly *waived* any protection under the best evidence rule, or Fed. Rule of Evid. 1002, by stipulating to the authenticity of all of plaintiffs' exhibits. (Lee Decl., ¶ 8; Exhibit A). By doing so, they relieved plaintiffs (and themselves, by virtue of the reciprocal effect of the stipulation) of the burden of having to bring original writings into court to prove their contents. However, by now insisting upon the submission of original writings, in strict compliance with FRE 1002, defendants are simply reneging on their stipulation.

But having gone down this road, it is far too late for defendants to back out of that stipulation now. Plaintiffs reasonably relied upon defendants' stipulation, which has determined the course and manner of plaintiffs' proof at trial. (Lee Decl., ¶ 9). Had plaintiffs known that defendants did not intend to honor their stipulation, and would insist upon the production of original documents at trial, they would not have agreed to allow cross-examination by depositions, and would have simply brought all witnesses to trial, insisting, of course, that defendants do likewise. (Id.)

This Court should hold defendants to their stipulation. "The Court has broad discretion in deciding whether to hold the parties to a stipulation." *McMorgan & Co. v. First Cal. Mortg. Co.*, 931 F.Supp. 699, 703 (N.D. Cal. 1996). "In our judicial system, stipulations fairly entered into are favored." *Park v. Transamerica Ins. Co.*, 917 F.Supp. 731, 735 (D. Haw. 1996) (citing *T I Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir. 1995)). "Accordingly, stipulations should be upheld by a court absent manifest injustice to the parties." *Park*, 917 F.Supp. at 735.

"Indeed, evidentiary stipulations are a valuable and integral part of everyday trial practice. Prior to trial, parties often agree in writing to the admission of otherwise objectionable evidence, either in exchange for stipulations from opposing counsel or for other strategic purposes … During the course of trial, parties frequently decide to waive evidentiary objections, and such tactics are routinely honored by trial judges." *Bailey v. Mitchell*, 271 F.3d 652, 657-658 (6th Cir. 2001). Defendants' last-minute trial tactic to require the production of original writings at trial must be seen for what it is: an expedient about-face designed to enjoy the benefits of a bilateral agreement while not being willing to honor it for themselves.

### 2. The Ostini, Brown and Siegel Declarations are Not Hearsay, or are Subject to Exceptions.

The Ostini, Brown and Siegel declarations were originally offered in direct response to this Court's request for further information specifically pertaining to pistols and shotguns classified as assault weapons. (Tx of 10/22/20 hearing at 37:14-

19). As they offer a compilation of information and numbers based upon business records, they are either not hearsay, or are subject to an exception.

Mr. Ostini's work includes a summary of his efforts to searching commercially available firearm variations, particularly as to pistols and shotguns that contain some of the features prohibited by Pen. Code § 30515(a)(4)-(5) (pistols), and § 30515(a)(6)-(8) (shotguns). His table includes an internet link to all of the offerings he found, resulting in approximately 356 different models of readily available semiautomatic pistols that would be identified as "assault weapons" (Ostini Decl., Ex. 005, ¶ 11), and 54 different models of semiautomatic shotguns that would be identified as "assault weapons." (Id., ¶ 12.) As such, his finished work is simply a compilation of links to readily available products. It is not being offered for the truth of any matter declared stated therein, but as to the fact of the general offering and availability of such products outside of California. See, *Interactive Educ. Concepts, Inc. v. TCDL Texas, Inc.*, No. CV 18-cv-7379 RSWL, 2019 WL 134540, at *3 (C.D. Cal. Jan. 8, 2019) (advertisement on website was not being offered for the truth of the matter asserted, but rather, to show that the advertisements were not directed to California). Furthermore, under the Federal Rules of Evidence, the proponent of evidence compiled from the contents of voluminous documents may present such evidence in the form of a summary, chart, or calculation. Fed. R. Evid. 1006.

