1  John W. Dillon (SBN 296788)
       jdillon@dillonlawgp.com
2  **DILLON LAW GROUP APC**
3  2647 Gateway Road
   Suite 105, No. 255
4  Carlsbad, California 92009
   Phone: (760) 642-7150
5  Fax: (760) 642-7151
6
7  George M. Lee (SBN 172982)
       gml@seilerepstein.com
8  **SEILER EPSTEIN LLP**
9  275 Battery Street, Suite 1600
   San Francisco, California 94111
10 Phone: (415) 979-0500
   Fax: (415) 979-0511
11
12 *Attorneys for Plaintiffs*

13

14                **UNITED STATES DISTRICT COURT**

15          **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

16
17 JAMES MILLER, an individual, et al.,          Case No. 3:19-cv-01537-BEN-JLB

18              Plaintiffs,                       **PLAINTIFFS' SUPPLEMENTAL BRIEF
                                                  ON SIGNIFICANT DISPUTED ISSUES OF
19 vs.                                            LAW**

20
21 XAVIER BECERRA, in his official               **[Civ. L.R. 16.1(f)(9)]**
   capacity as Attorney General of
22 California, et al.,                            Trial: February 3, 2021
                                                  Time: 10:00 a.m.
23              Defendants.                       Courtroom 5A
24                                                Judge: Hon. Roger T. Benitez

25
26
27
28

# TABLE OF CONTENTS

I.    Introduction ................................................................................................ 1

II.   Additional Disputed Issues of Law ........................................................... 1

    A.  Penal Code § 30950, Prohibiting Any Possession of an "Assault Weapon" By Persons Under 18, is Overbroad. ......................................... 1

    B.  Penal Code §§ 30515(a)(2), (a)(5) and (a)(10) are Both Unconstitutional and Irrational Classifications. ................................. 3

    C.  Plaintiffs Are Challenging Penal Code § 30515(a)(9). ......................... 5

    D.  Plaintiffs Are Challenging Penal Code § 31005. .................................. 6

1

<u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Duncan v. Becerra*, 366 F.Supp.3d 1131 (S.D. Cal. 2019),

4      *aff'd*, 970 F.3d 1133 (9th Cir. 2020) ................................................ 4

5

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) ("*Ezell I*") ........................... 1, 3

6

*Ezell v. City of Chicago*, 846 F.3d 888 (7th Cir. 2017) ("*Ezell II*") ............................ 2

7

*Freedman v. State of Md.*, 380 U.S. 51, 85 S. Ct. 734 (1965) ...................................... 8

8

*Thornhill v. Alabama*, 310 U.S. 88, 60 S. Ct. 736 (1940) ............................................ 8

9

*Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017) ................................ 8, 9

10

11

12

**Statutes**

13

Cal. Pen. Code § 16740 ................................................................................ 4

14

15      Cal. Pen. Code § 30515(a) ................................................................... 2, 3, 4, 5

16      Cal. Pen. Code § 30515(b) .......................................................................... 4

17      Cal. Pen. Code § 30950 .......................................................................... 1, 2, 3

18      Cal. Pen. Code § 31000 .............................................................................. 9

19      Cal. Pen. Code § 31005 ....................................................................... 6, 8, 9

20      Cal. Pen. Code § 32310 .............................................................................. 4

21

22

23

**Regulations**

24

11 Cal. Code Regs. § 4127 ............................................................................ 7

25

11 Cal. Code Regs. § 4128 ............................................................................ 7

26

11 Cal. Code Regs. § 4132 ............................................................................ 7

27

28

1

**Other Authorities**

David B. Kopel and Joseph G. S. Greenlee,
   *The Second Amendment Rights of Young Adults*, 43 S. ILL. U. L.J. 495 (2019)....... 2

## I.   INTRODUCTION

Pursuant to Civ. L.R. 16.1(f)(9), plaintiffs James Miller, et al. ("plaintiffs") hereby submit this Brief on Significant Disputed Issues of Law, in advance of the bench trial presently scheduled for hearing on February 3, 2021, Hon. Roger T. Benitez presiding.

