FRESHFIELDS BRUCKHAUS DERINGER
 US LLP
JENNIFER LOEB, SBN 266235
jennifer.loeb@freshfields.com
700 13th Street, NW, 10th Floor
Washington, District of Columbia, 20005
Telephone:  202 777 4500
Facsimile:   202 777 4555

TIMOTHY HOWARD, *pro hac vice* pending
timothy.howard@freshfields.com
601 Lexington Ave., 31st Floor
New York, New York, 10022
Telephone:  212 230 4690

Attorneys for *Amicus Curiae*
Giffords Law Center to Prevent Gun Violence

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES MILLER, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California, et al.,<br><br>　　　　Defendants. | Case No. 3:19-CV-1537-BEN-JLB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RECONSIDERATION**<br><br>**Hearing**:<br>Date:　　November 21, 2022<br>Time:　　10:30 A.M. |

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
WASHINGTON, DC

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR RECONSIDERATION
3:19-CV-1537-BEN-JLB

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................... 1

II. BACKGROUND AND PROCEDURAL HISTORY ..................................... 1

    A. Motion for Reconsideration ..................................................................... 4

    B. Participation of *Amicus Curiae* ................................................................ 5

IV. ARGUMENT .................................................................................................. 6

    A. The Revised Standard Set Forth in *Bruen* Requires District Courts to Undertake Complex, Nuanced, and Information-Intensive Analyses of Historical and Modern Gun Regulations ...................................................... 6

    B. Social Science Research Is Critical to the *Bruen* Analysis. ..................... 8

    C. Given the *Bruen* Test's Complexity, Relationship with Social Science Research, and Novelty, *Amici* Generally, and Giffords Law Center, Specifically, Are Even More Necessary. ..................................................... 10

V. CONCLUSION .............................................................................................. 13

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
WASHINGTON, DC

i

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR RECONSIDERATION
3:19-CV-1537-BEN-JLB

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Angelo v. Dist. of Columbia*,
  No. 22-CV-1878, Dkt. No. 25 (D.D.C. 2022) .................................................. 13

*Antonyuk v. Bruen*,
  No. 22-CV-00734, Dkt. No. 29 (N.D.N.Y. 2022) ............................................. 13

*Brady v. Grendene USA, Inc.*,
  No. 12-CV-0604, 2015 WL 3539702 (S.D. Cal. June 3, 2015) .......................... 5

*Clifton v. United States Dep't of Just.*,
  No. 21-CV-00089-DAD-EPG, 2022 WL 2791355 (E.D. Cal. July
  15, 2022) ............................................................................................................ 13

*District of Columbia v. Heller*,
  128 S. Ct. 2783 (2008) ........................................................................................ 7

*Eyak Native Village v. Exxon*,
  25 F.3d 773 (9th Cir. 1994) ................................................................................. 4

*FERC v. Vitol, Inc.*,
  No. 22-CV-00040, 2020 WL 4586363 (E.D. Cal. Aug. 10, 2020) ...................... 5

*Full Circle of Living & Dying v. Sanchez*,
  No. 22-CV-01306, 2022 WL 348166 (E.D. Cal. Feb. 4, 2022) .......................... 6

*Funbus Sys., Inc., v. Cal. Pub. Util. Comm'n*,
  801 F.2d 1120 (9th Cir. 1986) ............................................................................. 5

*Gross v. GG Homes, Inc.*,
  No. 21-CV-00271, 2021 WL 4804464 (S.D. Cal. Oct. 14, 2021) .................. 4, 5

*Hoptowit v. Ray*,
  682 F.2d 1237 (9th Cir. 1982), *abrogated on other grounds by
  Sandin v. Conner*, 515 U.S. 472 (1995) ............................................................... 5

*Lawrence v. Texas*,
  539 U.S. 558 (2003) ........................................................................................... 11

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
WASHINGTON, DC

ii

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR RECONSIDERATION
3:19-CV-1537-BEN-JLB

