1  ROB BONTA
   Attorney General of California
2  P. PATTY LI
   Supervising Deputy Attorney General
3  ANNA FERRARI
   Deputy Attorney General
4  JOHN D. ECHEVERRIA
   Deputy Attorney General
5  State Bar No. 268843
    455 Golden Gate Avenue, Suite 11000
6   San Francisco, CA 94102-7004
    Telephone: (415) 510-3479
7   Fax: (415) 703-1234
    E-mail: John.Echeverria@doj.ca.gov
8  *Attorneys for Defendants Rob Bonta and
   Allison Mendoza, in their official capacities*[1]

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

CIVIL DIVISION

| | |
|---|---|
| JAMES MILLER et al., | 3:17-cv-01017-BEN-JLB |
| Plaintiffs, | |
| v. | **DEFENDANTS' BRIEF IN RESPONSE TO THE COURT'S ORDER ENTERED ON FEBRUARY 7, 2023** |
| CALIFORNIA ATTORNEY GENERAL ROB BONTA et al., | |
| Defendants.. | Courtroom: 5A<br>Judge: Hon. Roger T. Benitez<br>Action Filed: August 15, 2019 |

---

[1] Rob Bonta has succeeded former Attorney General Xavier Becerra as the Attorney General of the State of California, and Allison Mendoza is the current Acting Director of the Bureau of Firearms. Pursuant to Federal Rule of Civil Procedure 25(d), Attorney General Bonta and Acting Director Mendoza, in their respective official capacities, are substituted as the defendants in this case.

## INTRODUCTION

California's restrictions on firearms defined as "assault weapons" under California Penal Code section 30515(a)(1)–(8) ("Section 30515") fully comport with the Second Amendment at both stages of the text-and-history standard adopted in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Those provisions regulate the possession of certain semiautomatic firearms equipped with particular, enumerated accessories that enhance the lethality of those weapons. Even if Plaintiffs could show that the challenged laws burden conduct covered by the "plain text" of the Second Amendment (they cannot), Section 30515 is consistent with the Nation's historical tradition of weapons regulation.[2] On February 7, 2023, the Court ordered Defendants to file a brief identifying "the best historical regulation that is a proper analogue and relevantly similar to a statewide prohibition on possession of a firearm with listed features." Dkt. 164. All of the analogues relied upon by Defendants demonstrate a robust tradition of regulation that supports the constitutionality of Section 30515. *See* Defs.' Br. at 15–25.

Among the analogues the Attorney General has identified, New Jersey's 1771 prohibition on the possession of trap guns [10][3] is one among many relevantly similar analogues. To be sure, in addition to trap gun laws, historical restrictions on the carrying of certain dangerous weapons—such as New Jersey's 1686 law [6] restricting the carrying of pocket pistols, skeins, and dirks—and gunpowder storage restrictions are also relevantly similar to Section 30515. The historical laws restricting "certain types of weapons, such as Bowie knives, blunt weapons, slungshots, and trap guns because they were dangerous weapons commonly used

---

[2] Defendants incorporate by reference their Brief in Response to the Court's Order Entered on December 15, 2022 ("Defs.' Br.") (Dkt. 167), including the arguments that Plaintiffs have failed to show that the challenged laws burden conduct covered by the plain text of the Second Amendment. Defs.' Br. at 4–11.

[3] Numbers in brackets refer to the numbers assigned to the laws listed on Defendants' surveys of historical analogues. Dkt. 163-1; Dkt. 163-2.

for criminal behavior and not for self-defense." *Or. Firearms Fed'n, Inc. v. Brown* (*Oregon Firearms*), __ F. Supp. 3d __, 2022 WL 17454829, at *12–14 (D. Or. Dec. 6, 2022).[4] These dangerous weapons laws have been discussed extensively in Defendants' other briefing, *see* Defs.' Br. at 18–25, and will not be discussed further here, Dkt. 164.