The declarations of Messrs. Brown (Ex. 007) and Siegel (Ex. 006) include compilations and summaries of firearm production/distribution records, which are themselves derived from business records, and therefore subject to the business records exception to the hearsay rule, or records of regularly conducted activity. Fed. R. Evid. 803(6). Computer-generated summaries of business records also qualify as business records, notwithstanding that they may take the form of a report, record or data compilation maintained in a computer rather than in company books. "A logical extension on that principle is that evidence that has been compiled from a computer database is also admissible as a business record, provided it meets the criteria of Rule

803(6)." *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1043 (9th Cir. 2009). In this case, the sales figures (which this Court requested) are clearly business records, and to the extent that defendants wish to challenge the foundation, these witnesses are subject to cross-examination. To the extent that the Court would find that the testimony and records offered in the declarations of Messrs. Brown and Siegel constitute hearsay, but that the foundational requirements of Fed. Rule of Evid. 803(6) have not been met, plaintiffs would make an offer of proof pursuant to Fed. Rule of Evid. 103 that if called as witnesses to testify at trial, Messrs. Brown and Siegel would be able to demonstrate the foundational requirements of Fed. Rule of Evid. 803(6). (Lee Decl., ¶ 10).

### D.   THE DECLARATION OF GEORGE MOCSARY SHOULD BE ADMITTED FOR THE PURPOSE FOR WHICH IT IS OFFERED: A JURISDICTIONAL SURVEY.

Defendants move to exclude the testimony of Professor George Mocsary (Plaintiffs' Exh. 003), on the grounds that it "exceed[s] the scope of admissible testimony." (Motion at 7:26-27). Generally, defendants complain that Professor Mocsary offers opinion testimony regarding legal questions at issue in this case.

Professor Mocsary's declaration was originally submitted in support of plaintiffs' motion for preliminary injunction. [ECF Nos. 22-16 and 22-17]. The purpose of the declaration was to support and submit a survey, useful to this Court, to determine the prevalence of "assault weapon" bans in the fifty states and the District of Columbia. As Professor Mocsary explains, this survey was done because in *Caetano v. Massachusetts*, 136 S.Ct. 1027 (2016) the Supreme Court examined that the "common use" test under *District of Columbia v. Heller*, 554 U.S. 570 (2008) included both the number in existence of the type of arm in question, and the number of jurisdictions in which the type of arm is lawful. (Mocsary Decl, Exh. 003, at ¶ 11). Thus, as an alternative to looking at raw numbers of firearms in existence, Professor Mocsary offers an analysis of "the number of jurisdictions in which those arms are

available" as suggestive of evidence of commonality under *Caetano*. (Id., ¶ 21). Accordingly, Professor Mocsary explains, "[f]ollowing the approach taken in *Caetano*, I conducted research on and reviewed the various state 'assault weapon' bans throughout the U.S. in order to determine the number of jurisdictions that prohibit and/or restrict semiautomatic centerfire firearms with various features, like those listed in California Penal Code § 30515." (Id., ¶ 25). His conclusions:

- Only five other states have bans that arguably approach California's in their severity. (Mocsary Decl., Plaintiffs' Exhibit 003, at ¶¶ 26-36).

- Other states have restrictions, but not prohibitions, on similar semiautomatic, centerfire firearms with various features such as a pistol grip, collapsible stick, etc. (Id., ¶¶ 37-43).

- Law-abiding citizens may possess some semiautomatic rifles in all 50 states, and any semiautomatic rifle in 44 states. Forty-one states treat all semiautomatic firearms the same as every other legal firearm, without any additional restrictions, regardless of the features attached to the firearm. (Id., ¶ 44).

Copies of some of the relevant statutes he relied upon in his survey are attached to Professor Mocsary's declaration as trial exhibits (Plaintiffs' Exhs. 003-1 to 003-9) but for the sake of brevity, are omitted from the submission here. (Lee Decl., ¶ 11).

Defendants' objections to Professor Mocsary's declaration seem to be limited to his legal opinions/conclusions, which provide context to the jurisdictional analysis. Yet, defendants offer no jurisdictional analysis of their own, nor do they question the methodology of his survey, nor dispute the basic premise that assault weapon and semiautomatic rifle bans in the United States are not common. Defendants have had over a year either to test Professor Mocsary's analysis, present a competing model analyzing assault weapon bans, or to cross-examine him in deposition (which they have declined to do).