On November 18, 2020, plaintiffs submitted their Pretrial Brief containing a memorandum of contentions of fact and law, pursuant to Civ. L.R. 16.1(f)(2). [ECF 66]. Plaintiffs' Pretrial Brief comprehensively set forth plaintiffs' primary contentions of fact and law, based upon the testimony submitted in support of plaintiffs' Motion for Preliminary Injunction [ECF 22], and the testimony of witnesses who were presented to the Court for examination on October 19, 2020 and October 22, 2020.

Plaintiffs here supplement their Pretrial Brief by addressing the following matters constituting additional significant disputed issues of law.

## II.   ADDITIONAL DISPUTED ISSUES OF LAW

### A.   Penal Code § 30950, Prohibiting Any Possession of an "Assault Weapon" By Persons Under 18, is Overbroad.

Penal Code § 30950 states that "[n]o person who is under the age of 18 years, and no person who is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, may register or possess an assault weapon[.]"

In this facial challenge to the assault weapons statutes, including section 30950 as alleged in the First Amended Complaint (FAC at ¶¶ 31, 55, 87-89), the constitutional violation "inheres in the terms of the statute, not its application." *Ezell v. City of Chicago*, 651 F.3d 684, 698 (7th Cir. 2011) ("*Ezell I*").

Age-based restrictions generally are inherently suspect, are not historically justified, and thus categorically unconstitutional. See, e.g., David B. Kopel and Joseph G. S. Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. ILL. U. L.J.

1   495 (2019).[1] In fact, age-based firearms restrictions have no historical pedigree as no

2   age-based firearm acquisition/possession restrictions exited during the precolonial and

3   founding-era of the United States. Nor were there age-based arms restrictions in the

4   early republic or the Jacksonian period. *Id*., at 596.

5        Here, the statute is overbroad, and fails to meet any level of heightened

6   scrutiny. As the Seventh Circuit held in *Ezell v. City of Chicago*, 846 F.3d 888 (7th

7   Cir. 2017) ("*Ezell II*"), the City of Chicago failed to justify its age-based restrictions

8   that prohibited anyone under the age of 18 from even receiving adult-supervised

9   firearm instruction in the setting of a shooting range. The Court found that the

10  restrictions failed heightened scrutiny and reversed the district court. 846 F.3d at 896-

11  898. Similarly, the AWCA age-based restrictions prevent firearms training with so-

12  called "assault weapons" at California ranges such at Plaintiff PWG's premises,

13  owned and operated by Plaintiff Phillips. Additionally, because the AWCA prohibits

14  the mere possession – even supervised possession – it also prevents responsible, law

15  abiding parents who wish to instruct their kids in proper firearms safety and use. The

16  AWCA's overbroad restrictions take away the rights of parents to decide when and

17  how to teach their kids about firearms. This is a decision to be made by parents, not

18  the State of California.

19        Moreover, the section 30515(a) characteristics that make a rifle an "assault

20  weapon" more adaptable when used by shooters of different statutes, also provide the

21  same benefits in offering instruction for those under 18. For example, a collapsible

22  stock, pistol grip, and forward vertical grip on a parent's AR-15 style rifle would also

23  permit the firearm to be fit to a son or daughter of smaller statute without modification

24  of the firearm.

25        Here, section 30950 is as succinct as it is severe. "No person who is under the

26

27  ─────────────────────

28  [1]A copy of this article is available at:
    https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3205664

1  age of 18 years […] may register or possess an assault weapon[.]" There are no

2  exceptions, such as those that might be expected for hunting, target shooting, training,

3  or competition, all of which might be required under adult supervision, but are not

4  under the State's broad ban. Most gun owners – particularly those who legally own

5  assault weapons – would be surprised to learn that they subject their children, and

6  themselves, to criminal liability for even letting their child handle an a commonly

7  owned semiautomatic firearm in their home, let alone at a shooting range or

8  otherwise. And thus, given the severity of the AWCA's categorical ban with no

9  exceptions, all of the Plaintiffs, including the organizations, have filed this challenge,

10 and are additionally suing in a representative capacity on behalf of all California

11 residents and visitors who knowingly or unknowingly are subject to the assault

12 weapons laws.