*Methow Valley Citizens Council v. Reg'l Forester*,
   No. 85-2124-DA, 1986 WL 8595 (D. Or. June 25, 1986) .................................. 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ........................................................................................................ 4

*Neonatology Assocs., P.A. v. Comm'r*,
   293 F.3d 128 (3d Cir. 2002) ....................................................................................... 5

*New York State Rifle & Pistol Ass'n v. Bruen*,
   142 S. Ct. 2111 (2022) .......................................................................................*passim*

*NLRB v. Canning*,
   573 U.S. 513 (2014) ................................................................................................. 11

*Obergefell v. Hodges*,
   576 U.S. 644 (2015) ................................................................................................. 11

*Safari Club Int'l v. Harris*,
   No. 14-CV-01856, 2015 WL 1255491 (E.D. Cal. Jan. 14, 2015) ........................ 5

*Seevers v. United States*,
   No. 05-CV-0481, 2008 WL 11411730 (S.D. Cal. Sept. 25, 2008),
   *aff'd*, 398 F. App'x 297 (9th Cir. 2010) ................................................................. 4

*Tele-Communications of Key W., Inc. v. United States*,
   757 F.2d 1330 (D.C. Cir. 1985) ............................................................................. 12

*Trunk v. City of San Diego*,
   No. 06-CV-1597 , 2007 WL 9776582 (S.D. Cal. Dec. 10, 2007) ...................... 10

*United States v. AT&T Inc.*,
   310 F. Supp. 3d 161 (D.D.C. 2018) ...................................................................... 12

*Worth v. Harrington*,
   No. 21-CV-01348, Dkt. No. 69 (D. Minn. 2022) ............................................... 13

*Young v. Hawaii*,
   992 F.3d 765 (9th Cir. 2021) (en banc) *overruled in part on other
   grounds* by *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S.
   Ct. 2111 (2022) ........................................................................................................ 11

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
WASHINGTON, DC

iii

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR RECONSIDERATION
3:19-CV-1537-BEN-JLB

**Statutes**

California Assault Weapon Control Act ................................................................................. 1

California Penal Code §§ 30515(a)(1) through (8) ................................................................ 2

California Penal Code § 30800 ............................................................................................... 2

California Penal Code § 30915 ............................................................................................... 2

California Penal Code § 30925 ............................................................................................... 2

California Penal Code § 30950 ............................................................................................... 2

U.S. Const. amend. II ..................................................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 6(b)(1) ............................................................................................................ 5

Fed. R. Civ. P. 54(b) .............................................................................................................. 4

Fed. R. Civ. P. 60(b)(6) ......................................................................................................... 4

Joseph Blocher and Darrell A.H. Miller, *A Supreme Court Head-Scratcher: Is a Colonial Musket 'Analagous' to an AR-15?,* N.Y. TIMES, July 1, 2022, https://www.nytimes.com/2022/07/01/opinion/guns-supreme-court.html ........................................................................................................................ 9

S.D. Cal. Civ. R. 7.1(i)(2) ...................................................................................................... 5

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
WASHINGTON, DC

iv

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR RECONSIDERATION
3:19-CV-1537-BEN-JLB

## I. INTRODUCTION

Giffords Law Center to Prevent Gun Violence ("Giffords Law Center") is a leader in the movement to end gun violence in America. Founded in 1993 after a gun massacre at a San Francisco law firm, the organization was renamed Giffords Law Center in October 2017, when it joined forces with the gun-safety organization founded by former Congresswoman Gabrielle Giffords, herself a victim of senseless gun violence. The organization and its leaders offer decades of legal, legislative, and policy expertise in Second Amendment regulation and jurisprudence, including the social science and historical research that is critical for this and other courts in analyzing the constitutionality of gun regulations. While the Court opted not to consider that expertise in its first pass at adjudicating the Plaintiffs' challenge to California's Assault Weapon Control Act, the Supreme Court has since materially changed the Second Amendment framework. Post-*Bruen*, this Court's task now requires extensive, specialized knowledge in historical and modern gun regulation, expertise that was not required when the Court initially denied Giffords Law Center's motion to participate as *amicus curiae*. Given this intervening change in the law, Giffords Law Center respectfully requests that the Court reconsider its previous denial and grant Giffords Law Center leave to file an amicus brief in support of the Defendants in this case.