## ARGUMENT

**I.  *BRUEN* REQUIRES A HOLISTIC AND CONTEXTUALIZED ANALYSIS OF THE RELEVANT HISTORY, RATHER THAN A SINGLE "DEAD RINGER"**

In assessing the constitutionality of a modern firearm regulation—especially in a case implicating "unprecedented societal concerns or dramatic technological changes," *Bruen*, 142 S. Ct. at 2132, as here, Defs.' Br. at 12–15—the historical analysis cannot be limited to the assessment of a single past law. The Supreme Court instructed that the government need not identify "a dead ringer" or "a historical *twin*" in the historical record. *Bruen*, 142 S. Ct. at 2133. The *Bruen* standard is not an "abstract game of spot-the-analogy-across-the-ages." *United States v. Kelly*, 2022 WL 17336578, at *6 (M.D. Tenn. Nov. 16, 2022). Instead, it requires "an evaluation of the challenged law in light of the broader attitudes and assumptions demonstrated by th[e] historical prohibitions" to determine whether the challenged law is one that *could have existed* consistent with the understanding of the Second or Fourteenth Amendments at the time of ratification. *Id.* at *5 n.7. Even an "imperfect match" can provide useful insight into the broader historical traditions that may justify a modern firearm regulation. *United States v. Rowson*, No. 22 CR. 310 (PAE), 2023 WL 431037, at *24 (S.D.N.Y. Jan. 26, 2023).

*Bruen* made clear that the Second Amendment is not a "regulatory straitjacket," 142 S. Ct. at 2133, confining permissible government regulations to

---

[4] Similar dangerous weapons laws proliferated during the 19th century, including around the time that the Fourteenth Amendment was ratified [24, 31, 32, 33, 36, 40, 41, 75, 79, 81], targeting specific types of weapons commonly used in murders and serious assaults, such as dirks, Bowie knives, and pocket pistols, that caused an alarming rise in homicides at the time. Roth Decl. (Dkt. 137-7) ¶¶ 23–27.

only those laws that had been enacted when the Second and Fourteenth Amendments were ratified. Instead, governments are free to adopt a "'variety' of gun regulations," *id.* at 2162 (Kavanaugh, J., concurring) (citation omitted), and "experiment[] with reasonable firearms regulations" to address threats to public safety, *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010) (plurality opinion). Requiring the government to spot a "near perfect match between a modern-day regulation[] and historical regulations would likely render *Bruen*'s analogical historical reasoning exactly th[e] 'regulatory straight jacket'" that the Second Amendment is not. *United States v. Perez-Garcia*, No. 22-CR-1581-GPC, 2022 WL 17477918, at *5 (S.D. Cal. Dec. 6, 2022) (Curiel, J.). Those considerations inform how to assess the historical analogues identified by the Attorney General and illuminate why the inquiry cannot be limited to a single historical law.

## II. PROHIBITIONS ON THE POSSESSION OF TRAP GUNS ARE RELEVANTLY SIMILAR TO CALIFORNIA'S RESTRICTIONS ON FIREARMS DEFINED AS ASSAULT WEAPONS UNDER SECTION 30515

California's restrictions on firearms defined as assault weapons under Section 30515 are relevantly similar to restrictions that were understood to be consistent with the Second Amendment when it was ratified in 1791, including New Jersey's 1771 prohibition on the setting of trap guns [10].[5] In 1771, New Jersey enacted a law addressing "a most dangerous Method of setting Guns [that] has prevailed in this Province" by prohibiting any person in the colony from "set[ting] any loaded Gun in such Manner as that the same shall be intended to go off or discharge itself, or be discharged by any String, Rope, or other Contrivance." 1763-1775 N.J. Laws 346, ch. 539, § 10.[6] Viewed in the context of other dangerous weapons laws, *see,*

---

[5] In identifying this law, Defendants do not suggest that the other laws relied upon, or that could have been identified with additional time, are not equally analogous and relevantly similar to Section 30515.

[6] This law is similar to other trap gun restrictions enacted around the period in which the Fourteenth Amendment was ratified, including laws enacted in 1865 [80], 1873 [109], 1875 [121], and 1884 [168]. Nine states enacted trap-gun laws in the 18th and 19th centuries. Spitzer Decl. (Dkt. 137-8) ¶ 53.

*e.g.*, *supra* nn.4 & 6, this law is part of a "broad tradition" of regulation with which Section 30515 is consistent. *Bruen*, 142 S. Ct. at 2156.