This Court can clearly see that Professor Mocsary's scholarship in examining

the assault weapon bans from a jurisdictional perspective may be useful, and that his legal observations provide the relevant context to his analysis. To the extent that Professor Mocsary's declaration contains legal opinions or conclusions that this Court finds not to be helpful in explaining why he embarked upon his analysis, this Court is well capable of disregarding them without excluding the entire declaration. *See*, *United States v. TDC Management Corporation, Inc.*, 827 F.3d 1127, 1133-34 (D.C. Cir. 2016) ([w]e see no abuse of discretion in the district court's refusal to exclude the Hersh Declaration in its entirety. […] [T]he district court said it would disregard 'legal conclusions and other deficiencies.'") In any event, "[t]he concerns about admitting expert legal opinion may be lessened where, as here, a court sits as trier of fact." *CFM Commc'ns, LLC v. Mitts Telecasting Co.*, 424 F.Supp.2d 1229, 1233 (E.D. Cal. 2005) (citing *Martin v. Ind. Mich. Power Co.*, 292 F.Supp.2d 947, 959 (W.D. Mich. 2002) (concluding that dangers that legal expert testimony presents are "minimal if not nonexistent" where a court is the trier of fact)). Professor Mocsary's declaration and opinions are certainly not offered to usurp the Court's own function to determine what the law is, but to provide the Court with context as to why his jurisdictional analysis is relevant in the first place. It should be regarded for that proposition.

**E.    THERE SHOULD BE NO LIMITATION ON THE ADMISSION OF MATTERS NOT DISCLOSED "IN DISCOVERY" BECAUSE THERE HAS BEEN NO DISCOVERY, EXCEPT FOR DEPOSITION TESTIMONY CONDUCTED BY STIPULATION.**

Finally, defendants submit that this Court should "exclude any evidence not disclosed in discovery, under Federal Rule of Evidence 403[.]" (Motion at 9:24-25). Defendants' motion in this respect is flawed in its premise, because there has been no discovery in this case. Specifically, there has been no initial FRCP 26(f) conference, no exchange of initial disclosures pursuant to Rule 26(a)(1), no interrogatories, requests for production of documents, or exchange of expert witness information or reports under FRCP 26(a)(2). This was something the Court specifically recognized

1    when it said it wished to avoid discovery delays. (Tx of 10/22/20 hearing at 40:9-11;

2    40:23 – 41:1).

3         The only process resembling discovery in this case has been the voluntary

4    agreement between the parties to produce all witnesses for deposition testimony in

5    lieu of cross-examination at trial. (See Proposed Pretrial Order, Lee Decl. Exhibit A at

6    p. 3.) The parties have disclosed all witnesses they intend to rely upon at trial

7    (plaintiffs listed 22 witnesses and defendants listed 6). All witnesses have been made

8    available for cross-examination via deposition. Plaintiffs marked and listed 24 exhibits

9    (which include multiple sub-exhibits, mostly exhibits to the witness's declarations).

10        Defendants' Motion cites several cases to suggest that they would be "unfairly

11   prejudiced" by the lack of disclosure and discovery, including *Labadie Coal Co. v.*

12   *Black*, 672 F.2d 92, 95 (D.C. Cir. 1982), cited for the proposition that it would be

13   "grossly unfair" for the court to allow a party to produce documents "in the last hours

14   of trial which plaintiff had been demanding throughout pretrial discovery." (Motion at

15   10:9-12). Yet in this case, defendants have not propounded any document requests at

16   all. It would therefore be quite the feat for defendants to successfully exclude evidence

17   on the grounds that it was not produced, when no document requests were ever made

18   in the first place.

19        In sum, plaintiffs have fully identified their witnesses, produced all exhibits

20   upon which they intend to rely at trial, and defendants have had a fair opportunity to

21   cross-examine plaintiffs' trial witnesses at deposition, by agreement and their express

22   stipulation. Defendants have had ample opportunity both to initiate discovery if they

23   had thought it truly important to do so in the past sixteen months, or to depose

24   plaintiffs' witnesses. There should be no artificial limitation on the introduction of

25   evidence "not disclosed in discovery" since there has been no discovery in the first

26   place.

27

28

1

## IV.  CONCLUSION

For the foregoing reasons, defendants' motion in limine to preclude or limit the testimony described therein should be denied.

Dated: January 20, 2021                    **SEILER EPSTEIN LLP**


/s/ George M. Lee
George M. Lee

**DILLON LAW GROUP APC**


/s/ John W. Dillon
John W. Dillon

Attorneys for Plaintiffs