13     Moreover, plaintiff Hauffen, who is a professional firearms trainer, has children

14 under the age of 18, and would like to be able to train them on the safe and effective

15 use of firearms, including those the State deems to be "assault weapons." However,

16 she is prevented by section 30950 from doing so. But "[t]he right to possess firearms

17 for protection implies a corresponding right to acquire and maintain proficiency in

18 their use; the core right wouldn't mean much without the training and practice that

19 make it effective." *Ezell I*, 651 F.3d at 704. The Plaintiffs' Second Amendment rights,

20 and those of similarly situated individuals, are thus being violated.

21

22 **B.    Penal Code §§ 30515(a)(2), (a)(5) and (a)(10) are Both Unconstitutional and**
       **Irrational Classifications.**
23

24     Penal Code § 30515, subdivisions (a)(2) (pertaining to rifles), (a)(5) (pertaining

25 to pistols) and (a)(10) (pertaining to other firearms) all classify firearms with fixed

26 magazines as "assault weapons," based solely on their capacity to hold more than ten

27 rounds of ammunition.

28     The apparent purpose of these particular subdivisions was to include firearms

1   with fixed magazines to fit within the Legislature's overall attempt to prohibit any

2   magazine, whether detachable or fixed, from having a capacity of being able to accept

3   more than ten rounds, as set forth in Penal Code section 32310. In amending the

4   assault weapons laws, the Legislature also stated: "For purposes of this section, 'fixed

5   magazine' means an ammunition feeding device contained in, or permanently attached

6   to, a firearm in such a manner that the device cannot be removed without disassembly

7   of the firearm action." Pen. Code § 30515(b).

8       To the extent that the Legislature's classification of assault weapon is based

9   solely on a firearm's ability to hold more than ten rounds of ammunition, this Court

10  has already considered and decided the issue in *Duncan v. Becerra*, 366 F.Supp.3d

11  1131 (S.D. Cal. 2019), *aff'd*, 970 F.3d 1133 (9th Cir. 2020). Here, the State cannot

12  accomplish what it is otherwise prohibited from doing simply by artificially

13  classifying a firearm with a fixed magazine with the capacity to hold more than 10

14  rounds as an "assault weapon."

15      Furthermore, and in light of *Duncan*, that classification is irrational and serves

16  no legitimate governmental purpose. If a firearm has a fixed magazine, then it cannot

17  fire more than ten rounds in total, at least without being disassembled in part. At least

18  firearms with *detachable* "large capacity magazines" (as that term was defined by

19  Pen. Code § 16740) have the virtue of being reloadable, giving the gun owner the

20  option to reload should they run out of ammunition or experience a malfunction. With

21  a fixed magazine firearm, however, once the magazine is spent, the shooter lacks an

22  immediate option. But the irrational fact is, if a firearm has a fixed magazine, it may

23  thus contain any of the characteristics otherwise prohibited by Penal Code section

24  30515(a). As plaintiff Ryan Peterson explained at the evidentiary hearing on October

25  22, 2020, because he legally owns a pistol (an AR-15 pistol with an arm brace) that

26  has a fixed magazine, it also contains features that are colloquially referred to as "evil

27  features" under section 30515(a). (Tx of 10/22/20 Hearing at 11:20 – 12:21). The

28  arbitrary and absurd nature of this prohibition is further highlighted by the fact that

1  large capacity magazines — illegal in a fixed magazine rifle with "evil features" —
2  are *legal to use* in the *exact same rifle* if certain characteristics are removed. By
3  removing characteristics like a pistol grip, collapsible stock, and/or flash hider, the
4  now "featureless" rifle can then legally use a large capacity magazine.

5      Regardless of what features a fixed magazine firearm may have, however,
6  defendants' expert witness, Lucy P. Allen, was unable to identify any incident
7  involving a firearm with a "fixed magazine," of the 161 incidents included in her
8  report regarding mass shootings (as she defines that term), or any mass shooting that
9  involved a firearm with a fixed magazine with the capacity to accept more than ten
10  rounds. (See Plaintiffs' Designation of Deposition Testimony of Lucy P. Allen, at pp.
11  179:4 - 18:22). Thus, the Legislature's targeting of "fixed magazine" firearms, based
12  solely on their fixed magazine capacity, serves no legitimate purpose.