## II. BACKGROUND AND PROCEDURAL HISTORY

On August 15, 2019, Plaintiffs—California residents and a California-based political action committee—filed a Complaint alleging that California's Assault Weapon Control Act violated the Second Amendment. Dkt. No. 1. On September 27, 2019, Plaintiffs filed an Amended Complaint that added additional California citizens and gun rights organizations as plaintiffs. Dkt. No. 9. On December 6, 2019, Plaintiffs filed a motion for preliminary injunction. Dkt. No. 22.

On January 24, 2020, Giffords Law Center filed a motion for leave to file an *amicus curiae* brief in opposition to Plaintiffs' motion for preliminary injunction.

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
WASHINGTON, DC

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR RECONSIDERATION
3:19-CV-1537-BEN-JLB

Dkt. 35. In its motion for leave to file, Giffords Law Center asserted that, as a national non-profit policy organization dedicated to researching, writing, enacting, and defending laws and programs proven to reduce gun violence, it had both an interest in the litigation and expertise that would be useful to the Court in considering the merits of the case. *Id.* Giffords Law Center explained that it had provided informed analyses of social science research and constitutional law developments as an *amicus curiae* in innumerable other firearm-related cases. Giffords Law Center attached its proposed *amicus* brief to its motion for leave to file. *Id.*

On August 3, 2020, the Court denied Giffords Law Center's motion for leave to file. Dkt. No. 43.

On June 4, 2021, the Court issued judgment in Plaintiffs' favor,[1] holding that California Penal Code §§ 30515(a)(1) through (8), 30800, 30915, 30925, and 30950 are unconstitutional. Dkt. Nos. 115 ("June 4, 2021 Decision"), 116. Defendants—the Attorney General of the State of California and the Director of the Department of Justice Bureau of Firearms—timely appealed the judgment to the United States Court of Appeals for the Ninth Circuit. Dkt. No. 117.

On June 21, 2021, before any briefing had been filed, the Court of Appeals stayed Defendants' appeal pending resolution of another gun regulation challenge then awaiting decision before the Ninth Circuit. Dkt. No. 123.

Almost exactly one year later, on June 23, 2022, the Supreme Court issued its decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022) ("*Bruen*"). The Petitioners in *Bruen* had challenged a New York law that required demonstration of "proper cause" before citizens could receive a license to carry a handgun in public. *Id.* at 2122. The law had previously been upheld under the then-

---

[1] The docket does not indicate any further action on Plaintiffs' motion for preliminary injunction.

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
WASHINGTON, DC

2

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR RECONSIDERATION
3:19-CV-1537-BEN-JLB

prevailing two-part Second Amendment analysis applied by circuit courts. *Id.* at 2125.

The first step of the analysis allowed the government to justify a regulation by showing the regulated conduct fell outside of the Second Amendment's original scope. *Id.* at 2126. However, if it appeared the regulated conduct was not "categorically unprotected," and thus fell within the ambit of the Second Amendment, courts would proceed to step two. *Id.* (quoting *Kanter v. Barr*, 919 F. 3d 437, 441 (CA7 2019)).

The second step of the analysis consisted of means-ends testing. If the court found that a "core" Second Amendment right—such as the right to self-defense in the home—was burdened, the court applied strict scrutiny to the government regulation. *Id.* Otherwise, the court applied intermediate scrutiny. *Id.*

The Supreme Court in *Bruen* rejected this two-part means-ends test, instead requiring courts to decide if the plain text of the Second Amendment covers the regulated conduct. *Id.* at 2126. If the conduct is covered, the government must then "demonstrate that [its] regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* This historical analysis requires identification of "a well-established and representative historical analogue, [but] not a historical twin." *Id.* at 2133. In determining if a modern regulation is analogous to past gun restrictions, two important considerations are "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Id.*

On August 1, 2022, the Court of Appeals vacated this Court's June 4, 2021 judgment and remanded for further proceedings consistent with the Supreme Court's decision in *Bruen*. Dkt. No. 124. Shortly thereafter, the Court requested supplemental briefing from the parties. Dkt. No. 125. On August 29, 2020, the Court gave the parties 45 days, until October 13, 2022, to file simultaneous additional briefs, and a subsequent 15 days, until October 28, 2022, to file a response. Dkt. No. 131.