The New Jersey law imposed a burden comparable to Section 30515 on the right to armed self-defense by prohibiting certain configurations of firearms, including inside the home. These weapons were designed to injure or kill an individual who sprung the trap, including for purposes of defending property from intruders (and conceivably individuals residing at that property). *See* Spitzer Decl. ¶ 51. Under the New Jersey law, a firearm would not be regulated unless it had certain features attached to it, namely "any String, Rope, or other Contrivance," so that it would discharge automatically when tripped [10]. In this way, New Jersey's trap gun law is analogous to "a statewide prohibition on possession of a firearm *with listed features*." Dkt. 164 (emphasis added). Section 30515 likewise does not prohibit the possession of a semiautomatic centerfire rifle, semiautomatic pistol, or shotgun unless the weapon is equipped with one or more of the accessories or features listed in Section 30515, such as a pistol grip, a flash suppressor, or a barrel shroud. Cal. Penal Code § 30515(a). The burdens are comparably minimal because they restrict only "the manner in which persons may exercise their Second Amendment rights" and do not "bar firearm possession completely." *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 961 (9th Cir. 2014) (citation omitted).[7] And just as a firearm does not need to be configured as a trap gun to operate for self-defense, a firearm does not require any of the accessories listed in Section 30515 to operate for self-defense. *See* Busse Decl. (Dkt. 137-2) ¶¶ 12-24; *cf. Oregon Firearms*, 2022 WL 17454829, at *9 (large-capacity magazines are not "necessary to the use of firearms for self-defense").

Any burdens imposed by these laws are also comparably justified by significant public safety interests, including the prevention of unnecessary gunshot

---

[7] Although *Bruen* did not adopt the two-step framework applied in *Jackson*, this case is cited for its persuasive value.

injuries and deaths.  The listed "features [in Section 30515], individually and in combination, make semiautomatic rifles more lethal and most useful in combat settings."  Decl. of John D. Echeverria (Dkt. 167-1), Ex. 2 (Suppl. Expert Report & Decl. of Col. (Ret.) Craig Tucker, *Rupp v. Bonta*, No. 8:17-cv-00746-JLS-JDE (C.D. Cal. Jan. 6, 2023)) ¶¶ 14–22.  Weapons that qualify as assault weapons under Section 30515 are used frequently in mass shootings, resulting in greater numbers of injuries and deaths.  *See* Defs.' Br. at 14–15.  They are "like" the M16 and M4, *see* Echeverria Decl., Ex. 2 (Tucker Decl.) ¶¶ 12-13, weapons "most useful in military service" that "may be banned" under *Heller*.  *Kolbe v. Hogan*, 849 F.3d 114, 121 (2017) (en banc) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)), *abrogated on other grounds by Bruen*, 142 S. Ct. at 2126.[8]  The trap gun laws also seek to avoid harm to the public.  *See* Spitzer Decl. ¶¶ 51–52.  The historical analogues, *see also supra* n.4, were also designed to prevent *unintended* injury to innocent bystanders.  *See Kolbe*, 849 F.3d at 127 ("The banned assault weapons further pose a heightened risk to civilians in that 'rounds from assault weapons have the ability to easily penetrate most materials used in standard home construction, car doors, and similar materials.").  Accordingly, the trap gun laws are relevantly similar to the AWCA provisions challenged here.  *See Oregon Firearms*, 2022 WL 17454829, at *13 (holding that Oregon's large-capacity magazine limit was relevantly similar to historical analogues, including regulations of, *inter alia*, "trap guns").

## CONCLUSION

For these reasons, and those discussed in Defendants' other briefs, the challenged provisions of the AWCA comport with the Second Amendment.

---

[8] Though the en banc decision in *Kolbe* was abrogated, its analysis is cited for its persuasive value.

5

| | | |
|---|---|---|
| 1 | Dated:  February 10, 2023 | Respectfully submitted, |
| 2 | | ROB BONTA<br>Attorney General of California |
| 3 | | P. PATTY LI<br>Supervising Deputy Attorney General |
| 4 | | ANNA FERRARI<br>Deputy Attorney General |

*s/ John D. Echeverria*

JOHN D. ECHEVERRIA
Deputy Attorney General
*Attorneys for Defendants Rob Bonta and Allison Mendoza, in their official capacities*