13

14  **C.    Plaintiffs Are Challenging Penal Code § 30515(a)(9).**

15      On August 3, 2020, through passage of Sen. Bill 118, the Legislature further
16  expanded the Penal Code definition of "assault weapon" to include "any
17  semiautomatic firearm that is not a rifle, pistol, or shotgun, that does not have a fixed
18  magazine," but which has any one of the characteristics associated with its definition
19  of assault weapon set forth in section 30515(a)(1), and which also includes "[a]
20  threaded barrel, capable of accepting a flash suppressor, forward handgrip, or
21  silencer." Pen. Code § 30515(a)(9)(G).

22      The apparent purpose of this amendment was specifically to target those certain
23  firearms which do not fall into the category of "rifle, pistol or shotgun," such as the
24  "Franklin Armory Title 1" firearm, and similar firearms. Adhering to California's
25  specific definitions of "pistol," "rifle," and "shotgun," the Title 1 firearm (and those
26  firearms like it), although semiautomatic, did not meet the definition of any of these
27  three types of firearms. Thus, is could not be defined as an "assault weapon" under
28  Penal Code § 30515 because it was neither an "assault rifle," "assault pistol," nor an

1  "assault shotgun." The Title 1, was classified as a "semiautomatic firearm" and could

2  have all of the characteristics typically prohibited under the AWCA. For example, a

3  Title 1 firearm could have a large capacity detachable magazine, a standard magazine

4  release, and could have a pistol grip and/or forward pistol grip.

5       These were lawful, legal firearms to own and possess, which are, in essence,

6  indistinguishable from ordinary semiautomatic firearms that are at issue in this case.

7  Despite being available for purchase in California, Title 1 firearms were blocked from

8  transferring to California residents by the California Department of Justice's Dealer

9  Record of Sale (DROS) Entry System, which was unable to accept the Title 1 because

10 the DROS Entry System did not list the proper firearm type being transferred (the

11 DROS Entry System also does not allow for manual entry). Despite requests to correct

12 this issue, the DROS Entry System was never changed. During this time, Senate Bill

13 118 was signed into law which expanded the definition of "assault weapon" yet again,

14 in order to specifically prohibit transfers of these kinds of firearms.[2] California's most

15 recent expansion of the AWCA to reclassify these firearms as assault weapons

16 provides yet another example of the ever-expanding definition of "assault weapon."

17 By continuing to regulate more and more categories of firearms as well as the

18 characteristics on those firearms, California's AWCA continues to jeopardize more

19 and more California gun owners whose firearm was legal one day, and a felony the

20 next.

21

22 **D.    Plaintiffs Are Challenging Penal Code § 31005.**

23      Plaintiffs are challenging Pen. Code § 31005, which, like the AWCA ban

24 scheme element in § 31000, establishes that Defendants *may* (but are not required) to

25 issue permits— but only for businesses, upon a showing of "good cause," and for

26 specific, limited purposes not relevant to Plaintiffs and the relief they seek in the case.

27

28 [2] See, https://franklinarmory.com/title-1-deposit/.

1  However, the showing of "good cause," according to Defendants, is a high and

2  unattainable one for the purposes of the relief Plaintiffs seek. *See*, *e.g.*, § 31005(a); 11

3  CCR §§ 4127-28 and 4132, et seq.

4          For example, Plaintiff Ryan Peterson, who owns and operates Gunfighter

5  Tactical (Tx of 10/22/20 Hearing at 13), is prohibited from selling assault weapons in

6  light of 11 CCR § 4128(a), the enabling regulation, which expressly states that "no

7  person shall possess, transport, or sell any dangerous weapon in this state unless

8  he/she has been granted a license and/or permit pursuant to these regulations."