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
WASHINGTON, DC

3

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR RECONSIDERATION
3:19-CV-1537-BEN-JLB

Following submission of the parties' supplemental briefing, Giffords Law Center now respectfully requests reconsideration of the Court's August 3, 2020 order denying it leave to file an *amicus* brief.

### III.  APPLICABLE LEGAL STANDARDS

**A.  Motion for Reconsideration**

"[E]very order short of a final decree is subject to reopening at the discretion of the district judge." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983); *see also Gross v. GG Homes, Inc.*, No. 21-CV-00271, 2021 WL 4804464, at *1 (S.D. Cal. Oct. 14, 2021) ("All rulings of a trial court are subject to revision at any time before the entry of judgment." (quoting *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986))); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order . . . that adjudicates fewer than all the claims . . . of fewer than all the parties . . . may be revised at any time before the entry of a judgment."). Additionally, under Rule 60 of the Federal Rules of Civil Procedure, a Court may grant relief from an order for any reason "that justifies relief," so long as the request is filed within a "reasonable time." Fed. R. Civ. P. 60(b)(6); *see also Seevers v. United States*, No. 05-CV-0481, 2008 WL 11411730, at *2 (S.D. Cal. Sept. 25, 2008) (finding ten-month gap between order and motion to be within a "reasonable time"), *aff'd*, 398 F. App'x 297 (9th Cir. 2010); *Eyak Native Village v. Exxon*, 25 F.3d 773, 777 (9th Cir. 1994) (allowing for 60(b) relief to nonparty where their interests were affected by underlying order).

While the decision to reconsider is committed to the sound discretion of the court, reconsideration is particularly appropriate "if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Gross*,

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
WASHINGTON, DC

4

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR RECONSIDERATION
3:19-CV-1537-BEN-JLB

at *2 (quoting *School Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)).[2]

## B. Participation of *Amicus Curiae*

The decision to appoint *amici curiae* is similarly entrusted to the court's "broad discretion." *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). "[E]ven when a party is very well represented, an *amicus* may provide important assistance to the court." *Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 132 (3d Cir. 2002) (Alito, J.). "District courts frequently welcome *amicus* briefs from nonparties concerning legal issues that have potential ramifications beyond the parties directly involved or if the *amicus* has 'unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'" *Safari Club Int'l v. Harris*, No. 14-CV-01856, 2015 WL 1255491 at *1 (E.D. Cal. Jan. 14, 2015) (internal citation omitted); *see also FERC v. Vitol, Inc.*, No. 22-CV-00040, 2020 WL 4586363, at *2 (E.D. Cal. Aug. 10, 2020) (granting *amici* leave to file and noting that "[a]n amicus brief should normally be allowed when . . . the amicus has unique information or perspective" (internal citation omitted)).

Further, "there is no rule that amici must be totally disinterested." *Funbus Sys., Inc., v. Cal. Pub. Util. Comm'n*, 801 F.2d 1120, 1125 (9th Cir. 1986); *see also Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982); *Full Circle of Living & Dying v. Sanchez*, No. 22-CV-01306, 2022 WL 348166 (E.D. Cal. Feb. 4, 2022).