9          Although "Dangerous Weapons License/Permits are "available," the

10 requirements to prove "good cause" for such a permit prevents a vast majority of the

11 public and even federally licensed firearms dealers in California from ever obtaining

12 such a permit. "No dangerous weapons license or permit shall be issued to any

13 applicant who fails to establish good cause for such license or permit or if issuance of

14 the license or permit would endanger the public safety." Cal. Code Regs., tit. 11, §

15 4128(b). Applicants are required to "provide clear and convincing evidence that there

16 is a bona fide market or public necessity for the issuance of a dangerous weapons

17 license or permit and that the applicants can satisfy that need without endangering

18 public safety." Cal. Code Regs., tit. 11, § 4128(c).[3] This "good cause" requirement is

19 entirely subjective and largely requires the applicant to be involved in law

20 enforcement and/or military sales and training.

21          Even if one were to meet such requirements, the fear of criminal liability if

22 there is a bookkeeping or record mistake prevents those like Ryan Peterson, owner of

23 Gunfighter Tactical from even applying for such a permit.

24          The AWCA is a panoply of "assault weapon" statutes and enabling policies,

25 practices, and regulations that individually and collectively deny average, law-abiding

26 people access to common arms with common characteristics, and thus violate the

27 _____

28 [3] See also, Dangerous Weapons license/Permit(s) Application Checklist, available at:
https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/app-cklst-bof-0131a.pdf

Second Amendment. Defendants' permit requirement set forth in section 31005 is one of them. If plaintiffs' theory is to be credited, the evil is not just found in the individual statutes which violate plaintiffs' constitutional rights generally, but also in its various licensing schemes that operate to achieve the deprivations in concert with the rest of the AWCA and defendants' enforcement of it.

In the First Amendment context, it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license. *Freedman v. State of Md.*, 380 U.S. 51, 56, 85 S. Ct. 734 (1965). This proposition was stated eloquently in *Thornhill v. Alabama*, 310 U.S. 88, 60 S. Ct. 736 (1940), where the Court questioned the evils of licensing constitutionally-protected activity. Writing for the majority, Justice Murphy wrote in relation to a facial attack purporting to license the dissemination of ideas:

> The cases when interpreted in the light of their facts indicate that the rule is not based upon any assumption that application for the license would be refused or would result in the imposition of other unlawful regulations. Rather it derives from an appreciation of the character of the evil inherent in a licensing system. The power of the licensor against which John Milton directed his assault by his 'Appeal for the Liberty of Unlicensed Printing' is pernicious not merely by reason of the censure of particular comments but by reason of the threat to censure comments on matters of public concern. It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion. […] One who might have had a license for the asking may therefore call into question the whole scheme of licensing when he is prosecuted for failure to procure it.

*Thornhill*, 310 U.S. at 97, 60 S. Ct. at 741–42 (citations omitted). More directly as to licensing of conduct protected by the Second Amendment, in *Wrenn v. District of Columbia*, 864 F.3d 650 (D.C. Cir. 2017), the D.C. Circuit recognized that "good reason" licensing schemes – which took the Second Amendment right out of the hands of most law-abiding citizens – was an evisceration of the right:

This point brings into focus the legally decisive fact: the good-reason law is necessarily a total ban on most D.C. residents' right to carry a gun in the face of ordinary self-defense needs, where these residents are no more dangerous with a gun than the next law-abiding citizen. We say "necessarily" because the law destroys the ordinarily situated citizen's right to bear arms not as a side effect of applying other, reasonable regulations (like those upheld in *Heller II* and *Heller III*), but by design: it looks precisely for needs "distinguishable" from those of the community. […]  Bans on the ability of most citizens to exercise an enumerated right would have to flunk any judicial test that was appropriately written and applied, so we strike down the District's law here apart from any particular balancing test.

*Wrenn*, 864 F.3d at 666.

A permitting scheme that takes the right to acquire, possess, and use common, constitutionally-protected arms out of the hands of ordinary, law abiding adults (e.g., Pen. Code § 31000) or deprives sellers the right to acquire and sell them to ordinary law-abiding adults, including plaintiffs and those similarly situated to them (e.g., Pen. Code § 31005), is not a legitimate or constitutional permit scheme at all.

Dated: January 27, 2020

SEILER EPSTEIN LLP

/s/ George M. Lee
George M. Lee

DILLON LAW GROUP APC

/s/ John W. Dillon
John W. Dillon

Attorneys for Plaintiffs