---

[2] To the extent that the time limit in Local Rule 7.1(i)(2) applies to this motion for reconsideration, Giffords Law Center requests an extension of that deadline for good cause under Federal Rule of Civil Procedure 6(b)(1), because the changed law giving rise to this motion has only recently occurred. *See Brady v. Grendene USA, Inc.*, No. 12-CV-0604, 2015 WL 3539702, at *3 (S.D. Cal. June 3, 2015) (finding Federal Rule 6(b)(1)'s good cause requirement satisfied and granting motion for reconsideration made "far outside of Local Rule 7.1(i)(2)'s 28 day window . . . because the factual record has expanded since the Court's initial ruling").

## IV. ARGUMENT

After this Court denied Gifford Law Center's Motion for Leave to File an *Amicus* Brief, the Supreme Court issued its decision in *Bruen*, which materially changed the analysis this Court must now conduct in evaluating the Plaintiffs' challenge. *Bruen* requires district courts to engage in a complex comparative inquiry that includes the distillation of large amounts of information related to historical law and the social sciences that is not readily available to parties or courts. Given the breadth of firearm regulation history—much of which is still being uncovered today—and social science research, and the level of depth in which those areas must now be examined by the Court to conduct an analogical inquiry, Giffords Law Center is even better situated to aid the court in its analysis than it was before *Bruen* was decided. The Court should therefore reconsider its previous order and grant Giffords Law Center leave to file an *amicus* brief.

**A.     The Revised Standard Set Forth in *Bruen* Requires District Courts to Undertake Complex, Nuanced, and Information-Intensive Analyses of Historical and Modern Gun Regulations.**

To determine if a regulation is permissible under *Bruen's* Second Amendment test, Courts and parties must sift through countless historical gun laws to determine if any constitute a "representative historical analogue" to a challenged regulation. *See Bruen*, 142 S. Ct. at 2133. While the old two-part analysis did require some historical review, *see, e.g.*, June 4, 2021 Decision at 19 (addressing laws from the 1920s and 1930s), and facial comparison, *see e.g., id.* (finding no "historical pedigree" because previous laws did not "ban[] weapons because they were equipped with furniture-like pistol grips"), this revised test is more strenuous for courts than that applied previously. It mandates a dramatically more nuanced historical analysis based on unprecedented amounts of information concerning past and present gun regulations.

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
WASHINGTON, DC

6

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR RECONSIDERATION
3:19-CV-1537-BEN-JLB

The Supreme Court acknowledged that this new comparative analysis could be "difficult" and would "sometimes require[] resolving threshold questions[] and making nuanced judgments about which evidence to consult and how to interpret it." *Id.* at 2130 (quoting *McDonald v. City of Chi.*, 130 S. Ct. 3020, 3057 (2010) (Scalia, J., concurring)). The court further observed that the analysis is even more complex in cases—such as the one before this Court concerning assault weapons—that deal with technologies and societal issues dramatically different from those present at the founding. *See id.* at 2132 ("[C]ases implicating unprecedented societal concerns or dramatic technological changes may require a more nuanced approach"); *see also id.* at 2134 ("[A]pplying constitutional principles to novel modern conditions can be difficult and leave close questions at the margins." (quoting *Heller v. District of Columbia*, 670 F. 3d 1244, 1275 (D.C. Cir. 2011) (Kavanaugh, J., dissenting))).[3]

Further, *Bruen*'s search for a historical analogue imposes on courts and parties a unique analytical burden, due to a lack of clarity regarding which historical time periods should be analyzed and how much respective weight those time periods should be given. The Supreme Court states in *Bruen* that "when it comes to interpreting the Constitution, not all history is created equal." *Id.* at 2136.

---

[3] Further underscoring the nuanced nature of the *Bruen* analysis are the Supreme Court's admonitions that, while the overarching test has been altered, certain principles remain unchanged. For example, the *Bruen* court went to great lengths to reemphasize its holding in *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008), that "the right secured by the Second Amendment is not unlimited" and does not create "a right to keep and carry any weapon whatsoever." *Id.* at 2128 (quoting *Heller*, 128 S. Ct. at 2816); *see also id.* (recognizing "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons'" (quoting *Heller*, 128 S. Ct. at 2816)). Justice Alito likewise emphasized that "[their] holding . . . does [not] decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything . . . about restrictions that may be imposed on the possession or carrying of guns." *Id.* at 2157 (Alito, J., concurring).
Indeed, the Court described the *Bruen* standard as "neither a regulatory straightjacket nor a regulatory blank check," *id.* at 2133, with Justice Kavanaugh emphasizing that, under the new test, it is still the case that "the Second Amendment allows a 'variety' of gun regulations." *Id.* at 2162 (quoting *Heller*, 128 S. Ct. at 2822) (Kavanaugh, J., concurring). It is apparent that *Bruen*, rather than forbidding firearm safety laws, presents a complex, and highly nuanced test that allows a large degree of firearm regulation.

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
WASHINGTON, DC

7

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR RECONSIDERATION
3:19-CV-1537-BEN-JLB

The Court, however, then declines to determine which time period is of primary importance—the time of the founding or that of reconstruction—or the relevance of postratification practice. *Id.* at 2138, 2162–2163 (Barrett, J., concurring) ("[T]he Court does not conclusively determine the manner and circumstances in which postratification practice may bear on the original meaning of the Constitution" and likewise avoids determining "whether courts should primarily . . . [look to] when the Fourteenth Amendment was ratified in 1868 or when the Bill of Rights was ratified in 1791." (quotations omitted)). The Court also acknowledges the potential relevance of laws that existed from reconstruction through the end of the 19th century, *id.* at 2136, and colonial laws and English laws from the 14th century, *id.* at 2136, 2144–45. As a result, courts and parties are now faced with analyzing six centuries' worth of firearm legislation in their search to find analogues.

Even after completing this exacting historical investigation, courts will find little reprieve. Armed with an (ideally) complete understanding of historical gun regulations, courts must then scrutinize the legislative history and implementation data surrounding challenged, modern regulations to determine their motivation, history, and effect. In so doing, a court is expected to determine whether the modern regulations "impose a comparable burden on the right of armed self-defense" as did any of the historical regulations that have been discovered, and whether that burden is "comparably justified." *Id.* at 2118.

In sum, *Bruen* requires an analysis that is both highly nuanced and staggeringly broad. It demands a deep understanding not only of modern regulations, but also of centuries of legal development from across the United States and England.

**B.    Social Science Research Is Critical to the *Bruen* Analysis.**

In rejecting the means-ends test and adopting a new "historical analog" standard, the *Bruen* majority explained:

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
WASHINGTON, DC

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RECONSIDERATION
3:19-CV-1537-BEN-JLB

> Historical analysis can sometimes be difficult and nuanced, but reliance on history to inform the meaning of constitutional text is *more legitimate, and more administrable*, than asking judges to make difficult empirical judgments about the costs and benefits of firearms restrictions, especially given their lack of expertise in the field.

*Bruen*, 142 S. Ct. at 2130 (internal citation omitted and emphasis added). The *Bruen* majority therefore purported to ground judicial analysis in something concrete, like history, in order to avoid the subjective value judgments that arise when an individual "lack[ing] expertise" is given free rein to make unfettered decisions. In his concurrence, Justice Alito likewise criticized the open-ended nature of the means-end test, noting that "[t]his mode of analysis places no firm limits on the ability of judges to sustain any law[.]" *Id.* at 2160. (Alito, J., concurring).

Despite this attempt to avoid arbitrary decision-making, the *Bruen* test fails to provide any objective way to analogize historical gun laws to those of modern day. Instead, a court's determination of whether a current law is sufficiently similar to a historical regulation will hinge on the level of subjective generality at which the court conducts its analysis, as well as the scope of historical information the court can consider given its limited time and resources. As two legal scholars observed shortly after the Supreme Court issued its decision: "Whether a regulation survives [the new *Bruen*] [test] will depend almost entirely on whether an individual judge thinks a regulation written to deal with a modern problem 'looks like' a historical one. It is an 'I know it when I see it' approach to historical analogy." Joseph Blocher and Darrell A.H. Miller, *A Supreme Court Head-Scratcher: Is a Colonial Musket 'Analagous' to an AR-15?,* N.Y. TIMES, July 1, 2022, https://www.nytimes.com/2022/07/01/opinion/guns-supreme-court.html.

To avoid this arbitrary and subjective "I know it when I see it" approach, social science research emerges as a critical tool at courts' disposal. Indeed, courts cannot properly contextualize modern or historical laws without an understanding

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
WASHINGTON, DC

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR RECONSIDERATION
3:19-CV-1537-BEN-JLB

of the prevailing social backdrop against which those laws were passed. Just as "history . . . inform[s] the meaning of constitutional text," *Bruen* 142 S. Ct. at 2118, consideration of social science research informs our understanding of history. This is particularly true with the complicated evolution of American gun control regulations, which is punctuated by specific social, cultural, political, and technological changes.

The study of social science is therefore part and parcel of the *Bruen* analysis. Review of the social science is necessary for courts to understand the underlying motivations (the "whys') and implementations (the "hows") of regulatory change. Such context is crucial in determining, with any semblance of discipline or methodology, whether a modern gun law is truly analogous to a historical regulation, as *Bruen* requires.[4]

### C. Given the *Bruen* Test's Complexity, Relationship with Social Science Research, and Novelty, *Amici* Generally, and Giffords Law Center, Specifically, Are Even More Necessary.

Federal district courts are required to navigate a wide variety of issues in adjudicating the hundreds of cases that cross their dockets. This means that courts will, at times, lack the historical, legal, and sociological insights that are critical to resolving certain matters. While the parties to a case may be able to provide some of these insights in the process of articulating their own interests, even the parties may lack the broader understanding that only subject matter experts can offer. That is why "[d]istrict courts frequently welcome amicus briefs from non-parties . . . if the amicus has 'unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.'" *Trunk v. City of San*

---

[4] To be clear, consideration of social science should not be conflated with the "balancing of interests" in the means-ends test that the *Bruen* majority criticized. Social science would not be used to perform a "costs and benefits" analysis of a current law's efficacy, but would instead help provide the context needed to determine whether a modern-day gun law captures the spirit of a historical gun regulation.

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
WASHINGTON, DC

10

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR RECONSIDERATION
3:19-CV-1537-BEN-JLB

*Diego*, No. 06cv1597-LAB (WMc), 2007 WL 9776582, at *1 (S.D. Cal. Dec. 10, 2007) (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1064 (7th Cir. 1997)).

This "unique information or perspective" from subject matter experts is particularly necessary to properly apply the *Bruen* test.[5] Indeed, the challenge district courts now face is perhaps best summarized by Justice Breyer in his dissenting opinion, where he observed:

> The Court's historical analysis in this case is over 30 pages long and reviews numerous original sources from over 600 years of English and American history. Lower courts—especially district courts—typically have fewer research resources, *less assistance from amici historians*, and higher caseloads than [does the Supreme Court]. They are therefore ill equipped to conduct the type of searching historical surveys that the Court's approach requires.

*Bruen*, 142 S. Ct. at 2179 (internal citation omitted and emphasis added). But Giffords Law Center, which here seeks to offer its expertise as *amicus curiae*, is particularly well-situated to provide insight on relevant historical laws and social science research that is critical to an informed *Bruen* inquiry. Even the best attorney or judge cannot immerse themselves in legal history or contemporary social science research to the same extent as entities that specialize in such matters.

Furthermore, *amici curiae* are even more useful where controlling law has very recently and meaningfully been altered. A court's task is rendered significantly more difficult, and information and analysis from *amici* thus rendered more helpful, when the court cannot substantially rely on past precedent to inform its decision.

---

[5] Courts regularly rely on amici to inform historical constitutional analyses because of the sheer volume of information involved. *Cf., e.g.*, *Bruen*, 142 S. Ct. 2111, 2149, 2178 (2022) (relying on *amicus* briefs to inform understanding of firearm regulation); *NLRB v. Canning*, 573 U.S. 513, 586 (2014) (relying on amici when conducting historical analysis of the Recess Appointments Clause); *Lawrence v. Texas*, 539 U.S. 558, 567–68 (2003) (relying on amici to discuss history of legal proscriptions against sodomy); *Young v. Hawaii*, 992 F.3d 765, 785 (9th Cir. 2021) (en banc) (explicitly relying on amici, as well as parties, to "direct [their] focus to the principal historical sources and any important secondary sources" necessary to perform historical Second Amendment analysis), *overruled in part on other grounds* by *Bruen*, 142 S. Ct. 2111.

*Cf. Tele-Communications of Key W., Inc. v. United States*, 757 F.2d 1330, 1337 (D.C. Cir. 1985) ("Unfortunately, describing the contours of that law is difficult because of a lack of direct precedent on the question."); *United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 193 (D.D.C. 2018) ("Things are made more difficult still by the lack of modern judicial precedent."); *Methow Valley Citizens Council v. Reg'l Forester*, No. 85-2124-DA, 1986 WL 8595, at *13 (D. Or. June 25, 1986) (claim required "extensive consideration" in part due to "precedents lacking in adequate guidance").

A lack of such precedent plainly exists here. In rejecting the two-part Second Amendment test—the previous consensus test—and requiring courts to determine whether a current regulation is "consistent with this Nation's historical tradition of firearm regulation," *Bruen* has meaningfully departed from the status quo, and "the Ninth Circuit's Second Amendment jurisprudence has now . . . arguably been somewhat cast into doubt." *Clifton v. United States Dep't of Just.*, No. 21-CV-00089, 2022 WL 2791355, at *10 (E.D. Cal. July 15, 2022).

In sum, the changes in the Second Amendment analysis and the new demands placed on district courts all amount to one thing for the purposes of this motion: Giffords Law Center is now even better situated than it was previously to aid the court in adjudicating this matter. For decades, Giffords Law Center has steeped itself in Second Amendment law and firearm regulatory policy. It is thus uniquely situated to survey and analyze firearm regulations, both historical and modern. Giffords Law Center likewise has extensive exposure to the social sciences, and considerable experience interpreting that information in the context of firearm legislation and the Second Amendment. For these reasons, Giffords Law Center has been granted *amicus* status to aid several federal courts in performing the *Bruen* analysis. *See Angelo v. Dist. of Columbia*, No. 22-CV-1878, Dkt. No. 25 (D.D.C. 2022); *Worth v. Harrington*, No. 21-CV-01348, Dkt. No. 69 (D. Minn. 2022); *Antonyuk v. Bruen*, No. 22-CV-00734, Dkt. No. 29 (N.D.N.Y. 2022).

FRESHFIELDS
BRUCKHAUS DERINGER
US LLP
ATTORNEYS AT LAW
WASHINGTON, DC

12

MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION
FOR RECONSIDERATION
3:19-CV-1537-BEN-JLB

## V. CONCLUSION

For the reasons stated above, Giffords Law Center respectfully requests that the Court reconsider its order of August 3, 2020, and grant Giffords Law Center's motion for leave to file an *amicus* brief.

Dated: October 20, 2022

Respectfully Submitted,

FRESHFIELDS BRUCKHAUS DERINGER US LLP

By: /s/ Jennifer Loeb
Jennifer Loeb

Jennifer Loeb, SBN 266235
Freshfields Bruckhaus Deringer US LLP
700 13th Street, NW, 10th Floor
Washington, District of Columbia, 20005
Telephone: 202 777 4500
Facsimile:  202 777 4555
jennifer.loeb@freshfields.com

Timothy Howard[*]
Freshfields Bruckhaus Deringer US LLP
601 Lexington Ave., 31st Floor
New York, New York, 10022
Telephone:   212 230 4690
timothy.howard@freshfields.com

Attorneys for *Amicus Curiae*
Giffords Law Center to Prevent Gun Violence

---

[*] *Pro hac vice* application pending.